UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the:<br><br>RANDY CRAIG WOLFE TRUST<br>    *Plaintiff*<br>    v.<br><br>LED ZEPPELIN<br>JAMES PATRICK PAGE<br>ROBERT ANTHONY PLANT<br>JOHN PAUL JONES<br>SUPER HYPE PUBLISHING, INC.<br>WARNER MUSIC GROUP CORP.<br>    *Parent of:*<br>        WARNER/CHAPPELL MUSIC, INC.<br>        ATLANTIC RECORDING CORPORATION<br>        RHINO ENTERTAINMENT COMPANY<br>    *Defendants* | **NO.:** *TBD*<br><br>**CASE FILED:**<br>MAY 31, 2014<br><br><br>**CAUSES OF ACTION:**<br>COPYRIGHT INFRINGEMENT<br><br>RIGHT OF ATTRIBUTION –<br>FALSIFICATION OF<br>ROCK n' ROLL HISTORY<br><br><br><br>*JURY TRIAL DEMANDED* |

PLAINTIFF'S COMPLAINT
COPYRIGHT INFRINGEMENT AND RELATED CLAIMS REGARDING

# STAIRWAY TO HEAVEN

FRANCIS ALEXANDER, LLC
Francis Alexander Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:   (215) 500-1000
F:   (215) 500-1005
E:   francis@francisalexander.com
*Law Firm / Lawyer for Plaintiff*

# PREAMBLE

1.      In the summer of 1967, Randy Craig Wolfe (aka Randy California), discovered by Jimi Hendrix, was a founding member of the eclectic rock band Spirit who pioneered the psychedelic rock sound. The band fused rock and jazz and enhanced the audio palette by incorporating mind-bending and mood-altering effects such as the Etherwave-Theremin, delay, and distortion into their recorded songs and live performances.

2.      In January 1968 Spirit released a self-titled album named *Spirit*—a top 40 Billboard charting album. On that album was a unique 2 minute and 37 second instrumental titled "Taurus" which has a distinct-plucked guitar line and melody. Little did anyone know at the time, 17-year old Randy had created what would become some of the most famous guitar work in the history of music.

3.      Late in 1968, a then new band named Led Zeppelin began touring in the United States, opening for Spirit. It was during this time that Jimmy Page, Led Zeppelin's guitarist, grew familiar with "Taurus" and the rest of Spirit's catalog. Page stated in interviews that he found Spirit to be "very good" and that the band's performances struck him "on an emotional level."

4.      Jimmy Page's use of the Etherwave-Theremin, and other psychedelic-type audio effects which helped give Led Zeppelin its distinctive sound—especially prominent in "Whole Lotta Love"—was inspired by seeing California effectively use these types of audio-enhancing effects on tour.

5.      Within days after opening for Spirit, Led Zeppelin quickly began to cover Spirit's songs—incorporated the song "Fresh Garbage" from Spirit's self-titled album into their live sets. "Fresh Garbage" was on the same album side as "Taurus."

6.      A year after touring with Spirit, Page *allegedly* wrote the most famous rock song of all time—"Stairway to Heaven"—by fireside in a remote cottage in Wales called Bron-Yr-Aur; it was released in 1971. It is no coincidence that the iconic notes to "Stairway

to Heaven," that have enthralled generations of fans, sound almost exactly the same as California's ethereal yet classical guitar composition in "Taurus."

7.      In 1996 Randy had a chance to have his say about the similarities between "Taurus" and "Stairway to Heaven" in his song-by-song liner notes for the 1996 reissue of *Spirit,* when he wrote:

> "People always ask me why 'Stairway to Heaven' sounds exactly like 'Taurus,' which was released two years earlier. I know Led Zeppelin also played 'Fresh-Garbage' in their live set. They opened up for us on their first American tour."

8.      However, in 1996 (printed in 1997), shortly before Randy's death, when asked directly about why "Taurus" and "Stairway to Heaven" sounded similar, he said:

> "Well, if you listen to the two songs, you can make your own judgment. **It's an exact... I'd say it was a rip-off. And the guys made millions of bucks on it and never said, 'Thank you,'** never said, 'Can we pay you some money for it?' It's kind of a sore point with me.   **Maybe some day their conscience will make them do something about it.** I don't know.   There are funny business dealings between record companies, managers, publishers, and artists.   But when artists do it to other artists, there's no excuse for that. I'm mad!"

See Jeff McLaughlin, "Spirit's Still Willing: A Conversation with Randy California," Listener Magazine, Winter 1997, p. 51.

9.      When Jimmy Page was interviewed and asked "When you were borrowing from classic blues songs on the first two albums, did you ever think it would catch up to you?" Page answered this question as follows:

> "**You mean getting sued?** Well, as far as my end of it goes, I always tried to bring something fresh to anything that I used. I always made sure to come up with some variation. In fact, **I think in most cases, you would never know what the original source could be.** Maybe not in every case— but in most cases. So most of the comparisons rest on the lyrics. And Robert was supposed to change the lyrics, and he didn't always do that— which is what brought on most of the grief. They couldn't get us on the guitar parts of the music, but they nailed us on the lyrics.

> We did, however, take some liberties, I must say [laughs]. But never mind; we did try to do the right thing, it blew up in our faces..."

See Brad Tolinski with Greg DiBenedetto, "Page Delves into Led Zeppelin's Rich Past," Guitar World (May 1993).

