1   Peter J. Anderson, Esq., Cal. Bar No. 88891
    E-Mail: pja@pjanderson.com
2   LAW OFFICES OF PETER J. ANDERSON
    A Professional Corporation
3   100 Wilshire Boulevard, Suite 2010
    Santa Monica, CA 90401
4   Tel: (310) 260-6030
    Fax: (310) 260-6040
5   Attorneys for Defendants
    JAMES PATRICK PAGE, ROBERT ANTHONY
6   PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
    MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7   ATLANTIC RECORDING CORP., RHINO
    ENTERTAINMENT COMPANY and WARNER
8   MUSIC GROUP CORP.

9   Helene Freeman, Esq., admitted *pro hac vice*
    E-Mail:  hfreeman@phillipsnizer.com
10  PHILIPS NIZER LLP
    666 Fifth Avenue
11  New York, NY 10103-0084
    Tel: (212) 977-9700
12  Fax: (212) 262-5152
    Attorneys for Defendants
13  JAMES PATRICK PAGE, ROBERT ANTHONY
    PLANT and JOHN PAUL JONES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT |
| LED ZEPPELIN, *et al.*, | |
| Defendants. | |
| | Date:  March 28, 2016 |
| | Time: 9:00 a.m. |
| | Courtroom of the Honorable R. Gary Klausner United States District Judge |

**<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

1.    INTRODUCTION......................................................................................1

2.    SUMMARY OF UNCONTROVERTED FACTS.........................................2

    (a)    Spirit's 1967 Recording Contract and Hollenbeck Music's 1967 Employment of Randy Wolfe as a Songwriter ......................................2

    (b)    In January 1968, Ode Records Released its First Spirit Album, which Included *Taurus* – a Short Instrumental with a Minor Line Cliché – Which Was Not Released as a Single or on Radio ..................2

    (c)    Spirit's 1968-1971 Live Performances Promoting the Band's Subsequent Albums, without Performing *Taurus*...................................2

    (d)    On the Three Occasions When Led Zeppelin and Spirit Played the Same Venue, the Evidence Is Spirit Did Not Play *Taurus* and, in any Event, Led Zeppelin Did Not Hear Spirit Perform ..........................3

    (e)    Spirit's January 1970 Appearance at Mothers Club in England..............3

    (f)    In Late 1971, the Album *Led Zeppelin IV* Is Released and Includes *Stairway*, which Begins with a Variation on a Minor Line Cliché..........4

    (g)    Wolfe Believed *Stairway* Copied *Taurus*' Introduction, and in 1991 Approved the Supposed Use of *Taurus* ........................................4

    (h)    The Forty-Three Years of Delay Before this Claim Was Asserted ........4

3.    SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS ........................5

    (a)    Plaintiff Cannot Sue for Copyright Infringement Because *Taurus* Is a Work for Hire Owned by Hollenbeck Music ...................................5

        (1)    The Creator of a Work for Hire Cannot Sue for Infringement......5

        (2)    Wolfe Agreed, and Plaintiff Admitted under Federal Rule of Civil Procedure 36, that *Taurus* Is a Work for Hire ...................5

        (3)    Even if Plaintiff Were Not Bound by His Rule 36 Admissions, there Is No Merit to His Claim *Taurus* Is Not a Work for Hire ....6

i

(b)   Wolfe Waived the Alleged Infringement..................................................8

(c)   Wolfe and the Trust Abandoned the Claim ............................................8

(d)   Laches Bars Plaintiff's Suit as Claimed Beneficial Owner of *Taurus* ....9

    (1)   As to Equitable Claims, *Petrella* Leaves Laches Intact ...............9

    (2)   Laches Bars Plaintiff's Claim as Beneficial Owner of *Taurus* ...10

(e)   Even if Plaintiff Avoids these Hurdles, the Copyright Claims Fail ......11

    (1)   Plaintiff Has Failed to Produce the Copyright Office Deposit Copy of *Taurus*, a Required Element of His Claim ....................11

    (2)   Copying of Protected Original Expression Is a Required Element of the Copyright Claims ................................................11

    (3)   Plaintiff Concedes the Songs Are Not Strikingly Similar..........11

    (4)   Neither Is there Admissible Evidence of Access Plus Substantial Similarities ................................................................12

        *i.*   *Plaintiff Was Unable to Prove His Allegations of Access* ..............................................................................12

            a.   "Taurus" Was Not "Widely Disseminated" ............... 12

            b.   Neither Is there a "Chain of Events" Establishing that Led Zeppelin's Members Heard *Taurus* ............. 12

        *ii.*   *Even if Plaintiff Could Establish Access – Which He Cannot Do – there Are No Substantial Similarities* ..........14

            a.   Plaintiff's Expert Ignores that the *Taurus* Deposit Copy and *Stairway* Are the Relevant Works.............. 14

            b.   The "Extrinsic Test": Analytical Dissection, Discarding Unprotected Ideas and Stock Elements ... 16

            c.   The Minor Line Cliché Must Be Disregarded, Leaving No Significant Similarities ........................... 17

(d)   The Claims Also Fail as to John Paul Jones, Super Hype Publishing and Warner Music Group Corp.................................................................18

ii

4.    SUMMARY JUDGMENT ON THE "RIGHT OF ATTRIBUTION"
      CLAIM ................................................................................................18

5.    IF, FOR ANY REASON, SUMMARY JUDGMENT IS NOT
      GRANTED, PARTIAL SUMMARY JUDGMENT IS APPROPRIATE.......19

      (a)    There Are No Striking Similarities Between *Taurus* and *Stairway* ......19

      (b)    Plaintiff's Claim for Profits from *Stairway* ...........................................19

             (1)    Laches Bars Plaintiff's Request for Profits .................................19

             (2)    If Profits Are Not Barred, they Are Limited ................................19

                    i.     *Extraterritorial Profits Are Not Recoverable* ..................19

                    ii.    *Plaintiff Can Only Recover as a Beneficial Owner* ..........20

6.    CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........................... 8

*ABKCO Music, Inc. v. LaVere*, 217 F.3d 684 (9th Cir. 2000), *cert. denied*
  531 U.S. 1051 (2000) ........................................................................ 7

*Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023 (9th Cir. 1981) ........................................ 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1983) ............................................. 3

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994),
  *cert. denied* 513 U.S. 1184 (1995) ............................................................ 17

*Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009) ................ 12

*Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. (Wash.) 2009),
  *cert. denied* 558 U.S. 822 (2009) .............................................................. 19

*Cortner v. Israel*, 732 F.2d 267 (2d Cir. 1984) ....................................................... 10

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) .......................................... 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ................. 18

*Dowling v. United States*, 473 U.S. 207 (1985) ..................................................... 15

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149
  (2d Cir. 2003), *cert. denied* 541 U.S. 937 (2004) ...................................... 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .............................. 11

*Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815 (C.D. Cal. 2010) ............................. 13

*Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392
  (C.D. Cal. 1990) ................................................................................ 8

*Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274 (S.D.N.Y. 1991) .............................. 14

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146
  (9th Cir. 2010), *cert. denied* 133 S. Ct. 133 (2012) .................................... 7

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994) ................ 16

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987
  (9th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999) ................................... 20

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996)......................................... 6

*Manno v. Tennessee Prod. Ctr.*, 657 F. Supp. 2d 425 (S.D.N.Y. 2009) ..................... 20

*Micro Star v. Formgen, Inc.,* 154 F.3d 1107 (9th Cir.1998) ......................................... 9

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006) .............................. 10

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*
   388 F.3d 1189, *cert. denied* 545 U.S. 1114 (2005).......................................... 15

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), *cert. denied*
   545 U.S. 1114 (2005) ........................................................................ 15, 16, 17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014) .......... 9, 10, 11, 18, 19

*Ray Charles Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015)........................... 5, 6

*Rice v. Fox Broadcasting Co.*, 148 F. Supp. 2d 1029 (C.D. Cal. 2001),
   *rev'd on other grounds*, *Rice,* 330 F.3d 1170 ........................................... 17

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ............................... 11

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008),
   *cert. denied* 555 U.S. 1137 (2009)................................................... 6

*Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183 (S.D.N.Y. 1973),
   *aff'd*, 546 F.2d 461 (2d Cir. 1976) ...................................................... 7

*Rouse v. Walter & Assoc., L.L.C.*, 513 F. Supp. 2d 1041 (S.D. Iowa 2007)................ 9

*Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756 (2d Cir. 1995) .......... 9

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), *cert. denied,* 540 U.S. 983
   (2003) ........................................................................................... 17

*Selle v. Gibb*, 741 F.2d 896 (7th Cir. 1984)................................................ 12

*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005),
   *cert. denied* 546 U.S. 827 (2005) ...................................................... 5

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ......................................... 17

*Societe Civile Succession Guino v. Renoir*, 549 F.3d 1182 (9th Cir. 2008) ................ 6

*Stewart v. Wachowski*, 574 F.Supp.2d 1074 (C.D. Cal. 2005).................................. 11

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir. 1994),

   *cert. denied* 513 U.S. 1001 (1994) ............................................................... 19

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) .................. 19

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000),

   *cert. denied* 531 U.S. 1126 (2011) ............................................... 13, 14, 16

*Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162 (9th Cir. 1996)........................... 7

*UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164

   (E.D. Cal. 2006) ........................................................................................ 18

*United States v. King Features Entm't, Inc.,* 843 F.2d 394 (9th Cir. 1988)................. 8

*Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136 (9th Cir.2003)................. 5, 10

*Wyatt Tech. Corp. v. Malvern Instruments Inc.*, No. CV 07-08298-DDP-MANx,

   2009 WL 2365647 (C.D. Cal. July 29, 2009), *aff'd*, 526 F. App'x 761

   (9th Cir. 2013) ............................................................................................ 9

**Statutes**

17 U.S.C. § 11 (1909 Act) ........................................................................................ 7

17 U.S.C. § 12 (1909 Act) ................................................................................. 7, 15

17 U.S.C § 303 ........................................................................................................ 7

17 U.S.C. § 302 ...................................................................................................... 6

17 U.S.C. § 501 ...................................................................................................... 5

**Other Authorities**

Copyright Office Compendium .............................................................................. 17

H.R. Rep. No. 94–1476 .......................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 36 ..................................................................... 5, 6

**Treatises**

Goldstein, *Goldstein on Copyright* (1989) .............................................................. 9

M. Nimmer & David Nimmer, *Nimmer on Copyright* (2016) ........................... 7, 8, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Forty-three years after the 1971 release of *Stairway to Heaven* ("*Stairway*"), plaintiff filed this action claiming that *Stairway*'s introduction copies a descending chromatic line in a 1967 musical composition titled *Taurus*.  His pleading relies on gossip, hearsay and hyperbole, and discovery has confirmed his allegations are not as advertised.  That has left him with speculation that, *e.g.*, since Jimmy Page now has a Spirit album, he might have had it forty-five years ago when *Stairway* was created.  For multiple independent reasons, plaintiff's claims fail.

First, since *Taurus* is a work for hire owned by a non-party, plaintiff cannot sue for infringement.  Second, even if there were a claim – and there is not – it was expressly waived in 1991.  Third, the allegedly-infringed rights were abandoned.  Fourth, laches bars plaintiff's equitable claim as beneficial owner of the *Taurus* copyright.  Fifth, plaintiff has failed to produce the required Copyright Office deposit copy of *Taurus* and, for that reason alone, cannot prove the alleged copying.  Finally, he also has presented no evidence of copying: he conceded there are no striking similarities; he failed to present admissible, non-speculative evidence of access before *Stairway* was created; and he failed to present evidence of substantial similarity between the copyrighted *Taurus* composition and *Stairway* and cannot do so because (1) his initial expert disclosures did not even mention the relevant copyrighted work and (2) both side's experts agree the compositions share a centuries-old descending chromatic line.  Accordingly, summary judgment for defendants on the copyright infringement claims is appropriate, including as to John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp., who have not performed or distributed *Stairway* within the statutory limitations period.

Plaintiff's remaining "Right of Attribution" claim also fails, including because there is no such claim under the law.  And, if summary judgment is not granted, partial summary judgment is proper as to matters that are beyond genuine dispute.

