1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
10 E:  gkulik@kgslaw.com
   *Attorney for Plaintiff*
11

12

13 ## UNITED STATES DISTRICT COURT

14 ## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15  MICHAEL SKIDMORE, as Trustee for<br>16  the RANDY CRAIG WOLFE TRUST,<br>17                           Plaintiff,<br>18         v.<br>19<br>20  LED ZEPPELIN; JAMES PATRICK<br>   PAGE; ROBERT ANTHONY PLANT;<br>21  JOHN PAUL JONES; SUPER HYPE<br>   PUBLISHING, INC.; WARNER MUSIC<br>22  GROUP CORP., Parent of<br>   WARNER/CHAPPELL MUSIC, INC.;<br>23  ATLANTIC RECORDING<br>   CORPORATION; RHINO<br>24<br>25  ENTERTAINMENT COMPANY,<br>26<br>                           Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**PLAINTIFF'S MEMORANDUM OF<br>POINTS AND AUTHORITIES IN<br>OPPOSITION TO MOTION FOR<br>SUMMARY JUDGMENT OR<br>PARTIAL SUMMARY JUDGMENT**<br><br>Date:     March 28, 2016<br>Time:     9:00 a.m.<br>Room:    850 |

27

28

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................. 1

II.    FACTS ............................................................................................. 3

III.   LEGAL STANDARD. ..................................................................... 5

IV.    PAGE AND PLANT WERE FAMILIAR WITH *TAURUS* STARTING IN 1968 AND AT A MINIMUM THERE IS A REASONABLE POSSIBILTY OF ACCESS RAISING A TRIABLE ISSUE OF FACT ................................................................. 6

       1.     DEFENDANTS HAD DIRECT ACCESS TO *TAURUS* ................... 6

       2.     THERE IS CIRCUMSTANTIAL EVIDENCE OF ACCESS AND WIDESPREAD DISTRIBUTION ............................. 7

V.     THERE IS SUBSTANTIAL SIMILARITY – INDEED STRIKING SIMILARITY -- BETWEEN *TAURUS* AND *STAIRWAY TO HEAVEN*. ................................................................. 8

       A.     THIS CASE SATISFIES THE "SUBSTANTIAL SIMILARITY TEST" FOR COPYRIGHT ......................... 9

       B.     THE INVERSE RATIO RULE APPLIES IN THIS CASE. .............. 11

       C.     THE COMPOSITION IN QUESTION IS UNIQUE AND PROTECTABLE. ..................................................... 11

VI.    TAURUS IS NOT A WORK FOR HIRE AS IT WAS CREATED BEFORE ANY PUBLISHING OR RECORDING CONTRACT WAS SIGNED. ........................................................ 14

VII.   RANDY DID NOT ABANDON OR WAIVE HIS CLAIMS ..................... 15

VIII.  THIS CASE IS NOT BARRED BY LACHES. ........................................... 17

IX.    DEFENDANTS' DEPOSIT COPY ARGUMENT MISSES THE MARK. ........................................................................................ 18

X.     CONCLUSION. ........................................................................... 20

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

<u>Page</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

# I.   __INTRODUCTION__

Plaintiff alleges that the song *Stairway to Heaven*, written in 1971 by Defendants Jimmy Page ("Page") and Robert Plant ("Plant"), infringes the copyright in the song *Taurus* written by Randy Wolfe a/k/a Randy California ("Randy") in 1966 and included in the first album released by the rock group Spirit in 1968. Defendants ask this court to believe that until recently they never really heard of Randy, the group Spirit, or the song *Taurus,* and that Page recently discovered a vinyl copy of the song in his record collection but has no idea how or when it got there. Page who denies any recollection of Spirit, but when presented in his deposition with interviews in the early 1970s shortly before he started writing *Stairway to Heaven,* admitted he was a fan of Spirit, enjoyed their albums, and liked seeing them live. Plaintiff's Alleged Facts ("PAF") 23. Defendants' assertions that they created Stairway to Heaven in almost total ignorance of Taurus and Spirit is contradicted by an enormous body of evidence which is more than adequate to raise triable issues of fact. Page told a member of Spirit on April 14, 1973, Larry "Fuzzy" Knight, that he was a huge fan of the band. PAF 58.

The issue of "access" is a nonstarter for Defendants. Led Zeppelin's very first concert in the United States was in 1968 as the opening act for Spirit, shortly after the latter's first album *Spirit* containing *Taurus* was released and while the band was on tour promoting the album. *Spirit* the album and Taurus received wide radio play around the world and were sold in the United States and Britain. Because *Taurus* was Randy's favorite song, it was performed at nearly every show. Statement of Genuine Issues ("SGI") 23. As a tribute to Spirit, Led Zeppelin regularly performed a Spirit song called *Fresh Garbage,* which was on the same album that contained *Taurus.* Plant attended a Spirit concert in early 1970 after which Plant and Spirit went out drinking together was a fan of Spirit. At the end of the night Plant was in a serious automobile accident.

