1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                   **WESTERN DIVISION**

18 MICHAEL SKIDMORE, *etc.*,          ) Case No. 2:15-cv-03462 RGK (AGRx)
                                       )
19         Plaintiff,                  )
                                       ) DEFENDANTS' OBJECTIONS TO
20    vs.                              ) PLAINTIFF'S EVIDENCE IN
                                       ) OPPOSITION TO MOTION FOR
21 LED ZEPPELIN, *et al.*,             ) SUMMARY JUDGMENT OR, IN
                                       ) THE ALTERNATIVE, PARTIAL
22         Defendants.                 ) SUMMARY JUDGMENT
                                       )
23 _____    ) Date:  March 28, 2016
                                         Time: 9:00 a.m.
24
25                                       Courtroom of the Honorable
                                            R. Gary Klausner
26                                       United States District Judge
27
28

1

## **TABLE OF CONTENTS**

2    OBJECTIONS TO PLAINTIFF'S EVIDENCE ........................................................1

3    1.      Preliminary Statement ....................................................................................1

4    2.      Objections to Declaration of Tracy Longo (Doc. 118-2)................................1

5    3.      Objections to Declaration of Andrea Wolfe (Doc. 118-3)..............................5

6    4.      Objections to Declaration of Janet Wolfe (Doc. 118-4) .................................7

7    5.      Objections to Declaration of Linda Mensch (118-5) ......................................8

8    6.      Objections to Declaration of David Waterbury (118-6) ..................................9

9    7.      Objections to Declaration of Francis Malofiy (Doc. 118-7)..........................10

10   8.      Objections to Declaration of Alexander Stewart (Doc. 118-8)......................19

11   9.      Objections to Declaration of Erik Johnson (Doc. 118-9)...............................26

12   10.     Objections to Declaration of Brian Bricklin (Doc. 118-10)...........................29

13   11.     Objections to Declaration of Larry Knight (Doc. 118-11)..............................30

14   12.     Objections to Declaration of Paul Franklin (Doc. 119) .................................31

15   13.     Objections to Declaration of Barry Hansen (Doc. 119-1) ..............................33

16   14.     Objections to Declaration of Bruce Pates (Doc . 119-2)................................34

17   15.     Objections to Declaration of Jay Ferguson (Doc. 119-3) ..............................35

18   16.     Objections to Declaration of Plaintiff Michael Skidmore (Doc. 119-4)..........37

19   17.     Objections to Declaration of Mike Lee (Doc. 119-5) ....................................39

20   18.     Objections to Declaration of Robert Lee (Doc. 119-6)..................................41

21   19.     Objections to Declaration of Mark Andes (Doc. 119-7).................................42

22   20.     Objections to Declaration of Kevin Hanson (Doc. 119-8)...............................43

23   21.     Objections to Declaration of Denny Somach (Doc. 123) ...............................44

24   22.     Objections to Plaintiff's Audio Exhibits .........................................................45

25   23.     CONCLUSION ...............................................................................................46

26

27

28

**OBJECTIONS TO PLAINTIFF'S EVIDENCE**

**1.    Preliminary Statement**

Defendants James Patrick Page, Robert Anthony Plant, John Paul Jones, Warner/Chappell Music, Inc., Super Hype Publishing, Inc., Atlantic Recording Corporation, Rhino Entertainment Company and Warner Music Group Inc. respectfully submit these objections to the declarations and other purported evidence submitted by plaintiff in opposition to defendants' Motion for Summary Judgment or Partial Summary Judgment.

Plaintiff disregards basic evidentiary and procedural principles.  For example, he relies on declarations, some of them by previously undisclosed witnesses, as to hearsay statements by the late Randy Wolfe, including as to wholly irrelevant – and unproven – assertions.  As another example, he relies upon unproven and wholly inadmissible third party claims that were never asserted by the third parties or were supposedly settled.  Further, in his Statement of Genuine Issues plaintiff either relies on inadmissible evidence or just sidesteps uncontroverted facts by claiming without support they are disputed or purporting to recast them and admit them as recast.  *See, e.g.,* Pltf. Stmt. (Doc. 118-1) at 26, ¶ 68 (in response to uncontroverted fact that the recording *Fresh Garbage* was included, without *Taurus*, in an album in the United Kingdom, plaintiff purports to admit "that Spirit's music was popular and played on the radio").

Defendants respectfully submit that plaintiff's attempt to defeat summary judgment by overwhelming the Court with inadmissible material and by gamesmanship is properly rejected and defendants' objections should be sustained.

**2.    Objections to Declaration of Tracy Longo (Doc. 118-2)**

**Objection No. 1:**

**Material objected to:**  The Longo Declaration and its attachments in their entirety.

///

1

1    **Grounds for objection:** (1) hearsay, not within an exception, Fed. R. Evid.

2    802; (2) relevance, Fed. R. Evid. 401.

3    Plaintiff relies heavily on hearsay as to what Wolfe supposedly said, and

4    Longo's Declaration is just one example.  The following also applies to, by way of

5    example, only, the Declarations of David Waterbury, Larry Knight and Paul Knight.

6    Longo claims to have known Randy Wolfe from 1990 to 1996 and purports to

7    repeat statements that Wolfe, who plaintiff contends died in 1997, supposedly made

8    to Longo.  *See, e.g.,* Longo Decl. at 2-5, ¶¶ 12-19, 26-27, & its attached transcription

9    of Dec. 31, 2015 telephone conversation between Longo and plaintiff's counsel.

10   That is all rank hearsay.  Fed. R. Evid. 801; *Mahone v. Lehman*, 347 F.3d 1170,

11   1173 (9th Cir. 2003) (testimony as to statement by another, used to prove the

12   statement was correct, inadmissible hearsay; "an extra-judicial statement is hearsay

13   and inadmissible 'when the immediate inference the proponent wants to draw is the

14   truth of assertion on the statement's face'"), *quoting Orr v. Bank of Am., NT & SA*,

15   285 F.3d 764, 779 n. 26 (9th Cir. 2002).  Neither are Longo's statements, or the

16   statements of plaintiff's other witnesses who purport to repeat statements that Wolfe

17   supposedly made, within any exception to the hearsay rule.

18   Plaintiff contends – but has not actually proven by admissible evidence – that

19   Wolfe is dead, and if true that makes him unavailable within the meaning of Federal

20   Rule of Evidence 804(a)(4).  Hearsay as to what dead people said is inadmissible

21   unless it comes within Rule 804(b) and Longo and plaintiff's other witnesses do not

22   purport to offer Wolfe's sworn testimony, his statements under the belief of

23   imminent death or his statements against civil or penal interest, and defendants did

24   not cause Wolfe's unavailability.  Fed. R. Evid. 804(b)(1)-(3), (6).

25   The hearsay statements that Longo and plaintiff's other witnesses offer also

26   are not Wolfe's statements as to his own or a relative's "birth, adoption, legitimacy,

27   ancestry, marriage, or similar facts of personal or family history . . . ."  Fed. R. Evid.

28   804(b)(4).  Longo's testimony that Wolfe said, for example, he met Jimmy Page

2

(Longo Decl. at 2, ¶ 12), are not statements of personal or family history similar to "birth, adoption, legitimacy, ancestry [or] marriage . . . ."   Fed. R. Evid. 804(b)(4); *United States v. Olafson*, 213 F.3d 435, 441 (9th Cir. 2000) (hearsay testimony as to declarant's citizenship and alienage admissible as personal or family history), *cert. denied* 531 U.S. 914, 121 S. Ct. 269, 148 L. Ed. 2d 195 (2000); *Porter v. Quarantillo*, 722 F.3d 94, 98 (2d Cir. 2013) (hearsay statement as to age at time relocated not within exception because not a statement as to birth, *etc.*); *Vega-Alvarado v. Holder*, No. CV 09-5591-RSWL AJWX, 2011 WL 333101, at *4 (C.D. Cal. Jan. 28, 2011) (Rule 804(b)(4) "encompasses statements that relate only to matters of pedigree, such as the dates of a birth, marriage, or death, and the fact and degree of family relationships").  The statements attributed to Wolfe also do not share "the inherent trustworthiness" generally applicable to a person's statements as to his or a relative's birth or other matters of ancestry. *Rassano v. Immigration & Naturalization Serv.*, 377 F.2d 971, 973 (7th Cir. 1966).

The hearsay statements that Longo and plaintiff's other witnesses attribute to Wolfe also are not admissible under Federal Rule of Evidence 807.  To potentially come within that Rule, the hearsay "must have circumstantial guarantees of trustworthiness equivalent to the listed exceptions to the hearsay rule . . . [and] must (1) be evidence of a material fact; (2) be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) serve the general purposes of the Rules of evidence and the interests of justice by its admission into evidence." *United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998).  This "residual hearsay exception is to be used only rarely, in truly exceptional cases." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1161 (Fed. Cir. 2012), *quoting United States v. Walker,* 410 F.3d 754, 757 (5th Cir. 2005).  Thus, for example, in *Sanchez-Lima* the exception applied in a criminal case because the defendant sought to rely on videotaped testimony under oath, based on the witnesses' personal knowledge and consistent with their prior statements, the jury

1  had the "opportunity to view their demeanor" and the government was provided the

2  opportunity to cross-examine the witnesses. *Sanchez-Lima*, 161 F.3d at 547.

3  Nothing of the sort applies to the hearsay testimony offered by plaintiff.

4  And, the balance of Longo's Declaration is irrelevant. *United States v.*

5  *Torres-Alvarez*, 44 F. App'x 818, 825 (9th Cir. 2002) ("even exceptions to the

6  hearsay rule are still subject to the ultimate relevancy test of Fed. R. Evid. 403, i.e.

7  probative value versus prejudice"). Stripped of hearsay – much if not all of which is

8  also irrelevant – Longo's Declaration is left with, for example, Longo's claim to

9  have been in a tribute band, his claim to have been Wolfe's friend, his claim to have

10  urged Wolfe to raise the supposed use of *Taurus*, his claim to have built a guitar for

11  Wolfe and his claim to be cooperating with plaintiff's counsel. All of that is

12  irrelevant to defendants' Motion. *See, e.g.,* Longo Decl. at 1-6, ¶¶ 1-11, 20-31

13  The assertions in Longo's Declaration are hearsay and irrelevant and his

14  Declaration, in its entirety, is properly stricken and disregarded.

15  Without limiting the foregoing objections to Longo's Declarations, defendants

16  also object to the following specific portions.

17  **Objection No. 2:**

18  **Material objected to:** page 2, ¶¶ 8-9 (describing contents of recordings not

19  provided by witness).

20  **Grounds for objection:** (1) best evidence rule, Fed. R. Evid. 1002; (2)

21  witness' claimed recordings were not produced by plaintiff in discovery, Fed. R.

22  Civ. P. 37(c)(1); and (3) relevance, Fed. R. Evid. 401.

23  **Objection No. 3:**

24  **Material objected to:**  page 2, ¶ 13.

25  **Grounds for objection:** hearsay, Fed. R. Evid. 802.

26  **Objection No. 4:**

27  **Material objected to:** page 3:1-3.

28  **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed.

4

R. Evid. 602; and (2) relevance, Fed. R. Evid. 401.

**Objection No. 5:**

    **Material objected to:** pages 3-4, ¶¶ 17-19.

    **Grounds for objection:** hearsay, Fed. R. Evid. 802

**Objection No. 6:**

    **Material objected to:** page 4, ¶ 20.

    **Grounds for objection:** hearsay, Fed. R. Evid. 802.

**Objection No. 7:**

    **Material objected to:** page 5, ¶¶ 26-27.

    **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance, Fed. R. Evid. 401.

**Objection No. 8:**

    **Material objected to:** transcription of December 31, 2015 telephone conversation.

    **Grounds for objection:** hearsay and hearsay within hearsay, Fed. R. Evid. 802, 805.

**3.**     **Objections to Declaration of Andrea Wolfe (Doc. 118-3)**

**Objection No. 9:**

    **Material objected to:** page 1, lines 14-15.

    **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; and (3) relevance, Fed. R. Evid. 401.

**Objection No. 10:**

    **Material objected to:** page 1, lines 19-22.

    **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; (3) hearsay, Fed. R. Evid. 802; and (4) relevance, Fed. R. Evid. 401.

    Andrea Wolfe's statement that she "regularly" saw the band perform at the

1   Ash Grove does not support her conclusory assertion that "They played *Taurus* at all
2   their shows."  Also, her testimony is that this occurred when her family moved to
3   California in the summer of 1966.  A. Wolfe Decl. at 1, ¶¶ 2-5.  Her testimony is
4   irrelevant to whether or when Spirit performed *Taurus* in 1968-71.

5        Further, she provides no foundation, including any musicological background,
6   for her assumption that what she refers to as *Taurus* was the *Taurus* musical
7   composition at issue in this action.  Spirit's Jay Ferguson testified that *Taurus* was a
8   work-in-progress that was not completed until it was recorded by Lou Adler's Ode
9   Records, Inc., after Spirit's members entered into the August 29, 1967 recording
10  contract with Ode Records, Inc.  Ferguson Depo. (Anderson Decl. (Doc. 97-10) Exh.
11  8) at 199:3-18.

12       In addition, Andrea Wolfe's testimony as to Spirit's performances is also
13  irrelevant.  First, she does not claim that Spirit performed *Taurus* before Wolfe
14  entered into his August 29, 1967 Exclusive Songwriter Agreement with Hollenbeck
15  Music.  Further, live performances of *Taurus* did not create the *Taurus* copyrighted
16  work.

17       The Copyright Act of 1909, 17 U.S.C. §§ 1 *et seq.* governs the creation of the
18  copyrighted *Taurus* musical composition.  *Magnuson v. Video Yesteryear*, 85 F.3d
19  1424, 1427 (9th Cir. 1996) ("the Copyright Act of 1909 is the applicable law in this
20  case because the copyright was secured . . . prior to the adoption of the 1976 Act").
21  Under the 1909 Act, the creation or live performance of a work did not result in a
22  copyrighted work.  *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th
23  Cir. 1996); *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981).  The
24  *Taurus* musical composition copyright on which plaintiff sues came into existence
25  only in December 1967 when Hollenbeck Music "reduced [it] to sheet music or
26  other manuscript form" and registered the copyright with the Copyright Office along
27  with a deposit copy of the December 1967 *Taurus* transcription.  2 M. Nimmer & D.
28  Nimmer, *Nimmer on Copyright* § 2.05[A]; 17 U.S.C. § 12 (requiring "the deposit,

with claim of copyright, of one complete copy of such work if it be a . . . musical, or dramatico-musical composition").  Plaintiff sues on the copyright in the December 1967 *Taurus* transcription, which is the relevant copyrighted work and was created during the term of the August 29, 1967 Exclusive Songwriter Agreement. Testimony as to earlier live performances is irrelevant.

Whether or not Taurus was performed at the Ash Gove when Andrea Wolfe was present is also irrelevant, as there is not a scintilla of evidence that the individual defendants were there.

**Objection No. 11:**

**Material objected to:** pages 1-2, ¶ 6.

**Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; and (3) relevance, Fed. R. Evid. 401.

Her testimony that she attended unidentified Spirit shows in California when Spirit toured after the release of its first album is irrelevant because the only alleged access is when Spirit performed in Denver, Colorado, in December 1968 in connection with the release of Spirit's second album, and, in 1969, in Atlanta, Georgia, and Woodinville, Washington, with respect to Spirit's later albums.  Her testimony that *Taurus* was Wolfe's favorite song is conclusory and lacks foundation as to personal knowledge rather that speculation or hearsay.


**4.    Objections to Declaration of Janet Wolfe (Doc. 118-4)**

**Objection No. 12:**

**Material objected to:** page 1, lines 20-21.

**Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; (3) lack of foundation for opinion testimony, Fed. R. Evid. 701; and (4) relevance, Fed. R. Evid. 401.

**Objection No. 13:**

**Material objected to:** 1, lines 26-28.

1    **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed.

2    R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; (3)

3    hearsay, Fed. R. Evid. 802; and (4) relevance, Fed. R. Evid. 401.

4    The grounds for these objections are the same as set forth above, Objection

5    No. 9, as to the same assertion in Andrea Wolfe's Declaration.

6    **Objection No. 14:**

7    **Material objected to:** 2, ¶ 7.

8    **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed.

9    R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; and (2) relevance, Fed. R. Evid. 401.

10   Janet Wolfe's statement that Spirit performed *Taurus* at an unstated number of

11   concerts she attended at unstated locations is conclusory and irrelevant.   *See,*

12   Objection No. 10 above.

13

14   **5.    Objections to Declaration of Linda Mensch (118-5)**

15   **Objection No. 15:**

16   **Material objected to:** page 1, ¶¶ 4-6.

17   **Grounds for objection:** (1) attorney-client privilege, Fed. R. Evid. 501; and

18   (2) relevance, Fed. R. Evid. 401.

