Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 105
Media, PA 19063
T: (215) 500-1000; F: (215) 500-1005
E: francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T: (310) 557-9200; F: (310) 557-0224
E: gkulik@kgslaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SKIDMORE, as Trustee for
the RANDY CRAIG WOLFE TRUST,

             Plaintiff,

      v.

LED ZEPPELIN; JAMES PATRICK
PAGE; ROBERT ANTHONY PLANT;
JOHN PAUL JONES; SUPER HYPE
PUBLISHING, INC.; WARNER MUSIC
GROUP CORP., Parent of
WARNER/CHAPPELL MUSIC, INC.;
ATLANTIC RECORDING
CORPORATION; RHINO
ENTERTAINMENT COMPANY,

            Defendants.

Case No. 15-cv-03462 RGK (AGRx)

Hon. R. Gary Klausner

**PLAINTIFF'S MEMORANDUM OF
CONTENTIONS OF FACT AND
LAW**

# TABLE OF CONTENTS

MEMORANDUM OF CONTENTIONS OF FACT AND LAW ......................................1

I.   FACTUAL BACKGROUND ..............................................................................1

II.  CLAIMS AND DEFENSES ...............................................................................3

A.   PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ..............................................3
   1.   Summary of Claims Plaintiff Has Pled and Intends to Pursue: .................3
     Plaintiff's Complaint alleges four claims against Defendants: ....................3
     (a)   Claim 1: Direct Copyright Infringement..........................................3
     (b)   Claim 2: Contributory Copyright Infringement ...............................3
     (c)   Claim 3: Vicarious Copyright Infringement .....................................3
     (d)   Claim 4: Right of Attribution...........................................................3
   2.   Elements of Proof Required to Establish Plaintiff's Claims and Supporting Evidence .........3

B.   DEFENDANTS' DEFENSES AGAINST PLAINTIFF ...........................................5
   1.   Summary of Defendants' Affirmative Defenses: ......................................5
   2.   Elements of Defendants' Affirmative Defenses and Plaintiff's Key Evidence Against ......5
     (a)   Independent creation:........................................................................5
     (c)   Fair Use:............................................................................................6
     (d)   Laches: ..............................................................................................7
     (e)   Statute of Limitations: ......................................................................7
     (f)   Abandonment: ...................................................................................8
     (g)   Waiver:..............................................................................................9
     (h)   Ratification: ......................................................................................9
     (i)   Unclean Hands: .................................................................................9
     (j)   Innocence: .........................................................................................9
     (k)   Preemption: .....................................................................................10
  C.   ANTICIPATED EVIDENTIARY ISSUES .........................................................10
  D.   ANTICIPATED LEGAL ISSUES ....................................................................13

IV.  BIFURCATION OF ISSUES...........................................................................14

V.   JURY TRIAL ..................................................................................................14

VII. ABANDONMENT OF ISSUES .......................................................................14

1

## **TABLE OF AUTHORITIES**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

## I.      FACTUAL BACKGROUND

Randy Wolfe was a musical genius. In early 1966 at age 15, his family moved to New York where in June, he met Jimi Hendrix. The two became fast friends and played shows together that summer. When summer ended, Hendrix was offered an opportunity to go to London to form a new band (The Jimi Hendrix Experience) and wanted Randy to go with him. However, Randy's mother thought he was too young so when Hendrix went to London Randy's family moved back to California in September 1966.

That fall, when he returned to high school, Randy met a girl who would later become his wife. To impress her, he wrote a song. Her astrological sign was Taurus, so Randy named his new song *Taurus.* Also that fall, Randy formed a band called Spirits Rebellious with two of his school friends, Jay Ferguson and Mark Andes. In late 1966 through the summer of 1967, they played every week in Hollywood at a club called the Ash Grove. One of the songs they played every night was *Taurus,* which remained Randy's favorite song until the day he died.

The family eventually moved in 1967 from Ojai to Santa Monica.  Brian Berry, brother of singer Jan Berry of "Jan and Dean" fame, heard the band rehearsing and knocked on the door to introduce himself. <u>Id.</u>  This led to a fast friendship, and it was Berry who later introduced Spirit to Lou Adler, owner of Hollenbeck and Ode Records, which signed the band to a recording contract on August 29, 1967. Hollenbeck filed a copyright for *Taurus* that listed Randy California as the author. As Taurus was written well before the 1967 contract, and that musical material preexisted the work for hire provision in that contract, Taurus is not a work for hire. At a minimum Wolfe retained beneficial ownership of Taurus.

