1

Francis Malofiy, Esq.

2

Francis Alexander, LLC

3

280 N. Providence Rd. | Suite 105
Media, PA 19063

4

T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com

5

*Attorney for Plaintiff*

6

7

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP

8

15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403

9

T:  (310) 557-9200; F:  (310) 557-0224

10

E:  gkulik@kgslaw.com
*Attorney for Plaintiff*

11

12

**UNITED STATES DISTRICT COURT**

13

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

MICHAEL SKIDMORE, as Trustee for
the RANDY CRAIG WOLFE TRUST,

15

16

Plaintiff,

17

v.

18

19

LED ZEPPELIN; JAMES PATRICK
PAGE; ROBERT ANTHONY PLANT;

20

JOHN PAUL JONES; SUPER HYPE
PUBLISHING, INC.; WARNER MUSIC

21

GROUP CORP., Parent of
WARNER/CHAPPELL MUSIC, INC.;

22

ATLANTIC RECORDING

23

CORPORATION; RHINO
ENTERTAINMENT COMPANY,

24

25

Defendants.

26

27

28

Case No. 15-cv-03462 RGK (AGRx)

Hon. R. Gary Klausner

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION IN
LIMINE NO. 5**

Trial:          May 10, 2016
Time:          9:00 a.m.
Courtroom:     850

Pretrial Conference:   April 25, 2016

**Defendants' Admitted Extensive History of Lifting Music and Failing to Credit Songwriters Whose Work They Used**

Defendants move to exclude at trial evidence of Led Zeppelin's extensive and admitted history of copyright infringement and music theft. Page and Plant admitted in their depositions that Led Zeppelin routinely took other people's songs as an "original source" and used them to create Led Zeppelin's music. ECF 129-5, p. 18, Plaintiff's Alleged Uncontroverted Facts ("PAF") 40. This course of conduct evidence should be admitted to demonstrate Led Zeppelin's songwriting process and systematic and extensive use of plagiarism to "create" music.

Seven times, by means of litigation or the threat of litigation, Led Zeppelin has been compelled to change the writing credits on their songs. ECF 129-5, p. 24, PAF 50. There are over sixteen songs in Led Zeppelin's catalogue which unmistakably borrowed from other artists without credit. *Id.*, p. 22, PAF 47. Plant talked about Led Zeppelin's ignominious history of lifting music from other artists without credit or attribution in an NPR interview with Terry Gross in 2004. *Id.*, pp. 21-22, PAF 46, *available at:* http://www.npr.org/templates/story/story.php?storyId=1611561. Plant acknowledged that he lifted vocal melodies from other artists, and that such lifting was "naïve" and "irresponsible," but that Led Zeppelin had viewed it as "part of the game." *Id.* This course of conduct resulted in lawsuits and in Led Zeppelin repeatedly changing the credits for their songs, including for "Dazed and Confused," "Babe I'm Gonna Leave You," "Whole Lotta Love," "How Many More Times," "The Lemon Song," "Bring it On Home," and "When the Levee Breaks." *Id.*, pp.18-24, PAF 39-50.

This history was also admitted at other times by Plant and Page. Plant stated in 1985 that perhaps Zeppelin was not so naïve as he later tried to claim on NPR:

> I think when Willie Dixon turned on the radio in Chicago 20 years after he wrote his blues, he thought, "That's my song [Whole Lotta Love]." ... When we ripped it off, I said to Jimmy, "Hey, that's not our song." And he said, "Shut up and keep walking."

Barney Hoskyns, "Led Zeppelin IV," p.42 (Rodale 2006). Page later acknowledged in 1993 that Led Zeppelin plagiarized music, but attempted to shift the blame to Robert Plant:

> "[A]s far as my end of it goes, I always tried to bring something fresh to anything that I used. I always made sure to come up with some variation. In fact, I think in most cases, you would never know what the original source could be. Maybe not in every case– but in most cases. So most of the comparisons rest on the lyrics. And Robert was supposed to change the lyrics, and he didn't always do that– which is what brought on most of the grief. They couldn't get us on the guitar parts of the music, but they nailed us on the lyrics."

ECF 129-5, pp. 18-19, PAF 40 (quoting Brad Tolinski with Greg DiBenedetto, "Page Delves into Led Zeppelin's Rich Past," Guitar World (December 1993)).

Note that Page is quite clear that Zeppelin routinely took other people's songs and used them to create Led Zeppelin's music. Plant was confronted with this quote at his deposition and had to admit that he had no reason to dispute its veracity—and based on his prior admissions, how could he? *See* ECF 124-1, Exh. 7 [Plant Deposition] (filed under seal), pp. 351:15 through 352:14.

Page's attempt to shift blame from himself is not quite fair to Plant as Page repeatedly took entire musical compositions without attribution, in addition to Plant lifting the lyrics and melodies in tandem. This includes Zeppelin's Dazed and Confused which Page took note for note from Jake Holmes's Dazed and Confused; Zeppelin's Whole Lotta Love which was taken from You Need Love by The Small Faces who were covering Willie Dixon (but giving proper credit); and Zeppelin's Babe I'm Gonna Leave You of which a nearly identical song by the same name was written by Anne Bredon and sang by Joan Baez (again with proper credit given). There is no way any rational reasonable person listens to these songs and can conclude anything but that they were lifted, as Page and Plant admitted. Yet, Page, Plant, and Jones often dishonestly took full credit for themselves and dissembled at length in their depositions on the subject, refusing to take responsibility.

