Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail:  hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*,<br><br>  Plaintiff,<br><br>  vs.<br><br>LED ZEPPELIN, *et al.*,<br><br>  Defendants. | Case No. 2:15-cv-03462 RGK (AGRx)<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DEPOSE NEWLY DISCOVERED WITNESS OR ALTERNATIVELY TO HAVE WITNESS TESTIFY BY VIDEO CONFERENCE AT TRIAL |

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Pursuant to the Court's Scheduling Notice and Order (Doc. 209), defendants James Patrick Page, Robert Anthony Plant, Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company respectfully submit this Memorandum in opposition to plaintiff's motion for leave to depose Michael Ware, a resident of England who plaintiff did not identify as a witness, or to present Mr. Ware's testimony by video-conferencing at trial without defendants having the opportunity to depose him (Doc. 207).

Plaintiff seeks leave to call a witness in another country and who was never disclosed.  Plaintiff contends that following press coverage of this case, Mr. Ware contacted plaintiff claiming to recall seeing Robert Plant forty-six years ago at a club in Birmingham, England, when Spirit performed.  Plaintiff loads his motion with assertions – often incorrect – of evidence as to <u>Jimmy Page's</u> claimed familiarity with Spirit.  But, that is irrelevant to plaintiff's motion because Mr. Ware only claims to have seen Mr. Plant.  <u>Moreover, plaintiff ignores not only that he already has two witnesses – the surviving members of Spirit – who testified that they saw Mr. Plant at the club, but that Mr. Plant does not dispute being there.</u>

The testimony of Mr. Ware is cumulative of the testimony of three identified and deposed witnesses who will testify at trial.  Mr. Ware is too little, too late, and plaintiff is not prejudiced by not being able to call him.  Further, the relief plaintiff seeks would disrupt the trial and prejudice defendants.  Accordingly, plaintiff's motion should be denied.  If, however, the Court determines to allow plaintiff to call Mr. Ware as yet another witness to Mr. Plant being at the club, then Mr. Ware should sit for a deposition first.

///

///

///

1

**2.**     <u>**THE TESTIMONY OF MR. WARE IS CUMULATIVE AND THE**</u>
    <u>**BURDEN PLAINTIFF SEEKS TO IMPOSE IS NOT PROPORTIONAL**</u>

       Plaintiff concedes Mr. Ware was not previously disclosed as a witness and is not on the joint witness list. And, the case plaintiff cites confirms that "[a] court may exclude testimony from witnesses not listed in the pretrial witness list." *Price v. Seydel*, 961 F.2d 1470, 1474 (9th Cir. 1992) (District Court properly declined to permit party to call unlisted witness). While *Price* identifies factors to be considered in determining whether to allow a new witness, a new witness also should not be allowed if his testimony would be "largely cumulative of the testimony" of another witness. *Reed v. Tracy*, No. 14-15323, 2016 WL 1296949, at *1 (9th Cir. Apr. 4, 2016). Here, Mr. Ware's testimony is cumulative, so plaintiff is not prejudiced by not being able to call him, while allowing him to testify would disrupt the trial and prejudice defendants.

       Plaintiff touts Mr. Ware as a "new witness . . . who helps prove that Defendants were familiar with Spirt and its material and had a reasonable possibility of access to *Taurus*." Pltf's Mtn. (Doc. 4) at 4:2-4. But, plaintiff concedes that Mr. Ware's supposed contribution is limited: "[s]pecifically, he witnessed Robert Plant in the front row of a Spirit concert in 1970." *Id.* at 4:4-5. Mr. Ware's e-mail – which plaintiff chose not to provide to the Court – confirms not only Mr. Ware's undisguised hostility to defendants, but that he merely claims to remember seeing Mr. Plant in the front row at Mothers Club in Birmingham, England, when Spirit performed in 1970. Anderson Decl. at 5, ¶ 3, & Exh. 1.

       Plaintiff argues that this testimony would prove Mr. Plant "was familiar with Spirit, was an avid fan of Spirit, and attended Spirit's shows before *Stairway to Heaven* was written." Pltf's Mtn. at 6:4-6. But, that is hyperbole.

