Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail:  hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DEFENDANTS' TRIAL BRIEF |
| LED ZEPPELIN, *et al.*, | Date: June 14, 2016 |
| Defendants. | Time: 9:00 a.m. |
| | Courtroom of the Honorable |
| | R. Gary Klausner |
| | United States District Judge |

# **TABLE OF CONTENTS**

DEFENDANTS' TRIAL BRIEF.................................................................1

1.   INTRODUCTION.................................................................1

2.   CLAIMS AND DEFENSES .......................................................1

   (a)   Plaintiff Skidmore's Claims.................................................1

      (1)   Skidmore's Ownership of the Allegedly-Infringed Copyright
            in the 1967 *Taurus* Deposit Copy...................................1

         i.   *In 1967, Randy Wolfe Assigned All Rights in* Taurus *to
              Hollenbeck, Which is the Copyright's Registered Owner*........1

         ii.  *Skidmore Sues As Beneficial Owner By Reason of the
              Royalty Rights Taken from Wolfe's Son, Quinn* ......................1

         iii. *The Allegedly-Infringed Copyright Protects Only the
              Original Expression in the 1967* Taurus *Deposit Copy* ...........2

            a.   The 1909 Act Governs and Limits the *Taurus*
                 Copyright to the 1967 Deposit Copy ...........................2

            b.   The Copyrighted *Taurus* Musical Composition
                 Appears in the 1967 Deposit Copy and Cannot Be
                 Changed by Resort to Uncopyrighted Recordings.........3

      (2)   Skidmore's Obligation to Prove Infringement ............................5

         i.   *Skidmore's Claimed Proof of Access* ........................5

         ii.  *Skidmore's Claimed Proof of Substantial Similarity* ...............6

            a.   Skidmore Must Prove Substantial Similarity in
                 Protectable Original Material in the *Taurus* Deposit
                 Copy and *Stairway to Heaven*.......................................6

            b.   The Extrinsic Test – Expert Testimony ........................8

            c.   The Intrinsic Test – for the Jury.................................8

i

(b)   Defendants' Affirmative Defenses ...........................................9

   (c)   Skidmore's Claimed Remedies ...................................11

   (1)   Because Skidmore Does Not Own the 1967 *Taurus* Copyright, His Potential Recovery Is Halved ...........................11

   (2)   The Confidentiality of Financial Information Should Be Maintained ...................................................................11

   (3)   Statutory Damages.........................................................12

   (4)   Actual Damages and Profits ..........................................12

       i.   *Skidmore Must Prove a Causal Connection Between the Alleged Infringement and the Actual Damages and Profits He Seeks* ......................................12

       ii.  *Each Defendant's Respective Profits* ..........................12

       a.  Potential Liability for Profits Is Several not Joint .......12

       b.  The Profits Are Reducible by Factors Other than the Alleged Infringing Use...........................................13

       c.  Profits Are an Equitable Remedy Triable to the Court, Not the Jury .......................................................13

       d.  Because Profits Are Triable to the Court, and to Avoid Prejudice, Profits Should Be Bifurcated ...........14

(d)   Depositions Are Properly Not Part of the Public Record .....................14

(e)   Anticipated Evidentiary Issues ............................................16

   (1)   The Court's April 26, 2016 Rulings on the Parties' Motions in Limine...................................................................16

   (2)   Subsequent Developments Relevant to the Motions in Limine ..16

       i.   *Defendants' Motions in Limine Nos. 3-4 and* Daubert *Motion: Skidmore's Experts and Recordings*.........................16

      b.  Skidmore's New Expert Reports Also Confirm Johnson, Hanson and Bricklin Are Properly Excluded as to Substantial Similarity .......................... 18

      c.  Skidmore's Experts Are Properly Excluded as to Performance Elements Supposedly Proving Access ........................................................... 21

      d.  Skidmore's "Mash-Ups" are Irrelevant, Misleading and Properly Excluded ................................ 23

    *ii.  Defendants' Motion in Limine No. 10: Witnesses Skidmore Failed to Disclose Pursuant to FRCP 26* ............... 24

3.     CONCLUSION ............................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir. 1988), *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207 (1990) ...................................................................13

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994), *cert. denied* 513 U.S. 1184 (1995) ............................................................................7

*Apple iPod iTunes Antitrust Litig.*, 75 F. Supp. 3d 1271 (N.D. Cal. 2014) ..............15

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) ......................6, 7, 19

*Cottrill v. Spears*, No. CIV.A. 02-3646, 2003 WL 21223846 ..................................... (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004) ...........................24

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) .................................. 10, 14

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995)................ 18, 22

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165 (9th Cir. 1989) .............11

*Fahmy v. Jay Z*, No. 07CV05715-CAS-PJWx, 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015)...............................................................................................2

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)................................6

*Felling v. Knight*, No. IP01-0571-C-T/G, 2001 WL 1782360 (S.D. Ind. Dec. 21, 2001) ......................................................................................................16

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059 (9th Cir. 2015)...................................................................................................13

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985)...................................................................................................13

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072 (9th Cir. 2006)............................................................................................ 6, 7, 19

*Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410 (8th Cir. 2005).............................................................................................. 20, 22

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505 (4th Cir. 2002)........12

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), *cert. denied*
  545 U.S. 1114 (2005) ..................................................................................10

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978).................................16

*Pasillas v. McDonald's Corp.,* 927 F.2d 440 (9th Cir.1991) ........................9

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) .......... 10, 13

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) ...........12

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ...........................10

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ...........................................7

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ...........................................7

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000),
  *cert. denied* 531 U.S. 1126 (2001) ....................................................... 2, 8, 9

*United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996), *cert. denied*
  522 U.S. 809 (1997) ...................................................................................15

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003).....................1

*Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK,
  2014 WL 7877773 (C.D. Cal. Oct. 30, 2014).........................................2

**Statutes**

15 U.S.C. § 1117...........................................................................................13

17 U.S.C. § 11................................................................................................2

17 U.S.C. § 12................................................................................................2

17 U.S.C. § 501..............................................................................................1

17 U.S.C. § 504...................................................................................... 12, 13

**Other Authorities**

Copyright Office Compendium § 310.4 .........................................................9

Copyright Office Compendium § 313.4 .........................................................7

Copyright Office Compendium § 802.5 .........................................................7

D. Begault, H. Heisse & C. Peltier, *Forensic Musicology – An Overview* ...............24

H.R. Rep. No. 1476 .......................................................................................2

Manual of Model Jury Instructions for the Ninth Circuit (2007)......................... 10, 11

**Rules**

Fed. R. Civ. P. 26...............................................................................................24

Fed. R. Civ. P. 30...............................................................................................25

Fed. R. Civ. P. 37...............................................................................................24

L.R. 83-6.2.1 .....................................................................................................15

L.R. 83-6.3.1 .....................................................................................................15

**Treatises**

M. Nimmer & D. Nimmer, *Nimmer on Copyright*............................................ 2, 9, 11

Ronald S. Rosen, *Music & Copyright* (2008)...............................................7

**DEFENDANTS' TRIAL BRIEF**

**1.   INTRODUCTION**

Defendants James Patrick Page, Robert Anthony Plant, Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company respectfully submit this Trial Brief.

