1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
4  T:  (215) 500-1000; F:  (215) 500-1005
   E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
10 E:  gkulik@kgslaw.com
   *Attorney for Plaintiff*
11

12                **UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 | MICHAEL SKIDMORE, as Trustee for | Case No. 15-cv-03462 RGK (AGRx) |
15 | the RANDY CRAIG WOLFE TRUST, | |
16 | Plaintiff, | Hon. R. Gary Klausner |
17 | v. | **PLAINTIFF'S MOTION FOR** |
18 | | **SANCTIONS AND TO PRECLUDE** |
19 | LED ZEPPELIN; JAMES PATRICK | **DR. LAWRENCE FERRARA FROM** |
   | PAGE; ROBERT ANTHONY PLANT; | **TESTIFYING AT TRIAL** |
20 | JOHN PAUL JONES; SUPER HYPE | |
21 | PUBLISHING, INC.; WARNER MUSIC | Filed concurrently with Declaration of |
   | GROUP CORP., Parent of | Francis Malofiy, [Proposed] Order |
22 | WARNER/CHAPPELL MUSIC, INC.; | |
23 | ATLANTIC RECORDING | Trial Date:    June 14, 2016 |
   | CORPORATION; RHINO | Time:           9:00 a.m. |
24 | ENTERTAINMENT COMPANY, | Courtroom:   850 |
25 | Defendants. | |
26
27
28

          PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
             LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.     INTRODUCTION ..................................................................................1

II.    FACTUAL BACKGROUND ...............................................................4

       A.     FERRARA'S DEPOSITION REVEALS SERIOUS
              CONFLICT ...................................................................... 4

       B.     ILLEGAL ATTEMPT TO CHANGE COPYRIGHT ........................ 12

       B.     ATTEMPT TO CHANGE COPYRIGHT ......................................... 12

III.   APPLICATION ...................................................................................15

       A.     FERRARA'S EMPLOYMENT WITH
              ADLER/HOLLENBECK/RONDOR/ UNIVERSAL IS A
              CLEAR AND UNDENIABLE CONFLICT WHICH
              PRECLUDES HIM SERVING AS AN EXPERT ............................. 15

       B.     IT IS ILLEGAL TO FILE A FALSE COPYRIGHT
              REGISTRATION................................................................. 17

       C.     DEFENDANTS OBLIGATED TO REVEAL THIS
              INFORMATION; NO PRIVILEGE APPLIES .................................. 17

       D.     SANCTIONS ARE WARRANTED ................................................... 23

IV.    CONCLUSION....................................................................................25

i

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 14, 2016, at 9:00 a.m. or as soon thereafter as this matter can be heard before the Honorable R. Gary Klausner of the United States District Court for the Central District of California, at 255 East Temple Street, Los Angeles, California, Courtroom 850, Plaintiff Michael Skidmore, Trustee for the Randy Craig Wolfe Trust, moves for sanctions to preclude Dr. Lawrence Ferrara from testifying at trial, or in the alternative to instruct the jury to draw a negative inference against his testimony.

Plaintiff just learned on May 27, 2016 at the deposition of Defendants' main musicologist expert Dr. Lawrence Ferrara that he has a serious conflict of interest in this action having previously worked for Plaintiff's publisher to perform a musicological analysis of Taurus; that Defendants and their counsel willfully withheld relevant information and documents in discovery that pertain both to the conflict; that defense counsel misleadingly stated and implied that they had no knowledge about this situation, but in fact they orchestrated the entire scenario and have conspired with Plaintiff's publisher (and fiduciary) since 2014 to undermine Plaintiff's lawsuit, including by inducing the publisher to file false documentation with the Copyright Office in 2016 in an effort to undermine Plaintiff's case.

Defendants, their counsel, and their expert have not produced any of the communications and other documentation relative to these facts, and by virtue of the foregoing, defendants' counsel have become witnesses in the case. Plaintiff does not know what consideration Defendants gave to Plaintiff's publisher as an inducement to conspire to undermine Plaintiff's case, nor has Plaintiff seen any documents or communications related to Dr. Ferrara's previous employment with Plaintiff's publisher. Plaintiff's counsel notified defense counsel that a motion would be filed on May 27, 2016.

/ / /

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

1         The motion is based on the attached Memorandum of Points and Authorities

2    and Declaration of Francis Malofiy, the Proposed Order, and all files and pleadings

3    in this action.

4

5    Dated:  June 11, 2016              FRANCIS ALEXANDER, LLC

6

7                                 */s/ Francis Alexander Malofiy*

8                                 Francis Alexander Malofiy

                             Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a motion to sanction Defendants and defense counsel for concealing the fact that their lead musicological expert, Dr. Lawrence Ferrara, has a serious conflict of interest. Specifically, in 2013 he conducted a musicological analysis of the compositions of *Taurus* and *Stairway to Heaven* for Plaintiff's publisher, Hollenbeck Music Co., a conflict that Dr. Ferrara and defense counsel knew about but purposefully failed to disclose.

Plaintiff deposed Defendants' lead musicological expert Dr. Lawrence Ferrara ("Ferrara") on May 27, 2016 in New York. During that deposition, it was revealed for the first time that Ferrara did a musicological analysis for Plaintiff's publisher, Hollenbeck Music, of *Taurus* as compared to *Stairway to Heaven,* prior to this lawsuit being filed—though such information and the relevant documentation were never disclosed by Defendants in the action. At first Ferrara refused to reveal who had engaged him to do the analysis. After defense counsel obstructed the course of the deposition by repeatedly lodging frivolous objections, without any legal or factual merit, to conceal this serious conflict of interest, Plaintiff finally extracted from Dr. Ferrara that the analysis was commissioned on behalf of Plaintiff's publisher, Hollenbeck Music and Lou Adler (collectively "Hollenbeck"), by and through Rondor Music, a subsidiary of Universal Music Publishing Group ("Universal"). Rondor and Universal, along with Hollenbeck, administer intellectual property on behalf of Plaintiff.