10.     This is hardly the first time Zeppelin has been accused of lifting their most famous songs; in fact, Zeppelin has a deep-rooted history of lifting composition from blues artists and other songwriters who they have repeatedly failed to credit. Here's a partial list:

| LED ZEPPELIN | | INFRINGED SONG | | | |
|---|---|---|---|---|---|
| SONG | ALBUM | Song | | Author | Result |
| Dazed and Confused (1969) | Led Zeppelin I | Dazed and Confused (1967) | | Jake Holmes | Settlement (2012): Terms undisclosed |
| Babe I'm Gonna Leave You (1969) | Led Zeppelin I | Babe, I'm Gonna Leave You (1960) | | Anne Bredon | Settlement (1980s): Credit given to Bredon and royalties |
| How Many More Times (1969) | Led Zeppelin I | How Many More Times (1959) | | Howlin' Wolf | Settlement (1993): Credit given to Wolf and royalties |
| Black Mountain Side (1969) | Led Zeppelin I | Blackwaterside (1966) | | Bert Jansch | Legal action considered: Never taken because of costs |
| Your Time is Gonna Come (1969) | Led Zeppelin I | Dear Mr. Fantasy (1967) | | Traffic | No action taken |
| Communication Breakdown (1969) | Led Zeppelin I | Nervous Breakdown (1962) | | Eddie Cochran | No action taken |
| Whole Lotta Love (1969) | Led Zeppelin II | You Need Love (1962) | | Willie Dixon | Settlement (1985): Credit given to Dixon and royalties |
| The Lemon Song (1969) | Led Zeppelin II | Killing Floor (1966) | | Howlin' Wolf | Settlement (1993): Credit given to Wolf and royalties |
| Bring it On Home (1969) | Led Zeppelin II | Bring It On Home (1963) | | Willie Dixon | Settlement (1972): Credit given to Dixon and royalties |
| Moby Dick (1969) | Led Zeppelin II | Watch Your Step (1961) | | Bobby Parker | No action taken |
| Since I've Been Loving You (1970) | Led Zeppelin III | Never (1968) | | Moby Grape | No action taken |
| Hats Off (1970) | Led Zeppelin III | Shake 'Em On Down (1937) | | Bukka White | No action taken |
| Stairway to Heaven (1971) | Led Zeppelin IV | Taurus (1968) | | Randy California | Pending |
| In My Time of Dying (1975) | Physical Graffiti | Traditional Gospel Song | | | No action taken: Led Zeppelin improperly claims writing credit |
| Custard Pie (1975) | Physical Graffiti | Drop Down Mama (1935) | | Sleepy John Estes | No action taken |
| Boogie with Stu (1975) | Physical Graffiti | Oooh My Head (1959) | | Ritchie Valens | Legal action taken: Valens' mother is credited as a writer |
| Nobody's Fault But Mine (1976) | Presence | Nobody's Fault But Mine (1927) | | Blind Willie Johnson | No action taken |

11.     Led Zeppelin is undeniably one of the greatest bands in history, and their musical talent is boundless. However, what happened to Randy California and Spirit is wrong. Led Zeppelin needs to do the right thing and give credit where credit is due.[1]  Randy California deserves writing credit for "Stairway to Heaven" and to take his place as an author of Rock's greatest song.

---

[1] Funds obtained from a favorable resolution of this lawsuit will go to the Randy Craig Wolfe Trust, which is run by Trustee Michael Skidmore, who has selflessly dedicated years to preserving and promoting Randy's spirit, including releasing 12 previously unreleased albums featuring Randy California. Mick and the Trust preserve Randy's memory by supporting the musical aspirations of children in public schools and by developing Randy California's music portfolio, the proceeds of which are provided to buy children in need musical instruments.

# FACTS

## Randy California is Discovered by Jimi Hendrix

12.     Randy California was a guitar virtuoso who began playing the guitar at an early age. None other than the great Jimi Hendrix recognized his talent when Randy was just 15 years old in 1966 playing in a music shop in NYC.

13.     Hendrix recruited Randy to play in his band Jimmy James and the Blue Flames. They played together in Greenwich Village and Randy was invited by Hendrix to join the newly formed Jimi Hendrix Experience in London. Randy did not go with Hendrix because his family was concerned that Randy was just a teenager and needed to finish his schooling.

14.     It was Jimi Hendrix who nicknamed Randy Wolfe "Randy California," a pseudonym Randy used for the rest of his life.

15.     Not only did Jimi Hendrix recognize the talents of Randy, but so did Jimmy Page, having been influenced by Randy's use of the Theremin, delay, and distortion—as well as other mind-bending and mood-altering psychedelic effects that are now common in rock and pop music.

## Formation of Spirit

16.     In 1967, guitarist Randy Craig Wolfe (aka Randy California), started a band named Spirit with four other musicians: Mark Andes (bass), John "Jay" Ferguson (vocals), John Locke (keyboard), and Ed Cassidy (drums). Randy was just 16-years old at the time.

17.     Spirit was an eclectic band with an amazing group of musicians that developed the psychedelic rock sound. Spirit was one of the first bands that fused rock and jazz by enhancing the audio palette by incorporating mind-mending and mood-altering effects such as the theremin, delay, and distortion into their songs and live sets.

18.     Spirit released its self-titled debut album *Spirit* in January 1968, which broke Billboard's Top 40.

19.     After the release of the album *Spirit*, Spirit went on to release more than twenty albums—albeit in different configurations of the band—including the critically acclaimed *The Family that Plays Together*, *Clear*, and *Twelve Dreams of Dr. Sardonicus* (which went Gold).

## CREATION OF THE SONG "TAURUS"

20.     On Spirit's self-titled album was a unique 2 minute and 37 second instrumental titled "Taurus" which was written by Randy California in the summer of 1967. The song has an ethereal, district plucked guitar line and melody. Randy wrote the song as a tribute to his bandmates who he loved and cared for deeply—some of them sharing the astrological Taurus sign.

21.     Spirit played "Taurus" at almost all of their concerts in the late 1960s and at many of their concerts in the early 1970s, where the song played a key role in the band's set list. The song often followed an up-beat and heavier tune, and this allowed the fans an emotional and expressive break in the set.

## SPIRIT AND RANDY SIGN SONGWRITING & RECORDING CONTRACTS

22.     On August 29, 1967, Randy (16 years old) signed an Exclusive Songwriter's and Composer's Agreement with Hollenbeck Music.

23.     The song "Taurus" was written by Randy before the August 29, 1967 Songwriter's Agreement and is not and cannot be considered a work for hire.

24.     On August 29, 1967, Randy signed an artist recording contract with Ode Records, Inc., along with Mark Andes (19 years old), Jay Ferguson (20 years old), John Locke (24 years old), and Ed Cassidy (44 year old).

25.     By the express terms of the Songwriter's Agreement and Recording Contract the contracts were not valid unless approved by the court.

26.     No court ever approved these contracts and are therefore void.

27.     Furthermore, the age of majority in California in 1967 was 21 (Stats. 1973, ch. 278, § 1, p. 674 [former Civil Code section 25.1]).