1

## 2.    SUMMARY OF UNCONTROVERTED FACTS

### (a)    Spirit's 1967 Recording Contract and Hollenbeck Music's 1967 Employment of Randy Wolfe as a Songwriter

On August 29, 1967, Randy Wolfe ("Wolfe"), professionally known as Randy California, and the other members of the band Spirit entered into a recording contract with Ode Records, Inc., and Wolfe entered into an Exclusive Songwriter Agreement with its affiliate Hollenbeck Music ("Hollenbeck").   Under the 1967 Exclusive Songwriter Agreement, Hollenbeck "employ[ed Wolfe] to render his services as a songwriter and composer . . . ," and Wolfe agreed he was a "'writer for hire' . . . with full rights of copyright renewal vested in [Hollenbeck]." Fact 1-3.[1]

### (b)    In January 1968, Ode Records Released its First Spirit Album, which Included *Taurus* – a Short Instrumental with a Minor Line Cliché – Which Was Not Released as a Single or on Radio

After the August 29, 1967 contracts, Ode Records recorded Spirit's performances of various songs and a short instrumental called *Taurus*.  On or about December 22, 1967, Hollenbeck, as owner, registered a copyright in the *Taurus* musical composition with the Copyright Office.  Fact 9-11.

In 1967, Ode Records released its first Spirit album, titled *Spirit*, with twelve songs, including *Taurus*.  *Taurus*, which includes a commonplace minor line cliché, namely a descending chromatic line with arpeggios, was not released as a "single" and was not played on radio.  Fact 14-19.

### (c)    Spirit's 1968-1971 Live Performances Promoting the Band's Subsequent Albums, without Performing *Taurus*

After its 1967 album, Ode Records released Spirit's 1968 break-out album, *The Family that Plays Together*, and then additional Spirit albums in 1969 and 1970. Spirit performed in concerts to "support" its newest albums, meaning that they performed songs from those albums, along with earlier hits or "tent pole songs" that

---

[1]    "Fact" refers to facts in the proposed Statement of Uncontroverted Facts.

2

did not include *Taurus*.  Also, the 1967 album's recording of *Taurus* has orchestral instruments, so Spirit could not perform it live as it is heard on the album.  Fact 10, 21-23.  Out of 175 live concert performances by Spirit from December 1968 to December 1970, plaintiff established only that two included *Taurus*.  Fact 24.

### (d)   On the Three Occasions When Led Zeppelin and Spirit Played the Same Venue, the Evidence Is Spirit Did Not Play *Taurus* and, in any Event, Led Zeppelin Did Not Hear Spirit Perform

Plaintiff alleges Led Zeppelin and Spirit toured together (FAC at 2, ¶ 6, at 10, ¶ 51), but that is not true.  Out of hundreds of public performances from 1968 to the completion of *Stairway*'s recording in January 1971, Led Zeppelin and Spirit performed at the same venue on the same day only three times.  Even then, they never performed together and were never on stage at the same time.   Fact 26-30.

Further, Spirit, in support of its newest albums, played songs from those new albums and "tent pole" songs, none of which included *Taurus*.  Other than – at his counsel's aggressive coaching – one witness' testimony to a "faint recollection" that *Taurus* was performed at one of the three venues,[2] the evidence is that Spirit did not perform *Taurus* at any of them.  Also, the evidence, including the testimony of that same witness, is Led Zeppelin's members did not hear Spirit perform.  Fact 31-66.

### (e)   Spirit's January 1970 Appearance at Mothers Club in England

In January 1970, Robert Plant and his wife were at a local club near their home in Birmingham, England.  Spirit's two surviving members saw him there and, in a short "meet-and-greet," introduced themselves before Spirit performed at the other end of the club.  There is no evidence that Spirit played *Taurus*, which was not one of their new or tent pole songs.  Fact 70-76.  One of Spirit's surviving members contends that later that night he and other members went to a pub with Plant, but

---

[2]   That "faint recollection," properly disregarded as speculation and the result of counsel's coaching (Fact 37-39), also is less than the "scintilla of evidence" that fails to create a triable issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1983).

Spirit's other surviving member does not recall that, and at the time pubs closed at 10 p.m.  In any event, there is no evidence *Taurus* was discussed.  Fact 77-80.

**(f)** **In Late 1971, the Album *Led Zeppelin IV* Is Released and Includes *Stairway*, which Begins with a Variation on a Minor Line Cliché**

*Stairway* was recorded by January 1971 and included in the album *Led Zeppelin IV* released in November 1971.  *Stairway* begins with a minor line cliché and arpeggios and, unlike *Taurus*, also has an ascending line.  Audio Exh. 2 at Track 2.  Long before 1968, Jimmy Page was aware of minor line clichés and arpeggios and included similar music when he performed as a session guitarist.  Fact 82-87.

**(g)** **Wolfe Believed *Stairway* Copied *Taurus'* Introduction, and in 1991 Approved the Supposed Use of *Taurus***

In 1991, Wolfe was interviewed in connection with a new album, titled *Time Circle*, of Spirit recordings.  In that recorded interview, he described a claim he was pursuing that Cheap Trick's Robin Zander had copied Wolfe's *Nature's Way*.  When asked about *Stairway*, Wolfe stated he was not bothered by it, that he considered Led Zeppelin's members friends, that "if they wanted to use" *Taurus* "that's fine," "I'll let them have the beginning of Taurus for their song without a lawsuit" and "I'm letting them off the hook."  Fact 90-91.  His statements were repeated in a booklet in the *Time Circle* album released to the public in 1991.  Fact 92-93.

**(h)** **The Forty-Three Years of Delay Before this Claim Was Asserted**

Wolfe also never sued over *Stairway*.  He died in 1997 and from 2002 until her death, his mother was the trustee or co-trustee of the Randy Craig Wolfe Trust (the "Trust") that claims rights in *Taurus*.  She also never sued.  And, plaintiff, who became a co-trustee of the Trust in 2006, did not file this action until May 31, 2014, over forty-three years after the 1971 release of *Stairway*.  Fact 94-99.