Page admits to owning a vinyl copy of the Spirit album on which *Taurus*

1

appeared. SGI 82. All surviving members of Led Zeppelin admitted to playing Spirit's music at Led Zeppelin's concerts. SGI 67. Led Zeppelin's members attended Spirit shows in Britain, even reserving seats. Before Randy died, he told a friend that while Led Zeppelin and Spirit were back stage at a show in 1969, Page had sought out Randy and specifically asked him how to play the opening notes to Taurus, which Randy repeated for him several times. SGI 82. In sum, there is overwhelming evidence to establish a "reasonable possibility" that Page and Plant had access to and were familiar with *Taurus* before *Stairway to Heaven* was written.

On the second crucial issue, not only is there substantial similarity between the two compositions, the similarity is striking. It does not require expert testimony to prove this fact as the similarity is so noticeable that it has been the subject of intense public debate for decades. It has been common knowledge since the 1970s that the two songs are eerily similar, and the debate has raged all these years whether *Stairway to Heaven* is a rip-off. Despite this common knowledge, Plaintiff also submits the testimony of four (4) music experts who dissected the two songs note for note, instrument for instrument, before concluding that the first half of *Stairway to Heaven* is a note-for-note copy of *Taurus'* guitar. Page admitted in his deposition the obvious similarity between the songs, and so, too, did Defendant John Paul Jones. Furthermore, the vocal melody is substantially similar to the harpsichord notes in *Taurus*. Plaintiff's four musical experts are unequivocal that the substantial similarity—indeed, striking similarity—cannot be coincidental.

Indeed, it was established in discovery that Led Zeppelin wrote a great many of their songs by taking other people's work without giving them credit. Page admitted in the past that Led Zeppelin wrote their songs by copying other people's music, as Plaintiff alleges Zeppelin did with *Taurus*. Plant was confronted with this statement at his deposition and admitted under oath that he did not dispute either the "accuracy" or the "validity" of Page's quote. In fact, Led Zeppelin had a well-known practice of writing songs by "lifting" melodies and instrumentals that they admired.

Defendants make several other unmeritorious arguments. Defendants argue that *Taurus* was a work for hire because of an August 29, 1967 agreement between Randy California and his producer at the time, Hollenbeck Music. What the motion omits is that Randy wrote and created the song in 1966 well before any such agreement. Randy's sisters testified that he wrote the song for his girlfriend (later his wife) Robin, whose astrological sign was Taurus, and immediately the band started performing the song at the famous Ash Grove club in Hollywood.

Finally, Defendants contend that Randy abandoned his right to sue for copyright infringement because he never brought a suit during his lifetime. The argument makes no sense in light of the Supreme Court's holding last year in *Petrella v. MGM* that one does not lose his right to sue for infringement by virtue of his delay in filing a suit.  Plaintiff has produced witnesses, including life-long friends and bandmates, who testify that Randy confronted Page about the theft early 1970s, that Page even admitted the theft but threatened to bury Randy under lawyers, that Randy was extraordinarily upset about the situation over the years, that he was advised by lawyers that it was too late for him to sue (which was proven wrong in 2015 by the *Petrella* decision), and that he was still considering a legal action in December 1996 just prior to his death.

## II.   <u>FACTS</u>.

Randy Wolfe was a musical genius. PAF 1. In early 1966 at age 15, his family moved to New York where in June, he met Jimi Hendrix. The two became fast friends and played shows together that summer. <u>Id.</u> When summer ended, Hendrix was offered an opportunity to go to London to form a new band (The Jimi Hendrix Experience) and wanted Randy to go with him. <u>Id.</u> However, Randy's mother thought he was too young so when Hendrix went to London Randy's family moved back to California in September 1966.  PAF 3.

That fall, when he returned to high school, Randy met a girl who would later become his wife. PAF 2. To impress her, he wrote a song. Her astrological sign was

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Taurus, so Randy named his new song *Taurus*. PAF 2. Also that fall, Randy formed a band called Spirits Rebellious with two of his school friends, Jay Ferguson and Mark Andes. PAF 3. In late 1966 through the summer of 1967, they played every week in Hollywood at a club called the Ash Grove. PAF 3. One of the songs they played every night was *Taurus,* which remained Randy's favorite song until the day he died. PAF 5.

The family eventually moved in 1967 from Ojai to Santa Monica.  Brian Berry, brother of singer Jan Berry of "Jan and Dean" fame, heard the band rehearsing and knocked on the door to introduce himself. Id.  This led to a fast friendship, and it was Berry who later introduced Spirit to Lou Adler, owner of Hollenbeck and Ode Records, which signed the band to a recording contract on August 29, 1967. Id. Hollenbeck filed a copyright for *Taurus* that listed Randy California as the author. SGI 11.

The first Spirit album was released in late 1967. SGI 14. The band later embarked that same year on a lengthy tour in support of the album, which features, among other cuts, *Taurus* and another song called *Fresh Garbage.* Janet Wolfe Decl, ¶7. The group Led Zeppelin, originally named "The New Yardbirds," was formed in 1968 in England.  It consisted of Page, Plant, bassist John Paul Jones, and drummer John Bonham (now deceased).  On December 26, 1968, Led Zeppelin performed its first show in the United States. SGI 31. The show took place in Denver, Colorado, and the group was the opening act that night for Spirit. Id.; PAF 18. Led Zeppelin experienced equipment failures that evening so the members of Spirit had to loan the band some of its equipment.  SGI 31.