19   Ms. Mensch, claiming to be an attorney, purports to reveal her

20   communications with Wolfe in a legal consultation in Chicago, Illinois, "[d]uring

21   the 1990s . . . ." Mensch Decl. at 1, ¶¶ 1-2. The attorney-client privilege applicable

22   to that claimed consultation remains privileged after Wolfe's alleged death. *Swidler*

23   *& Berlin v. United States*, 524 U.S. 399, 405 (1998); *see, also In re Busse's Estate*,

24   332 Ill. App. 258, 266, 75 N.E.2d 36, 39 (Ill. App. Ct. 1947) ("This protection, given

25   by the law to communications made during the relationship of attorney and client, is

26   perpetual and does not cease by the death of the client").

27   Also, plaintiff concedes that Wolfe knew about the alleged claim since 1971

28   and made the 1991 statements recorded in Ruhlmann's 1991 interview, waiving and

8

abandoning the alleged claim. Freeman Decl. (Doc. 97-8) Audio Exh. 4. As a result, Mensch's Declaration is irrelevant.

**6.    Objections to Declaration of David Waterbury (118-6)**

**Objection No. 16:**

      **Material objected to:** page 1, ¶¶ 4-7.

      **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance, Fed. R. Evid. 401.

      Not only is Waterbury's testimony as to what Wolfe supposedly told him in 1986 or 1987 inadmissible hearsay, but it is irrelevant to defendants' Motion.

**Objection No. 17:**

      **Material objected to:** pages 2, ¶ 8.

      **Grounds for objection:** relevance, Fed. R. Evid. 401.

**Objection No. 18:**

      **Material objected to:** 2, ¶ 9.

      **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance, Fed. R. Evid. 401.

**Objection No. 19:**

      **Material objected to:** 2, ¶10.

      **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; (3) failure to provide required expert disclosures, Fed. R. Civ. P. 37(c)(1); and (4) relevance.

      In addition to the fact that Waterbury does not provide qualifications establishing his ability to opine as to the claimed infringement, plaintiff did not identify him as a retained or non-retained witness whose opinion testimony would be offered. Fed. R. Civ. P. 26(a)(2)(A); Anderson Reply Decl. at 1, ¶ 4, & Exh. 28.

///

9

**<u>Objection No. 20:</u>**

      **Material objected to:** page 1, ¶ 11.

      **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; and (3) relevance, Fed. R. Evid. 401.

**<u>Objection No. 21:</u>**

      **Material objected to:** page 2, ¶ 12.

      **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; (3) failure to provide required expert disclosures, Fed. R. Civ. P. 37(c)(1); and (4) relevance.

**7.**    **<u>Objections to Declaration of Francis Malofiy (Doc. 118-7)</u>**

**<u>Objection No. 22:</u>**

      **Material objected to:** Malofiy Exhibit 1 ("condensed" copy of transcript of deposition of James Patrick Page).

      **Grounds for objection:** (1) improper submission of entire transcript; and (2) relevance, Fed. R. Evid. 401.

      Defendants previously raised that it is improper for plaintiff to provide the Court with an entire deposition transcript rather than copies of the pages with the testimony relied upon.  Def. Response (Doc. 106) to Application at 7 n. 1, *Faulkner v. Wausau Bus. Ins. Co.*, 571 F. App'x 566, 569 (9th Cir. 2014) ("Judges are not like pigs, hunting for truffles"), *quoting Christian Legal Soc. v. Wu,* 626 F.3d 483, 488 (9th Cir.2010).   Yet, plaintiff does it again and, as shown below, does it again repeatedly, submitting the entirety of a total of seven deposition transcripts.

      Further, much of the transcript is testimony on matters – for example, claims or theoretical claims by non-parties as to compositions or recordings other than *Taurus* – that is irrelevant or inadmissible on other grounds.  *See, below* at 11-12.

///

In addition, by submitting entire transcripts plaintiff makes it impractical if not impossible for defendants to (1) determine what testimony is offered and for what purpose it is offered and (2) prepare and submit objections beyond those raised at the depositions. Accordingly, the entireties of the transcripts are properly disregarded and stricken.

**Objection No. 23:**

**Material objected to:** pages 477 and 478 to 491 of the transcript of deposition of James Patrick Page.

**Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2) failure to provide expert reports establishing that copying occurred, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Plaintiff seeks to present evidence of theoretical claims, never asserted, and actual claims and settlements, by unrelated third parties as to compositions or recordings other than the *Taurus* musical composition at issue in this action. All of that claimed evidence is inadmissible.

In some instances, claims were made and resolved. However, evidence of settlements or steps taken to resolve claims are inadmissible when offered – as plaintiff offers them here – for proof the claimed conduct occurred. Fed. R. Evid. 407-08. Further, the claimed evidence also is irrelevant. Because there are reasons other than alleged culpability to resolve a claim, doing so "is not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question. There is no logical relevancy to admitting this type of evidence." *United States v. Bailey*, 696 F.3d 794, 800 (9th Cir. 2012).

Moreover, in the vast majority of instances plaintiff refers not to claims that were made, but rather claims that plaintiff suggests might have been asserted. And as to both those theoretical-but-never-asserted claims and the few claims that were asserted but resolved, plaintiff makes no effort to actually prove any of them. Thus, for example, none of his experts performed the required "analytical dissection . . ."

1  of the works involved.  *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *quoting*

2  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *cert. denied*

3  531 U.S. 1126 (2001).

4        Plaintiff's claimed evidence of other actual or theoretical claims and

5  settlements is inadmissible and irrelevant, and properly stricken and disregarded.

6  **Objection No. 24:**

7        **Material objected to:** Malofiy Exhibit 3 (New Musical Express Interview).

8        **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance,

9  Fed. R. Evid. 401.

10       Published articles offered for the truth of their assertions, including when they

11  purport to quote a defendant, are inadmissible hearsay.  *Larez v. City of Los Angeles*,

12  946 F.2d 630, 642 (9th Cir. 1991) ("As the reporters never testified nor were

13  subjected to cross-examination, their transcriptions of Gates's statements involve a

14  serious hearsay problem"; articles inadmissible).

15       Also, the claimed interview and the claimed statements do not establish that

16  Mr. Page heard *Taurus*, which appeared only on Spirit's first album released in late

17  1967 or January 1968; which was never released as a single; and which was rarely if

18  ever performed live by Spirit after the late 1968 release of Spirit's break-out album,

19  *The Family That Plays Together*.  Also, the evidence is that Mr. Page was never

20  present at any Spirit performance where *Taurus* was performed, let alone present

21  prior to the January 1971 recording of *Stairway to Heaven*.  Accordingly, the article

22  is also irrelevant.

23  **Objection No. 25:**

24       **Material objected to:** Malofiy Exhibit 4 (1972 Zig Zag article reprinted in

25  Guitar World).

26       **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance,

27  Fed. R. Evid. 401.

28  ///

1        For the same reasons stated in the preceding Objection, the claimed 1972

2    interview is irrelevant.

3    **Objection No. 26:**

4        **Material objected to:** Malofiy Exhibit 5 (Zig Zag audio).

5        **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance,

6    Fed. R. Evid. 401.

7        For the same reasons stated in the preceding Objections, the claimed 1972

8    interview, after recording of *Stairway to Heaven* was completed in January 1971, is

9    irrelevant.

10   **Objection No. 27:**

11       **Material objected to:** Malofiy Exhibit 6 ("condensed" copy of transcript of

12   deposition of John Paul Jones)

13       **Grounds for objection:** (1) improper submission of entire transcript; and (2)

14   relevance, Fed. R. Evid. 401.

15       The grounds of these objections are the same as those set forth above with

16   respect to Objection No. 22.

17   **Objection No. 28:**

18       **Material objected to:** pages 161 to 171, line 10, and 175-269 of transcript of

19   deposition of John Paul Jones.

20       **Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2)

21   failure to provide expert reports establishing that copying occurred, Fed. R. Evid.

22   702; and (3) relevance, Fed. R. Evid. 401.

23       The grounds of these objections to supposed evidence of other claims or

24   settlements are the same as those set forth above with respect to Objection No. 23.

25   **Objection No. 29:**

26       **Material objected to:** Malofiy Exhibit 7 ("condensed" copy of transcript of

27   deposition of Robert Plant).

28       **Grounds for objection:** (1) improper submission of entire transcript; (2)

1  failure to provide transcript for witness' review, Fed. R. Civ. P. 30(e)(1); and (3)

2  relevance, Fed. R. Evid. 401.

3        In addition to the grounds stated with respect to Objection No. 22, above, Mr.

4  Plant requested the opportunity to review the transcript of his deposition and that

5  opportunity was not provided.  Freeman Reply Decl. at 1, ¶ 3.

6  **Objection No. 30:**

7        **Material objected to:** pages 297 to 333, line 22, and 340 to 355 of transcript

8  of deposition of Robert Plant.

9        **Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2)

10 failure to provide expert reports establishing that copying occurred, Fed. R. Evid.

11 702; and (3) relevance, Fed. R. Evid. 401.

12       The grounds of these objections to supposed evidence of other claims or

13 settlements are the same as those set forth above with respect to Objection No. 23.

14 **Objection No. 31:**

15       **Material objected to:** Malofiy Exhibit 8 ("condensed" copy of transcript of

16 deposition of Mark Andes).

17       **Grounds for objection:** (1) improper submission of entire transcript; and (2)

18 relevance, Fed. R. Evid. 401.

19       The grounds of these objections are the same as those set forth above with

20 respect to Objection No. 22.

21 **Objection No. 32:**

22       **Material objected to:** Malofiy Exhibit 10 ("condensed" copy of transcript of

23 deposition of Jay Ferguson).

24       **Grounds for objection:** (1) improper submission of entire transcript; and (2)

25 relevance, Fed. R. Evid. 401.

26       The grounds of these objections are the same as those set forth above with

27 respect to Objection No. 22.

28 ///

14

**Objection No. 33:**

**Material objected to:** Malofiy Exhibit 11 ("condensed" copy of transcript of deposition of Bruce Pates).

**Grounds for objection:** (1) improper submission of entire transcript; and (2) relevance, Fed. R. Evid. 401.

The grounds of these objections are the same as those set forth above with respect to Objection No. 22.

**Objection No. 34:**

**Material objected to:** Malofiy Exhibit 12 (group of alleged posters from concerts).

**Grounds for objection:** (1) failure to authenticate, Fed. R. Evid. 901; (2) hearsay, Fed. R. Evid. 802; and (3) relevance, Fed. R. Evid. 401.

Plaintiff fails to authenticate the posters[1] and, since plaintiff offers them as supposed proof that the concerts actually occurred with the listed performers, they are hearsay.  Fed. R. Evid. 802 & 901.

Also, the evidence is that Led Zeppelin did not perform at the Northern California Folk-Rock Festival, that Led Zeppelin and Spirit performed on different days at the Texas International Pop Festival and that *Taurus* was not performed at any of the concerts.  Fact 57-66.  Accordingly, the posters are also irrelevant.

**Objection No. 35:**

**Material objected to:** Malofiy Exhibit 13 (1970 Melody Maker article).

**Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (3) relevance,

---

[1]   The last page of plaintiff's Exhibit 12 is a handbill that defendants showed was authenticated by Andes and proves that Spirit's December 26, 1968 performance was in support of their new *Family that Plays Together* album (which did not include *Taurus*) and not their first album of a year earlier (which included *Taurus* and was not successful).  *See,* Andes Depo. (Anderson Decl. Exh. 9) at 61:18-22, 62:5-23, 92:14-17, 93:19 to 94:8, & Anderson Decl. Exh. 22 (deposition exhibit 320); Ferguson Depo. (Anderson Decl. Exh. 8) at 51:10-16

15

1  Fed. R. Evid. 401.

2      Since the evidence is that Spirit did not perform *Taurus* at Mothers Club, the

3  article and its assertions are irrelevant.  Fact 73-76.

4  **Objection No. 36:**

5      **Material objected to:** Malofiy Exhibit 14 (excerpt of Get the Led Out).

6      **Grounds for objection:** (1) failure to authenticate, Fed. R. Evid. 901; (2)

7  hearsay, Fed. R. Evid. 802; and (3) relevance, Fed. R. Evid. 401.

8      For the same reasons discussed above with respect to Objection 24, third party

9  publications, when offered for the truth of their assertions, are hearsay.

10  **Objection No. 37:**

11      **Material objected to:** Malofiy Exhibit 16 (described as "Audio of Interview,"

12  "D165").

13      **Grounds for objection:** relevance, Fed. R. Evid. 401.

14      Plaintiff identifies two Audio Exhibit 16's and neither is relevant to the

15  Motion.

16  **Objection No. 38:**

17      **Material objected to:** Malofiy Exhibit 17 (2004 NPR interview).

18      **Grounds for objection:**  (1) Federal Rules of Evidence 407 and 408;and (2)

19  relevance, Fed. R. Evid. 401.

20  **Objection No. 39:**

21      **Material objected to:** Malofiy Exhibit 19 (Audio Exhibit of Led Zeppelin

22  supposedly playing *Fresh Garbage*).

23      **Grounds for objection:** (1) failure to authenticate, Fed. R. Evid. 901; (2) lack

24  of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for

25  opinion testimony, Fed. R. Evid. 701; (3) failure to provide required expert

26  disclosures, Fed. R. Civ. P. 37(c)(1); (4) hearsay, Fed. R, Evid. 802; and (4)

27  relevance.

28  ///

16

Aside from mischaracterizing the recording as a performance of *Fresh Garbage*, plaintiff fails to authenticate the recording. Malofiy purports to identify the Exhibit as "a true and correct accurate copy of Led Zeppelin performing Fresh Garbage on January 10, 1969," but he does not purport to lay a foundation as a witness with personal knowledge (he was not even born yet) or as an expert, and plaintiff did not (and of course could not, consistent with Malofiy's ethical obligations) identify Malofiy as a retained or non-retained witness whose opinion testimony would be offered. Fed. R. Civ. P. 26(a)(2)(A); Anderson Reply Decl. at 1, ¶ 4, & Exh. 28. Neither has plaintiff provided Spirit's *Fresh Garbage* to establish what it is. Further, plaintiff concedes that Led Zeppelin's members heard *Fresh Garbage* in England, where it was on an album that did not include *Taurus*, before Led Zeppelin came to the United States. Fact 68-69. Thus, the Exhibit also is irrelevant.

**Objection No. 40:**

**Material objected to:** Malofiy Exhibit 20 (Melody Maker interview republished in DRUM! in 1992).

**Grounds for objection:** (1) hearsay and hearsay within hearsay, Fed. R. Evid. 802, 805; and (2) relevance, Fed. R. Evid. 401.

Since plaintiff offers the article for the truth of its assertions, it is multiple hearsay, and also irrelevant.

**Objection No. 41:**

**Material objected to:** Malofiy Exhibit 21 ("condensed" copy of transcript of deposition of William Ruhlmann).

**Grounds for objection:** (1) improper submission of entire transcript; and (2) relevance, Fed. R. Evid. 401.

The grounds of these objections are the same as those set forth above with respect to Objection No. 22.

///

**Objection No. 42:**

    **Material objected to:** Malofiy Declaration at page 3, ¶ 23.

    **Grounds for objection:** (1) lack of foundation as to claimed understanding; (2) relevance, Fed. R. Evid. 401.

    Malofiy does not claim that he was granted an extension of time to respond to defendants' December 3, 2015 Request for Admissions that, among other things, the musical composition *Taurus* is a work for hire owned by Hollenbeck Music.

    Although plaintiff states in his Statement of Genuine Issues that his counsel "had communicated to Defendant that he was unable to reach his client, who was involved in a serious accident and was hospitalized during that time" (Pltf. Stmt. at 3, ¶ 7), Malofiy does not make that claim in his Declaration and, as a result, there is no evidence of that assertion.  Neither does plaintiff's own Declaration (Doc. 119-4) mention, let alone provide any proof, of any such accident.

    Instead, Malofiy states in his Declaration only that "it was my understanding due to injuries my client suffered—and the extensive travel during the month of January 2016 for the case—that Mr. Anderson would not seek to deem [defendants' second Request for Admissions] admitted."  Malofiy Decl. at 3, ¶ 23.  Because he noticeably omits any facts to explain and support why he had that supposed understanding, his assertion as to his understanding is a bare conclusion and irrelevant. *See, also* Anderson Reply Decl. at 2, ¶ 12.

**Objection No. 43:**

    **Material objected to:** page 4, ¶ 27.

    **Grounds for objection:** (1) bare conclusion; and (2) relevance, Fed. R. Evid. 401.

    Malofiy's statements that he reserves rights and "the requests for admissions are contradicted by voluminous evidence in the record," which "voluminous evidence" he fails to identify, are bare conclusions and irrelevant given that plaintiff admitted the Requests for Admission.

**8.    Objections to Declaration of Alexander Stewart (Doc. 118-8)**

**Objection No. 44:**

**Material objected to:** Stewart Declaration and its attachments and exhibits, in their entirety.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Stewart failed to analyze the relevant copyrighted work – namely, the 1967 transcription of the *Taurus* musical composition that Hollenbeck Music deposited with the Copyright Office when Hollenbeck registered its 1967 copyright – and Stewart also failed to follow governing law and, for example, failed to filter out unprotectable material and failed to consider the substantial differences.