The first Spirit album was released in late 1967. The band later embarked that same year on a lengthy tour in support of the album, which features, among other cuts, *Taurus* and another song called *Fresh Garbage.* The group Led Zeppelin, originally named "The New Yardbirds," was formed in 1968 in England.  It consisted of Page,

Plant, bassist John Paul Jones, and drummer John Bonham (now deceased).   On December 26, 1968, Led Zeppelin performed its first show in the United States. The show took place in Denver, Colorado, and the group was the opening act that night for Spirit. Led Zeppelin experienced equipment failures that evening so the members of Spirit had to loan the band some of its equipment.

Led Zeppelin and Spirit continued to play shows together, and even when the members of Led Zeppelin were not performing, they came to Spirit shows to watch.  In interviews at the time, Page expressed his affection for Spirit, their music, and their performances. In homage to Spirit, Led Zeppelin had been performing the Spirit song *Fresh Garbage* at its own shows. At one point in 1969, Page asked Randy to teach him the introduction to *Taurus*, which Randy showed him several times.

Led Zeppelin began writing *Stairway to Heaven* in 1970.  They created the first part then but did not create the second half of the song until a bit later. *Stairway to Heaven* was released on the album "Led Zeppelin IV" on November 8, 1971. On April 14, 1973, Randy confronted Page about the similarity between *Taurus* and *Stairway to Heaven*. Page became defensive and, although he acknowledged copying *Taurus*, told Randy that for every lawyer Randy hired he would hire 20, inferring Randy that he would be buried if he dared to file a suit. Led Zeppelin's members, namely Plant and Page, have repeatedly admitted in public interviews that they wrote many Led Zeppelin songs by taking the music of other artists and "lifting" it without attribution. Plant stated in a 2004 NPR interview that Led Zeppelin had indeed lifted music from other artists and that this was "naïve" and "irresponsible" but part of the "game."

In 1996, Randy registered a renewal copyright for *Taurus* in his own name.  Randy was hounded by the media, the public, and his family and friends about the similarity between the two songs. He considered filing a lawsuit many times, but by the time he got his nerve to do anything he was told by lawyers that the suit would be barred by the passage of time. Still, until shortly before his tragic drowning in Hawaii on January 2, 1997, he was still being urged to sue and was considering it.

After his death a trust was created in Randy Wolfe's name. A court order from the California Superior Court explicitly approved the transfer of Wolfe's intellectual property to the Trust and the property was so transferred. As a result the Trust owns Randy Wolfe's copyrights and intellectual property, including in Taurus.

Plaintiff's music experts are clear that the material allegedly copied from Taurus in Stairway to Heaven is significant and protectable. They are further clear that Stairway to Heaven is substantially similar to Stairway to Heaven; in fact, they opine that it is so similar that independent creation is precluded.

## II.   CLAIMS AND DEFENSES

### A.   PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

**1.   Summary of Claims Plaintiff Has Pled and Intends to Pursue:**

Plaintiff's Complaint alleges four claims against Defendants:

> (a)   Claim 1: Direct Copyright Infringement
>
> (b)   Claim 2: Contributory Copyright Infringement
>
> (c)   Claim 3: Vicarious Copyright Infringement
>
> (d)   Claim 4: Right of Attribution

**2.   Elements of Proof Required to Establish Plaintiff's Claims and Supporting Evidence**

> **(a)   Elements Required to Prove Plaintiff's Claim for Direct Copyright Infringement and Evidence in Support**

Plaintiff has the burden of proving both of the following by a preponderance of the evidence:

> 1.   Counter-Claimants are the owners of a valid copyright; and
>
> 2.   Plaintiffs and Counter-Defendants copied original elements from the copyrighted work.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.4 (2007); 17 U.S.C. § 501(a)-(b).

Evidence: Plaintiff hereby incorporates by reference the evidence described in Part I of this memorandum which shows that Plaintiff owns Taurus and that Defendants engaged in infringement.