During discovery it was revealed that Led Zeppelin had two very specific songwriting methods. *See* ECF 124-1, Exh. 6 [Jones Deposition] (filed under seal), p. 159:10-24. Either a member of the band would introduce the rest of the band to a song they claimed they had created, or a song was created through a jam session. *Id*. Under either method—although the former was used to create *Stairway to Heaven*—Plaintiff is able to prove that defendant Page and defendant Plant would take music that they were familiar with and copy that music to create Led Zeppelin's songs, improperly and incorrectly listing themselves as the authors. This did not happen once or twice but approximately twenty times. *See e.g.* ECF 124-1, Exh. 6 [Jones Deposition], pp. 166-18 through 167-8, 168:14-22, 178:13 through 179:21, 181:24, 193:21 through 208:23; ECF 124-1, Exh. 7 [Plant Deposition] (filed under seal), pp. 478:10 through 490: 18. Plaintiff has even submitted an expert report that addresses this issue. <u>See</u> Decl. of Brian Bricklin (ECF 154-4).

There is no other band in rock history who has been compelled to change the writing credits on its songs so many times, as Plant admitted at his deposition. ECF 129-5, p. 21, PAF 45. The fact of the matter is that Led Zeppelin's songwriting process heavily relied upon taking other people's music and passing it off as their own, which is relevant to the infringement claim in this case. It also shows a distinct pattern and routine practice, a course of conduct relevant to this copyright action, as well as proves plan, motive, opportunity, intent, lack of accident, and absence of mistake.  Fed. R. Evid. 404(b), 406 ("The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.'). The sad reality is that Led Zeppelin engaged in systematic and sustained plagiarism, raking in the royalties.

**Defendants' Systematic Plagiarism as Part of Their Songwriting Process is Admissible**

Defendants desperately attempt to frame this motion as a request to exclude settlement agreements or character evidence.  This could not be further from the truth.[1]

---

[1] The fact that the credits on the songs changed does not require any evidence of a settlement agreement.

What Plaintiff seeks to disclose is the songwriting method used by Led Zeppelin Led Zeppelin that resulted in numerous occasions of Led Zeppelin having to change the credit for its songs. This is not character evidence or disclosure of settlement agreements, as Defendants contend, for several reasons:

**First**, Led Zeppelin's serial plagiarism goes directly to how Led Zeppelin wrote songs and how Led Zeppelin wrote Stairway to Heaven. This a basic, unavoidable factual dispute that underlies the entire case. The evidence that Plaintiff will primarily rely upon on are party admissions and musical comparisons. That this evidence is reliable and severely damaging to Zeppelin's defense is of not import when considering its admissibility. Notably, Zeppelin's admitted method of taking prior art without credit is relevant to refuting Defendants' claim of independent creation and innocence. As Defendants are going to argue at trial that the song was independently created as part of their songwriting process, Plaintiff is entitled to explore the nature and details of Led Zeppelin's songwriting process. **Second**, this evidence is admissible under Fed. RE 404(b) to prove plan (aka Zeppelin's overall songwriting process), opportunity, intent (an element of contributory and vicarious infringement, and also to for damages), knowledge (defendants claim they do not remember virtually anything or that they were unaware they were taking music), absence of mistake, or lack of accident. It also goes to credibility. **Third**, this evidence are "examples … of conduct or habit which are numerous enough to base an inference of systematic conduct" and thus "admissible to establish pattern or habit" or routine practice. *Fort Hall Landowners All., Inc. v. Bureau of Indian Affairs*, 407 F. Supp. 2d 1220, 1226-27 (D. Idaho 2006) (citing *Simplex, Inc. v. Diversified Energy Systems, Inc.,* 847 F.2d 1290, 1293 (7th Cir.1988)). This is not just one or two songs where Defendants accidentally failed to credit other writers; it is an admitted and systematic plagiarism scheme that spanned the better part of a decade and one that is not credibly in dispute. Plaintiff contends the 20 or so examples he seeks to introduce are specific, frequent and uniform which "ensures more than a mere 'tendency'

to act in a given manner." *Id.*  Thus, the evidence in question is not barred by the Federal Rules of Evidence.

Dated:  April 15, 2016                    FRANCIS ALEXANDER, LLC


                                          */s/ Francis Alexander Malofiy*
                                          Francis Alexander Malofiy, Esq.
                                          Attorney for Plaintiff

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's Response Opposing Defendants' Motion in Limine No. 5 has been served upon counsel by email:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones
(collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp.,
Warner/Chappell Music, Inc., Atlantic Recording Corporation, and
Rhino Entertainment Company*

*****

*Respectfully submitted,*
Francis Alexander, LLC

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ April 15, 2016*