       That Mr. Plant was at Mothers Club when Spirit performed in 1970 is not news. Two of plaintiff's disclosed witnesses are the surviving members of Spirt and each testified that they spoke with Mr. Plant at Mothers Club before Spirit

1    performed.  Anderson Decl. at 5, ¶ 4, & Exh. 2 at 55:6 to 56:20.  Moreover, Mr.

2    Plant does not dispute that he was there that night.  Anderson Decl. at 5, ¶ 5, & Exh.

3    3 at 52:7-20.  Accordingly, Mr. Ware's testimony placing Mr. Plant at Mothers Club

4    when Spirit performed is cumulative of the testimony of three witnesses who were

5    timely disclosed and already deposed.

6        Further, that Mr. Plant was supposedly in the front row of one performance

7    does not make him "an avid fan" and does not prove he "attended Spirit's shows . . .

8    ."  Pltf's Mtn. at 6:4-6.  Instead, Mr. Ware's testimony that Mr. Plant was at Mothers

9    Club that night is simply duplicative of a fact not in dispute.  Moreover, plaintiff

10   omits that Mr. Ware's assertion that Mr. Plant was in the front row is directly

11   contrary to the surviving member of Spirit's testimony that he was unable to see Mr.

12   Plant during Spirit's performance.  Anderson Decl. at 5, ¶ 4, & Exh. 2 at 57:13-18,

13   58:18-25.

14       Plaintiff argues that Mr. Ware's contention that forty-six years later he recalls

15   Mr. Plant being in the front row rebuts Mr. Plant's testimony that he was at the back

16   of the club and was uninterested in Spirit's performance.  Pltf's Mtn. at 6:6-9.

17   However, Mr. Plant specifically testified that while he recalls his routine of spending

18   time at Mothers Club and who he socialized with there, he does not recall that

19   specific night forty-six years later and only assumes Spirit performed because press

20   reports of his accident stated they had done so.  Anderson Decl. at 5, ¶ 5, & Exh. 3 at

21   55:16 to 56:21.  Since Mr. Plant's testimony is clear that he does not recall Spirit

22   performing, Mr. Ware's testimony rebuts nothing.

23       Mr. Ware's testimony is at best "largely cumulative of the testimony" of other

24   witnesses and plaintiff suffers no prejudice from the prelusion of duplicative

25   testimony.  *Reed*, 2016 WL 1296949, at *1.  In addition, allowing a new witness

26   who has never been deposed to testify at trial by video-conferencing – which is

27   problematic at best – would not only "disrupt the orderly and efficient trial of the

28   case" (*Price v. Seydel*, 961 F.2d at 1474), but be substantially prejudicial to

3

1    defendants.   And while taking a deposition in England would avoid the former

2    concern, it would be costly and disrupt defendants' trial preparation, all for another

3    witness to testify that Mr. Plant was at Mothers Club.   Accordingly, plaintiff's

4    motion should be denied.

5    **3.    CONCLUSION**

6         Three timely disclosed-and-deposed witnesses, including Mr. Plant, have

7    testified that Mr. Plant was present at Mothers Club in 1970 when Spirit performed.

8    Mr. Ware, who came forward with an offer to help plaintiff only after recent press

9    coverage, adds nothing of substance and plaintiff is not prejudiced by being unable

10   to call him.  On the other hand, allowing plaintiff to call him by video-conferencing

11   with England would risk disrupting the trial, and substantially prejudice defendants.

12        Accordingly, defendants respectfully submit that plaintiff's motion should be

13   denied.  If, however, the Court determines to allow plaintiff to call Mr. Ware, then

14   Mr. Ware should first be produced for deposition.

15

16   Dated: May 11, 2016                          _____/s/ Peter J. Anderson_____
                                                        Peter J. Anderson, Esq.
17                                               LAW OFFICES OF PETER J. ANDERSON
                                                        A Professional Corporation
18                                                     Attorney for Defendants
                                                  JAMES PATRICK PAGE, ROBERT
19                                               ANTHONY PLANT, JOHN PAUL JONES,
                                                    WARNER/CHAPPELL MUSIC, INC.,
20                                                   SUPER HYPE PUBLISHING, INC.,
                                                 ATLANTIC RECORDING CORP., RHINO
21                                                  ENTERTAINMENT COMPANY and
                                                    WARNER MUSIC GROUP CORP.
22