**2.   CLAIMS AND DEFENSES**

**(a)    Plaintiff Skidmore's Claims**

Plaintiff Michael Skidmore asserts forty-five-year-old claims that *Stairway to Heaven* infringes the 1967 copyright in a musical composition titled *Taurus* and owned by a non-party, Hollenbeck Music ("Hollenbeck").

**(1)    Skidmore's Ownership of the Allegedly-Infringed Copyright in the 1967 *Taurus* Deposit Copy**

***i.    In 1967, Randy Wolfe Assigned All Rights in* Taurus *to Hollenbeck, Which is the Copyright's Registered Owner***

Skidmore, and the Randy Craig Wolfe Trust, do not own the copyright that Skidmore sues upon.  Rather, the evidence will establish that the 1967 *Taurus* copyright is registered in the name of Hollenbeck as copyright claimant.

***ii.    Skidmore Sues As Beneficial Owner By Reason of the Royalty Rights Taken from Wolfe's Son, Quinn***

Skidmore bases his standing on his contention that Randy Wolfe authored the 1967 *Taurus* composition and assigned his rights in the composition to Hollenbeck in return for a royalty under Wolfe's August 29, 1967 Exclusive Songwriter's and Composer's Agreement with Hollenbeck.  Skidmore claims that after Wolfe was declared dead in 2002, Wolfe's right to the royalties went to the Trust rather than to Wolfe's sole heir, his son Quinn Wolfe. Skidmore, as trustee of the Trust, sues as beneficial owner of the 1967 copyright.  17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright" may sue for infringement); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003) (beneficial owners

1

1  include "an author who had parted with legal title to the copyright in exchange for

2  percentage royalties"), *quoting* H.R. Rep. No. 1476 at 159.

3               ### iii.   *The Allegedly-Infringed Copyright Protects Only the*

4                          *Original Expression in the 1967* **Taurus** *Deposit Copy*

5               #### a.  The 1909 Act Governs and Limits the *Taurus*

6                        Copyright to the 1967 Deposit Copy

7        The 1967 copyright that Skidmore sues upon was registered under the

8  Copyright Act of 1909, which required the "deposit, with claim of copyright, of one

9  complete copy of such work if it be a . . . musical, or dramatico-musical

10 composition; . . . ." 17 U.S.C. §§ 11-12 (repealed).  Because sound recordings were

11 not "copies" of a composition, the "complete copy" deposited with the Copyright

12 Office had to be sheet music.  2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §

13 2.05[A].  Those deposited "lead sheets are deemed to define the scope of [1909 Act]

14 copyrighted compositions."  *Williams v. Bridgeport Music, Inc.*, No. LA CV13-

15 06004 JAK, 2014 WL 7877773, at *9-10 (C.D. Cal. Oct. 30, 2014); *Fahmy v. Jay Z*,

16 No. 07CV05715-CAS-PJWx, 2015 WL 5680299, at *13-14 (C.D. Cal. Sept. 24,

17 2015) (same).

18       The Court has rejected Skidmore's argument that the 1967 *Taurus* copyright

19 is not "limited to the music sheet deposited with the Copyright Office."  April 8,

20 2016 Order (Doc. 159) at 16-17 (rejecting Skidmore's attempt to expand the 1967

21 copyright by relying on *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir.

22 2000), *cert. denied* 531 U.S. 1126 (2001): "Ironically, then, the very case Plaintiff

23 relies on to argue that elements beyond the deposit copy should be considered

24 presents a scenario in which no elements outside the deposit copy were

25 considered").

26       Further, the Court has tentatively granted defendants' Motion in Limine No. 3,

27 ruling that "the only *Taurus* recordings properly presented to the jury are those that

28 are strictly limited to the *Taurus* musical composition as transcribed in the

copyrighted 1967 transcription."  Order (Doc. 202) at 1.

The copyright Skidmore sues upon is limited to the musical composition transcribed in the 1967 *Taurus* deposit copy.  Only that deposit copy, and recordings by experts correctly performing that deposit copy, are relevant and properly presented at trial.[1]

### b.  The Copyrighted *Taurus* Musical Composition Appears in the 1967 Deposit Copy and Cannot Be Changed by Resort to Uncopyrighted Recordings

The Court also tentatively granted defendants' Motion in Limine No. 4 to

---

[1]   Plaintiff has argued that in *Williams* the Court expanded the 1909 Act's copyrights beyond the deposited sheet music.  However, the Court's preliminary instructions to the jury were clear:

> "The works claimed by the Gaye parties in this case are the musical compositions *Got To Give It Up* and *After The Dance*. At the time the copyright in each of these works was separately obtained and registered, only sheet music could be filed by a copyright owner with the copyright office. Sheet music is paper on which notes, lyrics and other musical elements are written in a notation understandable to musicians.

> "Recordings of musical compositions could not be filed with the copyright office at that time. Therefore, although sound recordings of *Got To Give It Up* and *After The Dance* were made and released commercially, those particular recordings are not at issue in this case, will not be produced into evidence and will not be played for you during the trial. Instead, you will hear testimony from one or more witnesses from each side about what each thinks is shown on the sheet music for each composition.

> "You will also hear recorded versions of each work that each side has prepared based on what each side contends is shown in the sheet music that was filed with the copyright office.

> ***

> "You may also hear one or more witnesses use keyboards to play what each says appears on the sheet music."

Rptr's Trans. Trial Proc. Feb. 24, 2015 at 20:8 to 21:7.  Here, plaintiff's experts agree that defendants' experts' recorded performances of the 1967 *Taurus* deposit copy are correct, with Dr. Stewart suggesting only that in Dr. Ferrara's audio exhibit one part should have been repeated.

exclude Skidmore's experts and exhibits "insofar as the expert reports, testimony, or exhibits rely on unprotected performance elements." Order (Doc. 202) at 1. The Court then amended its Order, stating that "[i]f Plaintiff wishes to introduce expert testimony at trial, it must submit reports completely purged of any reliance on the unprotected performance elements in the sound recording. Any comparison analysis must consider *only* the protected elements represented in the musical composition." Order (Doc. 203). As shown below, Skidmore's new reports continue to rely on unprotected performance elements in the sound recordings. *See, below* at 17-18.

However, Skidmore's experts have confirmed that a concern raised by the Court does not apply. The Court's Order amending its ruling states in passing that "[b]ecause the deposit copy of *Taurus* registered with the Copyright Office is sheet music for the piano, Plaintiff's experts naturally relied on the *Taurus* sound recording to determine the melody, rhythm and other protected elements of the musical composition as played on the guitar." Order (Doc. 203). Skidmore's experts have confirmed that the 1967 Taurus deposit copy sets out the *Taurus* musical composition, including not only melody and rhythm, but harmony and key.[2]

---

[2]    Stewart Depo. at 142:9-13 (accompanying Anderson Decl. at 1, ¶ 7, & Exh. 5):

> Q.     So just looking at Exhibit 2058 [1967 *Taurus* deposit copy], you can discern, just from what comes to mind, the following from – of a musical composition: Melody, harmony, rhythm, meter, and key; is that correct?
>
> A.     That's – yeah. Um-hum.