Defense counsel, after feigning ignorance about what company had hired Dr. Ferrara, eventually began conclusorily claiming that this conflict of interest was waived. But when Plaintiff's counsel asked who could have possibly waived this conflict of interest if not Plaintiff (Rondor's name having not yet been revealed at this point), defense counsel coyly refused to identify the entity, only stating "I am as

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

uncomfortable as" Dr. Ferrara. When again asked who waived the conflict, defense counsel stated, "It's not my deposition." It is now apparent that defense counsel refused to answer because they were colluding with Plaintiff's publisher to hide this conflict and undermine Plaintiff's ownership and standing.

Hollenbeck and Defendants not only hid this conflict from Plaintiff, but earlier this year, just after the discovery cut-off date expired, but prior to the deadline for Defendants to file their summary judgment motion, Hollenbeck/Universal filed a false application with the Copyright Office to "correct" the renewal copyright registered by Randy Wolfe in 1996—after 20 years of doing nothing—contending that *Taurus* was a work-for-hire. There is absolutely no evidence to support this assertion. The Copyright Act imposes criminal sanctions for filing a false copyright registration. *See* 17 USC § 506(e). Universal/Hollenbeck then provided copies of their false application to Defendants, so they could use it in the summary judgment motion to argue that Plaintiff does not own Taurus or have standing to sue. After this Court rejected Defendants' work-for-hire argument, Defendants withdrew their argument that *Taurus* was a work for hire, tacitly admitting that it is factually and legally meritless. In essence, Hollenbeck and Defendants colluded to file a false registration (that they knew was baseless) to influence a dispute about a copyright's ownership currently pending before this Court. This backhanded and essentially fraudulent attempt to alter the *Taurus* copyright was illegal or, at a minimum, extraordinarily underhanded. Plaintiff only learned of this collusion at Dr. Ferrara's deposition.

What Hollenbeck was promised by Defendants for its cooperation is unknown because the evidence of their collaboration has been willfully concealed by Defendants, despite such communication being covered by Plaintiff's discovery requests. But it is clear that since at least 2014, they have worked together to try to undermine Plaintiff's case.  It is notorious that the "in crowd" of major players in the

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

music industry stick together. That Plaintiff's own publisher would be actively conspiring with Defendants to defeat this lawsuit, illustrates the ethical bankruptcy prevalent in the industry. Plaintiff repeatedly served discovery requests on Defendants for all communications and correspondence regarding Adler and Hollenbeck, but Defendants produced nothing despite their duty to produce, and later supplement, the relevant documentation. Very assiduous and improper attempts to conceal Defendants' collusion with Hollenbeck, and the attempted manipulation of this litigation, have been made by all such parties.

At least indirectly, Ferrara was working for Plaintiff but is now working for Defendants. He has been paid over $80,000 by Defendant, and by the time of the filing of this motion, he has probably billed in excess of $100,000. This serious conflict was never disclosed to Plaintiff prior to Ferrara's deposition—and even then was only revealed after a prolonged dispute with defense counsel, who at first feigned ignorance about the information, then argued it was confidential in an effort to conceal the conflict and their part in it from Plaintiff. As of this moment, Plaintiff has not seen any correspondence/communications between Defendants' counsel and Universal or between Ferrara and Universal/Hollenbeck, the purported conflict waiver, or Ferrara's report prepared for Universal/Hollenbeck. All of these materials should have been disclosed in discovery long ago but were willfully withheld. Dr. Ferrara should be precluded, as the prejudice this has caused cannot be cured or undone at the last minute before trial.

Hollenbeck and Universal (its administrator) have been broadly conspiring with Defendants and defense counsel to sabotage Plaintiff's prosecution of this copyright infringement claim. Note that Hollenbeck/Universal, as Plaintiff's publisher, had fiduciary duties to Plaintiff which they not only disregarded but actively undermined. It also stands to reason that Hollenbeck's  attempts to undermine this lawsuit by divesting Plaintiff of standing (by virtue of claiming to the

3

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

Copyright Office that *Taurus* was a work for hire, and then presenting those documents in filings to this Court) were done for some sort of consideration from Defendants.

## II.  FACTUAL BACKGROUND

### A.  Ferrara's Deposition Reveals Serious Conflict

As explained in the Declaration of Francis Malofiy, Plaintiff deposed Ferrara on May 27, 2016. During that deposition the witness was asked if he had ever heard the song "Taurus" before:

| | |
|---|---|
| MR. MALOFIY: | Were you familiar with the work "Taurus" prior to becoming involved in this litigation? |
| DR. FERRARA: | No. |
| MR. MALOFIY: | Was your first -- |
| DR. FERRARA: | Actually, not no. I was aware of "Taurus" before this litigation. |
| MR. MALOFIY: | Why is that? |
| DR. FERRARA: | I think around three years ago, I was asked to complete an analysis -- it was preliminary -- of the "Taurus" studio version, not the "Taurus" deposit copy, and "Stairway to Heaven." And, so, if the question was "Taurus," then the answer is yes. Prior to this the "Taurus" deposit copy, the answer would be no. |

*See* Exhibit 1 – Ferrara Deposition, at p.58-59. This was news to Plaintiff's counsel as such information had not been disclosed in the Rule 26 disclosures, in any of Ferrara's expert reports and declaration, or by defense counsel. Intrigued by this new information, Plaintiff's counsel asked Ferrara who had retained him to perform such an analysis. This was immediately met by strenuous objections by defense counsel claiming that such information was privileged and confidential, an objection which Plaintiff later learned defense counsel knew was frivolous and false:

| | |
|---|---|
| MR. MALOFIY: | Who asked you to you do that? |
| MR. ANDERSON: | I have the same concern. You're talking about people |

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

|   |   |   |
|---|---|---|
| 1 | | who aren't present here. It seems to me that they may -- |
| 2 | MR. MALOFIY: | I don't even know where we're going here. |
| 3 | MR. ANDERSON: | Yeah, but I think it's privileged. |
| 4 | MR. MALOFIY: | I don't know if it's privileged. I mean ... |
| 5 6 | MR. ANDERSON: | If he was consulted by counsel confidentially, then I think that's privilege. |
| 7 | MR. MALOFIY: | He hasn't even identified who it was |

*See* Exhibit 1 – Ferrara Deposition, at p.59. It was later learned, Mr. Anderson knew that Dr. Ferrara had not even spoken with counsel and this objection on privilege was baseless. Defense counsel then claimed Ferrara's analysis was a "confidential consultation" and further claimed that such an analysis was attorney "work product" that Ferrara could not disclose. *Id.* at p.60-61.  Ferrara claimed:

> DR. FERRARA: I would have to get permission from the party who called to have done that. And so long as the party who called says that it's not confidential, I'm happy to -- to let you know.