28.     Randy, Mark, and Jay were minors at the time these contracts were signed and they are void.

29.     Randy, Mark, and Jay did not have the legal capacity to enter into these contracts and are therefore void.

30.     In addition, all assignments and subsequent assignments of the rights in these contracts are void as they were not approved by a court.

31.     Moreover, both the Songwriter's Agreement and Recording Contract have been superseded in many ways by the provisions of the Copyright Act of 1976.

32.     To the extent Hollenbeck Music claims to retain any interest in "Taurus," it has abandoned, forfeited, and waived these rights by failing to protect or enforce the "Taurus" copyright.

33.     The publisher who allegedly contracted with Randy, Hollenbeck Music, has no rights or interests in "Taurus" because the contracts are void for a number of reasons, some of which have been already stated.

34.     The copyright registration of "Taurus" lists Randy California as the author and copyright claimant. "Taurus" was registered with the Copyright Office on 02/05/1968 (Reg. No. EU0000035222), and renewed on 01/11/1996 (Reg. No. RE0000725888).

## Led Zeppelin was Opening Act for Spirit in 1968

35.     In late 1968, a British band named Led Zeppelin played its first concert in the United States.

36.     Not yet immortal rock legends, Led Zeppelin opened for Spirit on December 26, 1968. Spirit played "Taurus" at this show, as it did in most of its concerts that year.

37.     In 1969, Spirit and Led Zeppelin performed together several more times. Spirit played "Taurus" at many of these shows.

38.     Jimmy Page and Led Zeppelin were fans of Spirit, were aware of their album, and were influenced on an emotional level by their performances and recordings, so much so that they would go to watch Spirit perform in concert.

39.     One such example is on February 6, 1970, when Robert Plant—and possibly other members of Led Zeppelin—attended a Spirit concert. Following the show, members of Spirit and Plant met up to play Snooker in a pub. Later that night Plant was injured in a car crash and hospitalized for facial injuries.

## Spirit Influenced Led Zeppelin and Jimmy Page

40.     Zeppelin's guitarist, defendant James Patrick Page ("Jimmy Page"), commented in a 1972 interview that Spirit's performances were "very good" and struck him on an "emotional level." See Pete Frame, "My Back Pages," Record Collector Magazine p.74 (May 2008), originally printed in Zig Zag Magazine (1972).

41.     Due to the band's close relationship in 1968 and 1969, and Page's comments, it is beyond reasonable dispute that Defendants heard Spirit perform "Taurus"—not only in concert but also from Spirit's album.

42.     Not only did Zeppelin hear Spirit perform "Taurus" and other original songs, Zeppelin actually covered Spirit's song, titled "Fresh Garbage" in a medley called "As Long As I Have You," at concerts during this time.

43.     The book Get the Led Out: How Led Zeppelin Became the Biggest Band in the World by Denny Somach details how Zeppelin started to use Spirit's material.

> "**December 26** All four members of Led Zeppelin met up in Denver, Colorado, where their first show on American soil was to take place. **They were opening for the bands Spirit** and Vanilla Fudge. Led Zeppelin was not even listed on the bill for this show. . . . .
>
> **December 30** A concert with Vanilla Fudge and Led Zeppelin took place at Gonzaga University in Spokane, Washington . . . . An audience tape of Led Zeppelin's performance from that show—the earliest audience tape of a Led Zeppelin show in circulation among bootleg collectors—reveals that **John Paul Jones had already begun playing the bass line that Spirit's Mark Andes played during the song "Fresh Garbage."** The two groups had shared the bill in Denver four days earlier. Jones was using it in part of a heavy rock medley Led Zeppelin extended on a near-nightly basis over the following months." Page 19.

44.     Merely 4 days after opening for Spirit, Zeppelin had already lifted Spirit's material for their live sets. Zeppelin continued to use Spirit's song "Fresh Garbage" in many of their live shows in 1968 through 1970 including it as part of a medley.

45.     Spirit and Randy California's influence on Defendants was by no means limited to one or two songs. After having witnessed Randy use the Etherwave-Theremin in concert, defendant Page was determined to—and eventually purchase one—which in addition to delay and distortion-type effects, helped Page develop Zeppelin's distinctive unearthly and psychedelic sounds.

46.     In <u>When Giants Walked the Earth: A Biography of Led Zeppelin</u> by Mick Wall, it is noted:

> "Sometimes [Zeppelin] would even purloin material from one of the other bands on the bill, as when Spirit joined the Vanilla Fudge tour for a few dates and Zeppelin took to incorporating into their set snatches of 'Fresh Garbage' from the debut, eponymously titled Spirit album. **Page was also taken with Spirit singer-guitarist Randy California's use of a theremin**, which he had mounted atop his amplifier or sometimes down by his foot pedals. . . . . **It wasn't until he saw Randy California using one that he decided he wanted one too**, buying his first theremin in New York at the start of the band's second US tour later that year and initially using it to enhance the extended jam-section finale of 'Dazed and Confused', and later a more famous effect on the recording of 'Whole Lotta Love'. (Vanilla Fudge drummer Carmine Appice would later claim that Page also 'adapted' a section of another, less well-known Spirit number, 'Taurus', from their first album, for the five trademark chords of 'Stairway to Heaven', an allegation we will return to in due course.)." Pages 99–100.

47.     Led Zeppelin recorded the album *Led Zeppelin* in October 1968, before having encountered Spirit and Randy California.

48.     Led Zeppelin conceived of and recorded *Led Zeppelin II* in 1969, after playing with Spirit.

49.     There is a noticeable difference between the two albums as *Led Zeppelin II* made heavy use of psychedelic audio effects, delay, and distortion—especially in "Whole Lotta Love"—that characterized Spirit and California's music. These effects were largely absent from *Led Zeppelin I*, and almost entirely absent from Page's prior recordings before Led Zeppelin.

50.     There is thus an overwhelming amount of evidence that Spirit contributed not insubstantially to the development of Led Zeppelin as a band—helping them create and carve out their distinct sound—and especially with the song "Stairway to Heaven."

# JIMMY PAGE & ROBERT PLANT WRITE "STAIRWAY TO HEAVEN"

51.    Having toured with Spirit, and after Zeppelin completed their fifth American concert tour in April 1970, Jimmy Page and Robert Plant sat fireside in a remote cottage in Wales called Bron-Yr-Aur and *allegedly* wrote the song "Stairway to Heaven."