Plaintiff's First Amended Complaint – decorated with print mimicking a Led Zeppelin album and peppered with specious allegations and gratuitous references to non-parties' supposed claims as to other songs – alleges four claims: direct,

4

contributory and vicarious infringement of the *Taurus* musical composition copyright that Hollenbeck registered in 1967, and a fourth claim labeled "Right of Attribution"/"Falsification of Rock n' Roll History."  FAC (Doc. 31) at 24-30.

**3.**   **SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS**

**(a)**   **Plaintiff Cannot Sue for Copyright Infringement Because *Taurus* Is a Work for Hire Owned by Hollenbeck Music**

A fatal defect in plaintiff's copyright claims is that because *Taurus* is a work for hire owned by Hollenbeck, plaintiff cannot sue for alleged infringement.

**(1)**   **The Creator of a Work for Hire Cannot Sue for Infringement**

"To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright.'"  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (*quoting* 17 U.S.C. § 501(b)), *cert. denied* 546 U.S. 827 (2005).   "Beneficial owners include, 'for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.'"   *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1144 (9th Cir.2003), *quoting* H.R. Rep. No. 94–1476, at 159.   But, "[a] creator of a work made for hire does not qualify as a beneficial owner even if he or she is entitled to royalties."   *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 n. 7 (9th Cir. 2015).   Here, plaintiff's copyright claims fail because *Taurus* is a work for hire.

**(2)**   **Wolfe Agreed, and Plaintiff Admitted under Federal Rule of Civil Procedure 36, that *Taurus* Is a Work for Hire**

Under the August 29, 1967 Songwriter Agreement, Hollenbeck "employ[ed] Wolfe] to render his services as a songwriter and composer . . . ," and Wolfe agreed he was a "writer for hire" for Hollenbeck.  Fact 1-3.  Hollenbeck also copyrighted the *Taurus* composition in its name on December 22, 1967.  Fact 11.  In short, *Taurus* is a work for hire whose copyright is owned by Hollenbeck.

Neither can plaintiff debate the issue.  After being twice-warned to timely

respond to discovery, he failed to respond to Rule 36 requests that, *inter alia*, "[t]he *Taurus* Composition is a work for hire."  Although, <u>six days before the discovery cut-off</u> he provided a response purporting to deny these and other requests, he never sought relief from his automatic, deemed admissions.  Fact 7-8.

Both the evidence and plaintiff's admissions establish *Taurus* is a work for hire and the law is clear that the creator of a work for hire cannot sue for copyright infringement.  *Ray Charles*, 795 F.3d at 1116 n. 7.  Summary judgment is proper.

> **(3)** **Even if Plaintiff Were Not Bound by His Rule 36 Admissions, there is No Merit to His Claim *Taurus* Is Not a Work for Hire**

While plaintiff's Rule 36 admission precludes him from disputing *Taurus* is a work for hire, there also is no merit to his two arguments that it is not.

Plaintiff alleges that the Songwriter Agreement is "void" because Wolfe was a minor when he signed and it was not approved by the Court.  FAC at 6, ¶¶ 22, 24-26.  However, the Superior Court approved it on November 30, 1967.  Fact 6.

Plaintiff also has argued that in the months leading up to the 1967 Songwriter Agreement, Spirit performed versions of *Taurus* live.  But, he relies on bootleg recordings and hearsay as to when the performances occurred.  In any event, 1960s live performances and recordings of *Taurus* are irrelevant: no copyright arose from them and plaintiff instead sues on the copyright in the *Taurus* composition completed and registered during the August 29, 1967 Songwriter Agreement's term.

"[T]o analyze questions arising from events that occurred before January 1, 1978, such as who is the author of the [work], the 1909 Act applies; . . . ."  *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 971 (9th Cir. 2008)), *cert. denied* 555 U.S. 1137 (2009); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir. 1996).  Under the 1909 Act, there were only two ways to obtain a copyright.[3]

---

[3]     "The Copyright Act of 1976 changed the basis of copyright protection . . . to creation of a work . . . [but t]hat change applies to works 'created on or after January 1, 1978.'"  *Societe Civile Succession Guino v. Renoir*, 549 F.3d 1182, 1186 (9th Cir. 2008), *quoting* 17 U.S.C. § 302.

First, publishing copies with the required copyright notice created a copyright. *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996).   But, publication requires the distribution of "tangible copies of a work . . . ." *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981).   A live performance is not a tangible copy, and under the 1909 Act "[a] phonograph record is not a copy of the musical composition itself."  *Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183, 1192 n. 8 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688-89 (9th Cir. 2000), *cert. denied* 531 U.S. 1051 (2000); 17 U.S.C § 303(b).  Accordingly, 1960s live performances and recordings of *Taurus* did not result in a copyrighted composition.

Second, copyright could also be secured under the 1909 Act by registration with the Copyright Office, which required "the deposit, with claim of copyright, of one complete copy of such work if it be a . . . musical, or dramatico-musical composition; . . . ." 17 U.S.C. §§ 11-12 (repealed).  "Because, under the 1909 Act, copyright protection required . . . the deposit of *copies* . . . , to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form."  2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (emphasis in original).  When Hollenbeck registered its copyright in the musical composition *Taurus* on December 22, 1967 (Fact 11), it presumably deposited with the Copyright Office a transcription of the composition.  Until then, as far as the 1909 Act was concerned, there was no *Taurus* copyright and it came into existence only when – four months after the August 29, 1967 Songwriter Agreement – a transcription of *Taurus*  was prepared and deposited with the Copyright Office.[4]  As a result, live performances and recordings are irrelevant.

---

[4]    Although not raised by plaintiff, it makes no difference that Hollenbeck's registration of its *Taurus* copyright did not specify it was a work for hire.  *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (absent intent to defraud, mistake in identifying author of work for hire irrelevant), *cert. denied* 133 S. Ct. 133 (2012).  Further, the Songwriter Agreement's specific

1  Since *Taurus* is a work for hire owned by Hollenbeck, plaintiff cannot sue for

2  infringement and summary judgment is proper.

3  **(b)**  **Wolfe Waived the Alleged Infringement**

4  Even if plaintiff could avoid that *Taurus* is a work for hire, Wolfe expressly

5  waived the alleged infringement decades ago.