Led Zeppelin and Spirit continued to play shows together, and even when the members of Led Zeppelin were not performing, they came to Spirit shows to watch. SGI 77. In interviews at the time, Page expressed his affection for Spirit, their music, and their performances. SGI 103.  In homage to Spirit, Led Zeppelin had been performing the Spirit song *Fresh Garbage* at its own shows. PAF 25. At one

1  point in 1969, Page asked Randy to teach him the introduction to *Taurus*, which
2  Randy showed him several times. PAF 21.

3       Led Zeppelin began writing *Stairway to Heaven* in 1970.  They created the
4  first part then but did not create the second half of the song until a bit later. PAF 32,
5  33-34. *Stairway to Heaven* was released on the album "Led Zeppelin IV" on
6  November 8, 1971. SGI 85. On April 14, 1973, Randy confronted Page about the
7  similarity between *Taurus* and *Stairway to Heaven*. Page became defensive and,
8  although he acknowledged copying *Taurus*, told Randy that for every lawyer Randy
9  hired he would hire 20, inferring Randy that he would be buried if he dared to file a
10  suit. SGI 28; PAF 56-60.

11       In 1996, Randy registered a renewal copyright for *Taurus* in his own name.
12  PAF 13-14. Randy was hounded by the media, the public, and his family and friends
13  about the similarity between the two songs. PAF 10; Stewart Decl., ¶29. He
14  considered filing a lawsuit many times, but by the time he got his nerve to do
15  anything he was told by lawyers that the suit would be barred by the passage of time.
16  PAF 64.  Still, until shortly before his tragic drowning in Hawaii on January 2, 1997,
17  he was still being urged to sue and was considering it. PAF 64.

18  ## III.   <u>LEGAL STANDARD.</u>

19       In considering a summary judgment motion, all evidence and inferences must
20  be construed in favor of the non-movant. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.
21  3d 1054, 1061 (9th Cir. 2002). There must be no dispute of material fact and the
22  movant must be entitled to judgment as a matter of law for such a motion to be
23  granted. *Id.* Plaintiff in a copyright infringement case must show two things to prove
24  protected expression was copied: a reasonable possibility of access and substantial
25  similarity between the works. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624
26  (9th Cir. 2010). Importantly, under the Inverse Ratio Rule, the more evidence
27  showing Defendants had access to Plaintiffs' work the lower Plaintiffs' burden is to
28  show substantial similarity. *Id.* at 625.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

**IV.   PAGE AND PLANT WERE FAMILIAR WITH *TAURUS* STARTING IN 1968 AND AT A MINIMUM THERE IS A REASONABLE POSSIBILTY OF ACCESS RAISING A TRIABLE ISSUE OF FACT.**

Direct evidence of copying is rarely available, so plaintiffs may prove this element circumstantially by showing defendants had access to their work and that "the two works are 'substantially similar' in idea and expression of the idea." *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir. 1996); *see also L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846-47 (9th Cir. 2012) ("Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of . . . a chain of events linking the plaintiffs work and the defendant's access" (quotation marks omitted)). As a result, Plaintiffs are only required to show that Defendants had a "reasonable possibility" of access to Plaintiffs' work, not definitive proof. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). The Ninth Circuit has described access as "more than a 'bare possibility." *Id.* Access may be presumed if the works are strikingly similar. *Three Boys Music*, 212 F.3d at 485. Access can also be demonstrated by widespread distribution of the source work. *Id.*

At a minimum, there is a triable issue of fact because the evidence supports a finding of (i) *direct access*, and/or (ii) a reasonable possibility of access by way of circumstantial evidence and also because *Taurus* was widely distributed for sale and there is a striking similarity between *Taurus* and *Stairway to Heaven*.

### 1.   Defendants had Direct Access To *Taurus*

Page has admitted possessing the Spirit album in question which contains Taurus. SGI 82. Randy California's sisters and bandmates testified that *Taurus* was his favorite song which the band played as part of their regular set from 1966 through 1970 at nearly every concert. SGI 33. Led Zeppelin opened for Spirit in December 26, 1968, when Taurus was a regular song in Spirit's sets. SGI 31; PAF 18. This was the first of several concerts the two groups performed together before *Stairway to Heaven* was written. The members of Led Zeppelin also used to attend

6

Spirit shows when they were not on the bill. PAF 21, 28. Robert Plant was in a serious auto accident in February 1970 returning from a Spirit concert after which he had gone out drinking and playing snooker with Spirit members Mark Andes, John Locke, and Randy California. PAF 28-31. Page admitted in 1970 that he had attended many Spirit concerts and enjoyed their albums. PAF 53. Before Randy died he told his friend and guitar technician, Tracy Longo, that, at a show in 1969, Page sought out Randy and specifically asked him how to play the opening notes to Taurus. SGI 82. Longo also related that Randy told him that Zeppelin reserved front row seats at a Spirit show in England. PAF 28.

### 2. There Is Circumstantial Evidence of Access and Widespread Distribution.

First, Page admitted in interviews from 1970 and 1972, that he was (1) a fan of Spirit, (2) enjoyed their albums, (3) enjoyed seeing them live, and (4) that Spirit was one of the few bands that struck him on an "emotional level." PAF 22-23. Indeed, Spirit was one of only two rock bands in the entire world that Page and Zeppelin ever played live, the song *Fresh Garbage*, which is on the same *Spirit* album that Page owns. PAF 53.