As for Stewart's failure to analyze the relevant copyrighted work, plaintiff failed to produce the 1967 *Taurus* transcription, Stewart failed to analyze the 1967 *Taurus* transcription produced by defendants and Stewart instead improperly compared recordings of performances of *Taurus* to *Stairway to Heaven*.

First, plaintiff sues for the alleged infringement of the copyright registered in 1967 in the *Taurus* musical composition and that copyright protects the transcription of the *Taurus* musical composition that was deposited with that 1967 registration. *See, above* at 6-7; 17 U.S.C. §§ 11-12 (repealed) (1909 Act required "the deposit, with claim of copyright, of one complete copy of such work if it be a . . . musical, or dramatico-musical composition"); 2 *Nimmer on Copyright* § 2.05[A] ("Because, under the 1909 Act, copyright protection required . . . the deposit of *copies* . . . , to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form" (emphasis in original)).

Second, 1960s recordings of performances of *Taurus* are not copies of the *Taurus* musical composition in which copyright was registered, were not protected by copyright under the 1909 Act and are irrelevant to the scope of the copyright in

the *Taurus* musical composition. *Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183, 1192 n. 8 (S.D.N.Y. 1973) (under the 1909 Act, "[a] phonograph record is not a copy of the musical composition itself"), *aff'd*, 546 F.2d 461 (2d Cir. 1976); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688-89, 691-92 (9th Cir. 2000) (*Rosette* correctly stated 1909 Act law), *cert. denied* 531 U.S. 1051 (2000); 17 U.S.C § 303(b).

Third, it is undisputed, and Stewart agrees, that there are substantial differences between the *Taurus* recordings he considered and the 1967 *Taurus* transcription that he failed to analyze. *See, e.g.,* Stewart Decl. at 12, ¶ 29 (complaining that Ferrara analyzed the 1967 *Taurus* transcription rather than creating a transcription of "the recording of 'Taurus'"), at 13:8-10 ("Lead sheets are notoriously lacking in musical detail") & at 13, ¶ 35 (complaining that Ferrara referred to a portion of the 1967 *Taurus* transcription with 15 pitches while there are "at least 30 pitches" in the *Taurus* recording of a performance of what Stewart contends is a comparable portion).

As a result, the 1967 *Taurus* transcription, not recordings of performances of *Taurus*, is the relevant work to compare to *Stairway to Heaven*. *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK, 2014 WL 7877773, at *9-10 (C.D. Cal. Oct. 30, 2014) (recordings are "not protectable publications under the 1909 Act" and "the lead sheets are deemed to define the scope of [the 1909 Act] copyrighted compositions"); *Fahmy v. Jay Z*, No. 07CV05715-CAS-PJWx, 2015 WL 5680299, at *13-14 (C.D. Cal. Sept. 24, 2015) (same).[2]   In short, Stewart analyzed and compared the wrong work.  His declaration testimony is irrelevant.

As for Stewart's failure to follow governing law, he failed to filter out unprotected material. "[O]nly those elements of a work that are protectable and used

---

[2]    While plaintiff relies on *Three Boys Music*, but there the court rejected a challenge to subject matter jurisdiction and the plaintiff's expert testified that the deposit copy elements had been copied (212 F.3d at 480, 486), neither of which is applicable here. *See, also Williams*, 2014 WL 7877773, at *9.

1    without the author's permission can be compared when it comes to the ultimate
2    question of illicit copying, . . . ."  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d
3    1435, 1443 (9th Cir. 1994), *cert. denied* 513 U.S. 1184 (1995); *Calhoun v. Lillenas*
4    *Publishing*, 298 F.3d 1228, 1232 n. 9 (11th Cir. 2002) ("We have cautioned trial
5    courts in this circuit 'not to be swayed by the fact that two works embody similar or
6    even identical ideas'"; citations omitted), *cert. denied* 539 U.S. 903 (2003); 4
7    *Nimmer on Copyright* § 13.03[B][2] ("When similar works resemble each other only
8    in . . . unprotected aspects, then defendant prevails").

9        The copyright in the *Taurus* musical composition protects only original
10   material in the transcription and, as a result, Stewart was required to "consider only .
11   . . appropriation of the song's compositional elements and must remove from
12   consideration all the elements unique to [the] performance."  *Newton v. Diamond*,
13   388 F.3d 1189, 1193 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005).

14       Stewart, like plaintiff's other experts, relies on performance elements in the
15   recordings.  *See, e.g.,* Stewart Decl. at 3:1-2 ("fingerpicking style" in recordings of
16   live versions), at 8, ¶ 17 ("acoustic guitar, strings, recorder/flute sounds, and
17   harpsichord"), at 4:23 & 8-9, ¶¶ 16, 18-19 ("atmospheric sustained pads") & at 5, ¶ 8
18   ("fretboard positioning and fingering").

19       Stewart, again like plaintiff's other experts, relies on unprotected material,
20   such as the presence of three notes, A-B-C.  *Id.* at 9, ¶ 20; *Allen v. Destiny's Child*,
21   No. 06 C 6606, 2009 WL 2178676, at *12 (N.D. Ill. July 21, 2009) (three notes
22   "unprotectable as a matter of law"); Copyright Office Compendium § 313.4(B)
23   (three notes not copyrightable); *see, also Tisi v. Patrick*, 97 F. Supp. 2d 539, 543-45
24   (S.D.N.Y. 2000) (claimed similarities in structure and harmony were commonplace
25   and not protected).  As another example, Stewart relies on claimed similarities in
26   bare sequences of pitches, without considering the duration of the pitches or that
27   they are going in different directions in the *Taurus* recordings (and *Taurus*
28   transcription), on the one hand, and *Stairway to Heaven*.  Stewart Decl. at 9, ¶ 20;

1   *Swirsky*, 376 F.3d at 848 n. 13 ("concentration solely on pitch sequence may break

2   music down beyond recognition"); Ferrara Reply Decl. at 3-4, ¶¶ 11-14; Ronald S.

3   Rosen, *Music and Copyright* (Oxford University Press, 2008, 153, n. 9 (*Rock of*

4   *Ages* and *Rudolph the Red-Nosed Reindeer* have the exact same sequence of pitches,

5   C-D-C-A-F-D-C; "The existence of a similar (or even identical) pitch progression is

6   of *no musical significance*" (emphasis in original)).

7       Stewart also ignores most of the prior art identified by Ferrara and, as to some

8   he acknowledges, raises only that they do not include a complete chromatic line.

9   *See, e.g.,* Stewart Decl. at 15, ¶¶ 41-42.  That does not change that they are prior

10  examples of the use of that centuries-old musical device.

11      Stewart and plaintiff's other experts also fail to give any weight to the

12  substantial differences, including the ascending melodic lines that *Stairway to*

13  *Heaven* places over the descending minor line cliché and which are absent in the

14  *Taurus* recordings (and the *Taurus* transcription).  Ferrara Audio Exh. 2 at Track 2;

15  *FunkyFilms, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1078 (9th Cir. 2006)

16  (summary judgment proper since "significant differences and few real similarities");

17  *Tisi*, 97 F. Supp. 2d at 543-45 (works used commonplace elements differently).

18      In addition, Stewart includes in his Declarations legal conclusions, such as

19  that *Taurus* recordings are the copyrighted musical composition and were "fixed"

20  works.  Stewart Decl. at 12-13, ¶ 31.  His legal conclusions are inadmissible, and

21  also flat wrong: under the 1909 Act recordings are not copies of the work (*ABKCO*,

22  217 F.3d at 688-89, 691-92) and fixation in tangible form is a 1976 Act concept.  17

23  U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in

24  original works of authorship fixed in any tangible medium of expression"); *Societe*

25  *Civile Succession Guino v. Renoir*, 549 F.3d 1182, 1186 (9th Cir. 2008) ("The

26  Copyright Act of 1976 changed the basis of copyright protection . . . to creation of a

27  work . . . [but t]hat change applies to works 'created on or after January 1, 1978'"),

28  *quoting* 17 U.S.C. § 302.

The Court is not required to credit a flawed expert report. *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 837 (C.D. Cal. 2010) (expert report excluded as flawed; "summary judgment on the issue of substantial similarity is appropriate, notwithstanding dueling expert reports"), *aff'd* 438 F. App'x 587 (9th Cir. 2011). Other Courts have rejected Stewart's analysis and conclusions for similar reasons. *See, e.g., VMG Salsoul, LLC v. Ciccone*, No. CV 12-05967 BRO CWX, 2013 WL 8600435, at *9, 11 (C.D. Cal. Nov. 18, 2013) ("Dr. Stewart provides a legal conclusion"; Stewart opinion that allegedly-copied portion of plaintiff's work "quantitatively and qualitatively significant" rejected); *Batts v. Adams*, CV10-8123-JFW-RZx (C.D. Cal. Feb. 8, 2011) at 6 (plaintiff's experts, including Stewart, "fail to note any relevant prior art, any differences between the works, and neglect to filter out any of the protectable elements"), at 7 n. 5 (Stewart's opinions "fundamentally flawed due to [his] failure to properly analyze the alleged similarities in accordance with relevant Ninth Circuit Law"); *Batts*, CV10-8123-JFW-RZx (C.D. Cal. Oct. 21, 2011) (summary judgment granted despite Stewart opinions musical works substantially similar).[3]

Stewart's Declaration and its attachments and exhibits are properly disregarded and stricken.

Without limiting the foregoing objections to Stewart's Declarations, defendants also object to the following specific portions.

**Objection No. 45:**

**Material objected to:** pages 5-6, ¶¶ 10.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

///

---

[3]    Copies of these two rulings in *Batts* are attached to these Objections at tabs 1 and 2.

1    Stewart (improperly comparing *Taurus* recordings to *Stairway to Heaven*),
2    states that their "underlying harmonic structure contains a descending chromatic
3    bass line [that] has a long history in Western music," but that "'Taurus' and STH
4    depart from the traditional sequence in similar and significant ways." Stewart Decl.
5    at 5-6, ¶ 9.  Stewart then identifies that "similar and significant way[ ]" as the
6    omission of the one of the six pitches of that descending chromatic line. *Id.* at 6, ¶
7    10.  However, five-sixths of unprotected material is still unprotected material.
8    Under Stewart's flawed analysis, dropping the ending of Shakespeare's *Romeo and*
9    *Juliet* would create a new protected work.  That, of course, is not the law.  1 *Nimmer*
10   *on Copyright* § 3.03[A] (to create a new protected version of public domain
11   material, there must be "a contribution of original material").    Stewart also
12   acknowledges that the prior art identified by Ferrara also stopped short of the entire
13   chromatic line.  Stewart Decl. at 15, ¶ 41.

14       In addition, Stewart ignores that *Stairway to Heaven* adds ascending melodic
15   lines, making its use of the public domain descending chromatic line different.
16   Ferrara Reply Decl. at 3, ¶ 9.

17       Stewart's remarkable opinion that shortening a public domain, unprotectable
18   musical line is protectable expression is properly disregarded and stricken.

19   **Objection No. 46:**

20       **Material objected to:** page 7, ¶¶ 14-15.

21       **Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of
22   foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R.
23   Evid. 401.

24       Stewart's reliance on sequences of pitches, without regard to their duration or
25   direction, "break[s] music down beyond recognition" (*Swirsky*, 376 F.3d at 848 n.
26   13), and is improper and should be stricken.

27   **Objection No. 47:**

28       **Material objected to:** pages 8-9, ¶¶ 16-19.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Stewart's reliance on performance elements of *Taurus* recordings is improper and should be stricken. *Newton*, 388 F.3d at 1193.

**Objection No. 48:**

**Material objected to:** pages 9-10, ¶¶ 20-21.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Stewart's opinion that the pitches ABC A played by a harpsichord and ABCBA C sung by a vocalist are similar rests on the commonality of three pitches, ABC. Three pitches or notes are not protectable material and are required to be disregarded in the expert analysis of music. *See,* above at 21. Stewart also admits differences in the works. Stewart Decl. at 9-10, ¶¶ 20-21.

**Objection No. 49:**

**Material objected to:** page 11, lines 15-17.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Stewart states that in his "opinion, these similarities, both individually and in the aggregate, preclude the possibility of coincidence or independent creation." Stewart Decl. at 11:15-7. However, he did not make that claim in his February 10, 2016 Report. Ferrara Decl. (97-5) Exh. 2. He is precluded by his failure to express that opinion in his Report and, in addition, his new assertion is properly disregarded because he "equivocate[d] on the level of similarity . . . ." *Vargas v. Transeau*, 514 F. Supp. 2d 439, 445 (S.D.N.Y. 2007), *aff'd* 352 F. App'x 458 (2d Cir. 2009). Further, his new assertion is conclusory and, as a result, does not create a triable

1   issue. *Vargas*, 514 F. Supp. 2d at 446-47 ("Although plaintiff[s'] expert opines that

2   the songs are strikingly similar, an issue of fact cannot be created by merely reciting

3   the magic words 'strikingly similar' and 'no possibility of independent creation'"),

4   *quoting Tisi v. Patrick*, 97 F. Supp. 2d 539, 549 (S.D.N.Y. 2000).

5       Stewart's new and conclusory assertion of striking similarity should be

6   stricken and disregarded.

7

8   **9.    Objections to Declaration of Erik Johnson (Doc. 118-9)**

9   **Objection No. 50:**

10      **Material objected to:** Johnson Declaration and its attachments and exhibits,

11  in their entirety.

12      **Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local

13  Rule 5-4.3.4.

14      Despite being specifically warned, including by plaintiff's local counsel

15  (Anderson Reply Decl. at 2, ¶¶ 9-10, Exh. 31), plaintiff filed this (and other

16  Declarations) without the declarant's signature and, instead, with plaintiff's

17  counsel's notation "/s/" and the declarant's name. Johnson Decl. at 16:4.

18      28 U.S.C. Section 1746 requires that a declaration be "subscribed by [the

19  declarant], as true under penalty of perjury, and dated, . . . ." The requirement of the

20  witness' actual signature is preserved in e-filing by Local Rule 5-4.3.4, which

21  provides that "[i]n the case of documents requiring signatures other than those of

22  registered CM/ECF filers (such as declarations), the filer shall scan the hand-signed

23  signature page(s) of the document in PDF format and electronically file the

24  document in accordance with L.R. 5-4.3.1."

25      Plaintiff submitted Johnson's and other declarations without the declarant's

26  signatures. That is a fatal defect and the unsigned declarations are properly

27  disregarded and stricken. *Davis v. Solid Waste Servs., Inc.*, 20 F. Supp. 3d 519, 530

28  (E.D. Pa. 2014) (six unsigned declarations submitted by plaintiff disregarded;

summary judgment granted), *aff'd*, 625 F. App'x 104 (3d Cir. 2015).

**Objection No. 51:**

**Material objected to:** Johnson Declaration and its attachments and exhibits, in their entirety.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Johnson, a claimed "master musician and session musician" (Johnson Decl. at 2:4), purports to analyze and compare *Stairway to Heaven* with a recording of a performance of *Taurus*. *See, e.g., id.* at 1:25-26. However, recordings of *Taurus* are irrelevant because the 1967 *Taurus* transcription deposited with the Copyright Office is "deemed to define the scope of [the 1909 Act] copyrighted composition[ ]." *Williams*, 2014 WL 7877773, at *10; *see, above* at 6, 19-20.

Further, Johnson claims to have analyzed *Stairway to Heaven* and a *Taurus* recording "from a performance and compositional perspective . . . ." 1:25-27. Performance elements of the *Taurus* recordings, however, are irrelevant. *Newton*, 388 F.3d at 1194 ("A crucial problem with the testimony of [plaintiff's] experts is that they continually refer to the 'sound' produced by [plaintiff's] technique," while his "copyright extends only to the elements . . . that he wrote on the score"). As to the "compositional perspective," not only does Johnson improperly rely on the *Taurus* recording as the copyrighted musical composition, but he outright refuses to disregard "unprotected material in a plaintiff's work." *Swirsky*, 376 F.3d at 845. Thus, he opines that the "arpeggiated guitar chord sequence in the introduction . . . is arguably the primary defining musical element" and states it is "preposterous" to suggest that arpeggios and minor line clichés – a descending chromatic scale – are public domain and not protectable. Johnson Decl. at 3, ¶ 7, & at 11, ¶ 30. He, however, is wrong. Copyright Office Compendium § 802.5(A) (arpeggios and chromatic scales are "common property musical material" in the public domain);

1 *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite"
2 musical elements not protected).   Johnson also improperly relies on, rather than
3 filters out, the presence of three pitches, A-B-C.  Johnson Decl. at 5, ¶ 15; *see, above*
4 at 21.

5       Johnson declined to follow, and indeed rejected, the fundamental requirement
6 that he compare and analyze the protectable portions of the copyrighted work,
7 namely, the 1967 *Taurus* transcription deposited with the Copyright Office.   His
8 Declaration and its attachments and exhibits are properly disregarded and stricken.

9 **Objection No. 52:**

10       **Material objected to:** pages 2-3, ¶ 6.