### (b) Elements Required to Prove Plaintiff's Claim for Contributory Copyright Infringement and Evidence in Support

Plaintiff has the burden of proving both of the following by a preponderance of the evidence:

1. Plaintiffs or Counter-Defendants knew or had reason to know of the infringing activity of Plaintiffs; and

2. Plaintiffs or Counter-Defendants intentionally induced or materially contributed to Plaintiffs' infringing activity.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.21 (2007).

Plaintiff hereby incorporates by reference the evidence described in Part I of this memorandum which shows that Plaintiff owns Taurus and that Defendants induced and/or materially contributed to the infringement of the works that are the subject of this lawsuit.

### (c) Elements Required to Prove Plaintiff's Claim 3 for Vicarious Copyright Infringement and Evidence in Support

Counter-Claimants have the burden of proving both of the following by a preponderance of the evidence:

1. Plaintiffs or Counter-Defendants profited directly from the infringing activity;

2. Plaintiffs or Counter-Defendants had the right and ability to supervise or control the infringing activity of Plaintiffs;

3. Plaintiffs or Counter-Defendants failed to exercise that right and ability.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.20 (2007).

Plaintiff hereby incorporates by reference the evidence described in Part I of this memorandum which shows that Plaintiff owns Taurus and that Defendants profited

directly from the infringing activity, had the right and ability to supervise or control the infringing activity, and failed to exercise that right and ability.

> **(d)   Elements Required to Prove Plaintiff's Claim 4 for Right of Attribution and Evidence in Support**:

To establish its Fourth Claim for Relief for Right of Attribution, Plaintiff must prove by a preponderance of the evidence that:

.

**B.   DEFENDANTS' DEFENSES AGAINST PLAINTIFF**

>   **1.   Summary of Defendants' Affirmative Defenses:**
>
>>   **(a)   Independent creation:**
>>
>>   **(b)   De minimis use**:
>>
>>   **(c)   Fair Use**:
>>
>>   **(d)   Laches**:
>>
>>   **(e)   Statute of Limitations**:
>>
>>   **(f)   Abandonment**:
>>
>>   **(g)   Waiver**:
>>
>>   **(h)   Ratification**:
>>
>>   **(i)   Unclean Hands**:
>>
>>   **(j)   Innocence**:
>>
>>   **(k)   Preemption**:
>>
>>   **(l)   Modification**:
>
>   **2.   Elements of Defendants' Affirmative Defenses and Plaintiff's Key Evidence Against**
>
>>   **(a)   Independent creation:**

Defendants contend that they never heard of Taurus, barely knew of Spirit, and created Stairway to Heaven without having ever heard of Taurus. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 US 340, 345 (1991).

*Evidence Against*: Please see the evidence described in Part I.  There is copious evidence of access and copying in the record, as delineated in Part I of this memorandum. In addition, Plaintiff's experts will testify that Stairway to Heaven and Taurus are so strikingly similar that independent creation is precluded. Furthermore, Defendants Page and Plant have repeatedly stated in authenticated interviews that Led Zeppelin wrote music by taking the work of other artists without credit.

### (b)    De minimis use:

The average audience would not recognize the appropriation. *See Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004).

*Evidence Against*: Plaintiff is unaware of the basis of this affirmative defense. Defendants have not previously raised this defense during the litigation other than to assert it in their answer. The expression at issue is eminently recognizable as Plaintiff's musical experts will testify and as is obvious to the average listener. It is not of the length or quality that could plausibly be characterized as de minimis.

### (c)    Fair Use:

Defendants have the burden of proving Fair Use by a preponderance of the evidence. In determining whether the use made of the work was fair, the following factors are considered:

1.    The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2.    The nature of the copyrighted work;

3.    The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.    The effect of the use upon the potential market for or value of the copyrighted work.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.18 (2007); 17 U.S.C. § 107.

*Evidence Against*: Plaintiff is unaware of the basis of this affirmative defense. Defendants have not previously raised this defense during the litigation other than to assert it in their answer. In any case, the commercial value of Stairway to Heaven and the iconic and distinctive nature of the copied musical expression demonstrate that the copied portions of Taurus are not fair use. Furthermore, Led Zeppelin admits writing much of their music by "lifting" the music of other artists without attribution, the antithesis of fair use. Please see the evidence described in Part I.