23

24                                                    Helene M. Freeman, Esq.
                                                        PHILLIPS NIZER LLP
25                                                    Attorney for Defendants
                                                      JAMES PATRICK PAGE,
26                                                 ROBERT ANTHONY PLANT and
                                                       JOHN PAUL JONES
27

28

                                          4

## DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1.     I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.     I represent defendants Warner/Chappell Music, Inc., Atlantic Recording Corp., Rhino Entertainment Company, James Patrick Page and Robert Plant in this action.  This Declaration is submitted in support of their opposition to plaintiff's motion for leave to depose Michael Ware, a resident of England, or to present his testimony by video-conferencing at trial.

3.     Attached to this Declaration as Exhibit 1 is a true and correct copy of the e-mail I received from plaintiff's counsel, transmitting what he stated is a copy of Mr. Ware's April 19, 2016 e-mail to plaintiff.

4.     I took the depositions of Jay A. Ferguson and Mark Christopher Andes in this action.  Both testified that they are the surviving founding members of Spirit and that they spoke with Mr. Plant at Mothers Club in Birmingham, England. Attached to this Declaration as Exhibit 2 are true and correct copies of pages from the transcript of Mr. Ferguson's deposition, including the change he made to those pages, and which contain the testimony cited in support of defendants' opposition.

5.     Attached to this Declaration as Exhibit 3 are true and correct copies of pages from the transcript of the deposition of Mr. Plant, containing the testimony cited in support of defendants' opposition and as to which defendants withdraw the designation of "CONFIDENTIAL" under the Protective Order in this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 11, 2016.

            _____/s/ Peter J. Anderson_____
            PETER J. ANDERSON

5

# EXHIBIT 1

| | |
|---|---|
| **From:** | Glen Kulik |
| **To:** | Peter J. Anderson |
| **Cc:** | Helene M. Freeman; Francis Alexander Malofiy (francis@francisalexander.com); Patricia Brum; AJ Fluehr (aj@francisalexander.com) |
| **Subject:** | FW: TAURUS etc. see below |
| **Date:** | Thursday, April 21, 2016 8:23:50 AM |
| **Attachments:** | image002.png |

Peter, we want to disclose to you the identity of a new witness we just learned about who we will be adding to our witness list for trial.

As reflected in the email below, on April 19, 2016, Mr. Skidmore received the unsolicited email from a man by the name of Mike

Ware.  Mr. Skidmore advised Francis and me of the email and yesterday we did some investigation to satisfy ourselves that Mr. Ware

is credible and his statements honest and accurate.  We made that determination and therefore  will be adding him to our witness list.

We also want to disclose that while Mr. Ware is willing to testify in the case, he lives in England and suffers from certain physical ailments

that would make it impossible for him to fly to the United States to testify.   Therefore, we intend to ask the court to allow us to take his

deposition in England before the start of trial or allow him to testify during trial from his home by means of video and/or audio teleconferencing.

Thank you.

---

**Glen L. Kulik, Esq.**
**KULIK GOTTESMAN SIEGEL & WARE LLP**
**15303 Ventura Boulevard, Suite 1400**
**Sherman Oaks, California 91403**
**(310) 557-9200     Main**
**(310) 557-0224     Fax**



---

This electronic message contains information which may be confidential and privileged and is intended only for the named addressee. Unless you are the addressee of this message you may not use, copy or disclose the contents of this message to anyone. If you have received this message in error, please delete the message and advise the sender by reply e-mail or by calling (310) 557-9200. Thank you.

To ensure compliance with Internal Revenue Service Circular 230, we inform you that any U.S. Federal Tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

From: mikeware1952@yahoo.co.uk
To: mikoff@aol.com
Sent: 4/19/2016 11:29:51 A.M. Eastern Daylight Time
Subj: TAURUS etc.