Johnson Depo. at 123:3 to 124:21 (Anderson Decl. at 1, ¶ 8, & Exh. 6):

> Q. . . .   Being able to read music, you can see on Exhibit 2058 the melody of that musical composition; correct?
>
> A.     Yes.
>
> Q.     And you can see on Exhibit 2058 the harmony of that musical composition; correct?
>
> A.     I can infer it.  It's not, strictly speaking, notated in a way that you might see it on a typical lead sheet with chord symbols, but there is, there are plenty of inferences to be drawn that suggest harmony, yes.
>
> Q.     What you're referring to is, above the staves it doesn't say, for example, "A minor"?

Accordingly, there is no reason to resort to the *Taurus* sound recordings, which are different from the *Taurus* deposit copy, which cannot change what was copyrighted in 1967 and which would only confuse the jury by presenting recordings that have elements that are not copyrighted and must be disregarded.[3]  The Court's prior ruling is correct that "the only *Taurus* recordings properly presented to the jury are those that are strictly limited to the *Taurus* musical composition as transcribed in the copyrighted 1967 transcription."  Order (Doc. 202) at 1.

### (2)  Skidmore's Obligation to Prove Infringement

#### i.  *Skidmore's Claimed Proof of Access*

Skidmore again tries to bootstrap the admission of inadmissible recordings that are different than the 1967 *Taurus* transcription, as supposed proof of access.

In opposition to defendants' Motion in Limine No. 4 to exclude his experts who had compared the *Taurus* recording to *Stairway to Heaven*, Skidmore argued that non-protectable performance elements supposedly shared by *Taurus* and *Stairway to Heaven* recordings are proof of access.  Pltf's Oppn. to Defs' MIL #4 (Doc. 137) at 5-6; Defs' Reply at 3:18-26, at 4:9-14, at 4:22-26.  The Court,

---

> A.  That's right.
> Q.  It doesn't label the chords.  But you can see the chords that are in here; right?
> A.  Yes.
> Q.  And can you see the rhythm of this musical composition?
> A.  Yes.
> Q.  Can you see the key of the musical composition?
> A.  Yes.

Hanson Depo. at 66:24 to 67:3 (Anderson Decl. at 2, ¶ 9, & Exh. 7):

> Q. . . .  Well, I believe you testified that there's melody, there's harmony, and there's rhythm reflected in the Taurus deposit copy; correct?
> A.  Correct.

[3]  Plaintiff's experts also confirmed that the 1967 *Taurus* deposit copy is not sheet music for piano: the deposit copy does not indicate any instrument.  Stewart Depo. (Exh. 5) at 125:23-25; Johnson Depo. (Exh. 6) at 190:17-20; Hanson Depo. (Exh. 7) at 62:16-19.

5

1    however, was not swayed.  Orders (Docs. 202 & 203) *re* MIL #4.

2        Yet, Skidmore's new reports again argue that claimed similarities in non-

3    protectable elements of the recordings – such as guitar finger-picking,

4    instrumentation, tempo, mood and reverb – are proof of access.  Further, Skidmore

5    and his experts renew those arguments in their new report even though the Court

6    specifically directed that if Skidmore chose to provide new reports, he "must submit

7    reports completely purged of any reliance on the unprotected performance elements

8    in the sound recording."  Order (Doc. 203).

9        Since Skidmore's new reports fail to comply with the Court's Order, the

10   portions and any testimony as to claimed similarities between *Taurus* sound

11   recordings and *Stairway to Heaven* should be barred.[4]

12                    ***ii.***   ***Skidmore's Claimed Proof of Substantial Similarity***

13                         **a. Skidmore Must Prove Substantial Similarity in**

14                         **Protectable Original Material in the *Taurus* Deposit**

15                         **Copy and *Stairway to Heaven***

16        "The mere fact that a work is copyrighted does not mean that every element of

17   the work may be protected.  Originality remains the *sine qua non* of copyright;

18   accordingly, copyright protection may extend only to those components of a work

19   that are original to the author."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.

20   340, 348 (1991).  The issue is "whether 'the *protectable elements, standing alone,*

21   are substantially similar.'"  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462

22   F.3d 1072, 1077 (9th Cir. 2006) (emphasis in original), *quoting Cavalier v. Random*

23   *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

24   _____

25   [4]      Also, as discussed below, Skidmore's experts failed to research the extent to

26   which these supposedly-similar non-protectable elements are unique and, quite the
     contrary, Skidmore's experts testified they were commonplace prior to *Taurus*.

27   Their conclusory, unproven and untested assertions as to the probative value of the
     presence of these non-protectable elements are irrelevant, unreliable, unduly

28   prejudicial and properly excluded.  *See, below* at 21-23.

Accordingly, in determining substantial similarity "the non-protectable elements" must be "filter[ed] out and disregard[ed] . . . ." *Funky Films*, 462 F.3d at 1077, *quoting Cavalier*, 297 F.3d at 822.  "[O]nly those elements of a work that are protectable . . . can be compared when it comes to the ultimate question of illicit copying." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (emphasis added), *cert. denied* 513 U.S. 1184 (1995).  "[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003), *cert. denied* 540 U.S. 983 (2003); *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical elements not protected).  Unprotected material includes chromatic scales, arpeggios and a "music phrase consisting of three notes."  Copyright Office Compendium §§ 313.4(B), 313.4(C) & 802.5(A).

Further, the assertion that portions of two compositions contain all or some of the same pitches – even if in the exact same sequence, which is not the case here – is not meaningful because pitches are tones divorced of duration and rhythm and also because there are only a very limited number of pitches, twelve in a chromatic scale.  *Swirsky v. Carey*, 376 F.3d 841, 848 n. 13 (9th Cir. 2004) ("concentration solely on pitch sequence may break music down beyond recognition"); Ronald S. Rosen, *Music & Copyright* (2008) at 153 n. 9 ("The existence of a similar (or even identical) pitch progression in two works is of *no musical significance.*  For example, 'Rock of Ages' and 'Rudolph, the Red-Nosed Reindeer,' each . . . contain the same seven-note progression C-D-C-A-F-D-C (1-2-1-6-4-2-1), . . . even though the expression in each is substantially different." (parenthetical and emphasis in original)).

Also, "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  *Satava*, 323 F.3d at 811.  Copyright in a selection and arrangement is

1  "thin" and "protects against only virtually identical copying." *Id.* at 812.

2  ### b. The Extrinsic Test – Expert Testimony

3  "Proof of . . . substantial similarity is satisfied by a two-part test of extrinsic

4  similarity and intrinsic similarity." *Three Boys Music*, 212 F.3d at 485.

5  "The extrinsic test considers whether two works share a similarity of ideas and

6  expression as measured by external, objective criteria . . . .  The extrinsic test

7  requires 'analytical dissection of a work and expert testimony.'" *Swirsky*, 376 F.3d

8  at 845, *quoting Three Boys Music,* 212 F.3d at 485.  "'Analytical dissection' requires

9  breaking the works 'down into their constituent elements, and comparing those

10  elements for proof of copying as measured by 'substantial similarity.'" *Swirsky*, 376

11  F.3d at 845, *quoting Rice v. Fox Broad. Co.,* 148 F.Supp.2d 1029, 1051

12  (C.D.Cal.2001), *rev'd on other grounds,* 330 F.3d 1170 (9th Cir. 2003).

13  "Because the requirement is one of substantial similarity to *protected* elements

14  of the copyrighted work, it is essential to distinguish between the protected and

15  unprotected material in a plaintiff's work." *Swirsky*, 376 F.3d at 845.