*Id.* at p.61. Ferrara later made it clear that he did not know of any contract or provision which stated that this information was confidential. *Id.* at p.67. Sensing that there was a serious issue, Plaintiff's counsel stated:

> MR. MALOFIY: I don't even know if this man can testify because he's not even disclosing whether there might or might not be a conflict.

*See* Exhibit 1 – Ferrara Deposition, at p.62. Defense counsel, apparently asserting that his opinion can ameliorate conflicts, conclusorily stated "there's no conflict"— despite the fact that Dr. Ferrara had not even told Plaintiff who had previously employed his services. *Id.*

Plaintiff's counsel inquired whether Ferrara was retained by Lou Adler, the owner of Hollenbeck Music and Plaintiff's publisher. Hollenbeck administers the Taurus copyright on Plaintiff's behalf.  Ferrara stated, "No." Plaintiff, however, as

5

this motion explains, **later learned that Ferrara had indeed been hired by entities working on behalf of Adler**. Plaintiff's counsel explained why knowing who had previously hired Ferrara was important:

> He's done analysis of the sound recording of both these works prior to even becoming retained as an expert for defendants in this case and he's not even identifying who he was retained by. That's a serious issue of bias, it's a serious issue of prior work that was completed, serious issue of forming his opinions in this case, and I'm entitled to broach these issues.

*Id.* at p.64. Despite this, defense counsel kept objecting that even identifying who had retained Ferrara was somehow confidential, a nonsensical and inappropriate objection designed to prevent Plaintiff from ascertaining the truth in this matter. This was a deliberate attempt to conceal a serious conflict by defense counsel. When Plaintiff's counsel repeatedly asked defense counsel if he knew who had retained Ferrara, defense counsel coyly refused to answer, stating: "**It's not my deposition**." *Id.* at p.65. Defense counsel, however, had an affirmative duty to disclose this conflict, and also a duty to refrain from preventing the expert's deposition from going forward. Instead, they knowingly and erroneously asserted that Ferrara's past employer was confidential. *Id.* at p.69.

Defense counsel attempted to minimize this issue by claiming in the deposition that Plaintiff noting defense counsel's failure to disclose their main musicological expert's serious conflict was "making a mountain out of a mole hill." *Id.* at p.71. Plaintiff's counsel again asked Ferrara who had retained him, and Ferrara let slip that both defense counsel, Peter Anderson and Helene Freeman, were actually well aware of the company who had previously hired him:

> MR. MALOFIY:   Do you know who you spoke to at Company X that you won't identify?
>
> DR. FERRARA:   I don't -- I don't recall the name, but I certainly recall the company. Perhaps Mr. Anderson or Ms. Freeman would -- I don't have the telephone number of that company.

6

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

| | | |
|---|---|---|
| 1 | | They're in California, and so |
| 2 | MR. MALOFIY: | Why would they know? Why would Ms. Freeman or |
| 3 | | Mr. Anderson know[?] |

*See* Exhibit 1 – Ferrara Deposition, at p.72-73. Yet, despite the seriousness of this issue, defense counsel Mr. Anderson continued to act as if he did know how to get in touch with Ferrara's previous employer. *Id.* at 74-75. Helene Freeman stated she had "no idea" how to contact this company, and Peter Anderson offered to search for a phone number on his iPhone. **As was established shortly thereafter in the deposition, in actuality defense counsel had previously had extensive contact with  Ferrara's mystery employer (Plaintiff's publisher)**. Meanwhile, Ferrara furiously backtracked, absurdly trying to "unring the bell" and claim that defense counsel were ignorant of who his previous employer actually was:

| | |
|---|---|
| MR. ANDERSON: | Are you willing to take a break? If we'll take a break, I've got an iPhone, we can do a search for numbers or something like that. |
| MR. MALOFIY: | Let's take a break. |
| MS . FREEMAN: | I have no idea. |
| MR . MALOFIY: | Apparently, he thinks both you, Ms. Freeman, and Mr. Anderson know the name of the company in California that retained Mr. Ferrara -- Ferrara, excuse me, to analyze these two pieces of music, which was never disclosed except for today. I think it's a serious issue and needs to be disclosed. |
| THE WITNESS: | I'm not suggesting that -- |
| MR. MALOFIY: | Serious issue. |
| THE WITNESS: | -- either Mr. Anderson or Ms. Freeman know the company, I'm simply saying that the company is an established company and they might know, as you say – as Mr. Anderson said, they might know how to get the number. I don't have the number on me. |

*See* Exhibit 1 – Ferrara Deposition, at p.74-75. Immediately thereafter, defense counsel asserted that any conflict had been waived (an impossibility as Plaintiff was

7

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

not even aware of the conflict before the deposition), implying that defense counsel indeed knew the company who had hired Ferrara:

> MR. MALOFIY:      Did you clear any conflicts prior to being retained in this case?
>
> MR. ANDERSON:     I already told you any conflict was waived. The question really, Francis, is if you want to keep burning time on this or you want to let him --
>
> MR. MALOFIY:      It's a serious, serious issue. The conflict was waived, you said, Mr. Anderson?
>
> MR. ANDERSON:     Waived.
>
> MR. MALOFIY:      Waived.
>
> MR. ANDERSON:     Waived.
>
> MR. MALOFIY:      By who?
>
> MR. ANDERSON:     **I am as uncomfortable as him**.