52.    Defendant Jimmy Page is on record commenting how he allegedly created "Stairway to Heaven." In short, Page has stated that he always kept a cassette recorder around, and the idea for "Stairway to Heaven" came together from bits of taped music:

> "I had these pieces, these guitar pieces, that I wanted to put together. I had a whole idea of a piece of music that I really wanted to try and present to everybody and try and come to terms with. Bit difficult really, because it started on acoustic, and as you know it goes through to the electric parts. But we had various run-throughs [at Headley Grange] where I was playing the acoustic guitar and jumping up and picking up the electric guitar. Robert was sitting in the corner, or rather leaning against the wall, and as I was routining the rest of the band with this idea and this piece, he was just writing. And all of a sudden he got up and started singing, along with another run-through, and he must have had 80% of the words there ... I had these sections, and I knew what order they were going to go in, but it was just a matter of getting everybody to feel comfortable with each gear shift that was going to be coming."

See National Public Radio, Guitar Legend Jimmy Page (June 2, 2003).

53.    Defendant Jones claims he first heard "Stairway to Heaven" after Page and Plant returned from the Welsh cottage:

> Page and Plant [came back] from the Welsh mountains with the guitar intro and verse. I literally heard it in front of a roaring fire in a country manor house! I picked up a bass recorder and played a run-down riff which gave us an intro, then I moved into a piano for the next section, dubbing on the guitars.

See Chris Welch, Led Zeppelin, pp. 60–61 Orion Books (1994).

54.    The song began recording at Island Records' studio in London in December of 1970, and was completed in 1971.

55.    The song was released on an untitled album in 1971, commonly called *Led Zeppelin IV*.

56.     It quickly became Led Zeppelin's most famous song, and is universally acknowledged as one of the greatest songs ever written.

57.     Parts of "Stairway to Heaven," instantly recognizable to the music fans across the world, sound almost identical to significant portions of "Taurus."

58.     Any reasonable observer, when comparing "Taurus" and "Stairway to Heaven," must conclude that—at the very least—significant portions of the songs are nearly identical.

59.     "Stairway to Heaven" was registered with the Copyright Office on 01/20/1972 (Reg. No. EU0000301137), and renewed on 01/05/2000 (Reg. No. RE0000819939).

*****

# THE PARTIES

## MICHAEL SKIDMORE                                    "SKIDMORE"

60.     Plaintiff Michael Skidmore is the Trustee for the Randy Craig Wolfe Trust.

61.     Skidmore is a resident of Quincy, Massachusetts.

62.     Randy Craig Wolfe died in 1997 saving his son from being swept out to sea. The Randy Craig Wolfe Trust was established by Bernice C. Pearl, the mother of Randy Craig Wolfe, as conservator of his estate by court order on February 19, 2002. Upon her death, Michael Skidmore, in his capacity as Trustee, continued the administration of the Trust.

63.     Mick and Trust preserve Randy's memory by supporting the musical aspirations of children in public schools and by developing Randy California's music portfolio, the proceeds of which buy children in need musical instruments.

64.     After the Trust was formed Randy's son received a large sum of money as a settlement—which allowed the Trust to continue helping children.

65.     The Randy Craig Wolfe Trust retains 100% of the interests to Randy's intellectual property, inclusive of but not limited to copyrights, musical compositions and sound recordings, and all pecuniary benefits related thereto inclusive of the right to the copyrights, interests, and benefits from the exploitation of the song "Taurus."

66.     Funds obtained from a favorable resolution of this lawsuit will go to the Randy Craig Wolfe Trust, which is run by Trustee Mick Skidmore, who has selflessly dedicated years to preserving and promoting Randy's spirit, including releasing 12 previously unreleased albums featuring Randy California.

## LED ZEPPELIN                                         "ZEPPELIN"

67.     The English rock band Led Zeppelin formed in 1968. The band consisted of Jimmy Page (guitarist), Robert Plant (singer), John Paul Jones (bassist and keyboardist),

and John Bonham (drummer). The group's guitar-driven sound, rooted in blues and folk music, is considered by many to be a key influence in the emergence of heavy metal.

68.     Originally called the New Yardbirds, Led Zeppelin signed with Atlantic Records in 1968. Zeppelin achieved significant commercial success with albums such as *Led Zeppelin* (1969), *Led Zeppelin II* (1969), *Led Zeppelin III* (1970), their untitled fourth album (1971), *Houses of the Holy* (1973), and *Physical Graffiti* (1975). Their fourth album, featuring "Stairway to Heaven," is revered by the musical world and helped to cement the popularity of the group.

69.     Page composed most of Led Zeppelin's music early on—in addition to being the band's producer—while Plant wrote the lyrics, including the words for "Stairway to Heaven." The latter half of the band's career saw a series of record-breaking tours that earned them a reputation for excess and debauchery.

70.     Led Zeppelin are widely considered one of the most successful, innovative and influential rock groups in history. All nine of the band's studio albums reached the *Billboard* Top 10 with six peaking at number one. *Rolling Stone* magazine described them as "unquestionably one of the most enduring bands in rock history." Inducted into the Rock and Roll Hall of Fame in 1995, the museum's biography states that they were "as influential in that decade [the 1970s] as the Beatles were in the prior one."

71.     Zeppelin infringed upon the composition of "Taurus" when band members Page and Plant allegedly wrote "Stairway to Heaven."

72.     Zeppelin profited from the infringement and exploitation of "Taurus" when Led Zeppelin released "Stairway to Heaven" to the public and failed to credit, compensate, or remunerate Randy.

73.     Zeppelin exploited the musical composition of "Taurus" without authorization.

74.     Zeppelin exploited the musical composition of "Stairway to Heaven."

75.     Zeppelin exploited the sound recording of "Stairway to Heaven."

76.     On information and belief, Zeppelin does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## JAMES PATRICK PAGE                                              "PAGE"

77.    Defendant James Patrick Page is the guitarist and the lead and founding member of the rock band Led Zeppelin.

78.    Page is listed as a writer for the song "Stairway to Heaven."

79.    Page infringed upon the composition of "Taurus" when he and Plant allegedly wrote "Stairway to Heaven."

80.    Page profited from the infringement and exploitation of "Taurus" when Led Zeppelin released "Stairway to Heaven" to the public and failed to credit, compensate, or remunerate Randy.