6  Defendants pleaded waiver as a defense.  Answer (Doc. 68) at 29, ¶ 213;

7  Answer (Doc. 69) at 33, ¶ 214.  "Waiver is the intentional relinquishment of a

8  known right with knowledge of its existence and the intent to relinquish it."  *A&M*

9  *Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001), *quoting United*

10  *States v. King Features Entm't, Inc.,* 843 F.2d 394, 399 (9th Cir. 1988).  "In

11  copyright, waiver . . . 'occurs only if there is an intent by the copyright proprietor to

12  surrender rights in his work.'"  *A&M Records*, 239 F.3d at 1026, *quoting* 4 *Nimmer*

13  *on Copyright* ¶ 13.06.

14  It could not be clearer that Wolfe "intended to surrender" any claim that

15  *Stairway* copied *Taurus*: he specifically stated in 1991 for public release that, *e.g.*,

16  he's "fine" with the alleged use and "I'll let them have the beginning of Taurus for

17  their song without a lawsuit."  Fact 91.  Since the Trust has no greater rights than

18  Wolfe, it cannot pursue a claim that Wolfe waived during his lifetime.

19  Accordingly, for this additional reason summary judgment is proper.

20  **(c)**  **Wolfe and the Trust Abandoned the Claim**

21  Defendants also pleaded the defense of abandonment.  Answer (Doc. 68) at

22  29, ¶ 212; Answer (Doc. 69) at 33, ¶ 213.  "Abandonment occurs when the copyright

23  proprietor intends to surrender a copyright interest in his work."  *Hadady Corp. v.*

24  *Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990).  "To find

25  _____

26  provisions that Wolfe was an employee and the compositions are works for hire, trump the registration.  *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342

27  F.3d 149, 167 n. 24 (2d Cir. 2003) (correction of registration decades later approved; "author" may have been used colloquially in identifying employee as author of work

28  for hire), *cert. denied* 541 U.S. 937 (2004).

8

1   abandonment, 'the copyright owner must have clearly manifested that intention

2   through some affirmative act.'" *Id.*, *quoting* Goldstein, *Goldstein on Copyright* 160

3   (1989).  A copyright holder may abandon some rights without abandoning others.

4   *Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1114 (9th Cir.1998).

5          Here, Wolfe was not an owner, beneficially or otherwise, of the *Taurus*

6   copyright.  But, even if he had an interest in that copyright, he, the Trust and even

7   Hollenbeck allowed the alleged use of *Taurus* for over forty-three years.  *Sanga*

8   *Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 761 (2d Cir. 1995)

9   (songwriter abandoned rights by allowing other singer to use song without credit or

10  payment).  And, while *Stairway* does not in fact copy *Taurus*, in 1991 Wolfe stated

11  for release to the public that he waived any claim.  Fact 90-93.  *Hadady*, 739 F.

12  Supp. at 1399 (public statement that use allowed, even if defendant unaware of

13  statement, "abandoned copyright protection" in material allegedly used); *Wyatt*

14  *Tech. Corp. v. Malvern Instruments Inc.*, No. CV 07-08298-DDP-MANx, 2009 WL

15  2365647, at *13-14 (C.D. Cal. July 29, 2009) (same), *aff'd*, 526 F. App'x 761 (9th

16  Cir. 2013); *Rouse v. Walter & Assoc., L.L.C.*, 513 F. Supp. 2d 1041, 1070 (S.D.

17  Iowa 2007) (claimed owners' failure to assert rights and statement that work could

18  be used, constituted abandonment).

19         As a result, the copyright claims also fail because of abandonment.

20         **(d)      Laches Bars Plaintiff's Suit as Claimed Beneficial Owner of *Taurus***

21         If plaintiff somehow avoids summary judgment on the basis *Taurus* is a work

22  for hire, then his claims still fail because Wolfe also assigned any copyright rights to

23  Hollenbeck in 1967.  Exh. 11 at 1-5, ¶ 1.  Acknowledging Hollenbeck's ownership

24  of the *Taurus* copyright, and ignoring that *Taurus* is a work for hire, plaintiff has

25  claimed that Wolfe, and now the Trust, are beneficial owners of the *Taurus*

26  copyright.  Exh. 26.  But, the claim as beneficial owner is barred by laches.

27         **(1)      As to Equitable Claims, *Petrella* Leaves Laches Intact**

28         This and other Circuits have long recognized that laches may bar a copyright

9

claim.  *See, e.g., Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 996-97 (9th Cir. 2006).   Plaintiff, asserting a claim that is over four decades old, hopes to avoid laches by relying on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014).

*Petrella*, however, expressly states that laches remains a viable defense to equitable relief.  134 S.Ct. at 1973-74, 1974-75 ("laches cannot be invoked to bar legal relief") & at 1977-79 (laches available as to equitable relief).  And, plaintiff's claim as purported beneficial owner of the *Taurus* copyright is an equitable claim. *Warren*, 328 F.3d at 1144 (beneficial ownership of copyright is "an equitable trust relationship"), *quoting Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984).

### (2)    Laches Bars Plaintiff's Claim as Beneficial Owner of *Taurus*

*Petrella* leaves intact this Circuit's law as to laches when applied to equitable claims, and this Circuit's law confirms laches bars plaintiff's beneficial ownership claim.  Indeed, the four decades of delay triggers a "strong presumption" the claim is barred (*Miller*, 454 F.3d at 997), and plaintiff cannot rebut that presumption.

Laches is established by the plaintiff's unreasonable delay and the defendant's resulting prejudice.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Measured from 1971, when *Stairway* was released, to the filing of this lawsuit in 2014 (*id.* at 952), those forty-three years of delay is unreasonable as a matter of law.

And, defendant's prejudice is undeniable.  Prejudice may be "evidentiary" or "expectations-based."  *Id.* at 955.  "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died."  *Id.*  Since 1971, Wolfe and many other important witnesses have died, and set lists, recordings and other documents have been lost or stolen.  Fact 100-01. While that alone establishes the required prejudice, "[a] defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."  *Danjaq*, 263 F.3d at 955. Substantial expense was incurred in 2012-14 in the remastering and re-release of Led Zeppelin recordings, including *Stairway*.  Fact 102.

1  Plaintiff cannot overcome the "strong presumption" that his equitable claim as

2  beneficial owner of the *Taurus* copyright is barred by laches.