Second, Spirit's album containing Taurus was widely available for purchase in the United States and Britain before 1971, was played repeatedly at concerts, and received wide radio airplay—and as noted above Page actually had the album in his possession. SGI 19-20. Furthermore, Mike and Bob Lee operated radio stations in Los Angeles in the early 1970s, and they verify that *Taurus* received wide airplay in the late 1960s and early 1970s due to the band's popularity. SGI 20. Spirit was so popular that record stores would have separate sections set aside for Spirit's music. Id. Finally, Defendants' own motion admits that Ode Records released and distributed the Spirit album that contained Taurus. See SGI 13-15. Defendants' assertion that the *Spirit* album and "Taurus" were not widely distributed before 1971 is pure fantasy.

Third, all surviving members of Led Zeppelin admitted to playing Spirit's music at Led Zeppelin's concerts—namely a song named Fresh Garbage—meaning they were intimately familiar with Spirit and its music. SGI 67. Zeppelin played shows and festivals with Spirit, including its first show in the United States where Led Zeppelin opened for Spirit in Denver, Colorado on December 26, 1968. SGI 37. Spirit bassist Mark Andes remembers performing Taurus at that concert. Id. Led Zeppelin members attended Spirit's concerts regularly and were familiar with Spirit's music as Spirit was a popular band at the time. PAF 21.

## V. THERE IS SUBSTANTIAL SIMILARITY – INDEED STRIKING SIMILARITY -- BETWEEN *TAURUS* AND *STAIRWAY TO HEAVEN*.

The public and the music world have long recognized the substantial similarity between *Taurus* and *Stairway to Heaven*. Moreover, Plaintiff has submitted declarations from four highly qualified music experts who testified that the similarity is so striking that it could not be mere coincidence. SGI 110. It is not only the guitar parts that are strikingly similar between the songs, *Stairway to Heaven's* vocal melody, allegedly written by Plant, copies a significant portion of *Taurus*' harpsichord melody, showing that the similarities between the songs cannot possibly the result of some sort coincidence, as Defendants contend. PAF 70.

Further, Led Zeppelin's extensive and admitted history of copyright infringement and music theft must also be taken into account. Page and Plant admitted in their depositions that Led Zeppelin routinely took other people's songs as an "original source" and used them to create Led Zeppelin's music. PAF 39-53.

Seven times, by means of litigation or the threat of litigation, Led Zeppelin has been compelled to change the writing credits on their songs. PAF 50. There are over sixteen songs in Led Zeppelin's catalogue which unmistakably borrowed from other artists without credit. PAF 47. Plant also talked about Led Zeppelin's ignominious history of lifting music from other artists without credit or attribution in an NPR interview with Terry Gross in 2004. PAF 46. Plant acknowledged that he

8

lifted vocal melodies from other music, and that such lifting was naïve and irresponsible, but that Led Zeppelin had viewed it as "part of the game." Id. This course of conduct resulted in lawsuits and in Led Zeppelin repeatedly changing the credits for their songs, including for "Dazed and Confused," "Babe I'm Gonna Leave You," "Whole Lotta Love," "How Many More Times," "The Lemon Song," "Bring it On Home," and "When the Levee Breaks." PAF 39-50. There is no other band in rock history who has been compelled to change the writing credits on its songs so many times, as Plant admitted at his deposition. PAF 45. The fact of the matter is that Led Zeppelin's songwriting process heavily relied upon taking other people's music and passing it off as their own.

The objective evidence shows that for almost a year before *Stairway to Heaven* became a full song, Page claimed that the only portion that had been written was the guitar introduction, which later also became the verse for the entire first half of the song. Page states in an audio interview given to ZigZag magazine that he and Robert Plant worked on the song at a Welsh cottage named Bron-yr-Aur in late 1970 and that the guitar and the first verse is what they had when they left the cottage. PAF 36. This was confirmed by an audio interview of band member John Paul Jones. PAF 36-37. Otherwise stated, *Stairway to Heaven* was originally *only* Taurus and the rest was written later.

A.   **This Case Satisfies the "Substantial Similarity Test" for Copyright Infringement of a Musical Composition.**

In a summary judgment motion for copyright infringement, the court applies the extrinsic test to determine whether the two works meet the necessary degree of similarity. *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). The extrinsic test requires an "analytical dissection of a work and expert testimony." *Id.* "Analytical dissection" requires examining the works in "their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'" *Id.* "Expert testimony" considers whether the compositions are identical

on paper and their "structural context," including harmony, rhythm, and meter. *Id.* at 847.

There are two aspects to Plaintiff's substantial similarity argument: the guitar and harpsichord in *Taurus*.

The guitar is the most noticeable and instantly recognizable similarity between the compositions of *Taurus* and *Stairway to Heaven*. In Defendants' own words, *Stairway to Heaven* contains two basic parts: Part A, which is the guitar Plaintiff assert was copied, and Part B. The first 2 minutes and 14 seconds of *Stairway to Heaven* can be summarized as follows: (1) Part A repeats twice and is followed by Part B; then (2) Part A repeats twice again, and is again followed by Part B; and (3) Part A repeats twice again. Part A is nearly identical to Taurus. Stewart Decl., ¶24.