11       **Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2) lack
12 of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed.
13 R. Evid. 401.

14       Johnson's references to unproven claims or contentions as to other
15 compositions or recordings are inadmissible and irrelevant, and not supported by the
16 required analysis.  *See,* Objection No. 23.

17 **Objection No. 53:**

18       **Material objected to:** page 8, ¶ 21.

19       **Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of
20 foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R.
21 Evid. 401.

22       Johnson's assertions as to striking similarity are conclusory, are not supported
23 by any admissible opinions or testimony, and are properly disregarded and stricken.
24 *See,* Objection No. 44.

25 **Objection No. 54:**

26       **Material objected to:** page 15, ¶ 42.

27       **Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of
28 foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R.

Evid. 401.

For the same reasons above, Johnson's assertion as to striking similarity is properly disregarded and stricken.

**10.   Objections to Declaration of Brian Bricklin (Doc. 118-10)**

**Objection No. 55:**

**Material objected to:** Bricklin Declaration and attachments in their entirety.

**Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local Rule 5-4.3.4.

Despite the fact plaintiff was forewarned, this Declaration is not signed by the declarant and, accordingly, is properly disregarded and stricken. *See,* Objection No. 50.

**Objection No. 56:**

**Material objected to:** Bricklin Declaration and attachments in their entirety.

**Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Bricklin also purports to analyze and compare *Stairway to Heaven* and a *Taurus* recording, rather than the 1967 *Taurus* transcription that comprises the copyrighted work.  In addition, he relies on performance elements of the *Taurus* recording and fails to filter out non-protectable material.  His testimony and claimed opinions are fundamentally flawed and his Declaration is properly disregarded and stricken. *See,* Objection No. 44.

**Objection No. 57:**

**Material objected to:** pages 3-5, ¶¶ 9-10.

**Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

Bricklin's conclusory assertions as to prior claimed copying of other songs, is inadmissible and irrelevant, and not supported by the required analysis. *See,* Objection No. 23.

**11.    Objections to Declaration of Larry Knight (Doc. 118-11)**

**Objection No. 58:**

**Material objected to:** Knight Declaration in its entirety.

**Grounds for objection:** failure to disclose Knight as a witness plaintiff would rely upon, Fed. R. Civ. P. 26(a), 26(e) and 37(c)(1).

Plaintiff did not identify Knight in plaintiff's 2015 Initial Disclosures or his Amended Disclosures served the day of the February 11, 2016 fact discovery cut-off.  Anderson Reply Decl. at 1, ¶¶ 5-6, at 2, ¶ 8, & Exh. 28-29.  Federal Rule of Civil Procedure 26(a) requires the initial disclosure of witnesses the disclosing party may rely upon; 26(e) requires prompt supplementation of those disclosures; and Rule 37(c)(1) precludes the use of undisclosed witnesses.  Since Knight was never disclosed, his Declaration should be stricken.

**Objection No. 59:**

**Material objected to:** page 1, ¶ 3.

**Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; (3) relevance, Fed. R. Evid. 401.

Knight's statements as to the supposed popularity of the Spirit in the United Kingdom and Europe and radio play and sales of Spirit recordings in 1973 are conclusory and uncertain.  Further, the best evidence of radio play and record sales are accountings from performing rights societies (such as BMI and ASCAP, who report the extent to which a song is played on radio) and record companies (who report on record sales), none of those accountings have been produced.  Anderson Reply Decl. at 2, ¶ 11, & Exh. 32.  In addition, Knight specifically limits all of these

assertions to 1973, or two years after *Stairway to Heaven* was recorded and released to the public in the album *Led Zeppelin IV*.  As a result, his assertions are also irrelevant.

**Objection No. 60:**

      **Material objected to:** page 1, ¶ 4.

      **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; and (2) relevance, Fed. R. Evid. 401.

      Knight's assertions as to "[m]any British musicians and popular artists" is conclusory – he identifies only two bands, neither of which are Led Zeppelin – and in any event his assertions as to 1973 are irrelevant.

**Objection No. 61:**

      **Material objected to:** page 2, ¶¶ 12-13.

      **Grounds for objection:** relevance, Fed. R. Evid. 401.

      The claim that Jimmy Page and Wolfe talked in 1973 – two years after the release of *Stairway to Heaven* – is irrelevant to defendants' Motion.

**Objection No. 62:**

      **Material objected to:** page 2, ¶¶ 14-16.

      **Grounds for objection:** (1) conclusory and lack of foundation, including as to personal knowledge, Fed. R. Evid. 602; and (2) relevance, Fed. R. Evid. 401.


**12.**    **Objections to Declaration of Paul Franklin (Doc. 119)**

**Objection No. 63:**

      **Material objected to:** Franklin Declaration, in its entirety.

      **Grounds for objection:** failure to disclose Franklin as a witness plaintiff would rely upon, Fed. R. Civ. P. 26(a), 26(e) and 37(c)(1).

      Plaintiff did not identify Franklin as a witness until February 11, 2016, the day after the fact discovery cut-off, and even then did not provide his address and telephone number, as required by Rule 26(a).  Anderson Reply Decl. at 1, ¶¶ 5-7,

Exh. 6.  Franklin's Declaration is properly disregarded and stricken.

**Objection No. 64:**

     **Material objected to:** page 1, ¶ 3.

     **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; (3) hearsay, Fed. R. Evid. 802; (4) best evidence rule, Fed. R. Evid. 1002; and (5) relevance, Fed. R. Evid. 401.

     Franklin's conclusory assertion that "Randy wrote the song Taurus in 1966," is conclusory, he fails to state facts supporting the assertion.  Also, he fails to produce the supposedly-written Taurus.  In addition, his assertion, whatever he meant by it, is irrelevant because plaintiff sues upon the copyright registered for the 1967 *Taurus* transcription that Hollenbeck Music deposited with the Copyright Office in 1967.

**Objection No. 65:**

     **Material objected to:** 1, ¶ 4.

     **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; and (3) relevance, Fed. R. Evid. 401.

     The grounds for these objections are the same as those for Objection No. 9.

**Objection No. 66:**

     **Material objected to:** 1, ¶ 5.

     **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation for opinion testimony, Fed. R. Evid. 701; and (3) relevance, Fed. R. Evid. 401.

     Franklin's conclusory and unsupported assertion that "Led Zeppelin had lifted his musical composition" is properly disregarded and stricken.

**Objection No. 67:**

     **Material objected to:** 1, ¶ 6.

1   **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance,
2   Fed. R. Evid. 401.

3   Franklin's assertions as to what Wolfe supposedly said four decades ago,
4   offered for the truth of the claimed statements, is hearsay.  It is also irrelevant
5   because the evidence is that Spirit rarely, if ever, performed *Taurus* after the late
6   1968 release of their break-out album, *The Family that Plays Together*, and there is
7   no evidence that any member of Led Zeppelin was present when *Taurus* was
8   performed. *See,* Objections Nos. 1, 9.

9   **Objection No. 68:**

10   **Material objected to:** page 2, ¶¶ 7-8.

11   **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance,
12   Fed. R. Evid. 401.

13   **Objection No. 69:**

14   **Material objected to:** page 2, ¶ 9.

15   **Grounds for objection:** (1) hearsay and hearsay within hearsay, Fed. R. Evid.
16   802 and 805; and (2) relevance, Fed. R. Evid. 401.

17   Franklin's assertions as to what Wolfe supposedly told him Jimmy Page said
18   four decades ago is inadmissible multiple hearsay and properly disregarded and
19   stricken.

20

21   **13.   Objections to Declaration of Barry Hansen (Doc. 119-1)**

22   **Objection No. 70:**

23   **Material objected to:** page 1, ¶ 1.

24   **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed.
25   R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; (3) best evidence rule, Fed. R. Evid.
26   1002, and (4) relevance, Fed. R. Evid. 401.

27   Hansen does not claim to have been present when Spirit performed and does
28   not produce the tape recordings he claims to have.  Also, his assertions as to live and

33

recorded performances of *Taurus* in 1967 and 1968 are irrelevant. *See,* Objections Nos. 9, 44.

**Objection No. 71:**

    **Material objected to:** page 1, ¶ 2, and attached e-mails.

    **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) hearsay, Fed. R. Evid. 802; (3) best evidence rule, Fed. R. Evid. 1002; and (4) relevance, Fed. R. Evid. 401.

    Hanson's e-mails and the assertions in those e-mails are inadmissible for the same reasons as those stated in the preceding Objection.

**14.**    **Objections to Declaration of Bruce Pates (Doc . 119-2)**

**Objection No. 72:**

    **Material objected to:** Pates Declaration, in its entirety.

    **Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local Rule 5-4.3.4.

    This Declaration also is not signed by the declarant and, accordingly, is properly disregarded and stricken. *See,* Objection No. 50.

**Objection No. 73:**

    **Material objected to:** Pates Declaration, in its entirety.

    **Grounds for objection:** relevance, Fed. R. Evid. 401.

    Pates' Declaration, in its entirety, is irrelevant to defendants' Motion.

**Objection No. 74:**

    **Material objected to:** pages 1-2, ¶ 5.

    **Grounds for objection:** (1) lack of foundation as to assertions of similarity, Fed. R. Evid. 701-02; (2) failure to identify as a claimed opinion witness, Fed. R. Civ. P. 37(c)(2); and (3) relevance, Fed. R. Evid. 401.

    Pates' assertions of similarity lack foundation, he was not identified by plaintiff as an expert and his assertions are irrelevant to Defendants' Motion.

**15.     Objections to Declaration of Jay Ferguson (Doc. 119-3)**

**Objection No. 75:**

     **Material objected to:** page 2, ¶ 3.

     **Grounds for objection:** relevance, Fed. R. Evid. 401.

Under established law, the pre-1976 Act performance of a musical composition did not result in the copyright upon which plaintiff sues, and Ferguson's assertion is irrelevant. *See,* Objection No. 9.

**Objection No. 76:**

     **Material objected to:** page 2, ¶ 4.

     **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed. R. Evid. 602; (2) contradicts witness' deposition testimony; and (3) relevance, Fed. R. Evid. 401.

Ferguson's assertion as to when "Taurus was created" lacks foundation and is contrary to established law that the copyright on which plaintiff sues is in the 1967 *Taurus* musical composition that Hollenbeck Music deposited with the Copyright Office when it registered that copyright.

In addition, Ferguson testified that *Taurus* was a work-in-progress that was not completed until Lou Adler recorded it, after the band members entered into the August 29, 1967 recording contract and Wolfe entered into the August 29, 1967 Exclusive Songwriter Agreement.  Ferguson Depo. (Anderson Decl. (Doc. 97-10) Exh. 8) at 197:15 to 198:6, 198:12 to 199:2, 199:3-18.  Ferguson cannot raise a triable issue for plaintiff by contradicting his sworn deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

**Objection No. 77:**

     **Material objected to:** page 2, ¶ 6.

     **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; (3) relevance, Fed. R. Evid. 401.

1   Ferguson's bare assertions, rather than performing rights societies' statements

2   – which have not been produced – as to radio airplay are conclusory, lack foundation

3   and properly disregarded and stricken.

4   **Objection No. 78:**

5       **Material objected to:** pages 2-3, ¶ 7.

6       **Grounds for objection:** (1) lack of foundation as to assertions of similarity,

7   Fed. R. Evid. 701-02; (2) failure to identify as a claimed opinion witness, Fed. R.

8   Civ. P. 37(c)(2); and (3) relevance, Fed. R. Evid. 401.

9       Plaintiff did not identify Ferguson as an expert and Ferguson does not claim to

10  have performed, or even be able to perform, the required expert analysis, let alone as

11  to the relevant 1967 *Taurus* transcription.

12  **Objection No. 79:**

13      **Material objected to:** page 3, ¶ 8.

14      **Grounds for objection:** (1) conclusory and lack of foundation, including

15  personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002;

16  and (3) relevance, Fed. R. Evid. 401.

17      Ferguson's statements as to the popularity of Spirit and sales of Spirit

18  recordings are conclusory, and record company accountings – which have never

19  been produced (Anderson Reply Decl. at 2, ¶ 11, Exh. 32) – are the best evidence of

20  record sales.

21  **Objection No. 80:**

22      **Material objected to:** page 3, ¶ 3, line 8.

23      **Grounds for objection:** (1) lack of foundation as to personal knowledge, Fed.

24  R. Evid. 602; (2) contradicts witness' deposition testimony; and (3) relevance, Fed.

25  R. Evid. 401.

26      Ferguson testified that he recalled only two instances where Led Zeppelin and

27  Spirit performed at the same location on the same date.  Moreover, he has no

28  recollection of performing *Taurus* at any venue where Led Zeppelin was present.

36

Ferguson Depo. (Anderson Decl. Exh. 8) at 38:24 to 39:1, 81:23 to 83:6, 37:20 to 37:1, 108:11-25, & at 21:4-9, 40:22 to 41:3; *see,* Objection No. 76.

**Objection No. 81:**

   **Material objected to:** page 3, ¶ 10.

   **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; (2) lack of foundation as to personal knowledge, Fed. R. Evid.; and (3) relevance, Fed. R. Evid. 401.

   Ferguson's statement that he "was told that Led Zeppelin were fans" is hearsay.  He does not claim to have been present when Led Zeppelin supposedly "performed" *Fresh Garbage* and he fails to establish personal knowledge of his assertions, which are in any event irrelevant because the evidence is undisputed that *Fresh Garbage* was released in England on an album that did not include *Taurus*.

**16.    Objections to Declaration of Plaintiff Michael Skidmore (Doc. 119-4)**

**Objection No. 82:**

   **Material objected to:** Skidmore Declaration, in its entirety.

   **Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local Rule 5-4.3.4.

   This Declaration also is not signed by the declarant and, accordingly, is properly disregarded and stricken.  *See,* Objection No. 50.

**Objection No. 83:**

   **Material objected to:** 1, ¶ 2, lines 20-21.

   **Grounds for objection:**  (1) conclusory and lack of foundation, including as to personal knowledge, Fed. R. Evid. 602; and (2) relevance, Fed. R. Evid. 401.

   Plaintiff's assertions in paragraph 2 are irrelevant to defendants' Motion, including because they post-date the 1971 recording of *Stairway to Heaven*, and his bare assertion that Spirit's "popularity in the UK and throughout Europe was immense," is conclusory, lacks foundation and is, in or after 1973, irrelevant.

///

**Objection No. 84:**

      **Material objected to:** page 2, ¶ 4.

      **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; (3) failure to produce documents, Fed. R. Civ. P. 37(c)(1); and (4) relevance, Fed. R. Evid. 401.

      Plaintiff provides no foundation for his assertions as to the sales of Spirit records in 1968-1971 – indeed, he states he started following them thereafter – and the best evidence of those sales are record company accountings in those years, which plaintiff failed to produce.  Anderson Reply Decl. at 2, ¶ 11, Exh. 32.

**Objection No. 85:**

      **Material objected to:** page 2, ¶ 5.

      **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; and (3) relevance, Fed. R. Evid. 401.

      The best evidence of the contents of the Sony, BMI and ASCAP accounting statements is those accounting statements, yet plaintiff does not provide them and failed to produce any prior to 2000, let alone in the relevant time period prior to 1971.

**Objection No. 86:**

      **Material objected to:** page 3, ¶ 8, and lines 15-16.

      **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; (2) lack of foundation, including as to personal knowledge, Fed. R. Evid. 602; (3) lack of foundation as to opinion of similarity, Fed. R. Evid. 701-02; (4) failure to disclose witness as expert, Fed. R. Civ. P. 37(c); and (5) relevance, Fed. R. Evid. 401.

      The entire paragraph is hearsay, conclusory and irrelevant.  Also, the bare assertion that Led Zeppelin used *Taurus* lacks foundation as either percipient or opinion testimony, and plaintiff was not disclosed as a witness who would provide

opinion testimony.

**Objection No. 87:**

    **Material objected to:** page 4, ¶ 10, and lines 14-16.

    **Grounds for objection:** (1) lack of foundation, including as to personal knowledge, Fed. R. Evid. 602; (2) lack of foundation as to opinion of similarity, Fed. R. Evid. 701-02; (3) failure to disclose witness as expert, Fed. R. Civ. P. 37(c); and (4) relevance, Fed. R. Evid. 401.

    Plaintiff's assertions are irrelevant to defendants' Motion and the conclusory accusation of copying lacks foundation and plaintiff was not disclosed as an expert.

**Objection No. 88:**

    **Material objected to:** pages 4-5, ¶ 12.

    **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; (3) legal conclusion from lay witness, Fed. R. Evid. 701; (4) purports to dispute a deemed admission, Fed. R. Civ. P. 36(b); and (5) relevance, Fed. R. Evid. 401.

    Plaintiff fails to establish personal knowledge of his assertions, including his assertions that whatever recordings he received were in fact recordings from 1967-71 and that *Taurus* is a work for hire. Whether *Taurus* is a work for hire is a legal conclusion, and, by failing to timely respond to requests for admission, plaintiff conclusively admitted *Taurus* is a work for hire. Also, none of plaintiff's assertions establish that *Taurus* was performed or recorded before Wolfe's August 27, 1967 Exclusive Songwriter Agreement with Hollenbeck Music.