**(d)    Laches**:

Plaintiffs and Counter-Defendants must establish by a preponderance of the evidence:

1.    Counter-Claimants had full knowledge of the infringing acts alleged in the suit;

2.    Counter-Claimants intentionally delayed filing the lawsuit;

3.    That delay in filing was for an unreasonably long and inexcusable period of time, and

4.    Plaintiffs and Counter-Defendants have been or will be prejudiced in a significant way due to Counter-Claimants' delay.

*See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001). A laches defense is not available for willful infringement. *Ory v. Country Joe McDonald*, No. CV 01-8177 NM (A), 2003 WL 22909286, at *10 (C.D. Cal. Aug. 5, 2003) *aff'd sub nom. Ory v. McDonald*, 141 F. App'x 581 (9th Cir. 2005).

*Evidence Against*: Please see the evidence described in Part I. Under *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1972-74 (2014), laches is no defense to infringement committed in the limitations period set by 17 U.S.C. § 507. Moreover, the intentional nature of the infringement committed by Defendants, as part of their overall intentional "lifting" of music to write their songs, also defeats any laches defense.

**(e)    Statute of Limitations**:

Under *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1972-74 (2014), Plaintiff may recover for any infringements in the 3-year limitations period set by 17 U.S.C. § 507.

> **(f)   Abandonment**:

To find abandonment, "the copyright owner must have clearly manifested that intention through some affirmative act." *Hadady Corp. V. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990).

*Evidence Against*: Plaintiff did not waive or abandon any rights. Throughout the 1970s, 1980s, and 1990s Wolfe was angry and upset about what he viewed as the theft of Taurus in Stairway to Heaven by Led Zeppelin. He consulted attorneys multiple times in the 1980s and 1990s but was told that the statute of limitations (this was pre-Petrella) barred his ability to sue. Furthermore, after the alleged waiver/abandonment cited by Defendants in the early 1990s, Wolfe repeatedly expressed interest in pursuing a lawsuit against Led Zeppelin if possible. This shows that Wolfe in no way thought that he had abandoned a legal right that he did not even know if had (the right to sue for infringement of Taurus).  See Part I. The off-hand, casual statements he made in a private interview (which were made trying to save face given that he was constantly badgered about this issue) are simply not enough to establish abandonment or waiver as a matter of law. *Compare Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1053 (D. Ariz. 2011) ("excerpt from Plaintiff's remarks 'just take it'" insufficient to establish waiver/abandonment of copyright as a matter of law); *Marya v. Warner/Chappell Music, Inc.*, 2015 WL 5568497, at *11 (C.D. Cal. Sept. 22, 2015) (passage from TIME magazine "Lyricist Patty Hill, … had no complaint to make on the use of the words because she long ago resigned herself to the fact that her ditty had become common property to the notion did not establish as a matter of law that she had "abandoned her copyright interest in the lyrics.) *with Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1178 (S.D. Fla. 2006) aff'd, 527 F.3d 1218 (11th Cir. 2008) (waiver where architect signed a letter stating he "reserve[d] no patent, trademark, copyright" in the work); *Hadady Corp. V. Dean Witter Reynolds,*

*Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990). (waiver where plaintiff distributed newsletter which unequivocally stated that copyright would last for two days only).

**(g)  Waiver**:

Plaintiffs and Counter-Defendants must establish by a preponderance of the evidence: Plaintiff intentionally relinquished a known right with knowledge of its existence. *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988).

*Evidence Against*: Plaintiff did not waive or abandon any rights. See Response to Abandonment.

**(h)  Ratification**:

Plaintiff is unaware of the basis of this affirmative defense and thus Plaintiff is unaware of the elements which must be met to prove it.

**(i)  Unclean Hands**:

Plaintiff is unaware of the basis of this affirmative defense and thus Plaintiff is unaware of the elements which must be met to prove it.

**(j)  Innocence**:

This is not an affirmative defense. Innocence and non-willful intent are relevant to the range of statutory damages under 17 U.S.C. § 504(c). An infringement is considered innocent when Defendants have proved both of the following elements by a preponderance of the evidence:

1.   Defendants were not aware that his, her, or its acts constituted infringement of the copyright; and

2.   Defendants had no reason to believe that his, her, or its acts constituted an infringement of the copyright.

*See* Ninth Circuit Manual of Model Civil Jury Instruction § 17.26 (2007); 17 U.S.C. § 504(c)(2).