Hi Mick,
Just to wish you, and everyone else involved in this court case all the luck in the world, and hope that Love can find a way.
Truth will out, and I think that Plant and Page have dug a very big hole by lying about their relationship with Spirit.
They were big fans, as I witnessed in 1970 at Mothers Club, Birmingham, because Robert Plant was in the front row watching the band.
If I can be of any help please let me know, and we'll be thinking of you on 10th May.
With All Best Wishes from

*Mike and Davina Ware*

**EXHIBIT 1**
**6**

# EXHIBIT 2

JAY A. FERGUSON - 01/13/2016

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA


MICHAEL SKIDMORE, ETC.,      )
                             )
            PLAINTIFFS,      )   CASE NO.
                             )
          VS.                )   2:15-CV-03462 RGK (AGRx)
                             )
LED ZEPPELIN, ET AL.,        )
                             )
            DEFENDANTS.      )
                             )
_____)


VIDEOTAPED DEPOSITION OF JAY A. FERGUSON

WEDNESDAY, JANUARY 13, 2016


JOB NO. 68321

REPORTED BY:  DAYNA HESTER, C.S.R. 9970

EXHIBIT 2

7

JAY A. FERGUSON - 01/13/2016

```
09:39   1   Trust.
09:39   2           THE VIDEOGRAPHER:  We're on the record.
09:39   3           Would the court reporter, please, swear in
09:39   4   the witness.
09:39   5           THE REPORTER:  And I do want to
09:39   6   acknowledge my Rule 30 obligation for a federal
09:39   7   case.
09:39   8           My name is Dayna Hester, and I am
09:39   9   contracted by Personal Court Reporters.
        10           At this time, please raise your right
        11   hand.
        12           THE WITNESS:  (Witness did as requested.)
        13           THE REPORTER:  Do you affirm the testimony
        14   you are about to give in the cause now pending will
        15   be the truth, the whole truth, and nothing but the
        16   truth?
        17           THE WITNESS:  I do.
        18           THE REPORTER:  Thank you.
        19
        20               JAY A. FERGUSON,
        21           having been first duly sworn, was
09:39  22           examined and testified as follows:
09:39  23   ///
09:39  24   ///
09:39  25   ///
```

**EXHIBIT 2**

**8** Page 9

| | | |
|---|---|---|
| 10:32 | 1 | record at 10:31. |
| 10:39 | 2 | (Brief recess.) |
| 10:39 | 3 | THE VIDEOGRAPHER:  We're back on the |
| 10:40 | 4 | record at 10:39. |
| 10:40 | 5 | BY MR. ANDERSON: |
| 10:40 | 6 | Q.   Let's talk a little bit about -- little |
| 10:40 | 7 | bit more about this occasion when you met Robert |
| 10:40 | 8 | Plant. |
| 10:40 | 9 | A.   Uh-huh. |
| 10:40 | 10 | Q.   And I take it that's only one occasion? |
| 10:40 | 11 | A.   Uh-huh.  Correct. |
| 10:40 | 12 | Q.   And that occurred where? |
| 10:40 | 13 | A.   It was Birmingham.  It was a club in |
| 10:40 | 14 | Birmingham.  And someone mentioned, "Oh, Robert |
| 10:40 | 15 | Plant is here to see you guys."  And I was very |
| 10:40 | 16 | flattered. |
| 10:40 | 17 | And, as I recall, he was -- he wasn't |
| 10:40 | 18 | backstage.  He was in the -- in the club, sort of |
| 10:40 | 19 | hanging out towards the back.  And I met him.  And |
| 10:40 | 20 | then we did the show. |
| 10:40 | 21 | Q.   Do you remember the name of the club? |
| 10:40 | 22 | A.   No.  I know it's in the notes. |
| 10:40 | 23 | Q.   Was it Mother's Club? |
| 10:40 | 24 | A.   Mother's Club. |
| 10:40 | 25 | Q.   And could you describe Mother's Club, |