16  ### c. The Intrinsic Test – for the Jury

17  "Once the extrinsic test is satisfied, the factfinder applies the intrinsic test."

18  *Three Boys Music*, 212 F.3d at 485.

19  Although it is well-established that expert testimony applies to the extrinsic

20  test and not the intrinsic test, at defendants' depositions of Skidmore's experts,

21  Skidmore's counsel asked his experts to opine as to the intrinsic test.  While a

22  musicologist may testify as to, *e.g.*, the analytical dissection of music, he or she has

23  no objective, scientific and reliable basis to testify as to whether a reasonable person

24  would hear two compositions as substantially similar.  Accordingly, Skidmore

25  should not be able to elicit testimony from his experts as to the intrinsic test.

26  Also, while case law in this Circuit has characterized the intrinsic test as

27  "whether the ordinary, reasonable person would find the total concept and feel of the

28  works to be substantially similar" (*id.*, *quoting Pasillas v. McDonald's Corp.,* 927

F.2d 440, 442 (9th Cir.1991)), "[t]he Ninth Circuit, which originally authored this ['concept and feel'] formulation . . .   appears to be moving towards its abandonment."  4 *Nimmer on Copyright* § 13.03[A][1][c].  And for good reason.

"[T]he touchstone of total concept and feel threatens to subvert the very essence of copyright, namely the protection of original *expression*. 'Concepts' are statutorily ineligible for copyright protection; for courts to advert to a work's 'total concept' as the essence of its protectible character seems ill-advised in the extreme. Further, the addition of 'feel' to the judicial inquiry, being a wholly amorphous referent, merely invites an abdication of analysis. In sum, therefore, the frequent invocations of this standard do little to bring order to the inquiry into what constitutes substantial similarity, and would be better abandoned."  *Id.*; *see, also* Copyright Office Compendium § 310.4 ("Look and Feel -- The U.S. Copyright Office will not consider the so-called 'look and feel' of a work.  Invoking a work's 'feel' is not a viable substitute for an objective analysis of the work's fixed and creative elements.").

Accordingly, defendants' proposed jury instruction no. 32 omits the reference to "concept and feel."  Defs' Disputed Jury Instructions & Special Verdict Forms (Doc. 196) at 39-40.

**(b)** **Defendants' Affirmative Defenses**

Defendants have pleaded and intend to pursue at trial the following affirmative defenses:

Second Affirmative Defense (independent creation): That *Stairway to Heaven* was created by James Patrick Page and Robert Plant independently of the musical composition *Taurus*.  *Three Boys Music*, 21F.3d at 486.

Fifth Affirmative Defense (de minimis): That the allegedly copied original material in the musical composition *Taurus* is not a quantitatively significant or qualitatively significant portion of that musical composition as a whole.  *Newton v.* ///

*Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005).[5]

 <u>Sixth Affirmative Defense (fair use)</u>: That the defendant used the copyrighted work in a reasonable way under the circumstances that advances the public interest, considering:

  1. the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

  2. the nature of the copyrighted work;

  3. the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

  4. the effect of the use upon the potential market for or value of the copyrighted work.

Manual of Model Jury Instructions for the Ninth Circuit (2007) ("9th Cir. Manual") 17.21; *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013).

 <u>Warner defendants' Ninth Affirmative Defense/Individual Defendants' Eighth Affirmative Defense (laches)</u>:

  1. Unreasonable delay in the assertion of the claim; and

  2. Prejudice as a result of the delay.

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

 <u>Warner defendants' Tenth Affirmative Defense/Individual Defendants' Ninth Affirmative Defense (statute of limitations)</u>: that defendants are insulated from liability for alleged infringements more than three years before Skidmore's filing of this action on May 31, 2014.   17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014).

 <u>Warner defendants' Seventeenth Affirmative Defense/Individual Defendants' Sixteenth Affirmative Defense (unclean hands)</u>:

  1. Plaintiff or his predecessors' conduct violated conscience, good

---

[5] Notwithstanding that defendants identified de minimis, plaintiff bears the burden of proving copying of substantial copyrightable subject matter.

10

1   faith, or other equitable principles, or he "dirtied his hands" in

2   connection with the copyright he asserts in the musical

3   composition *Taurus*; and

4       2.   this improper conduct relates directly to the subject matter of his claim.

5   *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); 4

6   *Nimmer on Copyright* § 13.09.

7       <u>Warner defendants' Eighteenth Affirmative Defense (innocent infringement)</u>:

8       1.   the defendant was not aware that its acts constituted infringement

9           of the copyright; and

10       2.   the defendant had no reason to believe that its acts constituted an

11           infringement of the copyright.

12   9th Cir. Manual 17.35.

13       **(c)**     <u>**Skidmore's Claimed Remedies**</u>

14         **(1)**   **Because Skidmore Does Not Own the 1967 *Taurus* Copyright,**

15             **His Potential Recovery Is Halved**

16       The Court granted defendants' Motion for partial summary judgment that

17   Skidmore, as claimed beneficial owner of the 1976 *Taurus* copyright, is entitled to

18   only 50% of any recovery.  April 8, 2016 Order (Doc. 159) at 18, 20.

19         **(2)**   **The Confidentiality of Financial Information Should Be**

20             **Maintained**

21       In response to Skidmore's discovery, defendants produced over 40,000 pages

22   of confidential accountings, financial records and contracts that were designated as

23   "CONFIDENTIAL" under the Protective Order (Doc. 82) in this case.  The vast

24   majority of those documents, albeit identified as potential exhibits, will not in fact be

25   used at trial.   Defendants respectfully submit and request that all previously-

26   designated documents not used at trial should remain under the protection of the

27   Protective Order.  In addition, defendants respectfully request that if a document

28   designated as confidential is used at trial and is reasonably subject to redaction of

1   information not relevant to its use at trial, that information be ordered redacted

2   before the document is used at trial.

3           **(3)**     **Statutory Damages**

4        Statutory damages are limited to a maximum of $150,000 per work infringed.

5   17 U.S.C. § 504(c).  Defendants understand that Skidmore, believing his potential

6   recovery of profits attributable to the alleged infringement exceeds that sum, does

7   not intend to elect statutory damages.

8           **(4)**     **Actual Damages and Profits**

9                 ***i.***     ***Skidmore Must Prove a Causal Connection Between the***

10              ***Alleged Infringement and the Actual Damages and***

11              ***Profits He Seeks***

12       As an alternative to statutory damages, a plaintiff in a copyright case may seek

13  actual damages and profits.  17 U.S.C. § 504(a).

14       "Under § 504(b), actual damages must be suffered 'as a result of the

15  infringement,' and recoverable profits must be 'attributable to the infringement.'

16  From the statutory language, it is apparent that a causal link between the

17  infringement and the monetary remedy sought is a predicate to recovery of both

18  actual damages and profits."  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700,

19  708 (9th Cir. 2004).  Accordingly, "a plaintiff in a § 504(b) action must establish this

20  causal connection, and . . . this requirement is akin to tort principles of causation and

21  damages."  *Id.*

22             ***ii.***     ***Each Defendant's Respective Profits***

23             **a.  Potential Liability for Profits Is Several not Joint**

24       The parties agree that potential liability for profits is several, with each

25  defendant potentially liable only for that defendant's respective profits.  *Nelson-*

26  *Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 517 (4th Cir. 2002) ("each

27  defendant is only liable to the copyright plaintiff to the extent of its own profits

28  derived from the infringing activity"); *Frank Music Corp. v. Metro-Goldwyn-Mayer,*

1  *Inc.*, 772 F.2d 505, 519 (9th Cir. 1985) (1909 Act; "one defendant is not liable for

2  the profit made by another").