*See* Exhibit 1 – Ferrara Deposition, at p.76 (emphasis added).  Remarkably, despite defense counsel strenuously claiming that somehow an attorney work product privilege applied, Ferrara revealed that he *had not even been dealing with a lawyer* at the mystery company. *Id.* at p.79.

At this point, **defense counsel pulled Ferrara out of his deposition and improperly coached him for approximately 15 minutes**. It is unseemly that defense counsel so obviously instructed the deponent how to answer the questions. It reflects that defense counsel was attempting to contain the damage thus far revealed, and wanted to improperly manipulate Ferrara's answers.

Following the forced break Ferrara finally revealed his mystery employer as "Rondor Music, which I understand is a division of Universal Music Publishing Group." *Id.* at p.82.   Plaintiff does not believe that any phone call was made to Rondor during the break, which would mean that defense counsel's previous claims of confidentiality were not accurate.  Ferrara claimed that his contact was Randall

8

Routledge, an officer at Rondor Music, who asked him to do the analysis in 2013. *Id.* at p.84. Routledge is not an attorney and was the only individual Ferrara spoke with at Rondor. *Id.* at p.92, 94-95. Defense counsel, as was revealed shortly thereafter in the deposition, was in contact with Rondor and knew that no attorneys were involved. In other words, the objection based on attorney "work product" was knowingly inaccurate. Regardless of confidentiality, it is manifestly obvious that such a serious conflict should have been revealed long ago—it should not have to be pulled out during an expert deposition while the defense, and expert with the conflict, posit frivolous objections to conceal the seriousness of the matter.

Finally, after nearly an hour of refusing to allow Plaintiff to fully question the witness,  Ferrara revealed that defense counsel—despite their and  Ferrara's previous attempts to feign ignorance about whether defense counsel knew who the company was that had hired Ferrara—had in fact communicated with Rondor about a conflict:

> MR. MALOFIY:  Did you clear any conflicts when you became engaged in this matter?
>
> DR. FERRARA:  To the best of my recollection, sometime at least in mid 2014, I don't remember exactly when, Ms. Helene Freeman called me with respect to the Skidmore matter. I said to Ms. Freeman by telephone, it was a telephone conversation, that I had already completed an analysis on behalf of Rondor and could she tell me whether Rondor Music was involved in this issue, whereupon she said no. And I said: Well, I can't discuss my analysis, my findings, unless there's a clearance from Rondor Music. And that was the end of that. **I then heard back some time later, either from Ms. Freeman or from Mr. Anderson, that either Universal Music Publishing, you know, or Rondor waived any confidentiality, whereupon I was allowed in a telephone conversation then, to the best of my recollection, essentially articulate what my findings were.** I mean, I remember what my findings are, but to basically give them a bottom line.

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

1

2

| MR. MALOFIY: | Were you told it was waived by counsel or did you actually get something from Rondor Music or Warner -- excuse me, Universal Music Publishing Group? |
|---|---|
| DR. FERRARA: | To the best of my recollection, I think the process was that perhaps Ms. Freeman asked Mr. Anderson to check, and one of them called to tell me them Rondor essentially -- I don't know if the right word is "waived," but Rondor gave permission for me to basically let them know what my analysis was and had no problem with my being engaged. |

*See* Exhibit 1 – Ferrara Deposition, at p.95-96. There are several takeaways from this piece of testimony. **First**, even if there was some sort of confidentiality, defense counsel and  Ferrara were aware that Rondor had waived it in 2014—yet they falsely claimed this information was somehow confidential and attorney work product. **Second**, both Mr. Anderson and Ms. Freeman were intimately involved in contacting Rondor and allegedly obtaining permission for Defendants to use Ferrara. In addition, Dr. Ferrara is incoherently claiming that Ms. Freeman incorrectly told him that Rondor Music is not involved in this dispute (despite that as Plaintiff's publisher, they have an interest and were furthermore secretly working with Defendants to defeat this lawsuit). On the one hand, the defense's own expert is alleging that defense counsel told him there was no conflict, but on the other hand both Dr. Ferrara and Defendants are claiming that the any conflict was waived. It is troubling that the defense realized there was an expert conflict at the very beginning of Ferrara's employment with them—with an entity they knew was Plaintiff's publisher no less (as is shown in the next section)—but not only did Defendants not disclose the conflict, but attempted to hide it even after it was discovered by accident in the expert's deposition. Plaintiff had requested all such information in discovery, but Defendants never disclosed they had such information. Such information also had to be disclosed under Rule 26.

The fact that the conflict was not disclosed indicates that it was concealed by

10

defense counsel and Ferrara for a reason. The reasons appear obvious: Ferrara is the go-to expert for major industry players. He gives them the opinions they want. He has done so literally hundreds of times, and even before his deposition in this case has already been paid $80,000, an amount that is probably now over $100,000. Defense counsel wanted the expert they knew would give them the opinion they wanted, and went to great lengths to hide disqualifying information about him. Ferrara, for his part, wanted over $80,000. Moreover, Defendants did not want to admit that their expert had done a musicological analysis of the sound recording of Taurus on behalf of Plaintiff's publisher, which they do not want introduced at trial. **Third**, Ferrara stated that he told defense counsel his prior conclusion based on the sound recordings of the two songs. Yet, these evaluations and conclusions were never disclosed in Ferrara's reports, or at any other time by defense counsel despite being requested in discovery.

Following this revealing piece of testimony, defense counsel *yet again* pulled Ferrara from the deposition to coach him, as Mr. Anderson was clearly unhappy with the answers given. *Id.* at p.97. Ferrara then reentered the deposition room with a changed story, now claiming that that Ferrara had never told defense counsel what his conclusions were for Rondor about the Taurus sound recordings, and that the only communications Ferrara had with defense counsel about Rondor was where defense counsel told Ferrara that all conflicts were cleared. Ferrara is a professional expert who has served as an expert countless times for the music industry and knows the litigation process better than many lawyers. He and experienced defense counsel know that this coaching and hiding conflicts is improper.

Astounded at the blatant violation of the rules, Plaintiff's counsel observed:

MR. MALOFIY:     All right. I think it's pretty clear he [Mr. Anderson] called you out so you could fix your testimony.