81.    Page exploited the musical composition of "Taurus" without authorization.

82.    Page exploited the musical composition of "Stairway to Heaven."

83.    Page exploited the sound recording of "Stairway to Heaven."

84.    On information and belief, defendant Page resides in Kensington, London, England and in the United States.

85.    On information and belief, Page does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## ROBERT ANTHONY PLANT                                           "PLANT"

86.    Defendant Robert Plant is the singer and member of the rock band Led Zeppelin.

87.    Plant is listed as a writer of the song "Stairway to Heaven."

88.    Plant infringed upon the composition of "Taurus" when he and Page allegedly wrote "Stairway to Heaven."

89.    Plant profited from the infringement and exploitation of "Taurus" when Led Zeppelin released "Stairway to Heaven" to the public and failed to credit, compensate, or remunerate Randy.

90.    Plant exploited the musical composition of "Taurus" without authorization.

91.    Plant exploited the musical composition of "Stairway to Heaven."

92.    Plant exploited the sound recording of "Stairway to Heaven."

93.     On information and belief, defendant Plant resides in the United States in Austin, Texas and in England.

94.     On information and belief, Plant does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## John Paul Jones                                              "Jones"

95.     Defendant John Paul Jones is the bassist and member of the rock band Led Zeppelin.

96.     On information and belief, Jones aided and encouraged the infringement of the composition of "Taurus" when Page and Plaint allegedly wrote "Stairway to Heaven."

97.     On information and belief, Jones profited from the infringement and exploitation of "Taurus" when Led Zeppelin released "Stairway to Heaven" to the public and failed to credit, compensate, or remunerate Randy.

98.     Jones exploited the musical composition of "Taurus" without authorization.

99.     Jones exploited the musical composition of "Stairway to Heaven."

100.    Jones exploited the sound recording of "Stairway to Heaven."

101.    On information and belief, defendant Jones resides in England and in the United States.

102.    On information and belief, Jones does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## Super Hype Publishing, Inc.                    "Super Hype"

103.   Defendant Super Hype is a publishing company which exploits musical works—musical compositions.

104.   Super Hype was formed and is 100% owned, operated, controlled, and managed by defendant Page.

105.   Super Hype is the publishing company responsible for publishing the musical compositions of defendant Led Zeppelin and defendant Page.

106.   Super Hype exploited the musical composition of "Taurus" without authorization.

107.   Super Hype exploited the musical composition of "Stairway to Heaven."

108.   Super Hype exploited the sound recording of "Stairway to Heaven."

109.   On information and belief, Super Hype is a New York corporation.

110.   Super Hype's catalog of songs is administered by defendant Warner/Chappell Music, Inc.

111.   Super Hype does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.


## Warner Music Group Corp.                    "WMG"

112.   Defendant WMG is a large music industry powerhouse that provides all services related thereto which comprise three main divisions: recording, publishing, and artist services.

113.   WMG owns defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Corporation.

114.   WMG exploited the musical composition of "Taurus" without authorization.

115.   WMG exploited the musical composition of "Stairway to Heaven."

116.   WMG exploited the sound recording of "Stairway to Heaven."

117.   On information and belief, WMG is a Delaware corporation.

118.   WMG is the parent of defendant Warner/Chappell Music, Inc.

119.   WMG is the parent of defendant Atlantic Recording Corporation.

120.    WMG is the parent of defendant Rhino Entertainment Company.

121.    WMG does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## WARNER/CHAPPELL MUSIC, INC.        "WARNER/CHAPPELL"

122.    Defendant Warner/Chappell is a global music publishing company that exploits musical works.

123.    Music publishing involves the acquisition of rights to, and licensing of, musical compositions (as opposed to recordings) from songwriters, composers or other rights holders.

124.    Warner/Chappell holds one of the world's largest collections of musical compositions, ranging from well-known standards to new songs by emerging artists. Warner/Chappell is home to a wide array of legendary songwriters and a rich catalog of contemporary hits and influential standards. With a history that dates back more than 200 years and offices in more than 40 countries, Warner/Chappell provides expertise across a range of creative services and the most innovative opportunities for songwriters and copyright holders.

125.    Warner/Chappell currently publishes and administers music from Barry Gibb, Beyoncé, Bruno Mars, Eric Clapton, fun., Gamble & Huff, Green Day, JAY Z, Katy Perry, Led Zeppelin, Lionsgate Films, Madonna, Miramax Films, Muse, Radiohead, Red Hot Chili Peppers, R.E.M., Roc Nation, Stephen Sondheim, T.I., Timbaland, and Wayne Hector, among many others.

126.    Warner/Chappell exploited the musical composition of "Taurus" without authorization.

127.    Warner/Chappell exploited the musical composition of "Stairway to Heaven."

128.    Warner/Chappell exploited the sound recording of "Stairway to Heaven."

129.    Warner/Chappell is a subsidiary of defendant WMG.

130.    Defendant WMG is the parent of Warner/Chappell.

131.    Warner/Chappell administers defendant Super Hype's catalog of songs.

132.    On information and belief, Warner/Chappell is a Delaware corporation.

133.    Warner/Chappell does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## ATLANTIC RECORDING CORPORATION                    "ATLANTIC"

134.    Defendant Atlantic is a record company engaged in the business of developing artists, and in the business of creating, manufacturing, selling, and distributing musical works compositions and musical sound recordings.

135.    Led Zeppelin, Page, Plant, Jones, and John Bonham (deceased drummer) were all signed to Atlantic and Atlantic was the record company who develop the band Led Zeppelin and assisted the band in creating, manufacturing, selling, and distributing the musical compositions and sound recordings of Led Zeppelin.

136.    Atlantic manufactured, sold, and distributed Led Zeppelin's fourth album, known as *Led Zeppelin IV*, which included the musical composition and sound recording of "Stairway to Heaven" which infringed upon the musical composition of "Taurus."