3      **(e)      Even if Plaintiff Avoids these Hurdles, the Copyright Claims Fail**

4  Even if plaintiff could overcome all these hurdles, his claims still fail because

5  there is no admissible evidence that *Stairway* copies protected material in *Taurus*.

6      **(1)      Plaintiff Has Failed to Produce the Copyright Office Deposit**

7      **Copy of *Taurus*, a Required Element of His Claim**

8  "[B]oth the certificate [of copyright] and the original work must be on file

9  with the Copyright Office before a copyright owner can sue for infringement."

10  *Petrella*, 134 S. Ct. at 1977.  Plaintiff, however, has never produced the transcription

11  of *Taurus* that Hollenbeck presumably deposited with the Copyright Office in 1967.

12  While defendants obtained an uncertified transcription, it does not bear a Copyright

13  Office stamp.  Fact 12-13.  Since plaintiff has never proven the "original work . . .

14  on file with the Copyright Office," his copyright claims necessarily fail.

15      **(2)      Copying of Protected Original Expression Is a Required**

16      **Element of the Copyright Claims**

17  Plaintiff also bears the burden of proving "copying of constituent elements of

18  the work that are original."  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir.

19  2003), *quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

20  Plaintiff claims no direct evidence of copying, so he must present admissible

21  evidence of either "striking similarities" <u>or</u> "access" plus substantial similarities

22  between *Stairway* and the copyrighted *Taurus* composition.  *Stewart v. Wachowski*,

23  574 F. Supp. 2d 1074, 1084 (C.D. Cal. 2005).  Plaintiff presents neither.

24      **(3)      Plaintiff Concedes the Songs Are Not Strikingly Similar**

25  "To prove copyright infringement without evidence of access, a plaintiff must

26  show the works are strikingly similar in both ideas and expression."  *Olson v.*

27  *Tenney*, 466 F. Supp. 2d 1230, 1236 (D. Or. 2006).  Because elements that are

28  "commonplace, or at least sometimes found in other works," cannot be striking

similarities, "evidence of striking similarity must include 'some testimony or other evidence of the relative complexity or uniqueness of the two compositions' . . . ." *Id.* (expert testimony required in music cases), *quoting Selle v. Gibb*, 741 F.2d 896, 905 (7th Cir. 1984). Here, plaintiff's musicologist did not claim striking similarities. Fact 110. Accordingly, it is undisputed there are no striking similarities.

### (4)     Neither Is there Admissible Evidence of Access Plus Substantial Similarities

Since the works are not strikingly similar, plaintiff must present admissible evidence of access <u>and</u> substantial similarity, and he has done neither.

### *i.     Plaintiff Was Unable to Prove His Allegations of Access*

To prove access, plaintiff must present evidence proving that the creator of the defendant's work had more than a "bare possibility" to copy the plaintiff's work. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Access is proven "either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.*

### a.  "Taurus" Was Not "Widely Disseminated"

*Taurus* was not released as a single and was not played on the radio. It was included in Spirit's first album, but plaintiff failed to produce any evidence as to sales of that album prior to the 1971 creation of *Stairway*. Fact 17-20. Accordingly, plaintiff cannot prove access by widespread dissemination.

### b.  Neither Is there a "Chain of Events" Establishing that Led Zeppelin's Members Heard *Taurus*

Plaintiff also has not presented evidence "establishing a chain of events linking the plaintiff's work and the defendant's access." *Art Attacks*, 581 F.3d at 1143. He does not contend that anyone provided *Taurus* to any member of Led Zeppelin. Rather, he relies on speculation that perhaps they heard *Taurus* prior to the January 1971 recording of *Stairway*. But, the evidence is to the contrary.

1       The evidence is undisputed that Led Zeppelin and Spirit appeared at the same

2  venue on the same day only three times; that at live shows Spirit performed its most

3  recent songs and "tent pole" songs that did not include *Taurus*; and that no member

4  of Led Zeppelin heard Spirit perform.  Fact 26-66.  There also is no evidence that

5  *Taurus* was played at Mothers Club in January 1970.  Fact 73-78, 80.

6       Plaintiff relies on interviews after Ode Records released its later and "break

7  out" Spirit albums, purporting to quote Jimmy Page as liking Spirit's albums and

8  performances.  In addition to being hearsay, that is not evidence he heard their first

9  album years earlier, rather than their subsequent and "break-out" albums that did not

10  include *Taurus*.  Further, out of at least 175 Spirit live performances from December

11  1968 through 1971, the evidence is that Spirit played *Taurus* only two times, and

12  Led Zeppelin was not there.  Fact 23-25.  "Reasonable access requires more than a

13  'bare possibility,' and 'may not be inferred through mere speculation or

14  conjecture.'"  *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010),

15  *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *cert.*

16  *denied* 531 U.S. 1126 (2001).

17       Plaintiff also relies on the fact that forty-five years later, Page now has the

18  Spirit album in his collection of thousands of records.  There is no evidence that he

19  had it before the January 1971 recording of *Stairway*.  Instead, plaintiff speculates

20  that he might have had the album forty-five years ago; that if he did have the album

21  forty-five years ago, he might have played it; that if he did play it forty-five years

22  ago he might also have played *Taurus*; and that he might have then copied it.  That is

23  "mere speculation or conjecture," multiplied.  *Three Boys Music*, 212 F.3d at 482.

24       Plaintiff has argued that since Led Zeppelin performed a live medley of non-

25  Spirit songs with a "bass riff" from Spirit's *Fresh Garbage*, they might have heard

26  *Taurus*.[5]  But, *Fresh Garbage*, unlike *Taurus*, was played on the radio, and was on a

27

28    [5]    Live performance of all or parts of others' songs is not infringing, and Spirit performed songs by The Beatles, whose songs also use minor line clichés.  Fact 115.

popular album released in England that did not include *Taurus*.  And, Led Zeppelin began playing the medley in their European tour before coming to the U.S. in late December 1968.  Fact 67-69.  Playing a bass riff from *Fresh Garbage* is not evidence they heard *Taurus*, let alone heard it before recording *Stairway*.