Part A of Stairway is nearly identical to Taurus.[1] Plaintiff's experts are clear that the guitar in Taurus and in the iconic first half of Stairway to Heaven are nearly identical note for note. Indeed, simply playing the recordings back to back makes it immediately clear that a triable dispute of fact exists as to whether Taurus and Stairway to Heaven are substantially similar. Furthermore, if the recordings are discarded and a session musician simply plays the two guitar compositions in the two songs back to back, or even over each other, they are virtually indistinguishable. Bricklin Decl., Audio Exhibits. Indeed, Defendants have submitted the expert report of Mathes, which contained Mathes playing Stairway and then playing Taurus. Bricklin Decl., Audio Exhibit 45, 46, 47. When Mathes's two recordings of him playing Stairway and Taurus are played over each other, they are objectively almost indistinguishable. Bricklin Decl., Audio Exhibit 45, 46, 47.

The simple fact of the matter is that there is a dispute of material fact for the jury on substantial similarity. Stewart Decl., ¶9-10, 24. Note that defendant Page is

---

[1] Thus, of the first 2:14 of Stairway to Heaven six out of the eight parts is the guitar

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

claiming that despite these unmistakable similarities he actually based Stairway to Heaven on Chim Chim Cher-ee from Mary Poppins. A comparison of the Taurus, Stairway to Heaven, and Chim Chim Cher-ee is sufficient to dispel this ludicrous assertion.

In addition to the iconic guitar in Stairway to Heaven, the substantial similarity comparison must also take into account that Robert Plant's vocal melody lifts from the harpsichord melody in Taurus. Robert Plant's vocal melody is very similar to the harpsichord melody in Taurus. Stewart Decl., ¶20-23. Notably, Plant's copying of the harpsichord melody was done in the first half of Stairway to Heaven, the same part where Page copied Taurus's guitar.

### B. The Inverse Ratio Rule Applies In this Case.

Although it should not be necessary to resort to the Inverse Ratio Rule, if it were in question the rule would apply to this case.  The stronger the proof of access the lower the burden on Plaintiff to prove substantial similarity. *Benay*, 607 F.3d at 624.

### C. The Composition in Question is Unique and Protectable.

Defendants argue that the chord progression in *Taurus* is common, just a "minor line cliché," and not protected. To support this argument the only case cited is Smith v. Jackson, 84 F.3d 1213, 1216 n3 (9th Cir. 1996) which provides that common or trite musical elements are not protected. The music in question is not common or trite. Stewart Decl., ¶9-10. Defendants ignore that the 9th Circuit also holds that:

> an arrangement of a limited number of notes can garner copyright protection. *See Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp. 741, 744 (S.D.N.Y.1980) (finding that four notes were substantial enough to be protected by copyright); *Santrayll v. Burrell,* 1996 WL 134803, at *2 (S.D.N.Y. Mar.25, 1996) (finding that the repetition of the word "uhoh" four times in a distinctive rhythm for one measure is sufficiently original to render it protectable under the copyright laws).

composition taken from Taurus.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

> This Court has stated that "[e ]ven if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Baxter v. MCA, Inc.,* 812 F.2d 421, 425(9th Cir. 1987).

*Swirsky*, 376 F.3d at 851-52. Indeed, even combinations of unprotectable elements are protectable. Id. at 849.

First, Plaintiff's' experts are clear that the musical composition of Taurus, and also of Stairway to Heaven are not some "minor line cliché." Stewart Decl., ¶50. Indeed, Defendants anemic argument that Taurus is not protectable does not survive an examination of Defendants' own depositions. Defendant Page admitted that the iconic introduction to Stairway, which defense counsel are now calling a minor line cliché, was just an important part of the song as any of the others. SGS 86. His lawyers now attempt to create legal argument to the contrary.

Second, Page invokes the "Mary Poppins Defense," by claiming that he came up with *Stairway to Heaven* from listening to Chim Chim Cher-ee in Mary Poppins, as if this is proof how common the musical elements in question are. SGI 116. This is flatly absurd as simply listening to the Stairway, Taurus, and Chim Chim Cher-ee suffices to demonstrate. First, *Chim Chim Cher-ee* sounds nothing like *Stairway to Heaven*, while *Taurus* sounds almost identical to it. Page's invocation of a song from Mary Poppins sounds like the defense team had a musicologist comb through every possible piece of music on the planet for a similar chord progression. Id. That all they found was Chim Chim Cher-ee is damning. Second, for a piece to be considered so common as to be unprotectable it has to be (1) used same field of music as the subject of the songs in the lawsuit: rock and roll, and (2) used many times. Swirsky, 376 F.3d at 850. Not even Defendants are claiming *Chim Chim Cher-ee* is a rock song, and the other examples they present are not in the rock genre or were created well after Taurus was in 1966. Stewart Decl. at ¶41-45. Again, none of the examples proffered by Defendants post 1967 sound even remotely similar to Taurus and Stairway.