**17.    Objections to Declaration of Mike Lee (Doc. 119-5)**

**Objection No. 89:**

    **Material objected to:** Mike Lee Declaration and its attachment, in their entirety.

    **Grounds for objection:** failure to disclose Mike Lee as a witness plaintiff

1  would rely upon, Fed. R. Civ. P. 26(a), 26(e) and 37(c)(1).

2      Plaintiff also did not identify Mike Lee in plaintiff's 2015 Initial Disclosures

3  or his Amended Disclosures served the day after the February 10, 2016 fact

4  discovery cut-off.  Anderson Reply Decl. at 1, ¶¶ 5-6, at 2, ¶ 8, & Exh. 29-30.  Mike

5  Lee's Declaration is properly disregarded and stricken.

6  **Objection No. 90:**

7      **Material objected to:** page 1, ¶ 3, lines 10-11.

8      **Grounds for objection:** (1) conclusory and lack of foundation, including

9  personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002;

10 and (3) relevance, Fed. R. Evid. 401.

11     Mike Lee's assertions as to what was played on KROQ and other stations in

12 "late 1971 and 1973" are irrelevant since *Stairway to Heaven* was recorded by

13 January 1971 and included in the album *Led Zeppelin IV* released later in 1971.  His

14 bare assertion that he recalls other songs, and then adds *Taurus*, "being played

15 before 1971 and after," fails to establish how it is he supposedly remembers that

16 forty-five years later, and fails to state whether he recalls one instance or more.

17     Further, the best evidence of radio airplay in 1968-1971 is accountings from

18 BMI or other performing rights societies, but plaintiff has produced none and neither

19 does the declarant.

20     His conclusory assertions are properly disregarded and stricken.

21 **Objection No. 91:**

22     **Material objected to:** page 1, ¶ 4.

23     **Grounds for objection:** (1) conclusory and lack of foundation, including

24 personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002;

25 and (3) relevance, Fed. R. Evid. 401.

26     Mike Lee provides no facts establishing a personal knowledge of his

27 assertions, which are bare conclusions.

28 ///

**Objection No. 92:**

  **Material objected to:** page 1, ¶ 6.

  **Grounds for objection:** relevance, Fed. R. Evid. 401.

**Objection No. 93:**

  **Material objected to:** page 1, ¶ 7, and attachment.

  **Grounds for objection:** relevance, Fed. R. Evid. 401.


**18.**   <u>Objections to Declaration of Robert Lee (Doc. 119-6)</u>

<u>**Objection No. 94:**</u>

  **Material objected to:** Robert Lee Declaration, in its entirety.

  **Grounds for objection:** failure to disclose Robert Lee as a witness plaintiff would rely upon, Fed. R. Civ. P. 26(a), 26(e) and 37(c)(1).

  Plaintiff also did not identify Robert Lee in plaintiff's 2015 Initial Disclosures or Amended Disclosures.  Anderson Reply Decl. at 1, ¶¶ 5-6, at 2, ¶ 8, & Exh. 29-30.

<u>**Objection No. 95:**</u>

  **Material objected to:** page 1, ¶ 3.

  **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; and (3) relevance, Fed. R. Evid. 401.

  Robert Lee does not state that he personally heard *Taurus* being played on the radio and does not state the extent to which it was supposedly played.  Also, he limits his assertions to 1972-73, which makes them irrelevant because *Stairway to Heaven* had already been recorded and released in 1971 on the album *Led Zeppelin IV*.

<u>**Objection No. 96:**</u>

  **Material objected to:** page 1, ¶ 4.

  **Grounds for objection:** (1) hearsay, Fed. R. Evid. 802; and (2) relevance,

1  Fed. R. Evid. 401.

2      Robert Lee's assertions are hearsay and, in any event, irrelevant to

3  defendants' Motion.

4  **Objection No. 97:**

5      **Material objected to:** page 1, ¶ 5.

6      **Grounds for objection:** relevance, Fed. R. Evid. 401.

7

8  **19.    Objections to Declaration of Mark Andes (Doc. 119-7)**

9  **Objection No. 98:**

10      **Material objected to:** Andes Declaration, in its entirety.

11      **Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local

12  Rule 5-4.3.4.

13      This Declaration also is not signed by the declarant and, accordingly, is

14  properly disregarded and stricken. *See,* Objection No. 50.

15  **Objection No. 99:**

16      **Material objected to:** page 2, ¶ 3.

17      **Grounds for objection:** relevance, Fed. R. Evid. 401.

18      Under established law, the pre-1976 Act performance of a musical

19  composition did not result in a copyrighted work, and Andes' assertions are

20  irrelevant.

21  **Objection No. 100:**

22      **Material objected to:** page 1, ¶ 5.

23      **Grounds for objection:** (1) conclusory and lack of foundation, including

24  personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002;

25  and (3) relevance, Fed. R. Evid. 401.

26      Andes' assertions as to "radio airplay in the late 1960s and early 1970s" is

27  conclusory, does not purport to describe the extent of that radio airplay or where it

28  occurred, and the best evidence of radio airplay in those years is accountings from

performing rights societies, but neither Andes nor plaintiff has produced them.

**Objection No. 101:**

     **Material objected to:** page 1, ¶ 6.

     **Grounds for objection:** (1) conclusory and lack of foundation, including personal knowledge, Fed. R. Evid. 602; (2) best evidence rule, Fed. R. Evid. 1002; (3) relevance, Fed. R. Evid. 401.

     Andes' conclusory statements as to the supposed popularity of Spirit and record sales lack foundation and personal knowledge, and the best evidence of record sales are record company accountings, which plaintiff and Andes did not provide.

**20.**   **Objections to Declaration of Kevin Hanson (Doc. 119-8)**

**Objection No. 102:**

     **Material objected to:** Hanson Declaration and its exhibits, in their entirety.

     **Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local Rule 5-4.3.4.

     This Declaration also is not signed by the declarant and, accordingly, is properly disregarded and stricken. *See,* Objection No. 50.

**Objection No. 103:**

     **Material objected to:** Hanson Declaration and its exhibits, in their entirety.

     **Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

     Hanson, who claims to be musician, also failed to analyze and compare the relevant copyrighted work, namely the 1967 *Taurus* transcription that Hollenbeck Music deposited with the Copyright Office when it registered the copyright in that transcription. Hanson also relies on performance elements and fails to filter out unprotectable elements. Accordingly, his Declaration and exhibits are properly

disregarded and stricken. *See,* Objection No. 44.

**Objection No. 104:**

      **Material objected to:** page 2, ¶ 6.

      **Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2) failure to provide expert reports establishing that copying occurred, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

      Hanson's gratuitous allusions to presumed copying are properly disregarded and stricken.

**Objection No. 105:**

      **Material objected to:** pages 2-3, ¶ 7.

      **Grounds for objection:** (1) failure to apply appropriate analysis; (2) lack of foundation for claimed expert opinions, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

**21.**    **Objections to Declaration of Denny Somach (Doc. 123)**

**Objection No. 106:**

      **Material objected to:** Somach Declaration in its entirety.

      **Grounds for objection:** failure to comply with 28 U.S.C. § 1746 and Local Rule 5-4.3.4.

      This Declaration also is not signed by the declarant and, accordingly, is properly disregarded and stricken. *See,* Objection No. 50.

**Objection No. 107:**

      **Material objected to:** Somach Declaration in its entirety.

      **Grounds for objection:** relevance, Fed. R. Evid. 401.

      Somach, claiming expertise as a "historian and archivist" of Led Zeppelin, is not a musicologist and claims no expertise, and renders no opinion, relevant to defendants' Motion. His Declaration should be disregarded and stricken.

///

**Objection No. 108:**

     **Material objected to:** pages 4-6, ¶¶ 9-12, 14.

     **Grounds for objection:** (1) Federal Rules of Evidence 407 and 408; (2) failure to provide expert reports establishing that copying occurred, Fed. R. Evid. 702; and (3) relevance, Fed. R. Evid. 401.

     Somach's assertions as to similarities claimed or which might theoretically be claimed between other Led Zeppelin recordings and other works besides *Taurus*, are irrelevant. *See,* Objection No. 23.

**22.**    **Objections to Plaintiff's Audio Exhibits**

**Objection No. 109:**

     **Material objected to:** plaintiff's Audio Exhibits other than the recording of Led Zeppelin performing *Stairway to Heaven*.

     **Grounds for objection:** relevance, Fed. R. Evid. 401.

     Plaintiff submits numerous audio exhibits, including purported recreations of *Stairway to Heaven* in its entirety and recordings of plaintiff's versions of constituent recorded parts of *Stairway to Heaven*. However, the allegedly-infringing recording is the publicly-released recording of Led Zeppelin's performance of *Stairway to Heaven*, and plaintiff's recreations and other recordings are irrelevant.

     In addition, plaintiff's audio exhibits include recordings by Led Zeppelin and others as supposed proof that other works were copied. Plaintiff, however, offers no musicological analysis to support the charge of copying other works and, in any event, plaintiff's accusations of other infringements are inadmissible and irrelevant. *See,* Objection 23.

     Accordingly, all of plaintiff's audio recordings, save only the publicly-released recording of Led Zeppelin's performance of *Stairway to Heaven*, are properly disregarded and stricken.

///

///

1    **23.    CONCLUSION**

2          Defendants respectfully request that the Court sustain the foregoing objections

3    and strike the claimed evidence identified above.

4

5    Dated: March 13, 2016                              /s/ Peter J. Anderson
                                                    Peter J. Anderson, Esq.
6                                          LAW OFFICES OF PETER J. ANDERSON
                                                  A Professional Corporation
7                                                   Attorney for Defendants
                                              JAMES PATRICK PAGE, ROBERT
8                                          ANTHONY PLANT, JOHN PAUL JONES,
                                                WARNER/CHAPPELL MUSIC, INC.,
9                                              SUPER HYPE PUBLISHING, INC.,
                                           ATLANTIC RECORDING CORP., RHINO
10                                           ENTERTAINMENT COMPANY and
                                              WARNER MUSIC GROUP CORP.
11
                                                  Helene M. Freeman, Esq.
12                                                 PHILLIPS NIZER LLP
                                                   Attorney for Defendants
13                                              JAMES PATRICK PAGE,
                                            ROBERT ANTHONY PLANT and
14                                               JOHN PAUL JONES

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Tab 1

Case 2:10-cv-08123-JFW-RZ   Document 129-4   Filed 02/08/11   Page 50 of 71   Page
ID #:1778

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**PRIORITY SEND**

### CIVIL MINUTES -- GENERAL

Case No.    **CV 10-8123-JFW (RZx)**                    Date: February 8, 2011

Title:    Ebony Latrice Batts, et al. -*v*- William Adams, Jr., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**     **ATTORNEYS PRESENT FOR DEFENDANTS:**
             None                                                None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER DENYING MOTION OF PLAINTIFFS FOR**
**PRELIMINARY INJUNCTION [filed 1/10/11; Docket No.**
**54]**

        On January 10, 2011, Plaintiffs Ebony Latrice Batts a/k/a Phoenix Phenom and Manfred
Mohr (collectively, "Plaintiffs") filed a Motion for Preliminary Injunction ("Motion").  On January 18,
2011, Defendants William Adams, Allan Pineda, and Jaime Gomez, all individually and collectively
as the music group The Black Eyed Peas; Jaime Munson a/k/a Poet Name Life; will.i.am music, llc;
Tab Magnetic Publishing; Cherry River Music Co.; Jeepney Music, Inc.; Stacy Ferguson p/k/a
Fergie; Headphone Junkie Publishing, LLC; and EMI April Music Publishing, Inc. filed their
Opposition.  On January 18, 2011, Defendants UMG Recordings, Inc. and Interscope Records filed
their Joinder to Opposition and Opposition.  On January 18, 2011, Defendants Stacy Ferguson
p/k/a Fergie; Headphone Junkie Publishing, LLC; and EMI April Music Publishing, Inc. filed their
Joinder to Opposition filed by Defendants UMG Recordings, Inc. and Interscope Records.  On
January 24, 2011, Plaintiffs filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil
Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the
papers without oral argument.  The matter was, therefore, removed from the Court's February 7,
2011 hearing calendar and the parties were given advance notice.  After considering the moving,
opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.       Factual and Procedural Background**

        Plaintiffs wrote and recorded the song "Boom Dynamite," containing both music and vocals,
in 2007.  On April 10, 2009, a Certificate of Registration, Certification No. SR0000625557, for
"Boom Dynamite" was issued to Plaintiffs by the United States Copyright Office.  Plaintiffs have
never sold, transferred, or otherwise disposed of their statutory copyrights in "Boom Dynamite."

Page 1 of  12

**TAB 1**

**47**

Initials of Deputy Clerk  _sr_

On or about March 30, 2009, the Black Eyed Peas, a musical group consisting of Defendants William Adams, Allan Pineda, Jaime Gomez, and Stacy Ferguson, wrote, recorded and released "Boom Boom Pow" as the first single from their album *The E.N.D. (Energy Never Dies).* "Boom Boom Pow" is the Black Eyed Peas' second best selling song to date, it was iTunes' highest selling song of 2009, it was selected as Song of the Year for 2009 by *Billboard Magazine,* and "Boom Boom Pow" was nominated for a Grammy for Best Dance Recording. "Boom Boom Pow" has also been licensed and used in several nationwide commercials, television shows, the 2009 movie *G Force*, and a re-mixed version of the song was licensed for use in the 2009 movie *G.I. Joe: The Rise of Cobra.*

Plaintiffs first heard Defendants' song "Boom Boom Pow" in March 2009. On January 26, 2010, ten months after they first heard "Boom Boom Pow," Plaintiffs filed a Complaint in the United States District Court for the Northern District of Illinois, alleging that "Boom Boom Pow" infringed the copyright in their song "Boom Dynamite." Although the Court heard multiple motions during the pendency of the action, Plaintiffs never sought injunctive relief in the Illinois action. On April 27, 2010, the District Court dismissed the action, and granted Plaintiffs nearly one month to re-file their Complaint in an appropriate forum. Plaintiffs decided not to re-file their Complaint, but, instead, approached the defendants about a potential settlement. After defense counsel concluded that settlement negotiations would not be productive and in an effort to end any further delay, defense counsel requested a final settlement demand. Plaintiffs' "final" demand letter was received on August 20, 2010, and it advised counsel that if the defendants did not agree to pay a certain amount of money within seven days, Plaintiffs would "proceed to file a lawsuit and seek a preliminary injunction." On August 27, 2010, defense counsel rejected Plaintiffs' settlement demand and invited Plaintiffs' counsel to contact him if he wanted to discuss the matter. Plaintiffs' counsel never contacted defense counsel and Plaintiffs never filed their threatened lawsuit until this action was filed on October 28, 2010. In their Complaint, Plaintiffs allege that the Black Eyed Peas, their record labels, and their publishers[1] (collectively, "Defendants") committed willful copyright infringement of Plaintiffs' song "Boom Dynamite" when the Black Eyed Peas wrote and recorded "Boom Boom Pow." On January 10, 2010, nearly two years after Plaintiffs first heard "Boom Boom Pow," Plaintiffs filed the instant Motion, asking the Court to enjoin Defendants from continuing to perform or distribute "Boom Boom Pow."

## II.    Legal Standard

Injunctive relief is "an extraordinary remedy that may only be issued upon a clear showing that plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365, 376 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.*; *see, also, American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit recently confirmed that its "serious questions" approach survived *Winter* when applied as part of the four element *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, __ F.3d __, 2011 WL 208360, *7 (9th Cir. Jan. 25, 2011). In other words, "'serious questions going to

---

[1]  The record labels and publishers include Defendants Jaime Munson a/k/a Poet Name Life; will.i.am music, llc; Tab Magnetic Publishing; Cherry River Music Co.; Jeepney Music, Inc.; Headphone Junkie Publishing, LLC; and EMI April Music Publishing, Inc.

Case 2:15-cv-03462-RGK-AGR   Document 129-4  Filed 03/14/16   Page 52 of 71   Page
ID #:3283
Case 2:10-cv-04462-GK-WGRz   Document 129   Filed 02/09/14   Page 395 of 71   Page ID #:3283

the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*

As explained below, Plaintiffs have failed to establish that any of these factors weigh in Plaintiffs' favor.

## III.     Discussion

### A.     Plaintiffs Have Failed to Demonstrate A Likelihood of Success on the Merits.

A party seeking a preliminary injunction must make a clear showing of likelihood of success on the merits of its claim. *American Trucking Association*, 559 F.3d at 1052. In order to establish their copyright infringement claim, Plaintiffs must prove: (1) ownership of a valid copyright[2], and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). The plaintiff bears the burden of proof as to both elements. As to the second element, Plaintiff must establish that the Black Eyed Peas copied protected elements of "Boom Dynamite" either through evidence of direct copying or through a showing that the Black Eyed Peas had access to Plaintiffs' copyrighted work and that the two works at issue are substantially similar. *Three Boys Music*, 212 F.3d at 481; *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004).