*Evidence Against*: The intentional nature of the infringement committed by Defendants, as part of their overall "lifting" of music to write their songs, defeats an innocence defense. <u>See</u> Part I. Furthermore, this was a very widely discussed case of

infringement for several decades that Plaintiff alleges Defendants must have known about. Defendant Plant admitted that he could not identify a single band in history that changed the credits on its songs as much as Led Zeppelin. The continued exploitation of a copyright after receiving notice is willful infringement. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 (9th Cir. 1990). Any "member of the distribution chain" may be liable for infringement. *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1384 (C.D. Cal. 1993).

   **(k) Preemption**:

  Plaintiff is unaware of the basis of this affirmative defense and thus Plaintiff is unaware of the elements which must be met to prove it.

## C. ANTICIPATED EVIDENTIARY ISSUES

  In addition to the issues covered in Defendants' motions in limine, Plaintiff anticipates the following additional evidentiary issues will arise

  1. Plaintiff's Motions in Limine:

    (a) Motion In Limine No. 1:  Plaintiff has moved to preclude Defendants from attacking the Randy Craig Wolfe Trust's validity. Defendants previously claimed that the Trust was not operating as a valid charity. A prior Court order by The Honorable Alicia Rosenberg held that Defendants did not have standing to attempt to bust the Trust and that the relevant inquiry was whether the Trust owns the Copyright.

    (b) Motion In Limine No. 2:  Plaintiff has moved to preclude Defendants from claiming that the Trust stole the inheritance of Quinn Wolfe, Randy Craig Wolfe's son. Defendants deliberately and dishonestly misread the pertinent Trust documents which clearly and explicitly provide that the Trust was to receive and be funded by the Randy Craig Wolfe's copyrights and intellectual property, while Quinn Wolfe was to receive two certificates of deposition upon attaining the age of majority. Defendants repeatedly told the Trustee that he had stolen Quinn Wolfe's copyrights when there is nothing to support this.

(c)  <u>Motion In Limine No. 3</u>:  Plaintiff has moved to preclude Defendants from presenting an expert on damages. They presented no expert for their case in chief or for rebuttal.

2.  <u>Plaintiff's Other Evidentiary Issues</u>:

(a).  <u>Work For Hire Copyright Correction</u>.  Defendants filed an application by Hollenbeck Music, submitted to the Copyright Office on February 18, 2016, to list Taurus as a work for hire and Hollenbeck as the copyright claimant. This is a highly improper attempt by Defendants and Hollenbeck to change the status of copyright that is currently under litigation. Hollenbeck was given copious notice of this lawsuit and chose not enter it.

(b).  <u>Defendants' Songwriting Method Admittedly Involved Lifting Music</u>.

As noted in Part I, Led Zeppelin admitted lifting the music of artists to write their songs. This did not happen just one time, but many, many times. This is highly relevant evidence that goes to motive, intent, plan, and opportunity. See Fed. RE 404(b). As a result it is admissible evidence.

(c).  <u>Admissions</u>

Defendants have stated that they believe that Plaintiff has admitted that Taurus is a work for hire. Plaintiff denies that such a thing was admitted as it is contradicted by the law and facts throughout the record and Plaintiff believes he was offered an implicit extension to answer by Defendants. Plaintiff did in fact submit denials of the requested admissions. In any case, even if such a thing was admitted, Plaintiff should be permitted to withdraw the admissions.

3.  <u>Defendant's Motions in Limine</u>:

Motion *in Limine* No. 1: Defendants believe that many of Wolfe's statements are hearsay and irrelevant. All of these statements are either non-hearsay or fall under a relevant exception.

Motion *in Limine* No. 2: Defendants claim that any quotation in a periodical is hearsay, even their own. Almost all of these publications are admissible and authenticated under the ancient document rule or are non hearsay or are covered by an exception.

Motion *in Limine* No. 3: Defendants claim that Taurus's sound recording is entirely irrelevant and that the composition of Taurus is only that composition on the deposit copy. The sound recording is admissible evidence to interpret the deposit copy and the deposit copy does not contain the entirety of the composition of Taurus, legally speaking. Moreover, the sound recording of Taurus is admissible to prove striking similarity for purposes of proving access.