JAY A. FERGUSON - 01/13/2016

| | | |
|---|---|---|
| 10:40 | 1 | please. |
| 10:40 | 2 | A.   Not a large club.  Maybe 400 people |
| 10:41 | 3 | capacity.  Kind of -- very English feeling.  Wood -- |
| 10:41 | 4 | I remember a lot of wood and kind of a low ceiling. |
| 10:41 | 5 | Q.   Was it a long and narrow room? |
| 10:41 | 6 | A.   Could have been. |
| 10:41 | 7 | MR. MALOFIY:  Objection.  Vague. |
| 10:41 | 8 | BY MR. ANDERSON: |
| 10:41 | 9 | Q.   And was there a bar at one end and then |
| 10:41 | 10 | the stage at the other end? |
| 10:41 | 11 | A.   I don't remember the alignment of the bar |
| 10:41 | 12 | and the stage. |
| 10:41 | 13 | Q.   And you said, if I understood correctly, |
| 10:41 | 14 | you said that Mr. Plant was hanging out toward the |
| 10:41 | 15 | back of the club? |
| 10:41 | 16 | A.   That was my recollection, yes. |
| 10:41 | 17 | Q.   And so -- and that was opposite the stage? |
| 10:41 | 18 | A.   Yes.  The stage would be -- it does seem |
| 10:41 | 19 | like it was a longish room, and the stage would have |
| 10:41 | 20 | been at the other end where I saw Robert Plant. |
| 10:41 | 21 | Q.   Okay.  And who told you that he was "here |
| 10:41 | 22 | to see you guys"? |
| 10:41 | 23 | A.   Either someone in our road crew or someone |
| 10:41 | 24 | from the club. |
| 10:41 | 25 | Q.   And did -- did you hear that, or did |

witness correction: from

JAY A. FERGUSON - 01/13/2016

10:42 1     someone relay that to you, that -- the person at the

10:42 2     club or in the road crew had said that?  Was that --

10:42 3     were those words you actually heard or someone told

10:42 4     you that?

10:42 5          A.   I think we were backstage, and someone

10:42 6     came in and said, "Robert Plant is here to see you

10:42 7     guys."

10:42 8          Q.   You said you think.  Is that a guess, or

10:42 9     you have recollection of being backstage?

10:42 10         A.   That is a guess.  I mean, it could have

10:42 11    been as we were walking in.  But I think we were as

10:42 12    a group when we were told.

10:42 13         Q.   Okay.  And what did you do next?

10:42 14         A.   It was a -- kind of a polite meeting.  We

10:42 15    did not spend much time together.  And I went back

10:42 16    and prepared to play the show.

10:42 17         Q.   Okay.  How long was that meeting?

10:42 18         A.   15 to 30 seconds.

10:42 19         Q.   Okay.  And who was present -- so it's

10:42 20    really not a meeting.  It was an introduction.

10:42 21         A.   It was a meet-and-greet.

10:42 22              MR. MALOFIY:  Objection.  Misstates the

10:42 23    testimony.

10:42 24    BY MR. ANDERSON:

10:42 25         Q.   A meet-and-greet?

| 10:42 | 1 | A.   Uh-huh. |
| 10:42 | 2 | Q.   So who was physically present at that |
| 10:42 | 3 | meet- -- in that meet-and-greet?  Let me rephrase |
| 10:43 | 4 | that, because I want to exclude the audience. |
| 10:43 | 5 | Who were the participants in that |
| 10:43 | 6 | meet-and-greet? |
| 10:43 | 7 | A.   I believe at that point it was Mark Andes |
| 10:43 | 8 | and myself. |
| 10:43 | 9 | Q.   Okay.  Do you remember anything that was |
| 10:43 | 10 | said by you in that meet-and-greet? |
| 10:43 | 11 | A.   No. |
| 10:43 | 12 | Q.   Anything that -- do you remember anything |
| 10:43 | 13 | that was said by Mark Andes in that meet-and-greet? |
| 10:43 | 14 | A.   No. |
| 10:43 | 15 | Q.   Do you remember anything that was said by |
| 10:43 | 16 | Mr. Plant in that meet-and-greet? |
| 10:43 | 17 | A.   No. |
| 10:43 | 18 | Q.   Do you know how long Mr. Plant -- When you |
| 10:43 | 19 | were performing, could you see him? |
| 10:43 | 20 | A.   No. |
| 10:43 | 21 | Q.   So you don't know how long he was there |
| 10:43 | 22 | that night; is that correct? |
| 10:43 | 23 | A.   No. |
| 10:43 | 24 | Q.   Is that correct? |
| 10:43 | 25 | A.   That is correct.  I do not. |