### b. The Profits Are Reducible by Factors Other than the Alleged Infringing Use

5      If and when Skidmore has proved the revenues caused by the alleged

6  infringement and "not taken into account in computing the actual damages," and

7  once defendants have proved their respective deductions, any resulting profits are

8  further reduced by "the elements of profit attributable to factors other than the

9  copyrighted work."  17 U.S.C. § 504(b).  Those factors include, for example, the

10  75% of the music in *Stairway to Heaven* that Skidmore admits is different from

11  *Taurus*; *Stairway to Heaven*'s lyrics; the performances of the members of Led

12  Zeppelin; the production of the *Stairway to Heaven* sound recording; and the draw

13  and appeal of the band.  *See, e.g., Abend v. MCA, Inc.*, 863 F.2d 1465, 1480 (9th Cir.

14  1988) (as to apportionment of profits, factors other than the allegedly-infringed short

15  story, such as the talent and popularity of Alfred Hitchcock, Jimmy Stewart and

16  Grace Kelly, "clearly contributed" to the success of the film *Rear Window*), *aff'd*

17  *sub nom. Stewart v. Abend*, 495 U.S. 207 (1990).

### c. Profits Are an Equitable Remedy Triable to the Court, Not the Jury

20      In their Memorandum of Contentions of Fact and Law, defendants raised that

21  Skidmore is not entitled to a jury trial as to defendants' profits from the alleged

22  infringement and that, instead, any award of profits is to be determined by the Court.

23  Defs' Memo. (Doc. 157) at 19-20; *Petrella*, 134 S. Ct. at 1967 n.1 (profit remedy

24  appropriately treated as equitable) & at 1977-79 (profits are "relief equitably

25  awardable"); *see, also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d

26  1059, 1074-75 (9th Cir. 2015) ("A claim for disgorgement of profits under [15

27  U.S.C.] § 1117(a) is equitable, not legal," and there is no right to jury trial of

28  profits), *cert. denied*, 136 S. Ct. 410 (2015).  Defendants also raised this point in the

parties' proposed Pretrial Conference Order (Doc. 200-1 at 23:18-20).

To date, Skidmore has not disputed that profits are for the Court to decide.

### d.  Because Profits Are Triable to the Court, and to Avoid Prejudice, Profits Should Be Bifurcated

In their Memorandum of Contentions of Fact and Law, as well as in the proposed Pretrial Conference Order, defendants raised that bifurcation of profits is appropriate.  Defs' Memo. (Doc. 157) at 20-21; proposed Pretrial Conf. Order (Doc. 200-1 at 23:18-20) at 24:21-22.

Skidmore's claim for profits is tried to the Court, as is the defense of laches to that claim, and the Court reserved ruling on that defense until Skidmore first establishes liability.  April 8, 2016 Order (Doc. 159) at 19 ("if there is ultimately a finding of liability, Defendants may renew their request to reduce profits in an amount commensurate with the delay, and the Court will consider the issue again at that time").  Because the issues tried to the jury – liability, actual damages and statutory damages – are distinct from the issues of profits and laches tried to the Court, bifurcation is permitted.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).  And, bifurcation is appropriate.  If Skidmore fails to establish infringement, then trial time spent as to profits and laches will have been for naught. In addition, bifurcation of the determination of profits avoids the substantial risk that evidence of profits will confuse the issues presented to the jury, mislead the jury and create the substantial risk of prejudice from the evidence of substantial earnings.

Accordingly, defendants respectfully submit that the determination of profits and defendants' defense of laches be bifurcated and proceed only if Skidmore first establishes infringement.

### (d)  Depositions Are Properly Not Part of the Public Record

The parties expect that portions of deposition transcripts will be read, and portions of deposition videos will be played, at trial.  However, the transcripts and videos include substantial other material that will not be used at trial, is not relevant,

1    is not otherwise admissible or has been designated as confidential under the

2    Protective Order in this action and filed under seal in connection with prior

3    proceedings.   At most, the transcripts and video should be marked, if at all, for

4    identification, but not themselves introduced wholesale into evidence as exhibits.[6]

5           Further, access to videos used at trial should not be provided to the media.

6    Rather, they should be used only for their intended purpose, namely as a substitute

7    for live testimony at trial.  *Apple iPod iTunes Antitrust Litig.*, 75 F. Supp. 3d 1271,

8    1275 (N.D. Cal. 2014) (deposition testimony played at trial "should be treated in the

9    same manner as any other live testimony offered at trial. As is typical of all live

10   testimony, it is properly made available to the public through its initial courtroom

11   presentation and, subsequently, via the official court transcript, the latter of which is

12   the judicial record of such testimony.")  Not releasing video of testimony at trial is

13   consistent with the Court's Local Rules, which prohibit cameras and recorders in the

14   courtroom and prohibit recording of live testimony except by court personnel.  L.R.

15   83-6.2.1 & 83-6.3.1.  The media and members of the public present will, as in any

16   trial, see the testimony presented, and there is no reason that they should be provided

17   copies of video of that testimony. *United States v. McDougal*, 103 F.3d 651, 658

18   (8th Cir. 1996) (affirming order preventing release of videotape of deposition played

19   at trial, where, *inter alia*, media had access by seeing video played at trial and

20   "release of the videotape would be inconsistent with the ban on cameras in the

21   courtroom"), *cert. denied* 522 U.S. 809 (1997).

22          And there are sound reasons for the Court not to provide copies of video to the

23   media.  Doing so would undercut the Court's Local Rules against videotaping of

24   trial testimony.  In addition, "as a matter of public policy, . . . courts should avoid

25   becoming the instrumentalities of commercial or other private pursuits." *Id.*, *citing*

26

27   _____
     [6]    Defendants timely objected to plaintiff's listing of entire deposition transcripts
28   and videos as trial exhibits in the Joint Exhibit List.  Proposed Pretrial Conf. Order
     (Doc. 200-1) at 20-27.

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602-03 (1978) ("Underlying each of petitioners arguments is the crucial fact that respondents require a court's cooperation in furthering their commercial plans").  The media can report on what they see in the courtroom, and the Court should not become "the instrumentalit[y]" of their commercial pursuits by providing video for them to play.  Further, videotapes "are subject to a high[ ] degree of potential abuse [because t]hey can be cut and spliced . . ." (*Felling v. Knight*, No. IP01-0571-C-T/G, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001)), including in misleading ways.

Accordingly, public access to transcripts and video should be limited to what is seen or heard at trial when portions of transcripts and video are read or played.

**(e)    Anticipated Evidentiary Issues**

**(1)    The Court's April 26, 2016 Rulings on the Parties' Motions in Limine**

On March 25, 2016, the parties filed their respective Motions in Limine and, for the Court's convenience, the Motions and the Court's April 25, 2016 tentative and amended rulings are summarized in the attached Appendix.