DR. FERRARA:     To answer you [sic] question, he called me out once again to ask me what my recollection was.

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

1    MR. MALOFIY:    I know. It's improper.

2  *See* Exhibit 1 –Ferrara Deposition, at p.100. After Ms. Freeman tried to justify the

3  blatant coaching of the witness as "correcting" his testimony, Mr. Malofiy stated:

4        That's called coaching and that's called improper conduct, in pulling a
5        witness out, telling him what to say, and putting him back in the room
         and having him testify as to what Mr. Anderson wanted him to say
6        when he [Mr. Anderson] could have called him in at the end [and
7        questioned him].

8  *Id.* at p.100-01. Although Plaintiff repeatedly asked for this documentation and

9  communication with and about Rondor, defense counsel adamantly refused to

10  produce it, citing a nonexistent privilege. <u>Id.</u> at p.105-109.

11        **B.    Illegal Attempt to Change Copyright**

12        Filing a false representation is subject to criminal sanction under the

13  Copyright Act. 17 USC § 506(e). Troublingly, on February 18, 2016, after the close

14  of discovery in this case, Plaintiff's publisher, Hollenbeck Music (using Universal

15  Music Publishing Group), attempted to alter the Taurus copyright by filing

16  documents with the Copyright Office erroneously claiming that it was a work for

17  hire—despite the copyright being registered in Randy Wolfe's name for the last

18  twenty years:

19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

1

2

**Explanation of Correction:**

3

Randy California is an employee for hire of Hollenbeck Music Co. pursuant to agreement
dated August 29, 1967.

4

5

6

7

8

Correspondence: Give name and address to which correspondence about this application should be sent.

Penny Castle / Universal Music Publishing Group

9

2100 Colorado Ave., Santa Monica, CA  90404

10

Phone 310-235-4854          Fax 310-235-4802          Email Penny.castle@umusic.com

11

Deposit Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name  Universal Music Publishing Group

12

Account Number  DA-95025

Certification* I, the undersigned, hereby certify that I am the: (Check only one)

13

☐ author                          ☐ owner of exclusive right(s)
☐ other copyright claimant    ☑ duly authorized agent of  UMPG o/b/o Hollenbeck Music Co.

14

                                                            Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼ Penny A. Castle                                    Date ▼ February 18, 2016

15

Handwritten signature (X) ▼        *Penny A Castle*

16

Certificate      Name ▼

17

will be
mailed in      Universal Music Publishing Group / ATTN:  Penny Castle

window        Number/Street/Apt ▼

18

envelope
to this        2100 Colorado Avenue

address:      City/State/ZIP ▼

19

               Santa Monica, CA 90404

20

*17 U.S.C. § 506(e). Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: July 2002—20,000   Web Rev July 2002   Printed on recycled paper                                    U.S. Government Printing Office: 2002-491-423/60,009

21

                                                                                              **HOA 000039**

22      Consider that, Universal Music Publishing Group, the same company that hired Dr.

23      Ferrara to analyze Taurus in 2013 on behalf of Hollenbeck Music, tried to change

24      the copyright and erase Plaintiff's ownership and standing on behalf of Hollenbeck

25      Music. The Court considered these documents, but rejected that Taurus was a work

26      for hire as a matter of law as there is copious evidence Taurus was created before

27      any employment of Randy Wolfe by Hollenbeck Music. In light of the Court's

28

13

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

agreement with Plaintiff's position that the evidence in the record demonstrates that Plaintiff will be able to present evidence capable of proving Taurus is not a work for hire, Defendants completely abandoned this argument. To be clear, it is an unsupportable argument and always was so.

Given that Hollenbeck's attempt to change the Copyright occurred right as Defendants were filing summary judgment, and after discovery closed, it stretches credulity to its breaking point to conclude that Defendants were not coordinating with Adler/Hollenbeck/Rondor to attempt to incorrectly change Taurus ownership by making false filings with the Copyright Office to bolster Defendants' summary judgment motion. This was nothing less than an improper and illegal attempt to alter a copyright currently under litigation. *See* 17 USC 506(e). This backhanded and essentially fraudulent attempt to alter the Taurus copyright was illegal or, at a minimum, extraordinarily underhanded. Again, no such communications, although requested in discovery, have been disclosed between Defendants and Adler. Following the failure of Defendants' work for hire argument at summary judgment, they abandoned the argument as factually and legally meritless.

When Ferrara was asked whether he knew that Universal attempted to change the copyright for Taurus during this litigation, he professed ignorance. However, when he was asked if Mr. Anderson had ever told him that the copyright registrations for Taurus were attempting to be changed, Mr. Anderson immediately interposed an objection that "**Conversations between me and the retained expert are confidential**." Exhibit 1, at p.103. This tacitly admits there was such a conversation. It is obvious that Dr. Ferrara must have known that the company who hired him, and who defense counsel had obtained a "waiver" from to use him as an expert, was the same company changing the copyright to bolster Defendant's summary judgment work-for-hire argument. This is a huge conflict, indicates bias, and should have been answered.

14

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

Plaintiff is entitled to these communications. As explained below, Mr. Anderson's objection based on FRCP 26 is not correct. Conversations between counsel and an expert ***related to providing the opinion*** he is offering are indeed protected, but whether Mr. Anderson told Ferrara that someone was attempting to change the Taurus copyright is not remotely within the scope of that privilege as it does not concern Ferrara's expertise of musicological analysis. Plaintiff suspects Ferrara not only knew that attempts were being made to alter the Taurus copyright, and that Ferrara knew it was likely his prior employer, Rondor and Universal, doing so. Yet, Ferrara never disclosed that an entity (Plaintiff's publisher) that had previously employed him to analyze Taurus was attempting to illegally wrest ownership of Plaintiff's copyrights away from him.