137.    Atlantic owns the master recording(s) of the album *Led Zeppelin IV*.

138.    Atlantic owns the master recording(s) of "Stairway to Heaven."

139.    Atlantic was founded in 1947 by Ahmet Ertegun and Herb Abramson (later joined by Jerry Wexler, Nesuhi Ertegun, Tom Dowd, and Arif Mardin) as a one-room operation in New York City that was dedicated to finding, recording and promoting independent R&B and jazz. The label had its first hit single in 1949 with Stick McGhee's "Drinkin' Wine Spo-Dee-O-Dee" and soon after was catapulted into one of the pre-eminent companies in the rapidly evolving music industry. Today it remains recognized and revered around the world as being synonymous with artistry and quality.

140.    Through the years, Atlantic recordings have had a profound impact on the development of modern music, while entertaining and engaging listeners with songs that have rooted themselves in our collective consciousness. Atlantic's rich history is distinguished by an array of legendary artists who broke new ground and set new musical

standards, among them such icons as Ray Charles, Aretha Franklin, John Coltrane, and Led Zeppelin.

141.    Atlantic continues to be marked by musical diversity, embracing a spectrum of chart-topping performers who span the contemporary pop, rock, R&B, and hip-hop landscapes. Today the company is home to many of the world's most popular recording artists, among them Bruno Mars, fun., Flo Rida, T.I., Wiz Khalifa, Portugal. The Man, B.o.B., Halestorm, Trey Songz, James Blunt, Phil Collins, Death Cab for Cutie, Lupe Fiasco, Kid Rock, Matchbox Twenty, Jason Mraz, O.A.R., Plies, Sean Paul, Shinedown, Staind, Rob Thomas and many more.

142.    Atlantic exploited the musical composition of "Taurus" without authorization.

143.    Atlantic exploited the musical composition of "Stairway to Heaven."

144.    Atlantic exploited the sound recording of "Stairway to Heaven."

145.    Atlantic is a subsidiary of defendant WMG.

146.    Defendant WMG is the parent of Atlantic.

147.    On information and belief, Atlantic is a Delaware corporation.

148.    Atlantic does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

## RHINO ENTERTAINMENT COMPANY                    "RHINO"

149.    Defendant Rhino develops defendant WMG's vast catalog of extraordinary artists in the United States, as well as providing support and assistance to the company's frontline labels. The division, which includes Rhino Records, WMG Custom Products, and WMG Film, Television & Commercial Licensing, also develops new catalog-related business opportunities across Warner Music Group and with third-party companies.

150.    Rhino exploited the musical composition of "Taurus" without authorization.

151.    Rhino exploited the musical composition of "Stairway to Heaven."

152.    Rhino exploited the sound recording of "Stairway to Heaven."

153.    Rhino is a subsidiary of defendant WMG.

154.    Defendant WMG is the parent of Rhino.

155.    On information and belief, Rhino is a Delaware corporation.

156.    Rhino does substantial, continuous, and systematic business in the Eastern District of Pennsylvania.

*****

157.    On information and belief, each and every Defendant was an agent, partner, representative, affiliate, employee, alter ego, or co-conspirator of each and every other Defendant, and in doing the things alleged herein, each and every Defendant was acting pursuant to such conspiracy and/or within the course and scope of such agency, representation, affiliation, control or employment and was acting with the consent, permission and authorization of the other Defendants. Moreover, on information and belief, each Defendant who joined the conspiracy after its formation ratified, adopted and is liable for all acts committed in furtherance of the conspiracy including those committed before such Defendant joined the conspiracy.

158.    Whenever the Complaint refers to any act or acts of a Defendants, the reference shall also be deemed to meant that the directors, officers, employees, affiliates, controlling companies or agents of the responsible Defendants authorized such act while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and/or by persons who are the alter ego of Defendants, or while acting within the scope of their agency, affiliation, control, or employment. Whenever the Complaint refers to any act of Defendants, the references shall be deemed to be the act of each Defendant, jointly and severally.

*****

# JURISDICTION AND VENUE

159.     Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

160.     This action is brought as a copyright infringement case and related claims; and therefore, subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. §§ 1331 and 1338.

161.     The song "Taurus" and the song "Stairway to Heaven" have both been commercially exploited and continue to be exploited in the Eastern District of Pennsylvania, the United States, and throughout the world.

162.     Additionally, infringement of "Taurus" has occurred by virtue of the commercial exploitation of "Stairway to Heaven" which has occurred and continues to occur in the Eastern District of Pennsylvania, the United States, and throughout the world.

163.     Venue lies within this Court pursuant to 28 U.S.C. § 1400(a).

*****

# CAUSES OF ACTION

## Count I – Direct Copyright Infringement

*Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust v. Led Zeppelin, James Patrick Page; Robert Anthony Plant; John Paul Jones; Super Hype Publishing, Inc.; Warner Music Group Corporation; Warner/Chappell Music, Inc.; Atlantic Recording Corporation; Rhino Entertainment Company*

164.    Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

165.    To be liable for direct copyright infringement a defendant must have had access to the work allegedly copied, and there must be substantial similarity between the infringing work and the infringed work. Access can be established by showing with direct or circumstantial evidence that the work in question was actually copied. Access can also be established by demonstrating that the two works are so strikingly similar that independent creation is precluded. Substantial similarity is proven by demonstrating that an ordinary person would recognize the infringing song as having been taken from the plaintiff's protected expression.

166.    Defendants, specifically Led Zeppelin, Jimmy Page, Robert Plant, John Paul Jones, and John Bonham (deceased), first came to the United States in 1968. Late in 1968, Zeppelin opened shows for Spirit, during which "Taurus" was played by Randy California and Spirit.

167.    During this time period, Led Zeppelin was influenced by Spirit and even began to play a song by Spirit named "Fresh Garbage" in Zeppelin's sets.

168.    Defendant Page admitted in a 1972 interview that he found Spirit's live performances to be "very good," acknowledging that Spirit's performances "struck him on an emotional level."

169.    On information and belief, Page's use of a Theremin, which helped give Led Zeppelin its distinctive sound, began after Page saw Randy California using the device at Spirit's shows.

170.     Defendants had direct access to "Taurus" by virtue of their close interaction with the band Spirit and Randy California, and the fact that they listened to Spirit play "Taurus" in concert, and likely purchased the album.