Finally, plaintiff has argued that Jimmy Page must have seen Wolfe perform because Page, like Wolfe, used a musical device referred to as a Theremin.  That, of course, does not mean that he heard Wolfe play *Taurus*, on which there is no Theremin.  Moreover, the 1966 Beach Boys hit, *Good Vibrations*, used a Theremin and Page obtained a similar device after Jeff Beck, with whom Page performed before Led Zeppelin, told him about the device.  Fact 88-89.

The burden is on plaintiff to "offer significant, affirmative and probative evidence to support a claim of access."  *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 281 (S.D.N.Y. 1991).  Instead, plaintiff offers only "speculation, conjecture, and inference" that is contrary to the evidence.  *Rice*, 330 F.3d at 1178.  The absence of access is another independent basis for summary judgment.

### ii.     Even if Plaintiff Could Establish Access – Which He Cannot Do – there Are No Substantial Similarities

The requirement of substantial similarities may be relaxed "when a high degree of access is shown."  *Rice*, 330 F.3d at 1178, *quoting Three Boys Music*, 212 F.3d at 485.  However, plaintiff's access theory is "based on speculation, conjecture, and inference which [is] far less than the 'high degree of access' required for application of the inverse ratio rule."  *Rice*, 330 F.3d at 1178.  Accordingly, plaintiff must meet the full requirement of proving substantial similarity, which he fails to do.

### a.  Plaintiff's Expert Ignores that the *Taurus* Deposit Copy and *Stairway* Are the Relevant Works

Remarkably, although plaintiff sues on a copyright in a *Taurus* transcription deposited with the Copyright Office in 1967, he has not produced that transcription and his musicologist does not compare it with *Stairway*.  Instead, his expert purports

1    to compare *Stairway* to uncopyrighted *Taurus* recordings.

2         However, the 1967 *Taurus* transcription is, by definition, the "complete copy

3    of" the composition protected by the copyright that plaintiff purports to sue upon.

4    17 U.S.C. § 12 (repealed).  Recordings of *Taurus* are not copies of the composition

5    and are not even copyrighted because only recordings created after February 15,

6    1972 are protected by the Copyright Act.  *Dowling v. United States*, 473 U.S. 207,

7    211 n. 4 (1985).  The only relevant copyrighted work is the *Taurus* transcription, but

8    plaintiff's initial expert disclosures make no mention of it.  Since plaintiff cannot

9    rely on rebuttal reports to prove a point he has the burden of proving, he cannot

10   establish substantial similarity as between the works at issue and his claims fail.

11        Further, plaintiff's proffered expert relies on <u>the performances</u> in recordings

12   of *Taurus*, which is another fatal defect because the *Taurus* composition copyright

13   that plaintiff sues upon does not extend to performance elements.

14        "Sound recordings and their underlying musical compositions are separate

15   works with their own distinct copyrights."  *Newton v. Diamond*, 204 F. Supp. 2d

16   1244, 1249 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189, *cert. denied* 545 U.S. 1114

17   (2005).  "A musical composition consists of rhythm, harmony, and melody, and . . .

18   [a] musical composition's copyright protects the generic sound that would

19   necessarily result from any performance of the piece."  *Id.*  In contrast, "the sound

20   recording is the sound produced by the performer's rendition of the musical work."

21   *Id.* at 1249-50.  Unless they appear in the musical composition's transcription,

22   performance elements are not protected by the composition copyright.  *Id.* at 1250-

23   51.  So, in assessing the alleged copying of a musical composition, the Court "may

24   consider only . . . appropriation of the song's compositional elements and must

25   remove from consideration all the elements unique to [the] performance."  *Newton v.*

26   *Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005).

27        Flouting these established principles, plaintiff's expert altogether ignores the

28   *Taurus* deposit copy and relies on claimed similarities in how *Taurus* and *Stairway*

15

have been performed.   Thus, he opines that *Stairway* is substantially similar to Spirit's recorded "fingerpicking style," "acoustic guitar," tempo, "classical instruments such as flute . . . strings and harpsichord," "atmospheric sustained pads" and "fretboard positioning and fingering" on the guitar.  Fact 111. Those and other alleged elements of Spirit's recorded performances are irrelevant to plaintiff's claim that the *Taurus* composition copyright was infringed.  *Newton*, 388 F.3d at 1194 ("A crucial problem with the testimony of [plaintiff's] experts is that they continually refer to the 'sound' produced by [plaintiff's'] technique," while his "copyright extends only to the elements . . . that he wrote on the score").

Plaintiff bears the burden of proving substantial similarity between the *Taurus* transcription and *Stairway*, and since he failed to provide an expert report as to those works, he cannot carry his burden and summary judgment is proper.

### b.   The "Extrinsic Test": Analytical Dissection, Discarding Unprotected Ideas and Stock Elements

Because defendants are only required to show that plaintiff has not presented evidence establishing substantial similarity, they could rest on plaintiff's failure to provide the required expert report comparing the relevant works.   Defendants, however, will do more, and establish there is in fact no substantial similarity.

"To determine whether two works are substantially similar, a two-part analysis – an extrinsic test and an intrinsic test – is applied." *Rice*, 330 F.3d at 1174. "For summary judgment, only the extrinsic test is important." *Id.*, *quoting Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) ("a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment").

"The extrinsic test requires 'analytical dissection of a work and expert testimony.'"   *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *quoting Three Boys Music*, 212 F.3d at 485.  "'Analytical dissection' requires breaking the works 'down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'"   *Swirsky*, 376 F.3d at 845, *quoting*

16

1   *Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *rev'd on other*

2   *grounds*, *Rice,* 330 F.3d 1170.   "Because the requirement is one of substantial

3   similarity to *protected* elements of the copyrighted work, it is essential to distinguish

4   between the protected and unprotected material in a plaintiff's work." *Swirsky*, 376

5   F.3d at 845 (emphasis in original).   "[E]xpressions that are standard, stock, or

6   common to a particular subject matter or medium are not protectable under

7   copyright law." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003), *cert. denied*

8   540 U.S. 983 (2003).