Defendants further admitted that the first 2:14 of *Stairway to Heaven* only included the instruments of guitar (written by Page) and recorder (written by Jones). The two people credited with writing the song are Page and Plant. When Jones was asked why he did not receive credit for the recorder, he stated that it was not significant. Thus, the only instrumental part of the first 2:14 that received any credit was the guitar allegedly composed by Page. It is this guitar chord progression that Page copied almost note for note from Taurus. SGI The fact that Page is claiming writing credit for this part of the song, and admits that this part of Stairway is important, is enough to dispel the notion this arrangement of notes is not entitled to copyright protection. Defendants want to eat their cake and have it too, arguing that *their* song is protectable and iconic but that Plaintiff's song is merely a common chord progression. They cannot have it both ways. Note that the opening notes to *Stairway to Heaven* are probably the most iconic notes in rock and roll history, but Led Zeppelin is now trying to argue that they are inconsequential. Even deceased Zeppelin drummer, John Bonham, was quite clear though that the opening notes had incredible significance to Led Zeppelin's fans and audience, something Robert Plant agreed with at his deposition.  SGI 107-122.

The fact of the matter is that Led Zeppelin has for years, whenever confronted with their mass copying of music, justified their illicit practices by claiming that they believed that the music they took was common or that musicians always borrow from each other. PAF 46. This is the same argument that they have been using for years to justify their serial, mass theft of music which they used to write a large chunk of their catalogue. It should be disregarded. Led Zeppelin routinely used other people's songs to create their material, often altering it very little and claiming it was their own, and in the process accrued massive fame and fortune. Now they must suffer the consequences for this behavior.

# VI.   <u>TAURUS IS NOT A WORK FOR HIRE AS IT WAS CREATED BEFORE ANY PUBLISHING OR RECORDING CONTRACT WAS</u>

13

**SIGNED.**

For artistic expression to be a work for hire, that provision must be in a signed contract that was reduced to writing before the creation of the work began. *Gladwell Govt. Services Inc. v. County of Marin*, 265 Fed. Appx. 624 2008 WL 268268 (9th Cir. 2008); *see also Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir .1995); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412-13 (7th Cir. 1992) ("The writing must precede the creation of the property" to qualify as a work-for-hire agreement.)

Defendants claim that Taurus is a work for hire because of a publishing contract Randy signed on August 28, 1967, with Hollenbeck Music that purports to label his music as work for hire. This argument is erroneous. Work for Hire contracts only apply to works created after the contract is reduced to writing and signed. *Gladwell Govt. Services Inc*, 265 Fed. Appx. 624 2008 WL 268268; *see also Dumas*, 53 F.3d at 558-59; *Schiller & Schmidt*, 969 F.2d at 412-13. Defendants ignore that there is undisputed evidence in the record that *Taurus* was created and performed starting in 1966. Spirit's original bassist, Mark Andes, stated under oath in his deposition that Randy had created and written Taurus well before August 28, 1967. His two sisters testified that Randy wrote the song in 1966 shortly after the family returned from living in New York about his then-girlfriend, Robin. PAF 1-14.

Further, Plaintiff has produced several recordings from 1967 of Spirit playing *Taurus* in concert in the months before August 28, 1967. Randy's sisters testified that Spirit had a regular gig at the Ash Grove in Hollywood and that *Taurus* was routinely played live at this venue, of which authenticated recordings of those concerts prove. There is an overwhelming amount of undisputed evidence from Janet Wolfe, Andrea Wolfe Baum, Mark Andes, and Jay Ferguson, and Barry Hanson that *Taurus* was created and written before the August 28, 1967 contract was written and signed. When the copyright was registered by Hollenbeck Music it stated that Randy California was the author. Randy California renewed the copyright

14

in 1996 as the author of the work in question. PAF 1-14.

Defendants also claim that Plaintiff failed to answer a request for admissions in a timely manner and that therefore Plaintiff has admitted the work is a work for hire.  Plaintiff's counsel understood that he had been granted an extension because the trustee of the plaintiff was in a serious accident and thus unavailable to verify the answers at the time. The admissions were fully answered, and denied, by Plaintiff and Plaintiff's counsel repeatedly worked with Defendants to supplement discovery answers as needed to avoid motion practice. At the time, Defendants never informed Plaintiff that objections had been waived or matters had been deemed admitted.  It was not until very recently, when it was too late to file a motion, that Defendants suddenly sprung the argument on Plaintiff. Malofiy Decl., ¶24-27. The argument that *Taurus* was a work-for-hire is directly contradicted by uncontroverted, voluminous evidence in the record. Defendants have made no attempt to show that they were prejudiced whatsoever by the discovery submission they claim was untimely. See Conlon v. U.S., 474 F.3d 616, 621-23 (9th Cir. 2007)

## VII.   RANDY DID NOT ABANDON OR WAIVE HIS CLAIMS.

Defendants have not presented any evidence that Randy California clearly manifested his intent to waive or abandonment his copyrights in *Taurus.*  To find abandonment, "the copyright owner must have clearly manifested that intention through some affirmative act." *Hadady Corp. V. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990). "What does or does not constitute abandonment appears to be a highly fact-specific inquiry."  *Marya v. Warner/Chappell Music, Inc.*, 2015 WL 5568497, at *11 (C.D. Cal. Sept. 22, 2015) (describing waiver/abandonment ruling of numerous cases from the "early to mid-Twentieth Century" to "recent cases."); *see also Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1053 (D. Ariz. 2011) ("There is a disputed issue of material fact" as to whether "Plaintiff's copyright-related statements" constitutes an overt act indicating intent to abandon."); *Oracle Am., Inc. v. Goggle Inc.*, 2012 WL 1965778, at *2

15

(N.D. Cal. May 31, 2012) ("several congratulatory communications do not, … constitute a clear indication that Oracle … intended to relinquish its rights").

The sole piece of evidence Defendants try to use to support their waiver/abandonment argument is an unapproved quote by Randy taken entirely out of context.  Instead of providing this Court with the audio tape of the interview, Defendants cite to an excerpt of it which was published without his approval.  However, the audio tape of the interview makes it exceedingly clear that Randy felt he was ripped off by Led Zeppelin, that his song was not taken with his permission and that he was upset, but saving face and trying to joke about a bad situation. SGI 91.

Even in isolation, the quote Defendants' rely on does not indicate California "clearly and unambiguously manifested his intent to abandon any copyright protection." *See Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1178 (S.D. Fla. 2006) aff'd, 527 F.3d 1218 (11th Cir. 2008) (waiver where architect signed a letter stating he "reserve[d] no patent, trademark, copyright" in the work); *Hadady Corp.* (waiver where plaintiff distributed newsletter which unequivocally stated that copyright would last for two days only).  To the contrary, Randy's quote is akin to statements held insufficient to demonstrate waiver or abandonment.  *See e.g. Melchizedek*, 792 F. Supp. 2d at 1053 ("excerpt from Plaintiff's remarks 'just take it'" insufficient to establish waiver/abandonment of copyright as a matter of law); *Marya*, 2015 WL 5568497, at *11 (passage from TIME magazine "Lyricist Patty Hill, … had no complaint to make on the use of the words because she long ago resigned herself to the fact that her ditty had become common property to the notion did not establish as a matter of law that she had "abandoned her copyright interest in the lyrics.)

At a minimum, the testimony of several witnesses raises a triable issue of whether Randy had abandoned/waived his copyrights in Taurus.  Spirit historian, Bruce Pates, Linda Mensch, an intellectual property attorney in Chicago who met

16

with Randy in the early 1990s, Randy's lifelong best friend, Paul Franklin, former members of spirit, Dave Waterbury, Tracy Long and the Lee brothers all attest that Randy was extremely upset about the theft of his song in the 1970s, in the 1980s and the 1990s, and that he repeatedly thought about pursuing a suit before his untimely death. Randy's statements and behavior throughout the years certainly do not support Defendants' ludicrous contention that he clearly and unambiguously waived or abandoned his copyrights in *Taurus*. SGI 91.

## VIII. <u>THIS CASE IS NOT BARRED BY LACHES</u>.

In *Petrella v. Metro Goldwyn Mayer, Inc,* 134 S. Ct. 1062 (2014). The Supreme Court held that a copyright infringement claim can never be barred by the passage of time, or by laches.  Of course, for the calculation of damages the court can only consider the period starting three years before the suit was brought.  The Copyright Act expressly grants "legal or beneficial owners" equal right to sue within three years of any infringing act.  <u>Silvers v. Sony Pictures Entm't, Inc.</u>, 402 F.3d 881, 884 (9th Cir. 2005); 17 U.S.C. §§ 501 (b); 507.  As to equitable relief, laches will only warrant a threshold dismissal in "extraordinary circumstances" where the relief requested amounts to "total destruction" of the work.  <u>Id.</u> at 1267, 1974.

Laches does not bar copyright infringement claims just because they are filed by a beneficial owner as opposed to a legal owner. The Copyright Act confers standing both to a beneficial or legal owner and the fact that one versus the other brings suit, is not determinative of whether laches apply.  The focus should be on the *relief sought* and not *on the identity of the party* bringing the claim.  <u>Id.</u>; <u>see also</u> Mot. 10 ("legal relief" versus "equitable relief.")  The case cited by Defendants do not state otherwise.  <u>See</u> *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003) (standing to sue based on express language of the copyright act section 501(b) and rejecting <u>Cortner v. Israel</u>'s language in which Defendants rely because it did not address beneficial owners in the context of work for hire).

Moreover, even assuming a claim for a beneficial owner can be considered an

17

"equitable relief," *Petrella* unequivocally held: "As to equitable relief, in extraordinary circumstances, laches may bar at the very threshold the particular relief requested by plaintiff." Id. at 1262. "Extraordinary circumstances" are the ones in which the equitable relief requested would result in "total destruction" of the work. Id. at 1978 (discussing *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007) (denying request for order to demolish housing project based on copyrighted architectural design because plaintiff waited years to file suit and failed to take steps to halt the construction until the project was occupied); *New Era Publications Int'l, ApS v. Henry Holt & Co.*, 873 F.2d 576, 584 (2d Cir. 1989) (allowing plaintiff to recover "its damages remedy" but denying injunctive relief ordering "total destruction" of the books because plaintiff waited until books were printed and distributed before suing). Clearly, asking Defendants to disgorge profits from the infringing work and credit Randy California for his original composition does not result in the "total destruction" of *Stairway to Heaven*. Thus, laches cannot operate as a complete bar to Plaintiff's claim.

## IX.  DEFENDANTS' DEPOSIT COPY ARGUMENT MISSES THE MARK.

Defendants' attempt to claim that only the deposit copy of Taurus should be used in the relevant comparisons. This is simply not accurate and Defendants do not support their argument with any applicable case law. The deposit copy of Taurus does not reflect the entirety of the musical composition in a work, which is instead reflected by the composition of Taurus embodied in the 49-year old sound recording. Stewart Decl., ¶29-33.

The deposit requirement under 17 U.S.C. § 408(b) "is to identify the copyrighted work for the purposes of registration." Paul Goldstein, Goldstein on Copyright § 3.8 (2013). "Although the 1909 Copyright Act requires the owner to deposit a 'complete copy' of the work with the copyright office, [the Ninth Circuit's] definition of a 'complete copy' is broad and deferential: 'Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for

infringement.' " <u>Three Boys Music Corp.</u>, 212 F.3d at 486 (citing <u>Harris v. Emus Records Corp.</u>, 734 F.2d 1329, 1335 (9th Cir. 1984)); <u>see also</u> <u>Scentsy, Inc. v. B.R. Chase</u>, 942 F. Supp. 2d 1045, 1050 (D. Idaho 2013) (finding that identification materials are not required to disclose every element in which they claim a copyright); <u>KnowledgePlex, Inc. v. Placebase, Inc.</u>, C 08-4267 JF (RS), 2008 WL 5245484, at *10 (N.D. Cal. Dec. 17, 2008) (finding the Ninth Circuit has rejected the argument that claims are limited to the scope of the deposit copy). Indeed, under the 1909 Act, a claimant could not submit a recording of the composition in lieu of a lead sheet. <u>See</u> Copyright Act of 1909, § 12, 35 Stat. 1075 (1909) (repealed 1978).

Moreover, Defendants only cite <u>Newton v. Diamond</u> to support their argument, a largely inapposite case focused on different issue. In <u>Newton</u>, which applied the 1976 Copyright Act, the sound recording had been licensed but the underlying composition had not. <u>Newton v. Diamond</u>, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), <u>aff'd</u> 388 F.3d 1189. The Court found that the use of the composition was de minimis. <u>Newton</u> simply did not address when the composition contained in a sound recording can be used as proof of the protected compositional elements of a work.

The Ninth Circuit has held that the composition elements reflected in a sound recording, even if not on the deposit lead sheet, are to be considered by a jury. <u>Three Boys Music Corp.</u>, 212 F.3d at 486-87. If the differences do not result in prejudice and are not the result of fraudulent intent, then the consideration of the composition in the sound recording is appropriate. <u>Id.</u> Here, there is no prejudice and no fraud— nor do Defendants attempt to argue there is any. Defendants' own expert, Mathes, demonstrated the relevance and necessity of examining the composition of the sound recording of "Taurus" as his expert report explicitly compares the composition in the sound recording of "Taurus" to the sound recording of Stairway to Heaven. Stewart Decl. ¶32-33. When the opposing party's *own expert* admits the relevance of the composition in the sound recording it is an unambiguous sign that Defendants are well aware of the material being compared and that they have suffered no prejudice.

To be clear, Plaintiff is not and has never argued that the specific performance related aspect of Taurus's sound recordings are protected. He has always argued that the underlying composition was taken and used in Stairway. Plaintiff's experts were explicit that they had disregarded specific performance related elements for the substantial similarity comparison. Stewart Decl., at ¶51.

The fact that Defendants seek to obscure is that lead sheets are often not detailed and do not represent the entirety of the protected composition. Stewart Decl., at ¶33; *KnowledgePlex, Inc. v. Placebase, Inc.*, C 08-4267 JF (RS), 2008 WL 5245484, at *9 (N.D. Cal. Dec. 17, 2008). An excellent example of this is the lead sheet deposit copy submitted for *Stairway to Heaven* is significantly incomplete when compared to the actual composition of the song. Stewart Decl., at ¶33. The fact of the matter is that all parties are explicitly aware of the compositional comparison being conducted in this lawsuit and Defendants cannot demonstrate any prejudice whatsoever that the deposit copy of Taurus, like Stairway to Heaven, does not explicitly identify every protected compositional element.

## X.     The Partial Motion for Summary Judgment Should be Denied

Defendants claim there are no striking similarities. Plaintiff's experts vehemently disagree. Defendants also argue that no extraterritorial profits can be examined. Under the predicate act doctrine, initial acts of copying allow recovery of international profits. Plaintiff has shown evidence that Page asked California how to play Taurus at a show in the United States (the only country where they played together), and that Led Zeppelin mixed Stairway at Sunset Studios in Los Angeles.

## XI.     CONCLUSION.

For the reasons stated above, there are triable issues of fact which preclude granting summary judgment or, in the alternative, partial summary judgment.

*****

*Respectfully submitted,*

Francis Alexander, LLC

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ March 7, 2016*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's First Ex Parte Application to Modify Scheduling Order has been served upon counsel by email:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ March 7, 2016*

1