In this case, Plaintiffs have failed to present any evidence of direct copying, and, instead, Plaintiffs argue that the Black Eyed Peas had access to "Boom Dynamite" through Defendant Interscope Records ("Interscope") and because "Boom Dynamite" was widely disseminated.

### 1.     Plaintiffs Have Failed to Establish Access to "Boom Dynamite."

In order to prove access, the plaintiff must demonstrate that the defendant has a "reasonable opportunity" or "reasonable possibility" of viewing the plaintiff's work prior to the creation of the infringing work. *Three Boys Music*, 212 F.3d at 482. Reasonable access requires more than a "bare possibility" and "may not be inferred through mere speculation or conjecture." *Id.* "In order to support a claim of access, a plaintiff must offer 'significant affirmative and probative evidence.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 52 (2d Cir. 2003) (affirming summary judgment against plaintiff on issue of access where plaintiff produced "no reasonable documentation that he actually mailed tapes of the allegedly infringed work").

Access is typically proven through circumstantial evidence "in one of two ways:  (1) a particular chain of events is established between the plaintiff's work and the defendant's access to

---

[2]  While Defendants do not concede that Plaintiffs can demonstrate ownership of a valid copyright in the song "Boom Dynamite," they have not opposed the issuance of a preliminary injunction on that ground. Thus, the Court will assume, for purposes of this Motion only, that Plaintiffs do own a valid copyright in "Boom Dynamite."

Case 2:15-cv-03462-RGK-AGR    Document 129-4   Filed 03/14/16   Page 53 of 71   Page
ID #:3284
Case 2:10-cv-03462-RGK-WRZ    Document 129-4   Filed 02/03/14   Page 406 of Page   Page
ID #:1378

that work (such as through deals with a publisher or record company), or (2) the plaintiff's work has
been widely disseminated." *Three Boys Music*, 212 F.3d at 482.

In this case, Plaintiffs attempt to prove access by establishing a chain of events linking
Plaintiffs' "Boom Dynamite" with the Black Eyed Peas.  Specifically, Plaintiffs argue that the Black
Eyed Peas had access to "Boom Dynamite" because a third-party sent Interscope President
Jimmy Iovine "an e-blast flyer" informing its recipients of "Boom Dynamite," and providing a link to
the YouTube music video of the song.  Plaintiffs also argue that Black Eyed Peas had access to
"Boom Dynamite" because Plaintiff Mohr submitted a copy of the song to Troy Marshall, a Vice-
President at Interscope, as a result of Marshall's purported interest in one of Plaintiff Batts' other
songs.

With respect to the e-blast flyer, Plaintiffs fail to submit any admissible evidence that the e-
blast flyer was ever sent to Iovine or that Iovine ever received it.  *Jorgensen*, 351 F.3d at 52
(rejecting plaintiff's claim that the mailing of tapes to a corporation could "be equated with access"
where there was no evidence that the tapes were ever received); *Meta-Film*, 586 F.Supp. at 1357-
58 (rejecting the "bare corporate receipt doctrine").  Even assuming that Plaintiffs could establish
that the e-blast flyer was sent to and received by Iovine, they have failed to present any evidence
that Iovine or anyone else at Interscope records forwarded "Boom Dynamite" to the Black Eyed
Peas.  *Tisi v. Patrick*, 97 F.Supp. 2d 539, 547 (S.D.N.Y. 2000) (holding that unsolicited submission
to a record company does not establish access by a recording artist); *Dimmie v. Carey*, 88 F.Supp.
2d 142 (S.D.N.Y. 2000) (same).  An inference of access "requires more than a mere allegation that
someone known to the defendant possessed the work in question."  *Herzog v. Castle Rock
Entertainment*, 193 F.3d 1241, 1252 (11th Cir. 1999); *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir.
1996) (rejecting claim of access based upon a "tortious [*sic*] chain of hypothetical transmittals").

Similarly, Plaintiffs have failed to demonstrate that Marshall, whose job responsibilities do
not include providing creative input to recording artists, was ever in a position to or did in fact
provide "Boom Dynamite" to the Black Eyed Peas.  Marshall explicitly states in his declaration that
he does not recall ever receiving music from Plaintiff Mohr, does not recall listening to "Boom
Dynamite," and that "[i]t is not [his] practice to send music directly to artists, and [he] is confident
that [he has] never sent any music to will.i.am or anyone connected with the Black Eyed Peas."
Marshall Declaration, ¶ 5.

Therefore, the Court concludes that Plaintiffs have failed to establish that they sent "Boom
Dynamite" to either Iovine or Marshall at Interscope or that "Boom Dynamite" ever reached the
Black Eyed Peas.

Plaintiffs have also failed to prove their alternative theory of access, which is based on their
claim that Black Eyed Peas had access to "Boom Dynamite" because it was widely disseminated.
In music cases, widespread dissemination has traditionally been demonstrated "through sales of
sheet music, records, and radio performances."  *Three Boys*, 212 F.3d at 482.  For example, in
*Three Boys*, the Ninth Circuit held that substantial evidence supported a jury's finding of access
where the copyrighted song enjoyed significant radio airplay for over 20 years.  *Id.* at 483-85.
However, in *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003), the Ninth Circuit
held there was no evidence of widespread dissemination of a video even though 19,000 copies
were sold over a 13-year period.  *See, also, Art Attack Ink, LLC v. MGA Entertainment, Inc.*, 581

Case 2:15-cv-03462-RGK-AGR   Document 129-4 Filed 03/14/16   Page 54 of 71   Page
ID #:3295
Case 2:10-cv-04223-GK-WRZ   Document 187   Filed 02/08/11   Page 5 of 12   Page ID #:1777

F.3d 1138, 1144 (9th Cir. 2009) (holding that no widespread dissemination existed, despite the fact that the tee-shirt design at issue in the case was available at a display booth, on individuals wearing the tee-shirt, and via the internet).

        In support of their widespread dissemination theory of access, Plaintiffs presented evidence that "Boom Dynamite" was posted on YouTube, Amazon.com, and iTunes in approximately early January 2008; "Boom Dynamite" received regular radio play in Chicago, Illinois from approximately February until March 2008; and "Boom Dynamite" was licensed to Airplay Records for release in the French market.  However, as Defendants point out, the posting of videos and/or songs on YouTube, Amazon.com, and iTunes by an unknown singer, the limited two months of radio play in a single city in the United States, and the limited licensing of the song in France "can only be described as the modern day equivalent of looking for a needle in a haystack – where the alleged seeker does not know the needle exists, and isn't looking for it."  Opposition, 4:27-5:1.  The Court concludes that such dissemination is hardly "widespread" and, in fact, is quite limited, and clearly insufficient to support a finding of access.

        After reviewing the evidence offered by Plaintiffs, the Court concludes Plaintiffs have raised no more than a "bare possibility" that the Black Eyed Peas may have had access to "Boom Dynamite" under either of their theories of access, and "[i]n and of itself, such a bare possibility is insufficient to demonstrate access."  *Jason*, 526 F.Supp. at 776-77.  Accordingly, Plaintiffs have failed to establish that the Black Eyed Peas had access to "Boom Dynamite."

### 2.    Plaintiffs Have Failed to Demonstrate Substantial Similarity Between "Boom Dynamite" and "Boom Boom Pow."

        In addition to access, Plaintiffs must also demonstrate that the copyrighted work and the allegedly infringing work are substantially similar.[3]  *See Three Boys Music*, 212 F.3d at 481.  To determine whether two works are substantially similar, the Ninth Circuit applies a two-part test consisting of extrinsic and intrinsic components.  *Rice*, 330 F.3d at 1178.  The extrinsic test involves an objective comparison of the two works.  The Court must consider "whether two works share a similarity of ideas and expression as measured by external, objective criteria."  *Swirsky*, 376 F.3d at 845.  The extrinsic test requires an "analytical dissection" of the works, and is often aided by expert testimony.  *Id.*  The extrinsic test allows the fact finder to focus on elements that are copyright protected and away from elements that a copyright in a musical work does not protect.  *See, e.g., Id.*  The intrinsic component of the substantial similarity test is subjective and "depends solely on the response of the ordinary reasonable person."  *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985).  "To that extent, expert testimony or the comparison of individual features of the works is inappropriate in applying the intrinsic test."  *Id.*  Instead, "the trier of fact ordinarily decides whether the 'total concept and feel' of the two works is substantially similar."[4]

─────────────────────

        [3]  Because Plaintiffs are unable to establish access, the inverse ratio rule is inapplicable in this case.  *See, e.g., Three Boys Music*, 212 F.3d at 485 (holding that the inverse ratio rule "require[s] a lower standard of proof of substantial similarity when a high degree of access is shown").

        [4]  In deciding this Motion, the Court concludes that only the extrinsic test is important in determining whether Plaintiffs are likely to succeed on the merits.  *See, e.g., Kroft*, 16 F.3d at 1045

Case 2:15-cv-03462-RGK-AGR    Document 129-4   Filed 03/14/16    Page 55 of 71   Page
ID #:3286
Case 2:10-cv-03462-RGK-WRZ    Document 129-4   Filed 02/03/14   Page 609 of 71   Page
ID #:3286

*Id.*; *Kroft*, 16 F.3d at 1045.

The Ninth Circuit has identified a methodology to assist the Court in applying the extrinsic test to the works at issue in a particular case.  Initially, it is the plaintiff's burden to identify the sources of the alleged similarity between the two works.  *See Apple Computer*, 35 F.3d at 1443; *see, also, Three Boys Music*, 212 F.3d at 485.  Once the plaintiff has identified the alleged similarities, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright."  *See Apple Computer*, 35 F.3d at 1443.  The typical objective features to be compared vary depending on the type of works at issue.  *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1177-78 (C.D. Cal. 2001); *see, also, Swirsky*, 376 F.3d at 849 (holding that "music is comprised of a large array of elements, some combination of which is protectable by copyright.").  When analyzing the similarity of musical compositions under the extrinsic test, a variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics.  *Swirsky*, 376 F.3d at 849.

However, in comparing these elements, the Court must first filter out any "unprotectable elements."  *See, e.g., Apple Computer*, 35 F.3d at 1443; *see, also, Mattel, Inc. v. MGA Entertainment, Inc.,* 616 F.3d 904, 913-14 (9th Cir. 2010)*; Cavalier*, 297 F.3d at 822 ("when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination."); *Swirsky*, 376 F.3d at 845 ("Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work") (emphasis in the original).  Among the "unprotectable elements" which the court must "filter" out in its comparison of a copyrighted work and an allegedly infringing work are "'ideas,' as distinguished from the 'expression' of those ideas," and "other information over which no individual is entitled to claim a monopoly," including "elements borrowed from the public domain; instances in which a particular 'expression' at issue 'merges' with the 'idea' being expressed; and/or a similar instance in which the form of the 'expression' is so 'standard' in the treatment of a given 'idea' that it constitutes a *scenes a faire*, or a 'scene which must be done.'"  *Idema*, 162 F. Supp. 2d at 1176-77 (internal citations omitted); *see, also, Intersong-USA v. CBS, Inc.*, 757 F.Supp. 274, 282 (S.D.N.Y. 1991) (dismissing claim where only alleged similarities were "found in many other well-known songs," and, thus, constituted "unoriginal" and "unprotectable expression").

In addition to the works themselves and Plaintiffs' declarations, Plaintiffs offer the declarations of their expert musicologists, Mr. Kevin Byrnes and Dr. Alexander Stewart, in support of their claim that substantial similarities exist between protectable elements in the works.  Although Plaintiffs' experts point out alleged similarities between the two works, they fail to note any relevant prior art, any differences between the two works, and neglect to filter out any of the unprotectable elements.  Instead, Mr. Byrnes and Dr. Stewart merely offer a list of their perceived similarities between the two works without any discussion or analysis of whether these similarities

---

(holding that a plaintiff that cannot satisfy the extrinsic test necessarily loses on summary judgment because a jury cannot find substantial similarity without evidence on both the extrinsic and intrinsic tests).

Case 2:15-cv-03462-RGK-AGR   Document 129-4   Filed 03/14/16   Page 56 of 71   Page
ID #:3787
Case 2:10-cv-03683-GK-WRZ   Document 169-4   Filed 02/03/14   Page 7 of 12   Page ID #:1378

consist of protectable or unprotectable elements.[5]  In fact, many of the similarities identified by Plaintiffs' experts consist of nothing more than standard treatments of common elements often present in popular music or prior art, and, thus, must be filtered out before applying the extrinsic test.[6]  *See, e.g., McRae v. Smith*, 968 F.Supp. 559, 567 (D. Colo. 1997) ("Plaintiff's experts have failed to refute the evidence of dissimilarities in these nonprotectable areas and instead focus their analysis on areas that are common to songs of the country western genre and therefore must be filtered out before the comparison is made.").  For example, some of the more generic elements found in popular music that Plaintiffs and their experts rely on as examples of similarities between the two works include: (1) use of 4/4 meter; (2) use of a tempo within the range of *moderato* to *allegro*; (3) a length of three to five minutes; (4) use of a structure that includes an introduction, verse, a repeating chorus that represents the hook of the work, a breakdown, and an outro; (5) use of drums in combination with electronic instruments and sounds; (6) drum beats characterized by the bass drum being heard on beat one, and the snare drum or hand claps being heard on beats two and/or four; and (7) use of the word "boom" in repetition three or more times and set to a

_____

[5]  Defendants filed *Daubert* objections under Federal Rule of Evidence 702 to the declarations of Mr. Byrnes and Dr. Stewart.  Defendants do not seriously challenge their qualifications and the Court concludes that Mr. Byrnes and Dr. Stewart are qualified to offer their opinions relating to the extrinsic component of the substantial similarity test.  However, Defendants do challenge and object to their opinions primarily on the ground that under *Daubert* their proffered opinions are not reliable.  After considering Defendants' objections, the Court concludes that with the exception of Mr. Byrnes and Dr. Stewart's opinions relating to the intrinsic component of the substantial similarity test and their legal opinions and conclusions which are inadmissible (*Swirsky*, 376 F.3d at 847; *Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)), Defendants' objections go to the weight of the evidence rather than its admissibility.  Although Mr. Byrnes and Dr. Stewart's opinions relating to the extrinsic component of the substantial similarity test are admissible, the Court concludes that their opinions are entitled to very little weight because they are fundamentally flawed due to their failure to properly analyze the alleged similarities in accordance with relevant Ninth Circuit law as discussed above.  Plaintiffs' declarations are similarly flawed and entitled to little if any weight.  Plaintiffs also point out, but do not properly analyze, the alleged the similarities between the two works in their declarations.  In addition, they offer inadmissible conclusions that the Black Eyed Peas copied "Boom Dynamite."

[6]  In addition, a number of the similarities listed in the declarations of Plaintiff Batts, Plaintiff Mohr, Dr. Stewart, and Mr. Byrnes contradict one another and/or are factually incorrect and cast doubt on the credibility of Plaintiffs' evidence. For example, Plaintiff Batts states that "Boom Dynamite" has a tempo of 110 beats per minute and "Boom Boom Pow" has a tempo of 120 beats per minute while Plaintiff Mohr, Dr. Stewart, and Mr. Byrnes state that "Boom Dynamite" has a tempo of 120 beats per minute and "Boom Boom Pow" has a tempo of 130 beats per minute.  In addition, Plaintiff Batts, Plaintiff Mohr, and Mr. Brynes describe the structure of both songs as: "a short instrumental introduction with back chatter, chorus, first verse, chorus, second verse, bridge with instrumental theme, breakdown, repeat of first verse, final chorus, and both songs end with a coda."  However, Dr. Stewart describes the structure of the two songs as "intro, chorus, verse 1, verse 2, chorus, verse 3, breakdown, verse (repeat), chorus, and ending (fade)."

Initials of Deputy Clerk _sr_

rhythm that includes syncopation.[7]  *See, e.g., Tisi*, 97 F.Supp. 2d at 548-49 (holding that key center, tempo, common chord structure/harmonic progression, and stock rhythms are "not copyrightable as a matter of law"); *Intersong-USA*, 757 F.Supp. at 282 (holding that generic structure, patterns, harmonic progression, and rhythms as contained in composition were common musical elements and, thus, not copyrightable); *Johnson*, 409 F.3d at 20-24 (holding that common harmonic progressions and lyrics not protected).

Defendants offer the declaration and report of their expert musicologist, Dr. Lawrence Ferrara, which contain a persuasive comparative analysis of similarities and differences between the protectable elements of the two works and a comparative analysis of the two works in relation to prior art.  Dr. Ferrara concludes that the two works do not share any significant structural, harmonic, rhythmic, melodic, or lyrical similarities, and to the extent there are any relevant similarities, those similarities are not significant, are not original to "Boom Dynamite," and are heard within the context of many differences.  Some of the fundamental differences between the two works that Dr. Ferrara discusses in his report include: (1) differences in the metric placement, grouping, and duration of the "boom" lyrics in the choruses; (2) harmonic structure; (3) instrumentation; (4) arrangement and spatial organization of instruments; (5) specific motives employed in accompanying material, vocals, lyrics, and electronic effects used.[8]

The Court concludes based on the musicologists' testimony and its own review of the songs that Plaintiffs have failed to produce sufficient evidence that would support a finding that they are likely to succeed in proving that "Boom Dynamite" and "Boom Boom Pow" are substantially similar.[9]  Plaintiffs have simply failed to properly identify any shared similarities of protected

---

[7]  Plaintiffs correctly argue that a combination of unprotectable elements may qualify for copyright protection.  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994).  However, "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes original work of authorship."  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).  In this case, Plaintiffs have failed to demonstrate that the unprotectable elements in "Boom Dynamite" are numerous enough or original enough in their selection and arrangement to qualify for copyright protection.

[8]  Plaintiffs understandably decided not to object to Dr. Ferrara's declaration and report.  In contrast to Plaintiffs' experts, the Court found that Dr. Ferrara's declaration fully complied with the methodology identified by the Ninth Circuit and that he reliably and persuasively applied that methodology to the facts of this case.  The Court also found Dr. Ferrara's detailed report, especially the visual exhibits, extremely helpful to the Court in applying the extrinsic test for substantial similarity to the works in the case.  Perhaps cross-examination will expose some weakness in Dr. Ferrara's opinions, but based on this record, the Court gave significant weight to Dr. Ferrara's opinions in reaching its conclusions on the issue of substantial similarity.

[9]  Although Dr. Stewart submitted a rebuttal declaration with Plaintiffs' Reply, Dr. Stewart's rebuttal declaration consists mostly of complaints about Dr. Ferrara's opinions which were largely designed to defend his opinions and did not add in any significant way to the analysis of the substantial similarity of the works.  For example, when confronted with Dr. Ferrara's extensive analysis of prior art, Dr. Stewart simply dismisses Dr. Ferrara's testimony by stating that he did

Initials of Deputy Clerk  _sr_

elements and have also failed to explain why the significant differences between the two works
should be overlooked.

## B.     Plaintiffs Have Failed to Demonstrate Irreparable Injury.

The party seeking preliminary injunctive relief is required to "establish that he is likely to
suffer irreparable harm in absence of preliminary relief." *Winter,* 555 U.S. 7, 129 S.Ct. at 374.

Until recently, a plaintiff alleging copyright infringement has been entitled to a presumption
of irreparable harm. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir.
1999); *Cadence Design Sys., Inc. v. Avanti! Corp.*, 125 F.3d 824, 826–27 (9th Cir. 1997) (holding
that a presumption of irreparable harm arises where the plaintiff is able to show a likelihood of
success on the merits of its copyright infringement claim).   Although the Ninth Circuit has not yet
settled the debate on the viability of the presumption of irreparable harm in intellectual property
cases, a district court in a recent decision extensively analyzed the continued viability of the
presumption of irreparable injury in light of *Winter v. Natural Resources Defense Council*, 555 U.S.
7, 129 S.Ct. 365 (2008), and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and
concluded that there can be no presumption of irreparable harm in assessing the need for
preliminary relief in a copyright case. *Aurora World, Inc. v. Ty Inc.*, 719 F.Supp. 2d 1115, 1166-69
(C.D. Cal. Dec. 15, 2009).

The Court agrees with *Aurora* and concludes that following *Winters* and *eBay*, irreparable
injury cannot be presumed in copyright infringement cases.   Rather, it is the plaintiff's burden to
prove that he is likely to suffer irreparable harm in the absence of preliminary relief.[10]  Melville B.
Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06 (2011) ("No longer applicable is the
presumption of irreparable harm."); *Hologic, Inc. v. Senorx, Inc.*, 2008 WL 1860035, *15 (N.D.Cal.
Apr. 25, 2008) (holding that it is "doubtful that the Supreme Court intended for the presumption to
survive for purposes of preliminary injunctions"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,
Ltd.*, 518 F. Supp.2d 1197, 1214 (C.D.Cal. 2007) ("The *eBay* Court held that it is Plaintiffs who
'must demonstrate' (meaning, have the burden of proof) that the traditional factors favor a

---

consider prior art but did not include any discussion in his initial declaration because he did not find
the prior art to be similar to "Boom Dynamite."  Of course, Dr. Stewart conveniently forgot to
mention the results of his work or that he even did such work in his initial declaration.  Until the
parties have the opportunity to develop additional evidence and Plaintiffs' experts have an
opportunity to develop and perhaps refine their opinions, nothing contained in Dr. Stewart's rebuttal
declaration detracts from the persuasiveness of Dr. Ferrara's opinions.

[10]  *Aurora* distinguished *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571
F.3d 873, 877 (9th Cir. 2009), by noting that the Ninth Circuit appeared to apply *Winter* and did not
consider the impact of the Supreme Court's decision in *eBay.  See, Aurora World,* 719 F.Supp. 2d
at 1169, fn. 112.  Plaintiffs' reliance on *Summit Entertainment, LLC v. Beckett Media, LLC*, 2010
WL 147958 (C.D. Cal. Jan. 12, 2010), is not helpful to their argument.  The Court agrees with
Defendants that *Summit Entertainment* simply noted the case law describing this presumption and
then made a factual determination that the plaintiffs had "in fact, demonstrated that irreparable
harm was likely."  Joinder to Opposition and Opposition, p. 7, fn. 4; *see, also, Summit
Entertainment*, 2010 WL 147958, at *4.

permanent injunction.").

Plaintiffs erroneously argue that this Court can infer irreparable harm if they establish likelihood of success on their claim.[11]  Plaintiffs rely on pre-*Winter* case law and appear to misunderstand the applicable standard for preliminary injunctive relief.  As a result, Plaintiffs merely rely on unpersuasive argument instead of evidence to support their position that they will suffer irreparable harm in the absence of preliminary relief.  Plaintiffs' showing is clearly insufficient to meet their burden of demonstrating irreparable injury, especially in light of Plaintiffs' unreasonable delay and the adequacy of monetary damages.

Plaintiffs' delay in seeking injunctive relief weighs heavily against granting a preliminary injunction in this case.  *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief"); *Hi-Rise Technology, Inc. v. Amateurindex.com*, 2007 WL 1847249, at * 4 (W.D. Wash. June 27, 2007) ("Such a long delay in seeking relief weighs against granting a temporary restraining order or a preliminary injunction.").  In this case, although Plaintiffs had many opportunities, Plaintiffs waited twenty-two months – *nearly two years* – from the time they first heard "Boom Boom Pow" before they sought any form of injunctive relief.  The Court finds that the delay in this case was clearly unreasonable, and that Plaintiffs' delay further demonstrates a lack of urgency and irreparable harm.  *See, e.g., Protech Diamond Tools Incorporation v. Liao, No. C 08-3684 SBA*, 2009 WL 1626587, *6 (N.D. Cal. June 8, 2009) ("delay alone . . . [is] sufficient to undermine the Plaintiff's claim of immediate, irreparable harm"); *see, also, Playboy Enterprises v. Netscape Communications Corp.*, 55 F.Supp. 2d 1070, 1080 (C.D. Cal. 1999) (finding that a five month delay demonstrated lack of irreparable harm), *aff'd*, 202 F.3d 278 (9th Cir. 1999); *Metro-Media Broadcasting Corp. v. MGM/UA Entertainment Co.*, 611 F.Supp. 415, 427 (C.D. Cal. 1985) (denying motion for preliminary injunction where plaintiff delayed four months in seeking injunction; *High-Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556-57 (Fed. Cir. 1995) (holding that a 17 month delay "militates against the issuance of a preliminary injunction").

The Court also concludes that monetary relief can adequately and completely compensate Plaintiffs for their alleged injuries, and, therefore, it is extremely unlikely that Plaintiffs will suffer irreparable injury if injunctive relief is denied.[12]  Irreparable injury does not exist where monetary damages would provide an adequate remedy.  *See California Pharmacists Association v. Maxwell-Jolly*, 563 F.3d 847, 851 (2009) ("monetary harm does not constitute irreparable harm"); *Los*

---

[11]  Even if Plaintiffs are correct, irreparable injury cannot be presumed in this case because the Court concludes that Plaintiffs have not established a likelihood of success on the merits.

[12]  In fact, Plaintiffs themselves tacitly admit that their alleged injuries can be compensated with monetary relief.  Plaintiffs ask that, as part of any injunction, all profits from sales of "Boom Boom Pow" be placed in an escrow account pending the outcome of the litigation.  Moreover, Plaintiffs' ADR Program Questionnaire, filed on January 28, 2011 (Docket No. 94), confirms that the real remedy Plaintiffs seek in this action is an award of money damages.  Specifically, in the ADR Program Questionnaire, they state that "Plaintiffs seek actual damages, including lost profits and disgorgement of Defendants' profits, and songwriting credit for the infringing song, 'Boom Boom Pow,' in turn entitling them to future revenue from the song."

Initials of Deputy Clerk __sr__

*Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (*quoting Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.")); *Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1145 (9th Cir. 1989) (injuries compensable by money damages are not usually deemed irreparable); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988) (declining to enjoin distribution of "Rear Window" because plaintiff could "be compensated adequately for the infringement by monetary compensation"). Therefore, Plaintiffs have not established that they are likely to suffer irreparable injury in absence of preliminary relief.

### C.      The Balance of Hardships Weighs in Favor of Defendants.

An injunction may not issue unless the balance of hardships tips sharply in favor of the moving party. *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). In this case, the Court finds Plaintiffs have failed to demonstrate that the balance of hardships tips sharply in their favor. The record is devoid of any evidence that the Plaintiffs will suffer irreparable injury if the injunction is denied. By contrast, Defendants will suffer significant financial damage and damage to their reputations if the Court issues an injunction preventing them from exploiting their work through sales, performances, and with current and potential licensees. Balanced against the absence of any showing of irreparable harm to Plaintiffs, the substantial harm to Defendants strongly weighs against the issuance of an injunction. *See, e.g., LucasFilm Ltd. v. Media Market Group, Ltd.*, 182 F.Supp. 2d 897, 901 (N.D. Cal. 2002) (denying preliminary injunction where balance of hardships did not tip sharply in plaintiff's favor because issuance of injunction would cause the defendant "significant financial hardship" and threaten its First Amendment rights); *see, also, Chase-Riboud v. Dreamworks, Inc.*, 987 F.Supp. 1222, 1233 (C.D Cal. 1997) (holding that balance of hardships did not tip sharply in plaintiff's favor where plaintiff was seeking to enjoin release of "Amistad" after defendants had invested approximately $70-75 million in the movie).

### D.      The Public Interest Does Not Support the Issuance of a Preliminary Injunction.

In this case, Plaintiffs argue that an injunction would serve the "public interest in upholding intellectual property rights such as copyright protections" by maintaining "the integrity of the music industry" and "deter[ring] major labels and super-star artists from engaging in similar conduct."

Although Plaintiffs overstate what is at stake in this case, the Court agrees that, in viable claims of copyright infringement of a musical work, the issuance of an injunction serves the public interest by upholding intellectual property rights and helping to deter others from engaging in infringing activities. However, given the lack of evidence demonstrating that their song, "Boom Dynamite," has been infringed by Defendants, the issuance of an injunction in this case would not be in the public interest.

### IV.      Conclusion

Initials of Deputy Clerk  _sr_

For all the foregoing reasons, Plaintiffs' Motion is **DENIED**.

IT IS SO ORDERED.

Initials of Deputy Clerk __sr__

**TAB 1**

**58**

Tab 2

Case 2:15-cv-03462-RGK-AGR Document 129-4 Filed 03/14/16 Page 63 of 71 Page
Case 2:10-cv-08123-JFW-RZ Document 129-4 Filed 03/14/16 Page 1 of 9 Page ID #:3294
ID #:3294

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**PRIORITY SEND**

### CIVIL MINUTES -- GENERAL

Case No.   **CV 10-8123-JFW (RZx)**                    Date:  October 21, 2011

Title:     Ebony Latrice Batts, et al. -*v*- William Adams, Jr., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                            None

**PROCEEDINGS (IN CHAMBERS):**       **ORDER GRANTING DEFENDANTS' MOTION FOR
                                      SUMMARY JUDGMENT [filed 5/27/11; Docket No. 117]**

On May 27, 2011, Defendants William Adams, Allan Pineda, and Jaime Gomez, all individually and collectively as the music group The Black Eyed Peas; Jaime Munson a/k/a Poet Name Life; will.i.am music, llc; Tab Magnetic Publishing; Cherry River Music Co.; and Jeepney Music, Inc. ("Adams Defendants") filed a Motion for Summary Judgment ("Motion"). On June 6, 2011, Plaintiffs Ebony Latrice Batts a/k/a Phoenix Phenom and Manfred Mohr (collectively, "Plaintiffs") filed their Opposition, including a request for a continuance pursuant to Federal Rule of Civil Procedure ("Rule") 56(d). On June 13, 2011, Defendants filed a Reply. On June 20, 2011, the Court granted Plaintiffs' Rule 56(d) Request, and continued the hearing on the Adams' Defendants Motion from June 27, 2011, to September 26, 2011. On September 6, 2011, Plaintiffs filed their Supplemental Opposition. On September 16, 2011, the Adams Defendants filed a Supplemental Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's September 26, 2011 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

Initials of Deputy Clerk   sr

Case 2:15-cv-03462-RGK-AGR   Document 129-4   Filed 03/14/16   Page 64 of 71   Page
Case 2:10-cv-08489-JFW-AGR   Document 231   Filed 02/21/14   Page 2 of 9   Page ID #:3295
ID #:3295

## I.      Factual and Legal Background[1]

Plaintiffs wrote and recorded the song "Boom Dynamite," containing both music and vocals, in 2007.  On April 10, 2009, a Certificate of Registration, No. SR0000625557, for "Boom Dynamite" was issued to Plaintiffs by the United States Copyright Office.  Plaintiffs have never sold, transferred, or otherwise disposed of their statutory copyrights in "Boom Dynamite."

On or about March 30, 2009, the Black Eyed Peas, a musical group consisting of Defendants William Adams, Allan Pineda, Jaime Gomez, and Stacy Ferguson, wrote, recorded and released "Boom Boom Pow" as the first single from their album *The E.N.D. (Energy Never Dies).*  "Boom Boom Pow" is the Black Eyed Peas' second best selling song to date, it was iTunes' highest selling song of 2009, it was selected as Song of the Year for 2009 by *Billboard Magazine,* and "Boom Boom Pow" was nominated for a Grammy for Best Dance Recording.  "Boom Boom Pow" has also been licensed and used in several nationwide commercials, television shows, the 2009 movie *G Force*, and a re-mixed version of the song was licensed for use in the 2009 movie *G.I. Joe: The Rise of Cobra*.

Plaintiffs first heard Defendants' song "Boom Boom Pow" in March 2009.  On January 26, 2010, ten months after they first heard "Boom Boom Pow," Plaintiffs filed a Complaint in the United States District Court for the Northern District of Illinois, alleging that "Boom Boom Pow" infringed the copyright in their song "Boom Dynamite."  On April 27, 2010, the District Court dismissed the action, and granted Plaintiffs nearly one month to re-file their Complaint in an appropriate forum.  Plaintiffs decided not to re-file their Complaint, but, instead, approached the defendants about a potential settlement.  After defense counsel concluded that settlement negotiations would not be productive and in an effort to end any further delay, defense counsel requested a final settlement demand.  Plaintiffs' "final" demand letter was received on August 20, 2010, and it advised counsel that if the defendants did not agree to pay a certain amount of money within seven days, Plaintiffs would "proceed to file a lawsuit and seek a preliminary injunction."  On August 27, 2010, defense counsel rejected Plaintiffs' settlement demand and invited Plaintiffs' counsel to contact him if he wanted to discuss the matter.  Plaintiffs' counsel never contacted defense counsel and Plaintiffs never filed their threatened lawsuit until this action was filed on October 28, 2010.  In their Complaint, Plaintiffs allege that the Black Eyed Peas, their record labels, and their publishers[2] committed willful copyright infringement of Plaintiffs' song "Boom Dynamite" when the Black Eyed Peas wrote and recorded "Boom Boom Pow."

---

[1]  To the extent any of these facts are disputed, they are not material to the disposition of this motion.  In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

[2]  The record labels and publishers include Defendants Jaime Munson a/k/a Poet Name Life; will.i.am music, llc; Tab Magnetic Publishing; Cherry River Music Co.; Jeepney Music, Inc.; Headphone Junkie Publishing, LLC; and EMI April Music Publishing, Inc.

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.  *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case."  *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  "This requires evidence, not speculation."  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999).  The Court must assume the truth of direct evidence set forth by the opposing party.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom.  *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party."  *American International Group*, 926 F.2d at 836-37.  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III.    Discussion

### A.     Standard for Demonstrating Copyright Infringement

To prove copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright[3], and (2) that a defendant copied constituent elements of the protected work that are original.  *See, e.g., Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  Because direct evidence of copying is rarely available

---

[3] While the Adams Defendants do not concede that Plaintiffs can demonstrate ownership of a valid copyright in the song "Boom Dynamite," they have not sought summary judgment on that ground.  Thus, the Court will assume, for purposes of this Motion only, that Plaintiffs do own a valid copyright in "Boom Dynamite."

Initials of Deputy Clerk  sr

and copying can therefore be difficult to prove, a plaintiff "may establish copying by showing (1) circumstantial evidence of access to the protected work and (2) substantial similarity of 'ideas' and 'expression' between the copyrighted work and the allegedly infringing work." *Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *aff'd*, 698 F.2d 966 (9th Cir. 1982); *see also Three Boys Music*, 212 F.3d at 481 ("Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'").

Even if the Court assumes that the Adams Defendants had access to Plaintiffs' "Boom Dynamite," to prove copying Plaintiffs must also demonstrate that the copyrighted work and the allegedly infringing work are substantially similar.[4]  *See Three Boys Music*, 212 F.3d at 481. "'Substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997). Only protected expression is relevant for purposes of assessing substantial similarity.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990); *see also Smart Inventions, Inc. v. Allied Communications Corp.*, 94 F. Supp. 2d 1060, 1066 (C.D. Cal. 2000) ("It is an axiom of copyright law that ideas are not protected.").  "[T]he party claiming infringement may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements."  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)) (emphasis in original).

To determine whether two works are substantially similar, the Ninth Circuit employs a two-part analysis - an extrinsic and an intrinsic test.[5]  "The 'extrinsic test' is an objective comparison of specific expressive elements" which "'focuses on articulable similarities'" between the two works. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).  "The intrinsic test is a subjective test that focuses on whether the ordinary, reasonable audience would recognize the [Defendants'] work as a dramatization or picturization of the [P]laintiff's work." *Kouf*, 16 F.3d at 1045 (internal quotations omitted).  "For summary judgment, only the extrinsic test is important."  *Id.*  "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Id.*

---

[4]  While the Adams Defendants dispute that they had access to Plaintiffs' "Boom Dynamite," the Adams Defendants are not moving for summary judgment based on lack of access.  Therefore, for purposes of deciding this Motion only, the Court will assume that the Adams Defendants did have access to Plaintiffs' "Boom Dynamite."

[5]  "[O]riginally . . . the extrinsic prong was a test of similarity of ideas based on external criteria; analytic dissection and expert testimony could be used, if helpful.  The intrinsic prong was a test for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance.  As it has evolved, however, the extrinsic test now objectively considers whether there are substantial similarities in *both* ideas and expression, whereas the intrinsic test continues to measure expression subjectively."  *Apple Computer*, 35 F.3d at 1442.  "Because the criteria incorporated into the extrinsic test encompasses all objective manifestations of creativity, the two tests are more sensibly described as objective and subjective analyses of expression, having strayed from *Krofft's* division between expression and ideas."  *Shaw*, 919 F.2d at 1357.

Initials of Deputy Clerk _sr_

Case 2:15-cv-03462-RGK-AGR   Document 129-4   Filed 03/14/16   Page 67 of 71   Page
ID #:3298
Case 2:15-cv-03462-JFW-AGR   Document 120   Filed 11/23/15   Page 5 of 9   Page ID #:2236

The Court recognizes that summary judgment is not favored on questions of substantial similarity in copyright cases.  *See e.g., Shaw*, 919 F.2d at 1355.  Summary judgment is only appropriate if "no reasonable juror could find substantial similarity of ideas and expression, viewing the evidence in the light most favorable to the nonmoving party."  *Kouf*, 16 F.3d at 1045; *see also Pasillas*, 927 F.2d at 442 ("Our circuit has expressed a certain disfavor for summary judgment on questions of substantial similarity, but it is nevertheless appropriate to grant summary judgment if, considering the evidence and drawing all inferences from it in the light most favorable to the nonmoving party, no reasonable jury could find that the works are substantially similar in idea and expression.").  Although summary judgment is generally disfavored on the question of substantial similarity, "summary judgment is proper when the Court determines that the similarity between works is insubstantial as a matter of law."  *Jason*, 526 F. Supp. at 777.  Indeed, the Ninth Circuit has "frequently . . . affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity."  *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).

The Ninth Circuit has identified a methodology to assist the Court in applying the extrinsic test to the works at issue in a particular case.  Initially, it is the plaintiff's burden to identify the sources of the alleged similarity between the two works.  *See Apple Computer*, 35 F.3d at 1443; *see, also, Three Boys Music*, 212 F.3d at 485.  Once the plaintiff has identified the alleged similarities, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright."  *See Apple Computer*, 35 F.3d at 1443; *see also Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) ("At the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable").  The typical objective features to be compared vary depending on the type of works at issue.  *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1177-78 (C.D. Cal. 2001); *see, also, Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (holding that "music is comprised of a large array of elements, some combination of which is protectable by copyright.").  When analyzing the similarity of musical compositions under the extrinsic test, a variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics.  *Swirsky*, 376 F.3d at 849.

However, in comparing these elements, the Court must first filter out any "unprotectable elements."  *See, e.g., Apple Computer*, 35 F.3d at 1443; *see, also, Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010)*; Cavalier*, 297 F.3d at 822 ("when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination."); *Swirsky*, 376 F.3d at 845 ("Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work") (emphasis in the original).  Among the "unprotectable elements" which the court must "filter" out in its comparison of a copyrighted work and an allegedly infringing work are "'ideas,' as distinguished from the 'expression' of those ideas," and "other information over which no individual is entitled to claim a monopoly," including "elements borrowed from the public domain; instances in which a particular 'expression' at issue 'merges' with the 'idea' being expressed; and/or a similar instance in which the form of the 'expression' is so 'standard' in the treatment of a given 'idea' that it constitutes a *scenes a faire*, or a 'scene which must be done.'"  *Idema*, 162 F. Supp. 2d at 1176-77 (internal citations omitted); *see, also, Intersong-USA v. CBS, Inc.*, 757 F.Supp. 274, 282 (S.D.N.Y. 1991) (dismissing claim where only alleged similarities were "found in many other well-known

Case 2:15-cv-03462-RGK-AGR   Document 129-4   Filed 03/14/16   Page 68 of 71   Page
ID #:3299
Case 2:15-cv-03462-RGK-AGR   Document 23   Filed 01/21/16   Page 6 of 9   Page ID #:927

songs," and, thus, constituted "unoriginal" and "unprotectable expression").

**B.     Application of the Copyright Infringement Standard to this Case.**

In this case, the Adams Defendants move for summary judgment on Plaintiffs' sole claim for relief for copyright infringement on the grounds that, as a matter of law, Plaintiffs cannot establish "Boom Boom Pow" is substantially similar to Plaintiffs' "Boom Dynamite."  Plaintiffs argue that the works are substantially similar as demonstrated by the report of their expert musicologists, Dr. Alexander Stewart.[6]  Plaintiffs argue that "Boom Boom Pow" and "Boom Dynamite" (1) have similar hooks; (2) both use the phrase "I got that" followed by the repeated use of the word "boom;" and (3) have similar secondary hooks.  In addition, Plaintiffs argue that the two works share many similar non-protectable elements, including that: (1) both songs are in Phrygian mode; (2) both songs use a kick drum behind every spoken "boom" as a method of emphasizing the word; (3) both songs have nearly identical structures, including the peculiar repeated placement of the second half of the first verse prior to the final chorus; (4) both songs have a nearly identical drum pattern that is very simplistic and devoid of any cymbals; (5) both songs contain the same theme; and (6) both songs contain the same repeated motif of "I got that" followed by a short phrase or words in a nearly identical rhythm and metric placement in respective three eight note picks starting in the same place and leading to the downbeat on beat one.  While Plaintiffs admit these "similarities are ideas, and thus by themselves not protectable expression," Plaintiffs argue that the combination of these non-protectable elements is protectable.

**1.     The Allegedly Protectable Elements in "Boom Dynamite" Are Not Substantially Similar to the Elements in "Boom Boom Pow."**

An examination of each of the three allegedly protectable elements reveals that there are substantial and significant differences between "Boom Boom Pow" and "Boom Dynamite."  For example, Plaintiffs claim that both works have similar hooks and use the similar phrase "I got that" followed by the repeated use of the word "boom."  However, in his deposition testimony, Dr. Stewart agreed with Dr. Ferrara that several differences exist, including that: (1) the autonomous phrase "I got that boom, boom, boom" is never iterated in "Boom Dynamite" but is iterated a total of three times in "Boom Boom Pow;" (2) the phrase "I got that boom boom boom boom boom" (with five "booms" instead of three) is iterated 10 times in "Boom Dynamite," but never in "Boom Boom Pow;" (3) the phrase "I got that boom boom boom boom boom" is heard in the chorus of "Boom Dynamite" while the phrase "I got that boom boom boom" is heard in the verse section of "Boom Boom Pow;" (4) the rhythmic duration of the three "boom" lyrics in "Boom Boom Pow" is different than the first three of five "boom" lyrics in "Boom Dynamite;" (5) the metric placement of the

---

[6]  Plaintiffs also argue that, at a minimum, a genuine issue of material fact exists with respect to whether the works are substantially similar because of the conflicting expert reports of Dr. Stewart, and the Adams Defendants' expert musicologist, Dr. Lawrence Ferrara.  However, "the mere existence of dueling expert reports does not necessarily create a triable issue of fact." *Gable v. National Broadcast Co.*, 727 F.Supp. 2d 815, 836-37 (C.D. Cal. 2010); *see also Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (affirming defense summary judgment in copyright case where the parties each submitted expert reports).

Initials of Deputy Clerk _sr_

repeating "boom" lyrics in "Boom Boom Pow" is different than "Boom Dynamite;"[7] (6) there are no sixteenth notes in any of the pickups preceeding the repeating "boom" lyrics in "Boom Dynamite," but they are present in "Boom Boom Pow;" (7) the repeating "boom" lyrics are never set to multiple pitches in "Boom Dynamite," but "Boom Boom Pow" includes several instances of repeating "boom" lyrics which are set to at least two different pitches; (8) the repeating "boom" lyrics in "Boom Boom Pow" include multiple ascending octave and major sixth intervals whereas there are none in "Boom Dynamite;" and (9) although the hooks of the works occur in the chorus, they are different because the hook of "Boom Boom Pow" is "gotta get get boom boom boom" (not "I got that boom boom boom") and the hook of "Boom Dynamite" is "I got that boom dynamite," a phrase that does not appear in "Boom Boom Pow."

In addition, while Plaintiffs argue that both works have similar secondary hooks, Dr. Stewart again agrees with Dr. Ferrara that there are several differences, including that: (1) the phrase "let the beat rock" used in "Boom Boom Pow" contains a 50 percent difference in wording compared to the phrase "make the beat go" used in "Boom Dynamite;" (2) the phrase "make the beat go" is heard only one time in the breakdown of "Boom Dynamite" while the phrase "let the beat rock" is heard three times in the breakdown of "Boom Boom Pow" and is set to rhythms that are not present in "Boom Dynamite;" and (3) the phrase "make the beat go" is heard very early in the breakdown of "Boom Dynamite" whereas "let the beat rock" is not heard until more than 25 measures have passed in the breakdown of "Boom Boom Pow."

Accordingly, the Court concludes that there are numerous substantial and significant differences between "Boom Boom Pow" and "Boom Dynamite" with respect to each of the three allegedly protectable elements identified by Plaintiffs, and based upon those differences, the Court concludes that no reasonable jury could find that "Boom Boom Pow" and "Boom Dynamite" are substantially similar in idea and expression.

## 2. The Non-Protectable Elements in "Boom Dynamite" Are Not Entitled to Copyright Protection.

Plaintiffs' arrangement of admittedly non-protectable elements is not entitled to copyright protection. "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 347-51 (1991) ("Common sense tells us that 100 uncopyrightable facts do not magically change their status when gathered together in one place"). In this case, Dr. Stewart identifies several non-protectable elements that he claims are the same in both "Boom Boom Pow" and "Boom Dynamite." He also refers to a "unique and distinct arrangement" and "the special arrangement and combination of 'non-protectable' elements," but he fails to state what that arrangement actually is, or how that arrangement is unique, distinct, or special. In his deposition testimony, Dr. Stewart was unable to identify the criteria Plaintiffs employed in selecting and

---

[7] The repeating "boom" lyrics in "Boom Boom Pow" are iterated on the first, fourth, and seventh sixteenth beats, whereas the first three of the five repeating "boom" lyrics in "Boom Dynamite" are heard on the first, seventh, and eleventh sixteenth beats.

Initials of Deputy Clerk __sr__

Case 2:15-cv-03462-RGK-AGR  Document 129-4  Filed 03/14/16  Page 70 of 71  Page
ID #:3301
Case 2:15-cv-03462-JFW-AGR  Document 29  Filed 03/14/16  Page 8 of 9  Page ID #:429

arranging the constituent elements of "Boom Dynamite."  In *Onofrio v. Reznor*, the Ninth Circuit
rejected the mere identification of similar non-protectable elements in two works as entitling a
plaintiff to copyright protection:

> Onofrio relies on the testimony of his expert, Dr. Erica Muhl, to show such similarity.
> Although Dr. Muhl uses the appropriate legal phrases throughout her report
> comparing the songs of Onofrio and Reznor, her conclusions are not supported with
> fact or analysis. Her report identifies and lists several unprotectable musical elements
> that she found in both Onofrio's songs and the comparable songs by Reznor, but she
> fails to explain how the arrangement or combination of those unprotected elements in
> Onofrio's songs created an original, protectable expression which was then copied by
> Reznor. Thus, the district court did not err in finding that Onofrio failed to raise a
> material issue of disputed fact concerning the similarity of the songs.

208 F.3d 222 (9th Cir. 2000); *see, also,  Moore v. Columbia Pictures Industries, Inc.,* 972 F.2d 939,
946 (8th Cir.1992) (summary judgment proper where expert testimony presented by non-moving
party is inconclusive and unsubstantiated); *McRae v. Smith,* 968 F.Supp. 559, 565-66
(D.Colo.1997) (summary judgment proper where expert testimony presented by non-moving party
fails to distinguish between protectable and common, nonprotectable elements of a song).

In addition, at his deposition, Dr. Stewart acknowledged the obvious differences in many of
the non-protectable elements that his report characterized as being the same or similar in "Boom
Boom Pow" and "Boom Dynamite."  For example, Dr. Stewart stated in his report that both songs
have a nearly identical drum pattern; however, he candidly admitted at his deposition that the
drumbeats in both works are commonplace and widely used.  He also admitted that the drumbeat
in "Boom Dynamite" is more similar to the drumbeats in Tony Basil's "Mickey" (1982) and Salt-N-
Pepa's "Push-it" (1987) than to the basic drumbeat in "Boom Boom Pow."[8]  Dr. Stewart admitted
that the drumbeats found in "Boom Dynamite" include the use of shaker, tambourine, and cowbell,
and that none of these elements are present in "Boom Boom Pow."[9]

Accordingly, the Court concludes that while "Boom Boom Pow" and "Boom Dynamite"
contain similarities, those similarities encompass elements that are not protectable and Plaintiffs
have failed to demonstrate that the selection, coordination, and arrangement of those non-
protectable elements created an original, protectable expression that was then copied by the

---

[8]  In a desperate attempt to save his conclusion that "Boom Boom Pow" is substantially
similar to "Boom Dynamite," Dr. Stewart claims that the similarities among the drumbeats in "Boom
Dynamite," "Mickey," and "Push-it" are merely the result of coincidence, but, conversely and
contradictorily, he claims that the (fewer) similarities between the drumbeats in "Boom Dynamite"
and "Boom Boom Pow" are evidence of copying.

[9]  Dr. Stewart also agreed that the length of the two works is different, both in terms of
passage of time and number of measures present in each work, and that the two works have
different tempos.  In addition, Dr. Stewart admitted that while the two works have similar structures
and are written in the same genre, thousands of works have been written using a similar structure
or in that same genre.

Case 2:15-cv-03462-JFW-AGR   Document 131   Filed 03/14/16   Page 9 of 9   Page ID #:3080

Adams Defendants.

## IV.    Conclusion

For all the foregoing reasons, the Court concludes that viewing the evidence in the light most favorable to Plaintiffs, no reasonable jury could find substantial similarity of ideas and expression in "Boom Boom Pow" and "Boom Dynamite."  Accordingly, the Court concludes as a matter of law that the Adams Defendants are entitled to summary judgment, and their Motion is **GRANTED**.  In light of the Court's ruling on the merits of Plaintiffs' claim and because the identical law and facts on the issue of substantial similarity apply to all of the defendants, the Court also concludes that the remaining defendants, Stacy Ferguson p/k/a Fergie; Headphone Junkie Publishing, LLC; EMI April Music Publishing, Inc.; UMG Recordings, Inc.; and Interscope Records ("Non-Moving Defendants"), are entitled to judgment on Plaintiffs' claim.  Accordingly, the Court exercises its discretion and *sua sponte* **GRANTS** summary judgment as to the Non-Moving Defendants.  *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) ("[T]he district court has the authority to decide an issue on summary judgment *sua sponte*, if the losing party was on notice to come forward with its evidence").

IT IS SO ORDERED.

Initials of Deputy Clerk __sr__