Motion *in Limine* No. 4: Defendants allege that Plaintiff's expert reports do not analyze the proper elements of the composition of Taurus. Plaintiff disagrees as a matter of law what the scope of the composition of Taurus is.

Motion *in Limine* No. 5:  Defendants want any and all evidence of past claims against Led Zeppelin excluded. Plaintiff believes that this evidence is highly relevant to Led Zeppelin songwriting process and that it goes to prove notice, intent, motive, plan, opportunity, lack of mistake, and lack of innocence.

Motion *in Limine* No. 6: Defendants claim that Plaintiff's historical expert Denny Somach is irrelevant. This is incorrect as Somach is relevant to proving the historical importance of Stairway to Heaven and also rebutting defendant Page's assertion that he came up with Stairway to Heaven by listening to the Mary Poppin's soundtrack.

Motion *in Limine* No. 7: Defendants contend that evidence of their wealth is inadmissible. In fact, evidence of Defendants' wealth is admissible concerning the imposition of damages.

Motion *in Limine* No. 8: Defendants do not want the jury to know that the Trust is a charity that provides money for underprivileged kids to buy instruments. This is basic factual background and is not prejudicial.

Motion *in Limine* No. 9: Defendants do not want pre-May 2011 revenues and contracts introduced. These revenues and contracts are relevant to understand how

Defendants were compensated in the limitations period and cannot be antiseptically excised.

Motion *in Limine* No. 10: Defendants want certain witnesses they claim were not identified or disclosed. These witnesses were identified in discovery and Defendants knew who they were but failed to obtain discovery from them.

Motion *in Limine* No. 11: Defendants want to preclude eyewitness testimony that Page and Randy California spoke at an after party following a Spirit concert in 1973. Defendants knew about this witness, Larry Knight, but failed to obtain any discovery from him before the discovery deadline. Knight's testimony refutes and rebuts Page's claim to never have met Randy California.

Motion *in Limine* No. 12: Defendants do not want evidence of their drug and alcohol use admitted. However, Defendants exhibited extremely poor memory in their depositions. This is thus a relevant area of cross examination and impeachment to determine why Defendants appear to selectively forget some things and remember others with perfect clarity.

Motion *in Limine* No. 13: Defendants do not want evidence of their insurance and indemnification. Plaintiff does not oppose the insurance, but indemnification is relevant.

Motion *in Limine* No. 14: Defendants do not want the pleadings submitted to the jury. The pleadings form the basis of the claim. The jury has a right to see them.

## D.   ANTICIPATED LEGAL ISSUES

**Work for Hire** – Defendants are claiming that Plaintiff admitted that Taurus is a work for hire. Plaintiff did not do so, and even if he did the Court should permit the withdrawal of those admissions. Moreover, it is established law that a work for hire contract cannot retroactively deem already existing material "made for hire." *Gladwell Govt. Services Inc. v. County of Marin*, 265 Fed. Appx. 624 2008 WL 268268 (9th Cir. 2008); *see also Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir .1995); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412-13 (7th Cir. 1992) ("The writing must precede the creation of the

property" to qualify as a work-for-hire agreement.) The work in question, Taurus, was created in 1966. The August 29, 1967 work for hire contract does not apply. In addition, the work is currently registered under Randy Craig Wolfe's name as the author and copyright claimant, prima facie evidence the Trust owns the Taurus copyright.

## IV.   REQUEST FOR BIFURCATION OF ISSUES

Plaintiff does not believe that bifurcation is necessary.

## V.   JURY TRIAL

The claims in this action are all subject to a timely request for a jury trial.

## . VI.   ATTORNEYS FEES

Plaintiff will seeks attorney's fees in this case under 17 USC §505.

## VII.   ABANDONMENT OF ISSUES

Indigo is unaware of any issues that have been abandoned by either side.


DATED:  April 4, 2016            FRANCIS ALEXANDER LLC


                          By   _/s/ Francis Malofiy_
                              Francis Malofiy
                              Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's Memorandum of Contentions of Fact and Law has been served upon counsel by email:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

**\*\*\*\*\***
*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ April 4, 2016*