| PAGE | LINE | | REASON |
|---|---|---|---|
| 24 | 16 | ...COMPOSITION 'IN' TO 'AND' | ACCURACY |
| 28 | 17 | GO ON FOR 'FOUR' YEARS | " |
| 56 | 20 | ...END 'FROM' WHERE I SAW | " |
| 63 | 15 | ...THAT 'THEY' HAD PROVIDED | " |
| 66 | 12 | MANSLICK TO 'MANCE LIPSCOMB' | " |
| 74 | 19 | IT WAS 'A' TRUE.. | " |
| 94 | 12 | 'FAIRLY' CERTAIN | " |
| 97 | 22 | 'TO THE BEST OF MY KNOWLEDGE' | " |
| 127 | 5 | INSERT: 'AS FAR AS THE ORIGINAL BAND' AT TOP OF LINE | " |
| 134 | 1 | 'MOST PROBABLY' BRUCE PATES | " |
| 138 | 2 | CHANGE 'CORE' TO 'CHORD' | " |
| 144 | 9 | CHANGE 'TIME' TO 'TEMPO' | " |
| 152 | 6 | CHANGE TO 'I'M ALMOST CERTAIN' | " |
| 171 | 13 | SHOULD READ 'NO' | " |
| 171 | 15 | " | " |
| 255 | 3 | 'BIONIZED' CHANGE TO 'LIONIZED' | " |
| 259 | 3 | 'DRUGGED' CHANGE TO 'DRAGGED' | " |
| 287 | 21 | 'SATISFACTION' SHOULD BE ITALICIZED | " |
| 305 | 17 | 'SOMEWHERE' IN THE RANGE' | " |
| 325 | 19 | 'BAT' CHANGE TO 'BAR' | " |

WITNESS SIGNATURE                    DATE

**EXHIBIT 2**
13

```
 1    STATE OF CALIFORNIA                )
 2    COUNTY OF LOS ANGELES              )   ss.
 3
 4         I, Dayna Hester, C.S.R. No. 9970, in
 5    and for the State of California, do hereby certify:
 6         That prior to being examined, the witness named
 7    in the foregoing deposition was by me duly sworn to
 8    testify to the truth, the whole truth, and nothing but the
 9    truth;
10         That said deposition was taken down by me in
11    shorthand at the time and place therein named and
12    thereafter reduced to typewriting under my direction, and
13    the same is a true, correct, and complete transcript of
14    said proceedings;
15         That if the foregoing pertains to the original
16    transcript of a deposition in a Federal Case, before
17    completion of the proceedings, review of the transcript
18    {√} was { } was not required.
19         I further certify that I am not interested in the
20    event of the action.
21         Witness my hand this 26Th day of January
22    20 16.
23
24              Certified Shorthand Reporter
25              for the State of California
```

**EXHIBIT 2**
**14**

# EXHIBIT 3

CONFIDENTIAL

Page 1

C O N F I D E N T I A L

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

Case No. 2:15-cv-03462 RGK

(AGR)

MICHAEL SKIDMORE, as Trustee for

the Randy Craig Wolfe Trust,

vs.

LED ZEPPELIN, JAMES PATRICK

PAGE, ROBERT ANTHONY PLANT,

JOHN PAUL JONES, SUPER HYPE

PUBLISHING, INC., WARNER

MUSIC GROUP CORP., parent of

WARNER/CHAPPELL MUSIC INC.,

ATLANTIC RECORDING

CORPORATION, RHINO

ENTERTAINMENT COMPANY,

Defendants.

-----------------------------------

Deposition of ROBERT PLANT, taken by AILSA WILLIAMS,

Certified Court Reporter, held at IDRC, 70 Fleet St.,

London, UK, on January 29, 2016 at 11:09 am

EXHIBIT 3
15

CONFIDENTIAL

Page 6

1              MR. ANDERSON:  Good morning.  My name is

2    Peter Anderson.  I represent Warner/Chapell Music,

3    Super Hype Publishing, Atlantic Recording

4    Corporation, Rhino Entertainment Company, Warner

5    Music Group, Mr. Plant, Mr. Page and Mr. Jones.

6              MS. FREEMAN:  Helene Freeman, Phillips

7    Nizer, 666 Fifth Avenue, New York, New York, for

8    Robert Plant, James Patrick Page, and John Paul

9    Jones.

10             THE VIDEOGRAPHER:  Will the court reporter

11   please swear in the witness.

12                       ROBERT PLANT

13                   Having been duly sworn

14                   Testified as follows:

15             DIRECT EXAMINATION BY MALOFIY:

16             MR. MALOFIY:  Before we get started on the

17   deposition what I would like to do is give you

18   warnings to make sure that your testimony can be

19   accurate and correct.  Do you understand that?

20             A.  Um hum.

21             Q.  Now, the first admonition I am going

22   to give is that I know you had said "um hum" but an

23   "um hum" is hard to capture on the stenographic

24   record --

**EXHIBIT 3**

**16**

CONFIDENTIAL

Page 52

1    a group called The Move, who were from Birmingham.

2    We all used to meet there, and there were bands

3    playing there, and I played there in the Band of

4    Joy, and so I knew the guy who ran the place.

5              Q.   Who was that?

6              A.   His name was Phil Myatt, M-Y-A-T-T.

7              Q.   Previously I asked you do you have any

8    other information about the band Spirit, and you

9    said "no", and I asked you if you had ever seen

10   Spirit play live, and the answer to that is yes,

11   correct, you saw Spirit play live?

12             A.   Yes, I was at a gig that they played

13   at, went to with my mates that they played at, but

14   I don't have any information about them.

15             Q.   You saw them perform live, correct?

16             A.   They were there when I was -- we used

17   to hang out at this place, all the various

18   musicians, that was the kind of place everybody

19   would meet up, and they were playing one night when

20   we were there.

21             Q.   Is it an accurate statement to say

22   that you saw Spirit perform live?  Yes, it is, or

23   no, it is not?

24             MS. FREEMAN:  Objection.  He may not be

**EXHIBIT 3**
**17**

CONFIDENTIAL

Page 55

1    of times.  It was very disrespectful but there was

2    a lot of adrenaline in the air, that is how it was.

3    It was just a meeting of -- there were not many

4    places where musicians at that time in that second

5    city in Britain were able to congregate.  It was

6    encouraged by the people who ran the club.  It was

7    a home for musicians.

8                Q.  I just want -- I am entitled to probe

9    your memory as to what you actually have an

10   independent recollection of --

11               A.  I have no --

12               Q.  Let me finish the question, and what

13   you know of because you have read something later

14   on.

15               A.  Um hum.

16               Q.  As you sit here today, do you have an

17   independent recollection, a memory of being in the

18   club in Birmingham and Spirit performing on stage?

19               A.  No.

20               MR. ANDERSON:  Objection, asked and

21   answered.

22               Q.  Do you have an independent

23   recollection, as you sit here today, of ever seeing

24   Spirit perform live?

**EXHIBIT 3**
**18**

CONFIDENTIAL

Page 56

1              A.  No.

2              Q.  So when you are telling me that you

3    are hanging out in Birmingham at this club and that

4    is where musicians hung out, is this all from what

5    you would generally do at that time, or is that from

6    a specific recollection of the events of that date?

7              A.  No, it was what everybody did all the

8    time.

9              Q.  To be clear, I am not so interested in

10   what everybody did.

11             A.  Okay, yes, me.

12             Q.  I am interested more in what Mr. Plant

13   did.

14             A.  Exactly, you are talking to me and

15   I was part of that scene at the time, so yes.

16             Q.  How did you come to understand that

17   you were at this club on this date when Spirit

18   performed?

19             A.  Because I was involved in a bad car

20   wreck on the way home, and it became a historical

21   part of something, 40 years ago plus.

22             Q.  When you say you were involved in

23   a bad car accident, what happened?

24             A.  The car -- I was going across a stop,

**EXHIBIT 3**
**19**