**(2)    Subsequent Developments Relevant to the Motions in Limine**

*i.    Defendants' Motions in Limine Nos. 3-4 and Daubert Motion: Skidmore's Experts and Recordings*

Defendants timely filed a motion in limine as to the use of *Taurus* recordings that are different from the copyrighted 1967 *Taurus* deposit copy and a motion in limine and *Daubert* motion as to Skidmore's experts Dr. Stewart, Erik Johnson, Kevin Hanson and Brian Bricklin.  Defs' MIL # 3 & 4 (Doc. 136 & 137).  The Court tentatively granted those motions and recent developments confirm *Taurus* recordings and Skidmore's experts are properly excluded.

///

///

///

16

**a. Skidmore's New Expert Reports Continue to Rely on the Uncopyrighted *Taurus* Sound Recordings and Performance Elements**

Skidmore's initial expert reports ignored the 1967 *Taurus* deposit copy even though it is the copyrighted work at issue; his experts' summary judgment opposition declarations also failed to consider the 1967 *Taurus* deposit copy; and Skidmore failed to submit rebuttal reports analyzing the 1967 *Taurus* deposit copy. Despite the Court providing Skidmore a fourth chance to submit reports, he still seeks to improperly rely on the *Taurus* sound recordings and confuse the jury.

The Court's April 25, 2016 rulings are clear.  In tentatively granting defendants' Motion in Limine No. 3, the Court stated that "the only *Taurus* recordings properly presented to the jury are those that are strictly limited to the *Taurus* musical composition as transcribed in the copyrighted 1967 transcription." Order (Doc. 202) at 1.  And, in amending its ruling on defendants' Motion in Limine No. 4, the Court stated:

> "If Plaintiff wishes to introduce expert testimony at trial, it must submit reports completely purged of any reliance on the unprotected performance elements in the sound recording.  Any comparison analysis must consider *only* the protected elements represented in the musical composition."

Order (Doc. 203).

Despite clear guidance from the Court, and a fourth opportunity, on May 2, 2016 Skidmore submitted reports that pay lip service to the Court's rulings, but proceed to rely on the *Taurus* recordings and performance elements nowhere to be found in the 1967 *Taurus* deposit copy.  Anderson Decl. at 1, ¶ 3, & Exh. 1 (Stewart report) at 2, 12-14, 21-23 (purporting to analyze the "compositional elements contained in the recorded embodiments of 'Taurus'"), Exh. 2 (Johnson report) at 3-5, 9-14 (claiming, *inter alia*, that *Taurus* composition is the composition as embodied in recordings over time), Exh. 3 (Hanson report) at 2-3 ("I have included

below analysis of compositional elements embodied in the sound recordings of both pieces" and "consider[ed] the protectable elements in the Taurus sound recording"), & Exh. 4 (Bricklin report) at 1-6 (he identifies "components" of the "recorded version of each song" and "recreat[ed] the two T and STH sound recordings").

Skidmore did not comply with the Court's Order and the fourth chance the Court provided him, and his new expert reports should be rejected along with the experts who provided them.

### b.  Skidmore's New Expert Reports Also Confirm Johnson, Hanson and Bricklin Are Properly Excluded as to Substantial Similarity

In addition, the deposition testimony of Johnson and Hanson and the new report of Bricklin – who due to illness did not appear for his deposition – confirm that their testimony and reports as to claimed substantial similarities are properly excluded pursuant to defendants' Motion in Limine No. 4 and *Daubert* Motion.

Johnson, Hanson and Bricklin are not musicologists.  Rather, they are musicians who happen to be long-time personal friends of plaintiff's counsel. Johnson Depo. (Exh. 6) at 35:12-19, 78:16 to 79:16, 246:20 to 247:14; Hanson Depo. (Exh. 7) at 34:4-7.  They have never been expert witnesses before, they list no published articles and they have no graduate degrees.  Johnson Depo. (Exh. 6) at 16:23 to 17:6, 34:1-3, 35:12-19; Hanson Depo. (Exh. 7) at 9:4-9, 27:7-19; Exh. 2-3. They cite no prior research, and instead they formed their opinions solely for litigation, which triggers heightened scrutiny under *Daubert*.  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying").

///

Further, they have not provided a reliable, objective and scientific analysis consistent with the methodology required in music cases.  To the contrary, at their depositions Johnson and Hanson confirmed their methodology, if it could be so termed, is subjective and violates fundamental requirements of providing an opinion as to substantial similarity.

They both admit they did not disregard commonplace elements and, indeed, both claim that doing so is improper.  Johnson Depo. (Exh. 6) at 59:8 to 61:6; Hanson Depo. (Exh. 7) at 70:8-17; *cf. Funky Films*, 462 F.3d at 1077 (analysis must "filter out and disregard the non-protectable elements in making [a] substantial similarity determination"), *quoting Cavalier*, 297 F.3d at 822; *see, above* at 6-8. They also do not rely upon objective criteria.  *Compare* Johnson Depo. (Exh. 6) at 60:3 to 61:6 (his analysis is to look for "the truth of the musical composition," "its je ne sais quoi"; "it's subjective, what it means to me") & Hanson Depo. (Exh. 7) at 42:14 to 43:2 (musicological analysis is "a very malleable, subjective process"), *with Swirsky*, 376 F.3d at 845 ("The extrinsic test considers whether two works share a similarity of ideas and expression <u>as measured by external, objective criteria</u>" (emphasis added)).

They also both treated commonplace elements as original.  Thus, both testified that the descending chromatic line, the chords and the pitches A-B-C they contend appear in both *Taurus* and *Stairway to Heaven* are common and existed before *Taurus*.  Yet, Johnson testified that in his view the descending chromatic line is original, that any music which enhances a composition is original and, as a result, that the public domain song *Star Spangled Banner* also is protectable and original. Johnson Depo. (Exh. 6) at 55:22 to 59:7; *see, also* Johnson's new report (Exh. 2) at 11 (it is "preposterous" to suggest that "arpeggios and minor line clichés are . . . freely available to all with no strings attached and without preferential usage rights").  Likewise, Hanson testified that in his view the entirety of *Taurus* is original, including the descending chromatic line and other elements he agrees are

19

common and predate *Taurus*, so he did not disregard any portion of it in concluding that the compositions are substantially similar.  Hanson Depo. (Exh. 7) at 69:16-22, 70:8 to 71:23.

While Bricklin did not appear for deposition, his new report contains no analysis at all as to the *Taurus* deposit copy.  Rather, and aside from his repetition of his first report's references to alleged prior claims and settlements (references barred by the Court's ruling on defendants' Motion in Limine No. 5), Bricklin offers only the conclusory assertion that listening to a "mash-up" he created overlaying new recordings of *Taurus* and *Stairway to Heaven*, "it is clear that it appears as one piece of music" and "are beyond a reasonable doubt one in the same."  Exh. 4 at 6; & *see, below* at 23-24 *re* mash-ups.

These foundational problems go far beyond issues of credibility of their opinions and strike at the heart of the Court's goalkeeper role.  *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ("if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded").  Plaintiff, having retained a musicologist, Stewart, hopes to also call his counsel's friends, Johnson, Hanson and Bricklin, who are not musicologists and did not apply the extrinsic test mandated by this Circuit's law.  Their "methodology" is, by their own admissions, their subjective views coupled with their refusal to disregard admittedly-commonplace elements.

Their testimony fails to meet the tests of relevance and reliability that this Court, in its gatekeeper role, is required to apply.  Defs' MIL # 4 (Doc. 137) at 3-4.  While a *Daubert* hearing is unnecessary because Johnson, Hanson and Bricklin do not even come close to providing a relevant and reliable methodology to objectively support their assertions, if there is any doubt on that point then defendants repeat their prior request for a *Daubert* hearing.

Johnson, Hanson and Bricklin are properly excluded as proffered experts as to substantial similarity.

### c.  Skidmore's Experts Are Properly Excluded as to Performance Elements Supposedly Proving Access

As discussed above, Skidmore previously argued unsuccessfully that claimed similarities in the *Taurus* and *Stairway to Heaven* recordings are proof of access. *See, above* 5-6.  Even if this argument is considered again, plaintiff's experts fail to support with objective, scientific and reliable analysis their bare assertions that the claimed performance similarities are proof of access.  Instead, their assertions are the music equivalent of junk science.

Stewart asserts that the claimed presence of double-time guitar fingerpicking in two recorded live performances of *Taurus* and in *Stairway to Heaven* is proof that the authors of the latter must have had access to the former.  Exh. 1 at 21.  However, he did no research to determine the extent to which double-time guitar fingerpicking appeared in recorded performances before *Taurus* <u>and</u> he admitted it was common. Stewart Depo. (Exh. 5) at 200:13 to 201:20.  He also asserts that the tempo and instrumentation of *Taurus* recordings are similar to *Stairway to Heaven*.  Exh. 1 at 22-23.  But, he did no research as to whether similar tempo was unique or prevalent before *Taurus* <u>and</u> admitted that the tempo was commonplace before *Taurus*. Stewart Depo. (Exh. 5) at 205:12-15, 207:15 to 208:1.  And, while claiming that similar instrumentation in the recordings is proof of access, he testified that the instrumentation in the *Taurus* and *Stairway to Heaven* recordings is different, with the *Taurus* recording using harpsichord, flute and strings, and *Stairway to Heaven* having no harpsichord and no strings, and recorders.  Stewart Depo. (Exh. 5) at 208:3-8, 208:24 to 209:1.

For his part, Johnson claims similarity in the recordings' tempo and mood proves access. Exh. 2 at 13-14.  But, like Stewart, he did no research and admits that the tempo was common before *Taurus*.  Johnson Depo. (Exh. 6) at 173:4-16.  In addition, he cannot objectively define "mood" or explain what he means, and did no research to determine the extent to which other works before *Taurus* had a similar

1  mood.  *Id.* at 173:17 to 174:12 ("I suppose it's subjective"); *Swirsky*, 376 F.3d at 845
2  (extrinsic test considers similarity "as measured by external, objective criteria").

3      Hanson asserts in his report that in the recordings of *Taurus* and *Stairway to*
4  *Heaven* the guitar is "played at a nearly identical positon on the guitar fretboard" and
5  "begin on the same strings in the same position with the same fingerings."  Exh. 3 at
6  4.  But, Hanson testified that since a child he played it the same way and, in the
7  nature of a guitar, it is the easiest way to play it.  Hanson Depo. (Exh. 7) at 56:5-24.

8      Bricklin claims that recordings of both *Taurus* and *Stairway to Heaven*
9  employ reverb.  Exh. 4.  Aside from the fact he is incorrect, he offers no research or
10  analysis as to the extent of the use of reverb prior to *Taurus* and, indeed, Stewart
11  admits it was commonplace.  Stewart Depo. (Exh. 5) at 193:23 to 194:13.

12      A putative expert's assertions, unsupported by objective analysis and research
13  are not relevant and certainly not reliable.  *Daubert*, 43 F.3d at 1319 ("We've been
14  presented with only the experts' qualifications, their conclusions and their
15  assurances of reliability.  Under *Daubert*, that's not enough."); *Nebraska Plastics*,
16  408 F.3d at 416 ("if the expert's opinion is so fundamentally unsupported that it can
17  offer no assistance to the jury, it must be excluded").

18      The scrutiny properly accorded these assertions as to non-protectable elements
19  being proof of copying is heightened by the fact that they are not the result of any
20  research before litigation, but rather are provided solely for the purpose of trying to
21  create a ground to avoid the Court's ruling in this case that the jury will only hear
22  the *Taurus* deposit copy.  *Daubert*, 43 F.3d at 1317 (it is a "significant fact" that
23  experts "developed their opinions expressly for purposes of testifying" rather than
24  "naturally and directly out of research they have conducted independent of the
25  litigation").  Here, "none of the experts based his testimony on preexisting or
26  independent research."  *Id.*

27      Even if there were some relevance to these putative experts' assertions as to
28  the admittedly-unprotected *Taurus* sound recordings, any probative value is far

1    outweighed by the confusion and prejudice that will result if the Court allows their

2    testimony and use of the *Taurus* sound recordings.   Accordingly, their testimony

3    also is properly excluded under Federal Rule of Evidence 403.

4         Plaintiff's attempt to use conclusory, unscientific and unreliable "expert"

5    assertions to reinsert the *Taurus* recordings into this case and confuse the jury,

6    should be rejected and the new expert reports and testimony excluded.

### d.  Skidmore's "Mash-Ups" are Irrelevant, Misleading and Properly Excluded

9         Plaintiff's recreated recordings of the *Taurus* recording and *Stairway to*

10   *Heaven* in its entirety, as well as plaintiff's recordings superimposing the *Taurus*

11   recording over *Stairway to Heaven* – so-called "mash-ups" – are within the Court's

12   prior rulings and properly excluded.   Plaintiff now also offers new recordings that

13   purport to superimpose performances of the *Taurus* deposit copy, *Stairway to*

14   *Heaven* and in some instances the *Taurus* recordings over each other, so that they

15   are heard simultaneously.   These new mash-ups also are properly excluded.

16        Under both the extrinsic and intrinsic test, the comparison is between the

17   plaintiff's work and the defendant's work.   Plaintiff's mash-ups of *Taurus* and

18   *Stairway to Heaven* are neither composition.   Instead, the mash-ups are new works

19   created by plaintiff, including by manipulating them digitally to, *e.g.*, match their

20   tempo.   Further, completely different songs can be "mashed" to create a recording

21   that suggests similarity where none exists.[7]   Mash-ups are a parlor trick, are not a

22   generally accepted forensic musicological practice and their use has been criticized.

23

---

24   [7]      *See, e.g.*:

25   https://www.youtube.com/watch?v=rH5Qr-fq1IY (Elvis Presley's *Burning Love* and Van Halen's *Jump*);

26   https://www.youtube.com/watch?v=D3YhCvARXSA (The Beatles' *Let It Be* and

27   Bob Marley's *No Woman, No Cry*); and

28   https://www.youtube.com/watch?v=U13xOvDa19U (The Bee Gees' *Stayin' Alive* and Pink Floyd's *Another Brick In The Wall Pt. II*).

*See, e.g.,* D. Begault, H. Heisse & C. Peltier, *Forensic Musicology – An Overview* at 3 ("perceived similarity results as a result of the *technique*, and not the *inherent similarity* between the two music examples in question" (emphasis in original), Anderson Decl. at 2, ¶ 11, Exh. 8); *Cottrill v. Spears*, No. CIV.A. 02-3646, 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004) (rejecting plaintiff's mash-ups; "it is clear to the Court that the comparison offered by Plaintiffs' CD is unhelpful under the extrinsic test and only further demonstrates the necessity to dissect the works in question in order to discern the protectible similarities from the similarities common to songs of this particular genre").

Plaintiff's mash-ups are properly excluded.

### ii. Defendants' Motion in Limine No. 10: Witnesses Skidmore Failed to Disclose Pursuant to FRCP 26

The Court has taken under consideration defendants' Motion in Limine No. 10 for an order precluding plaintiff from calling, other than for impeachment, witnesses that he did not timely disclose pursuant to Federal Rule of Civil Procedure 26.[8] Since then, plaintiff has submitted his witness list with another witness he never disclosed: Penny A. Castle, Universal Music Group.

In addition, plaintiff has issued trial subpoenas for others he never disclosed and has improperly directed to corporate entities – such as various Universal entities and Rondor Music International – that he also never disclosed. His trial subpoenas

///

///

---

[8] While Rule 26(a)(1)(A)-(B) excludes witnesses and documents to be used "solely for impeachment," impeachment witnesses and documents must be disclosed in response to discovery. For example, defendants' discovery sought plaintiff's production of all newspapers, articles, interviews, recordings and other documents purporting to quote Led Zeppelin's band members as to, *e.g.*, *Taurus*, Spirit or *Stairway to Heaven*. Defs' RFP Nos. 44-47. To the extent plaintiff failed to produce any such documents, he is precluded from using them even as impeachment. Fed. R. Civ. P. 37(c)(1).

to entities, including some defendants, are plainly defective.[9]   However, even if a non-party attends trial to comply with the defective subpoenas, plaintiff should be precluded from calling them because he never disclosed them.

3.   **CONCLUSION**

Defendants respectfully thank the Court for its consideration of their Trial Brief.

Dated: June 7, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

---

[9]     Plaintiff's trial subpoenas and accompanying "Notices" "[p]ursuant to Fed. R. Civ. P. 30(b)(6)," purport to require corporate entities to identify and produce a "person most knowledgeable" to testify on their behalf.  However, by its terms Rule 30(b)(6) applies only to depositions and "deponent[s]" and has no application to trials, and Rule 45 does not provide a comparable procedure for trial subpoenas. Indeed, while the federal form deposition subpoena includes language tracking Rule 30(b)(6), the federal form trial subpoena does not.

25

**APPENDIX**

**Motions in Limine**

| **Motion** | **April 25, 2016 Tentative Ruling**[10] |
|---|---|
| **Defendants' Motions** ||
| Defendants' MIL #1 (Doc. 134): to exclude evidence and argument as to claimed out-of-court statements of Randy Wolfe, professionally known as Randy California, offered by plaintiff. | "GRANTED." |
| Defendants' MIL #2 (Doc. 135): to exclude evidence and argument as to newspapers and books that purport to attribute statements to defendants or otherwise to establish unproven facts. | "GRANTED with the caveat that Plaintiff may use Page's two statements from the magazine interviews solely for impeachment." |
| Defendants' MIL #3 (Doc. 136): to exclude evidence and argument as to audio recordings of Spirit performing the musical composition *Taurus* and all other audio recordings of that musical composition other than audio recordings strictly limited to the performance of the 1967 *Taurus* transcription deposited with the Copyright Office in the 1967 registration of the copyright on which plaintiff sues. | "GRANTED: the only *Taurus* recordings properly presented to the jury are those that are strictly limited to the *Taurus* musical composition as transcribed in the copyrighted 1967 transcription." |

---

[10]     Doc. 202 & 203.

| **Motion** | **April 25, 2016 Tentative Ruling**[10] |
|---|---|
| Defendants' MIL #4 & *Daubert* Motion (Doc. 137): to exclude the testimony of plaintiff's proffered experts Dr. Alexander Stewart, Erik Johnson, Brian Bricklin and Kevin Hanson. | "GRANTED insofar as the expert reports, testimony, or exhibits rely on unprotected performance elements."<br><br>Amended by Order (Doc. 203) ("If Plaintiff wishes to introduce expert testimony at trial, it must submit reports completely purged of any reliance on the unprotected performance elements in the sound recording. Any comparison analysis must consider *only* the protected elements represented in the musical composition.") |
| Defendants' MIL #5 (Doc. 138): to exclude evidence and argument as to claims and theoretical claims of copying other works and as to settlements of claims. | "GRANTED." |
| Defendants' MIL #6 & *Daubert* Motion (Doc. 139): to exclude the testimony of plaintiff's proffered expert Denny Somach. | "GRANTED." |
| Defendants' MIL #7 (Doc. 140): to exclude evidence and argument as to the parties' and Randy Wolfe's wealth or the lack thereof. | "GRANTED." |

| Motion | April 25, 2016 Tentative Ruling[10] |
|---|---|
| Defendants' MIL #8 (Doc. 141): to exclude evidence and argument as to plaintiff's and the Randy Craig Wolfe Trust's use of funds and any recovery in this action. | "GRANTED." |
| Defendants' MIL #9 (Doc. 142): to exclude evidence and argument as to pre-May 2011 revenues, including advance payments under pre-May 2011 contracts, and as to revenues from the exploitation of *Stairway to Heaven* outside the United States. | "DENIED as to evidence of extraterritorial profits/GRANTED as to evidence of revenue earned outside the limitations period." |
| Defendants' MIL #10 (Doc. 143): to preclude plaintiff from relying upon the witnesses that plaintiff failed to disclose, including Larry Knight, Mike Lee and Robert Lee, and witnesses, including Paul Franklin, Linda Mensch, Terry Lynn Moore and Dave McKenna, that plaintiff failed to disclose until the day of the fact discovery cut-off and for whom plaintiff failed to provide the subject matter of their information, their addresses and their telephone numbers. | "The Court continues to deliberate on this motion." |

| Motion | April 25, 2016 Tentative Ruling[10] |
|---|---|
| Defendants' MIL #11 (Doc. 144): to exclude testimony and argument that in 1973 Randy Wolfe confronted Jimmy Page. | "The Court continues to deliberate on this motion." |
| Defendants' MIL #12 (Doc. 145): to exclude testimony and argument as to drinking or drug use. | "GRANTED." |
| Defendants' MIL #13 (Doc. 146): to exclude evidence and argument as to insurance coverage or other indemnity rights as to plaintiff's alleged claims. | "GRANTED." |
| Defendants' MIL #14 (Doc. 147): to preclude plaintiff's submission of his Complaint and First Amended Complaint to the jury. | "GRANTED." |
| **Plaintiff's Motions** | |
| Plaintiff's MIL #1 (Doc. 149): to preclude Defendants from attacking the Randy Craig Wolfe Trust's validity. | "GRANTED as to evidence challenging whether certain legal formalities have been satisfied for the Trust to legally continue operating." |
| Plaintiff's MIL #2 (Doc. 150): to preclude Defendants from claiming that the Trust stole the inheritance of Quinn Wolfe, Randy Craig Wolfe's son. | "DENIED." |

29

| **Motion** | **April 25, 2016 Tentative Ruling**[10] |
|---|---|
| Plaintiff's MIL #3 (Doc. 151): to preclude Defendants from presenting an expert on damages. | "DENIED to the extent Defendants wish to make arguments about damages based on information already contained in their musicologist's expert reports or testimony from lay witnesses about Defendants' respective revenues and deductible expenses." |