## III.   APPLICATION

### A.   Ferrara's Employment with Adler/Hollenbeck/Rondor/ Universal Is a Clear and Undeniable Conflict Which Precludes Him Serving as an Expert

Federal courts have the inherent power to disqualify experts "if necessary to preserve public confidence in the fairness and integrity of the judicial system." *Koch Refining Co. v. Jennifer L. Boudreaux, M/V*, 85 F.3d 1178, 1181 (5th Cir.1996); *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980) ("A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial... including disqualifying expert testimony."); *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1248 (E.D.Va.1991); *Paul v. Rawlings Sporting Goods*, 123 F.R.D. 271, 278 (S.D. Ohio 1988). "`The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process.'" *Koch*, 85 F.3d at 1182. (quoting *English Feedlot v Norden Labs., Inc.*, 833 F.Supp. 1498, 1504 (D.Col. 1993)). Conflicts must be affirmatively disclosed. *See Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1084-85 (Court of Appeal 1994).

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

Dr. Ferrara, as an expert, is in effect an extension of the individual or entity he has been retained by, Plaintiff's publisher. If, for instance, plaintiff Michael Skidmore had retained Dr. Ferrara to compare Taurus and Stairway to Heaven, Ferrara would be conflicted from serving as expert on this case for Defendants. In fact, this essentially what has happened here. Dr. Ferrara served as an expert for Plaintiff's publisher to analyze Taurus, who essentially stands in Plaintiff's shoes. This alone precludes Ferrara from serving as an expert for Defendants, especially given that it was not disclosed.

To be clear, there is no dispute that there was a conflict of interest. Defendants admitted in the deposition of Dr. Ferrara that they believed there was a conflict and had allegedly obtained a waiver:

MR. MALOFIY:      Did you clear any conflicts prior to being retained in this case?

MR. ANDERSON:    I already told you any conflict was waived. The question really, Francis, is if you want to keep burning time on this or you want to let him --

MR. MALOFIY:      It's a serious, serious issue. The conflict was waived, you said, Mr. Anderson?

MR. ANDERSON:    Waived.

MR. MALOFIY:      Waived.

MR. ANDERSON:    Waived.

MR. MALOFIY:      By who?

MR. ANDERSON:    **I am as uncomfortable as him**.

*See* Exhibit 1 – Ferrara Deposition, at p.76 (emphasis added). However, despite knowing that the conflict arose because of Plaintiff's involvement in the case (because Dr. Ferrara's previously employer was Hollenbeck/Rondor acts as a publisher and administrator for Plaintiff), they hid the conflict from Plaintiff, only reluctantly revealing it at the 11th hour under pressure from Plaintiff's counsel.

16

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

1  This is highly improper. As a sanction for not only using a conflicted expert,
2  but also hiding that conflict, Dr. Ferrara should be precluded from testifying at trial.
3  Defendants knew their lead expert was conflicted by virtue of his employment with
4  Plaintiff's publisher, but hid this conflict so that they could use the services of Dr.
5  Ferrara, a go-to industry expert.

6  **B.    It is Illegal to File a False Copyright Registration**

7  Filing a false representation is subject to criminal sanction under the
8  Copyright Act. 17 USC § 506(e). Universal Music Publishing Group, the same
9  company that hired Dr. Ferrara to analyze Taurus in 2013 on behalf of Hollenbeck
10  Music, tried to change the Taurus copyright's ownership and erase Plaintiff's
11  ownership and standing also on behalf of Hollenbeck. Given that Hollenbeck's
12  attempt to change the Copyright occurred right as Defendants were filing summary
13  judgment, and after discovery closed, it stretches credulity to its breaking point to
14  maintain that Defendants were not coordinating with Plaintiff's publisher (Adler and
15  Hollenbeck and Rondor) to change the listed ownership of the Taurus copyright.
16  This was nothing less than an improper and illegal attempt to alter a copyright
17  currently under litigation. Note that Defendants have represented to the Court in
18  April 2016, following denial of their summary judgment motion, that they are
19  completely abandoning their work-for-hire argument, tacitly admitting that it is
20  meritless. Yet Defendants nevertheless previously worked with Hollenbeck and
21  Adler to attempt to file a false correction to the Taurus copyright to erroneously
22  represent it is a work for hire and defeat the lawsuit on ownership and standing
23  grounds! This underhanded and essentially fraudulent attempt to alter the Taurus
24  copyright was illegal or, at a minimum, extraordinarily underhanded. Again, no such
25  communications, although requested in discovery, have been disclosed.

26  **C.    Defendants Obligated to reveal this information; No Privilege Applies**
27

28  Under Rule 26(a)(2)(B), an expert must disclose facts or data he considered,

17

and must also disclose the assumptions he made in coming to his conclusion, under Rule 26(b)(4(C). The test of a report under Rule 26(a)(2)(B) is "whether [it] is sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions . . . avoided, and costs are reduced." *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D. Nev. 1993). "A report is deficient if it fails to include any of the underlying conclusions upon which the expert's ultimate opinions are based." *In re Central Indus. Development Co.*, 427 B.R. 149, 156 (N.D. Cal. 2009) (citing *Atkins v. County of Orange*, 372 F.Supp. 2d 377, 395 (S.D.N.Y. 2009)). In addition, under FRCP 45(g) the Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." *Id.* Under FRCP 37(c)(1), the Court may impose appropriate sanctions for failure to respond to document requests.

Despite the fact that Dr. Ferrara had analyzed the Taurus sound recording, he did not reveal his prior analysis in his report, despite the fact that it must have helped form his analysis in this case. Nor did he disclose in his report that he had been told to disregard his prior analysis the Taurus and Stairway to Heaven. This is exactly the sort of surprise that Rule 26 seeks to eliminate. One reason for the lack of disclosure is that Defendants have been trying quite hard to keep the jury from hearing the sound recording of Taurus, claiming that the deposit copy is all that the jury may consider. Plaintiff argues that the jury may consider any and all protected musical composition in the Taurus deposit copy that is embodied in the sound recording. Dr. Ferrara's prior musicological analysis of the Taurus sound recording for Plaintiff's publisher is quite relevant to how he came to his conclusions in this case.

Moreover, Plaintiff served a multitude of requests for documents and subpoenas on Defendants and Dr. Ferrara (and their agents and attorneys) that covered and requested information on this issue: that a prior analysis was made by Plaintiff's publisher and Ferrara. Yet Defendants never produced any of the relevant

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

documentation, nor provided a privilege log. These requests included Plaintiff's first requests for production on October 13, 2015:

> 10.   All Materials which mention, discuss or reflect any differences between Taurus and Stairway to Heaven.

> 43.   All text, visual representations, audio, recordings, data, media, or other material provided to any defendant by anyone relating to Stairway to Heaven or Taurus, including any handwritten or original text, visual representations, audio, recordings, data, media, or other material.

> 45.   All Materials comprising, reflecting, or evidencing any communications on the subject of Taurus.

> 58.   All Materials which evidence or reflect that Taurus lacks originality.

See Exhibit 3. Requests served in early January 2016:

> 73.   All Materials which evidence or discuss Lou Adler's involvement in the writing, recording, or exploitation of Stairway to Heaven and Led Zeppelin IV.
>
> 74.   All Materials which evidence or discuss Lou Adler's involvement in the writing, recording, or exploitation of Taurus.
>
> 75.   All Materials which evidence or discuss Howard Frank's involvement in the writing, recording, or exploitation of Stairway to Heaven and Led Zeppelin IV.
>
> 76.   Produce all Materials related to Hollenbeck Music's involvement in the exploitation of Stairway to Heaven or Led Zeppelin IV.
>
> 77.   Produce all Materials that evidence or reflect Ode Records' involvement in the exploitation of Stairway to Heaven or Led Zeppelin IV.
>
> 78.   All Materials which mention, discuss or relate to the songwriting credits for Stairway to Heaven, Led Zeppelin IV, and/or Taurus.

> 82.   All Materials that evidence or reflect that any defendant in this case had a copy of the recording of any version of "Taurus."

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

5    135. All materials and communications you have concerning Lou Adler
6    (including not limited to his entities such as Hollenbeck Music and Ode Records)
7    and Howard Frank regarding Stairway to Heaven, Led Zeppelin IV, Spirit, Taurus,
8    Randy California, the Randy Craig Wolfe Trust, and/or this litigation including
9    phone records at any point in time, including after the filing of this lawsuit—this
10    includes communications between Defendants' attorneys and agents and Lou
11    Adler's attorneys and agents.

12    136. All materials and communications you have concerning Quinn Wolfe
13    (and/or his representatives, attorneys, or agents) regarding Stairway to Heaven, Led
14    Zeppelin IV, Spirit, Taurus, Randy California, the Randy Craig Wolfe Trust, and/or
15    this litigation, including phone records at any point in time, including after the filing
16    of this lawsuit—this includes communications between Defendants' attorneys and
17    Wolfe's attorneys and agents.

12    150. All materials regarding the agreements, contracts, and correspondence
13    by and between Defendants and Lou Adler, Hollenbeck Music, Ode Records, and
14    their agents, attorneys, and representatives, in regards to any Spirit song, including
15    but not limited to Fresh Garbage, and/or any portion of Fresh Garbage.

See Exhibit 4. And the requests served on Ferrara with his subpoena:

**Document Production Requests**

1.    All communications, documents, and things (including emails, faxes, notes, letters, audio/video files, and/or correspondence), including those from or exchanged with Peter Anderson, Helene Freedom, any employee or agent of the Law Offices of Peter J. Anderson, any employee or agent of Philips Nizer LLP, and/or Defendants (and entities they own and/or control), that regard:

    a.    Facts and/or data you considered in writing your reports and/or declarations for this lawsuit, or otherwise in forming opinions and conclusions regarding this lawsuit.

    b.    Facts and/or data you did not consider in writing your reports and/or declarations for this lawsuit, or otherwise in forming opinions and conclusions regarding this lawsuit.

20

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

*See* Exhibit 5. Dr. Ferrara revealed during his deposition that he and defense counsel had extensive communications with Plaintiff's publisher. **None of this was turned over**. Plaintiff also believes that Ferrara was made aware of the illegal attempt to change the copyright. When Ferrara was asked during the deposition whether he knew Universal attempted to change the copyright for Taurus during this litigation he professed ignorance. However, when he was asked if Mr. Anderson had ever told him that the copyright registrations for Taurus were attempting to be changed, Mr. Anderson immediately interposed an objection that "Conversations between me and the retained expert are confidential." Exhibit 1, at p.103. This tacitly admits there was such a conversation. It is obvious Ferrara must have known that the company who hired him, and who defense counsel had obtained permission from to use him as an expert, was the same company changing the copyright to bolster Defendants' summary judgment argument. Plaintiff is entitled to these communications and to question Ferrara. Plaintiff thus requests this production to be allowed to explore these topics during cross examination.

As discussed below this conduct warrants imposing sanctions on Defendant under the Court's inherent powers, Rule 45(g), and Rule 37(c)(1). Defendants withheld this conflict, withheld the prior analysis of Dr. Ferrara, and withheld the related communications. It appears that extensive communications were taking place between Adler/Hollenbeck/Rondor/Universal in light of the timing of the copyright "correction" filings, yet, none of this was disclosed.

**DEFENDANTS' OBJECTIONS ARE SPURIOUS**

At the deposition, Defendants objected on confidentiality grounds and privilege grounds to Dr. Ferrara discussing his previous musicological analysis of Taurus for Plaintiff's publisher, or producing any related documents. **First,** they claim that Ferrara does not have to reveal any communications or analysis with Rondor because it is confidential and/or attorney work product. **Second**, they claim

that the expert does not have to reveal any communications with defense counsel, claiming that under the 2010 revisions to Rule 26(b)(4)(C), communications by and between an expert and counsel are privileged.

Neither objection is correct. **First**, Ferrara never worked with an attorney at Rondor so no work-product privilege applies, and his testimony made it clear that he did not even know if there was a confidentiality agreement. Regardless, this information is highly relevant, and goes to bias and conflicts. It should have been identified in a privilege log. At this late hour, there is no practical way to cure the prejudice to Plaintiff from this nondisclosure, other than preclusion of Dr. Ferrara. **Second,** Rule 26(b)(4)(C) indeed protects communications between counsel and an expert, but only to the extent they are "required to provide [an expert] report." But Rule 26 does not apply to tangential communications not required to provide an expert report, such as whether the Taurus copyright ownership was attempted to be altered, or about Dr. Ferrara's prior analysis. Rule 26(b)(4)(C)(iii) also makes it clear that an expert must answer questions about assumptions the opposing party provided. One such assumption Dr. Ferrara appears to have been provided by defense counsel was to disregard and ignore his previous analysis of Taurus and Stairway to Heaven for Plaintiff's publisher. Yet, defense counsel prevented him from answering these critical questions. No privilege, either Rule-based or from common law, covers these communications. The Court should order Ferrara to produce all communications by and between counsel on the changing of the copyrights. However, it is again noted that, at this late hour, there is no realistic way to cure the prejudice to Plaintiff before trial, other than precluding Dr. Ferrara

Plaintiff suspects Ferrara not only knew that attempts were being made to alter the Taurus copyright, but that Ferrara knew it was likely his prior employer, Rondor and Universal, doing so. Yet, Ferrara never disclosed that an entity that had previously employed him—and owed a fiduciary duty to Plaintiff—was improperly

22

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

attempting to wrest ownership of Plaintiff's copyrights away from him.

### D.   Sanctions Are Warranted

Given Defendants' highly unethical, bad-faith conduct sanctions should be imposed on Defendants. The basis for sanctions is the Court's inherent powers, Rule 45(g), Rule 37, and § 506(e). The sanction is that Dr. Ferrara should be precluded due to the failure of Defendants to disclose this known conflict and Defendants' blatant attempt to hide this conflict. Ferrara should be ordered to stop participating in this case in any way, effectively immediately. There is no way at this late hour to cure the prejudice, other than to preclude Dr. Ferrara from testifying.

In the alternative, the jury should be instructed that they can draw a negative inference that Dr. Ferrara's failure to disclose his prior analysis, failure to disclose communications with Rondor, and failure to disclose related documents, is indicative that any such analysis was harmful to Defendants' case. **Ferrara is an experienced litigation expert; he knew what he was doing and hiding was wrong**. Yet he nevertheless hid his prior analysis, failed to disclose the facts and assumptions he was given, did not accurately identify his prior compensation, and failed to indicate that he had previously worked with Plaintiff's publisher to analyze the songs under dispute. Rule 26(a)(2)(B) places a duty on the opposing party and their expert to disclose these facts to avoid surprise, but no disclosure was made.

It must be stressed that Defendants, defense counsel, Ferrara, and Plaintiff's publisher and administrator were at all times well aware of this conflict, but instead of affirmatively disclosing it as required, actively sought to conceal this conflict from Plaintiff. This is underhanded, unethical conduct, which was only inadvertently discovered at the 11th hour during Ferrara's deposition. There are two likely reasons Defendants tried to cover up this conflict. **First**, Ferrara's prior analysis of Taurus focused on the sound recordings of Taurus, which Defendants claim is irrelevant. Ferrara failed to disclose that he considered the Taurus sound recording during his

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

analysis for this case. Defendants hid this analysis and conflict because it would allow Plaintiff to ask Ferrara about his musicological analysis of the Taurus sound recording's composition, which they do not want played for the jury. **Second**, Ferrara is the go-to expert for major industry players like Led Zeppelin. He gives them the opinions they want. He has done so literally hundreds of times, and even before his deposition in this case has already been paid $80,000. Defense counsel wanted the expert they knew would give them the opinion they wanted, and went to great lengths to hide disqualifying information about him. Ferrara, for his part, wanted over $80,000. Defendants should not be permitted to profit from their underhandedness.

In addition, Plaintiff requests the fees and costs for Ferrara's deposition paid for by Defendants under 28 USC § 1927. An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *Save the Peaks Coalition v. US Forest Service*, 683 F. 3d 1140 (9th Cir. 2012) (bad faith require to impose § 1927 sanctions). There is a strong basis for such sanctions given that (1) Defendants hid the conflict which would have precluded Dr. Ferrara from serving as an expert, and being deposed in the first place (not to mention all the rebuttal expert reports paid for by Plaintiff concerning Dr. Ferrara's opinions), thus vexatiously multiplying proceedings, and (2) defense counsel made obstructionist objections during Dr. Ferrara's deposition which prolonged the deposition. The requisite bad faith is established by Defendants working with entities they knew were Plaintiff's publishers, including having Hollenbeck file an essentially fraudulent copyright registration correction claiming Taurus was a work for hire, an argument that even Defendants have now abandoned. Bad faith is also established because defense counsel blatantly coached Dr. Ferrara and directed him how to answer questions

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

during his deposition.

## IV.   CONCLUSION

Plaintiff asks that Dr. Lawrence Ferrara be precluded from testifying at trial due to the conflict of interest—that Dr. Ferrara analyzed Taurus for Plaintiff's publisher—something that Defendants failed to disclose and actively concealed since 2014. In the alternative, Plaintiff asks that the jury be permitted to draw a negative inference that Dr. Ferrara's failure to disclose his prior analysis would be damaging to his opinion in this case and Defendants' defense of this action.

Plaintiff stresses that any remedy granted by the Court should not delay the trial. Plaintiff and witnesses have already cleared their schedules, made nonrefundable travel plans, and spent tens of thousands of dollars for trial. Plaintiff desires only those remedies that do not delay the trial.


Dated:  June 11, 2016                    FRANCIS ALEXANDER, LLC


                                         */s/ Francis Alexander Malofiy*
                                         Francis Alexander Malofiy, Esq.
                                         Attorney for Plaintiff

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that Plaintiff's MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING has been served upon counsel by electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

Respectfully submitted,
Francis Alexander, LLC
*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ June 11, 2016*

26

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR. LAWRENCE FERRARA FROM TESTIFYING AT TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

PLAINTIFF'S MOTION FOR SANCTIONS AND TO PRECLUDE DR.
LAWRENCE FERRARA FROM TESTIFYING AT TRIAL