171.     Access is also established because the similarities between "Taurus" and the iconic notes, melody, chord progression, structure, tempo, instrumentation, and feel of "Stairway to Heaven" are so strikingly similar that independent creation is precluded.

172.     Substantial similarity between "Taurus" and "Stairway to Heaven" is established because, to a reasonable observer, the iconic notes, melody, chord progression, structure, tempo, instrumentation, and feel of "Stairway to Heaven" sound almost identical to Plaintiff's protected expression in "Taurus."

173.     Because Defendants undeniably had access to "Taurus" and copied protected expression in "Taurus" to create "Stairway to Heaven," they are liable for direct copyright infringement.

174.     Without authorization or permission, Defendants continue to exploit "Taurus" as "Stairway to Heaven," reaping tremendous financial rewards and other pecuniary benefits, to the detriment of Plaintiff.

175.     Defendants us of "Taurus" in "Stairway to Heaven" was done with knowledge of the infringement and was otherwise willful.

*****

## Count II – Contributory Copyright Infringement

*Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust v. Led Zeppelin, James Patrick Page; Robert Anthony Plant; John Paul Jones; Super Hype Publishing, Inc.; Warner Music Group Corporation; Warner/Chappell Music, Inc.; Atlantic Recording Corporation; Rhino Entertainment Company*

176. Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

177. To state a claim contributory copyright infringement a plaintiff must show that the defendants induced, caused, materially contributed to, and participated in the infringement of Plaintiff's copyrighted song, "Taurus."

178. Defendants had and have knowledge of the ongoing infringing activity that is the subject of this lawsuit—the use of "Taurus" in "Stairway to Heaven"—and have induced and materially contributed to the infringing conduct of the direct infringers of Plaintiff's copyrighted song, "Taurus."

179. Without authorization or permission, Defendants continue to exploit "Taurus" as "Stairway to Heaven," reaping tremendous financial rewards and other pecuniary benefits, to the detriment of Plaintiff.

*****

## Count III – Vicarious Copyright Infringement

*Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust v. Led Zeppelin, James Patrick Page; Robert Anthony Plant; John Paul Jones; Super Hype Publishing, Inc.; Warner Music Group Corporation; Warner/Chappell Music, Inc.; Atlantic Recording Corporation; Rhino Entertainment Company*

180.    Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

181.    To state a claim for vicarious copyright infringement the defendants must vicariously profit from the direct infringement while declining to exercise a right to stop or limit the direct infringement.

182.    Here, all Defendants profit from the dissemination, sale, distribution, and licensing of the song "Stairway to Heaven."

183.    Furthermore, Defendants, as producers, publishers, songwriters, and copyright holders, all have control over the dissemination, sale, distribution, and licensing of the song "Stairway to Heaven."

184.    Without authorization or permission, Defendants continue to exploit "Taurus" as "Stairway to Heaven," reaping tremendous financial rewards and other pecuniary benefits, to the detriment of Plaintiff.

*****

## Count V – Right of Attribution – Equitable Relief
### Falsification of Rock n' Roll History

*Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust v. Led Zeppelin, James Patrick Page; Robert Anthony Plant; John Paul Jones; Super Hype Publishing, Inc.; Warner Music Group Corporation; Warner/Chappell Music, Inc.; Atlantic Recording Corporation; Rhino Entertainment Company*

185.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

186.   Randy wrote the iconic notes, melody, chord progression, structure, tempo, instrumentation, and feel of significant portions of "Stairway to Heaven," which are instantly recognizable to any person remotely familiar with rock music.

187.   The writing credits for "Stairway to Heaven" incorrectly do not list Randy California as a writer of the song.

188.   Defendants have knowingly been exploiting "Stairway to Heaven" without crediting Randy California as a writer for the last forty-two years.

189.   Plaintiff is entitled to equitable relief to ensure that Randy California be added as a writer to "Stairway to Heaven," because the four factor test governing when equitable relief should be granted, explained in eBay Inc. v. MercExchange, 547 U.S. 388, 391 (2006), is satisfied:

   a.  Wolfe suffered irreparable injury and has no recourse through the law because the right of attribution is not statutorily recognized.

   b.  Monetary damages alone are inadequate to compensate them for the damage done to Randy's professional music reputation. Moreover, acknowledgement in and of itself is intrinsically valuable to human beings and Randy expected to be fairly credited for the huge amount of success attributable to "Stairway to Heaven."

   c.  Crediting Randy California would impose no hardships on any defendant.

   d.  The public interest would be served by such an acknowledgement as it would be made aware that Randy was key writer and creator of the greatest rock song ever written.

190.   Defendants continue to represent to the public that Randy California had no role in creating "Stairway to Heaven."

191.    Equitable relief should include an order that Defendants and the Copyright Office be made to include Randy Craig Wolfe (aka Randy California) as a writer of "Stairway to Heaven."

*****

# CLAIMS FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor on all Counts and against all Defendants for an amount well in excess of the jurisdictional amount required to guarantee a jury trial. Plaintiff requests that this Court determine and declare that Plaintiff is additionally awarded and afforded on all Counts:

(a)  Compensatory damages for all losses, together with interest, costs, and delay damages;

(b)  Defendants' profits in an amount according to proof at trial;

(c)  Statutory damages of $150,000 per infringement pursuant to 17 U.S. Code § 504 given the willfulness of Defendants' conduct;

(c)  Punitive damages on all causes of actions to punish the Defendants for their outrageous and duplicitous conduct, especially those Defendants who are elected public officials; public Offices; and public Organizations;

(d)  Exemplary damages to set an example for others;

(e)  Equitable relief pursuant to 17 U.S. Code § 502 and § 503;

(f)  Injunctive and other equitable relief inclusive of but not limited to impoundment, destruction, and halting of sales of the infringing material.

(g)  Costs and attorney's fees; and

(h)  Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances or allowed by statute.

*****

# DEMAND FOR JURY TRIAL

Plaintiff herby demands a trial by jury on all claims and issues so triable.

*****

Respectfully submitted

FRANCIS ALEXANDER, LLC

/s/ Francis Alexander Malofiy

Francis Alexander Malofiy, Esquire
Attorney ID No.:   208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:   (215) 500-1000
F:   (215) 500-1005
E:   francis@francisalexander.com
Law Firm / Lawyer for Plaintiff

/d/ May 30, 2014

# VERIFICATION

I, Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust—Plaintiff in this action—hereby declares that the statements of fact made in PLAINTIFFS' COMPLAINT are true according to my personal knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

MICHAEL SKIDMORE

/s/

/d/ May 30, 2014

# SPOLIATION CLAUSE

Plaintiff demands that Defendants take necessary actions to ensure the preservation of all documents and things related to the case—in any format—hardcopy, electronic, audio, and visual, inclusive of but not limited to: the Master recording of "Stairway to Heaven", prior recordings of Stairway to Heaven, the individual audio tracks—both from prior recordings, initial/early takes, and those which are part of the final Master track, and any and all session audio, tracks, and takes—whether or not used in the final Master.

Additionally, defendant Jimmy Page is on record as saying how he allegedly created "Stairway to Heaven". In short, Page has stated that he always kept a cassette recorder around, and the idea for "Stairway" came together from bits of taped music:

> "I had these pieces, these guitar pieces, that I wanted to put together. I had a whole idea of a piece of music that I really wanted to try and present to everybody and try and come to terms with. Bit difficult really, because it started on acoustic, and as you know it goes through to the electric parts. But we had various run-throughs [at Headley Grange] where I was playing the acoustic guitar and jumping up and picking up the electric guitar. Robert was sitting in the corner, or rather leaning against the wall, and as I was routining the rest of the band with this idea and this piece, he was just writing. And all of a sudden he got up and started singing, along with another run-through, and he must have had 80% of the words there ... I had these sections, and I knew what order they were going to go in, but it was just a matter of getting everybody to feel comfortable with each gear shift that was going to be coming."

See National Public Radio, Guitar Legend Jimmy Page, 2 June 2003.

Plaintiff demands that Defendants preserve these bits and pieces of taped music which formed the basis for "Stairway to Heaven" as well as any and all recordings by the fire at Bropn-Yr-Aur or from Headley Grange when "Stairway to Heaven" was allegedly written by Jimmy Page and later introduced and further developed by Led Zeppelin.

Lastly, Defendants are put on notice to preserve all things, as listed above, as well as information, materials, communications, or other content related to the averments in this case.

*****

# CERTIFICATE OF SERVICE

A true and correct copy of PLAINTIFF'S COMPLAINT is being hand delivered to the Court for filing and thereafter will be served upon all Defendants in accordance in accordance with the Federal Rules of Civil Procedure.

## LED ZEPPELIN

The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Led Zeppelin
c/o Atlantic Recording Corporation
1290 Avenue of the Americas
New York, NY 10104

Led Zeppelin
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

## JAMES PATRICK PAGE

W14 8AB, UK

James Patrick Page
c/o Atlantic Recording Corporation
1290 Avenue of the Americas
New York, NY 10104

James Patrick Page
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

## Robert Anthony Plant

██████████

Austin, TX 78704-1852

Robert Anthony Plant
c/o Atlantic Recording Corporation
1290 Avenue of the Americas
New York, NY 10104

Robert Anthony Plant
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

## John Paul Jones

██████████

W14 8AB, UK

John Paul Jones
c/o Atlantic Recording Corporation
1290 Avenue of the Americas
New York, NY 10104

John Paul Jones
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

## Super Hype Publishing, Inc.

CT Corporation System
111 8th Avenue
New York, NY 10011

Super Hype Publishing, Inc.
c/o Warner Music Group Corp.
75 Rockefeller Plaza
New York, NY 10019-6908

# WARNER MUSIC GROUP CORP.

The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

*Parent company of:*

## WARNER/CHAPPELL MUSIC, INC.

The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Warner/Chappell Music, Inc.
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

## ATLANTIC RECORDING CORPORATION

The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Atlantic Recording Corporation
1290 Avenue of the Americas
New York, NY 10104

Atlantic Recording Corporation
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

## RHINO ENTERTAINMENT

The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Rhino Entertainment
c/o Warner Music Group Corp.
Legal Department
75 Rockefeller Plaza
New York, NY 10019

*****

Respectfully submitted,

FRANCIS ALEXANDER, LLC

/s/ Francis Alexander Malofiy

Francis Alexander Malofiy, Esquire
Attorney ID No.:   208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:   (215) 500-1000
F:   (215) 500-1005
E:   francis@francisalexander.com
Law Firm / Lawyer for Plaintiff

/d/ May 31, 2014

# Exhibit List

Exhibit 1   –   Copyright Registration of "Taurus"

Exhibit 2   –   Copyright Registration of "Stairway to Heaven"

# EXHIBIT 1

## COPYRIGHT REGISTRATION OF "TAURUS"



**Help** | **Search** | **History** | **Titles** | **Start Over**

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = taurus
Search Results: Displaying 10 of 1015 entries



Labeled View

*Taurus.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | RE0000725888 / 1996-01-11 |
| | Renewal registration for: EU0000035222 / 1968-02-05 |
| **Title:** | Taurus. |
| **Notes:** | Music. |
| **Copyright Claimant:** | Randy California (A) |
| **Copyright Note:** | C.O. correspondence. |
| **Names:** | California, Randy |



| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format [ Full Record ▾ ] | [ Format for Print/Save ] |
| Enter your email address: | [ Email ] |

Help   Search   History   Titles   Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright |
Copyright Office Home Page | Library of Congress Home Page

# EXHIBIT 2

### Copyright Registration of

### "Stairway to Heaven"



# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = Stairway to Heaven
Search Results: Displaying 7 of 272 entries



Labeled View

### *Stairway to heaven.*

**Type of Work:** Music

**Registration Number / Date:** RE0000819939 / 2000-01-05
Renewal registration for: EU0000301137 / 1972-01-20

**Title:** Stairway to heaven.

**Notes:** Words & music.

**Copyright Claimant:** James Patrick Page, Robert Plant (A)

**Names:** Page, James Patrick
Plant, Robert



| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format   Full Record ▼ | Format for Print/Save |
| Enter your email address: | Email |

Help    Search    History    Titles    Start Over

Contact Us   |   Request Copies   |   Get a Search Estimate   |   Frequently Asked Questions (FAQs) about Copyright   |
Copyright Office Home Page   |   Library of Congress Home Page