9   **c.  The Minor Line Cliché Must Be Disregarded,**

10  **Leaving No Significant Similarities**

11      The similarity between *Taurus* and *Stairway* is limited to a descending

12  chromatic scale of pitches resulting from "broken" chords or arpeggios and which is

13  so common in music it is called a minor line cliché.   Fact 113-14.   Both sides'

14  experts have identified multiple similar compositions that predate *Taurus* by years,

15  decades and centuries, and agree that the descending line and arpeggios are public

16  domain.   Fact 114; Copyright Office Compendium § 802.5(A) (chromatic scales and

17  arpeggios are "common property musical material" in the public domain); *Smith v.*

18  *Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical

19  elements not protected).   The descending chromatic scale and arpeggios, as well as

20  the recordings' performance elements that are not protected by the composition

21  copyright, must be disregarded.   *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d

22  1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . .

23  can be compared when it comes to the ultimate question of illicit copying"), *cert.*

24  *denied* 513 U.S. 1184 (1995); *Newton*, 388 F.3d at 1194.

25      Disregarding what is not protected by the *Taurus* composition copyright, there

26  is simply nothing left that is similar, let alone substantially similar.   There is no

27  substantial similarity in the works' structures, which are markedly different.   Fact

28  118.   Neither is there any harmonic or melodic similarity beyond the unprotected

17

1  descending line.  Rather, straining to find something, plaintiff's expert argues that

2  *Stairway* and recordings of *Taurus* have only five of the six chords in a centuries-old

3  work – part of public domain material is still public domain material – and that both

4  have the unprotected sequence of notes in a minor scale, A, B and C.  Fact 119-20.

5  Disregarding what plaintiff concedes is an unprotected descending line and

6  arpeggios and common chords, and disregarding performance elements that are not

7  within the *Taurus* composition copyright, there are no substantial similarities and,

8  for that additional reason, summary judgment is proper on the copyright claims.

9  **(d)    The Claims Also Fail as to John Paul Jones, Super Hype Publishing**

10  **and Warner Music Group Corp.**

11  In addition to the foregoing, summary judgment is proper as to John Paul

12  Jones, Super Hype Publishing, Inc. and Warner Music Group Corp., on the

13  additional ground that none of them performed or distributed *Stairway* within the

14  three years preceding plaintiff's filing of this action.  Fact 123.  "Under the Act's

15  three-year provision, [the alleged] infringer is insulated from liability for earlier

16  infringements of the same work."  *Petrella*, 134 S. Ct. at 1969; 17 U.S.C. § 507(b).

17  Plaintiff concedes the three year statute "precludes relief as to any alleged

18  infringements prior to May 31, 2011."  Jt. Rule 26(f) Report (Doc. 4) at 4:12-1.

19  **4.    SUMMARY JUDGMENT ON THE "RIGHT OF ATTRIBUTION"**

20  **CLAIM**

21  Plaintiff's fourth claim is labeled "Right of Attribution—Equitable Relief –

22  Falsification of Rock n' Roll History" and seeks to have Wolfe credited as a

23  *Stairway* songwriter.  FAC at 29-30.  Wolfe, however, did not write any portion of

24  *Stairway*.  The claim also fails because, with the sole exception of works of visual

25  art, "it is well established that the right to attribution is not a protected right under

26  the Copyright Act."  *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F.

27  Supp. 2d 1164, 1178 (E.D. Cal. 2006).  A right to attribution is also precluded by

28  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  *Sybersound*

*Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (under *Dastar*, misstating credit not actionable); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. (Wash.) 2009) (same), *cert. denied* 558 U.S. 822 (2009).

Accordingly, summary judgment on plaintiff's fourth claim is also proper.

## 5.   IF, FOR ANY REASON, SUMMARY JUDGMENT IS NOT GRANTED, PARTIAL SUMMARY JUDGMENT IS APPROPRIATE

If, for any reason, summary judgment is not granted as to plaintiff's action in its entirety, the Court can and should enter partial summary judgment as to the following matters for which there is no genuine dispute.

### (a)   There Are No Striking Similarities Between *Taurus* and *Stairway*

Plaintiff failed to present admissible expert testimony as to striking similarities (*see, above* at 11-12), so the absence of striking similarities is undisputed.

### (b)   Plaintiff's Claim for Profits from *Stairway*

#### (1)   Laches Bars Plaintiff's Request for Profits

Laches is a defense to an award of profits under the Copyright Act. *Petrella*, 134 S.Ct. at 1978-79. Plaintiff does not deny four decades of delay, and the resulting prejudice is severe. Fact 94-102. Also, defendants did not know of the purported claim until shortly before it was filed in 2014 and, as a result, could not have filed an action for declaratory relief. *Petrella*, 134 S.Ct. at 1978-79. These facts confirm that plaintiff's profit claim is properly barred by laches.

#### (2)   If Profits Are Not Barred, they Are Limited

##### i.   *Extraterritorial Profits Are Not Recoverable*

If plaintiff's profit claim is not barred in its entirety, it does not extend to profits from the exploitation of *Stairway* outside the U.S. because the Copyright Act has no extra-territorial reach. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1089 (9th Cir. 1994), *cert. denied* 513 U.S. 1001 (1994). As a narrow exception to that rule, the export of an allegedly-infringing U.S.-created work may

create a lien on a defendant's profits from that work outside the U.S.  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999).  But, it is undisputed that *Stairway* was created in England, not the U.S.  Fact 83.  Accordingly, that exception does not apply.

### ii.      *Plaintiff Can Only Recover as a Beneficial Owner*

Plaintiff seeks actual damages and profits, but any potential monetary recovery is properly reduced by 50% because plaintiff, relying on a right to royalties under the 1967 Songwriter Agreement, claims as the beneficial owner of the *Taurus* copyright.  Since that Songwriter Agreement limited Wolfe to 50% of any recovery on a claim (Exh. 11 at 13, ¶ 13), he had – and therefore the Trust has – no right to more than 50% of any potential recovery.  *See, e.g., Nimmer on Copyright* § 12.03 (a joint owner can sue only "for his particular share of damages or profits"); *Manno v. Tennessee Prod. Ctr.*, 657 F. Supp. 2d 425, 432-33 (S.D.N.Y. 2009).

## 6.    CONCLUSION

For multiple reasons, any one of which is fatal to plaintiff's forty-five-year-old claims, summary judgment should be entered in defendants' favor.

Dated: February 25, 2016

_____
/s/ Peter J. Anderson
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES