Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail:  hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION SANCTIONS AND TO PRECLUDE; DECLARATION |
| LED ZEPPELIN, *et al.*, | |
| Defendants. | Date: June 14, 2016 Time: 9:00 a.m. |

Courtroom of the Honorable
R. Gary Klausner
United States District Judge

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.    INTRODUCTION**

Plaintiff Michael Skidmore's motion for sanctions is baseless, misstates the facts and law and is properly recognized as a last-minute and desperate attempt to interfere with defendants' defense of this action.

After this case was filed, defense counsel contacted Dr. Ferrara as a potential expert witness.   When told that Dr. Ferrara had been previously consulted by Universal Music Group ("Universal") and its affiliate, Rondor International ("Rondor"), regarding *Taurus* and *Stairway to Heaven*, defense counsel contacted Universal Music Group, which advised that it was not pursuing a claim and defense counsel could retain Dr. Ferrara.  <u>Skidmore concedes that neither he nor his counsel ever contacted, let alone retained, Dr. Ferrara.</u>  To the extent there was a conflict in defense counsel's retention of Dr. Ferrara, it was waived by the companies that consulted Dr. Ferrara, namely Universal Music Group and Rondor International.

Skidmore's motion must be denied.

**2.    SKIDMORE'S MOTION FOR SANCTIONS MUST BE DENIED**

**(a)    The Applicable Standard**

Skidmore relies on cases as to, *e.g.*, the Court's general inherent powers, and fails to discuss the actual applicable standard.

Skidmore accuses Dr. Ferrara of a "conflict."  Instead of establishing a basis for that accusation, plaintiff cites defense counsel's statement that "<u>any conflict</u> was waived," as an admission that "there is no dispute that there was a conflict of interest."  Pltf's Mtn. (Doc. 230) at 16:9-15.  But, Dr. Ferrara is not a lawyer and rules of professional responsibility do not apply to him.  Skidmore's accusation of a lay person's "conflict" is simply misplaced.

Rather, the governing principal is that <u>counsel</u> is generally precluded from obtaining confidential information from another's expert witness.  *See, e.g., Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996) ("In 'switching sides'

1

1   cases, courts may grant the original hiring party's motion to disqualify the expert
2   when it is determined that the expert is in possession of confidential information
3   received from the first client"). As shown below, defense counsel obtained the
4   consent of the company that consulted with Dr. Ferrara, to retain him for this case.
5   In short, defense counsel did exactly what he was supposed to do.

6   **(b)**   **Skidmore Lacks Standing to Raise's Any Objections by Universal**
7         **or Rondor to Defendant's Retention of Dr. Ferrara**

8       Skidmore does not, of course, claim that he or his counsel consulted Dr.
9   Ferrara on any matter, let alone regarding *Taurus* and *Stairway to Heaven*. Rather,
10  he argues – without citation to any authority – that Universal, supposedly as
11  Skidmore's "publisher," "essentially stands in Plaintiff's shoes." Pltf's Mtn. (Doc.
12  230) at 16:1-6. That qualified assertion is untrue and does not give him standing.

13      Skidmore has shown no contractual relationship with Universal or Rondor.
14  Rather, Skidmore claims to have succeeded to Randy Wolfe's right to receive
15  royalties from Hollenbeck Music ("Hollenbeck") under Wolfe's 1967 Exclusive
16  Songwriter's and Composer's Agreement with Hollenbeck. At most, Skidmore
17  stands in Wolfe's shoes under a contract with Hollenbeck. Skidmore does not stand
18  in Hollenbeck's shoes and does not stand in the shoes of Universal and Rondor,
19  companies that Hollenbeck has, in turn, apparently contracted with.[1]

20  ///

21  _____

22  [1]   Skidmore's counsel has asserted that Hollenbeck, Universal and Rondor owe
23  him fiduciary obligations. But, he has no relationship at all with Universal and
    Rondor, and the right to receive royalties from Hollenbeck does not create fiduciary
24  obligations. *Cafferty v. Scotti Bros. Records, Inc.*, 969 F. Supp. 193, 205-06
    (S.D.N.Y. 1997) (music publisher not a fiduciary); *Carter v. Goodman Group Music*
25  *Publishers*, 848 F. Supp. 438, 445 (S.D.N.Y. 1994) (same); *Hope v. Genentech, Inc.*,
26  43 Cal.4th 375, 389-92, 181 P.3d 142 (2008) (contract to commercially exploit
    scientific discovery in return for royalties did not create a fiduciary relationship);
27  *Wolf v. Superior Court*, 107 Cal.App.4th 25, 30-31, 35, 130 Cal. Rptr. 2d 860 (2003)
    (contract granting right to exploit copyrighted book in return for share of profits did
28  not create fiduciary relationship).

Accordingly, Skidmore has no standing to assert any objection by Universal or Rondor to defendants' retention of Dr. Ferrara.

**(c)**   **Universal and Rondor Consented to Defendants' Retention of Dr. Ferrara**

In any event, it is undisputed that Universal and Rondor – the companies that consulted with Dr. Ferrara – consented to defendants' retention of Dr. Ferrara. Anderson Decl. at 6, ¶ 3.

**(d)**   **Skidmore Was Provided a Full and Unfettered Opportunity to Ask Dr. Ferrara What He Told Universal and Rondor, and Skidmore Chose Not to Ask**

At Dr. Ferrara's deposition, Skidmore was provided and full and unfettered opportunity to question Dr. Ferrara as to what he told Universal and Rondor. Skidmore's counsel simply chose not to ask, despite Dr. Ferrara's offer.

The initial issue at the deposition was whether Universal and Rondor – in addition to consenting to defendants' retention of Dr. Ferrara – also consented to Dr. Ferrara's disclosure of his communications with Universal and Rondor.  To err on the side of caution given that Universal and Rondor were not present at Dr. Ferrara's deposition, their consent was obtained and Dr. Ferrara then confirmed he was "very happy" to answer Skidmore's counsel's questions.  Anderson Decl. at 6, ¶ 5, at Exh. 1 at 91:18-23.  Skidmore's counsel simply chose not to ask Dr. Ferrara what he told Universal and Rondor.  Anderson Decl. at 6:23-25.

**(e)**   **Skidmore Ignores that Defendants Objected to His Overbroad Discovery and He Never Challenged those Objections**

Skidmore argues that in response to his request for production as to, *e.g.,* every document relating to *Taurus* or *Stairway to Heaven*, defendants did not produce Dr. Ferrara's correspondence with Universal and Rondor before defendants retained him.  However, that correspondence was never provided to defendants. Anderson Decl. at 6, ¶ 4.

3

Further, Skidmore ignores that defendants timely objected to his request for production, raising, *inter alia*, that they were overbroad.  Skidmore's argument is proof of the peril of overbroad discovery requests: failing to describe the requested documents with reasonable particularity unfairly leaves the responding party at risk that the propounding party will "at any point in the litigation, . . . contend that the documents it now wants fall within [the request's] unrestricted scope."  *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN-08-0984, 2012 WL 380048, at *1 (D. Md. Feb. 3, 2012).

Skidmore cannot now exploit the overbreadth of his poorly-drafted requests, to claim documents were not produced.

**(f)** **Skidmore's Sensationalist Allegations that Universal Acted Criminally Are Patently Absurd**

Skidmore accuses Hollenbeck and Universal of criminal conduct in submitting corrections to its prior filings with the Copyright Office.  That is patently absurd.  *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 167 n. 24 (2d Cir. 2003) (approving correction of registration's identification of "author," decades later), *cert. denied* 541 U.S. 937 (2004).  That Skidmore may disagree with the corrections does not make them a crime.

///
///
///
///
///
///
///
///
///
///

**3.    CONCLUSION**

Defendants' counsel did exactly what was appropriate when they learned that Dr. Ferrara had been consulted by Universal and Rondor: they obtained Universal and Rondor's consent to defendants' retention of Dr. Ferrara.  Skidmore's motion must be denied.

Dated: June 13, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

## DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1.    I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.    I represent defendants James Patrick Page, Robert Plant, Warner/Chappell Music, Inc., Atlantic Recording Corp. and Rhino Entertainment Company in this action. This Declaration is submitted in support of their opposition to plaintiff's motion for sanctions.

3.    After being retained in this action, I learned that Dr. Ferrara had been consulted by Universal Music Publishing ("Universal") and Rondor International ("Rondor").  I spoke with in house counsel at Universal, who ultimately advised me that Universal and Rondor consented to me retaining Dr. Ferrara on behalf of defendants in this action.

4.    At no time did Dr. Ferrara provide to me any of the correspondence he had with Universal and Rondor in the course of their consultation with him.  To this day, I have never seen that correspondence or any report he provided them, if one was provided.

5.    In the course of plaintiff's deposition of Dr. Ferrara in this action on May 27, 2016, a break was taken and I contacted in house counsel for Universal and Rondor and asked whether they consented to Dr. Ferrara disclosing that they had consulted with him and his communications with Dr. Ferrara regarding their consultation.  He told me that they did not object to those disclosures, and I relayed that to Mr. Malofiy, and Dr. Ferrara offered to testify to the finding he relayed to Universal and Rondor.  However, Mr. Malofiy failed to ask those questions.

6.    Attached to this Declaration as Exhibit 1 are true and correct copies of pages from the transcript of Dr. Ferrara's May 27, 2016 deposition in this case and ///

1   which are marked to show the testimony cited in defendants' foregoing

2   Memorandum.

3        I declare under penalty of perjury that the foregoing is true and correct.

4   Executed on June 13, 2016.

5

6                                               _____/s/ Peter J. Anderson_____

7                                               PETER J. ANDERSON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
- - - - - - - - - - - - - - - - - x
MICHAEL SKIDMORE, as Trustee for    :
the Randy Craig Wolfe Trust,
                                    :   CONFIDENTIAL
          Plaintiff,
                                    :

          -against-                 :      Case No.
                                       2:15-cv-03462
LED ZEPPELIN, JAMES PATRICK PAGE,   :   RGK (AGR)
ROBERT ANTHONY PLANT, JOHN PAUL
JONES, SUPER HYPE PUBLISHING, INC., :
WARNER/CHAPPELL MUSIC, INC.,
ATLANTIC RECORDING CORPORATION,     :
RHINO ENTERTAINMENT COMPANY,
                                    :
          Defendants.               :
- - - - - - - - - - - - - - - - - x

          C O N F I D E N T I A L


          VIDEOTAPED DEPOSITION of LAWRENCE FERRARA,

Ph.D., taken by Plaintiff at the offices of Fink &

Carney Reporting and Video Services, 39 West 37th

Street, New York, New York  10018, on Friday, May

27, 2016, commencing at 4:21 o'clock p.m., before

Carol Mele and Linda A. Marino, Registered

Professional Shorthand (Stenotype) Reporters and

Notaries Public within and for the State of New

York.

**EXHIBIT 1**

CONFIDENTIAL

Page 82

1          Q      Your counsel had requested to take a
2    break so you could address issues relating to your
3    prior engagement in forming an opinion as to
4    "Taurus" album recording as compared to "Stairway to
5    Heaven" album recording.
6              My questions were:  Who retained you
7    to produce that opinion prior to becoming retained
8    by defendants?
9          A      Rondor Music, which I understand is a
10   division of Universal Music Publishing Group.
11         Q      Who is it?
12         A      R-O-N-D-O-R Music.
13         Q      Rondor who?
14         A      Rondor Music.
15         Q      Which is a division, as you
16   understand, of who?
17         A      Universal Music Publishing Group, I
18   believe.
19         Q      Why were you retained by them?
20              MR. ANDERSON:  Objection; calls
21          for speculation.
22         A      I was asked by Rondor Music Group to
23   complete an analysis.  They sent, as I recall, an
24   MP3 of the "Taurus" studio version because I did not

CONFIDENTIAL

Page 83

1    have it in my library or I downloaded it from

2    iTunes.  I don't remember.  I did have "Stairway to

3    Heaven" in my iTunes library.

4                    And I completed a preliminary analysis

5    of the two works at that time.  It was about 2013, I

6    think.  I'm just guessing.

7                Q    Was it before the lawsuit was filed in

8    this case or after?

9                A    I have no idea when this lawsuit was

10   filed, sir.

11               Q    Was it before anyone from defendants

12   reached out to you or after?

13               A    Before.

14               Q    You said you produced a preliminary

15   report?

16               A    I don't recall producing a report.

17                    Normally what I would do -- but,

18   again, it's been too long -- normally, I would have

19   a telephone conversation and discuss my findings.

20               Q    Who did you have a telephone

21   conversation with?

22               A    I didn't recall earlier, but I

23   mentioned to Mr. Anderson the -- I believed the

24   first or the last name or both started with an "R,"

**EXHIBIT 1**

CONFIDENTIAL

Page 90

1          Q      Do you have any communications by and

2    between this individual about your analysis?

3          A      Not that I recall, not -- I just don't

4    recall.

5          Q      Did you ever take any notes down when

6    you did your analysis?  Any notes?

7          A      To the best of my recollection, I just

8    can't recall.  It's just been too long.

9          Q      And you don't recall how much you got

10   paid specifically, right?

11                    MR. ANDERSON:  Objection; vague

12             and ambiguous, mischaracterizes the

13             testimony.

14         Q      You said maybe it was two to three

15   hours, maybe it's $2,000.  This is all maybe.  You

16   don't know.

17         A      I don't know.

18         Q      Could have been $10,000, could have

19   been $5,000, you just don't know.

20         A      No, I can't imagine that it could be

21   five or ten thousand dollars because -- I'm very

22   happy to tell you what my filings are, because I do

23   remember what my findings are.

24         Q      We're going to get there.

**EXHIBIT 1**

CONFIDENTIAL

Page 102

1   in engaging my services was, I don't know.

2           Q     Did they tell you who or what client

3   of theirs they were interested in when they asked to

4   you do that analysis?

5                         MR. ANDERSON:  Objection; vague

6               and ambiguous.

7           A     I do not recall.

8           Q     Did they tell you on behalf of which

9   entity or which group or why they were doing this

10  analysis?

11                        MR. ANDERSON:  Objection;

12              compound, vague and ambiguous, and asked

13              and answered?

14          A     No, I don't.

15          Q     Did they tell you it was because of

16  Lou Adler or any of his entities?

17                        MR. ANDERSON:  Objection; asked

18              and answered.

19          A     I don't know who Lou Adler is, I'm

20  sorry.

21          Q     Did they tell you it was because of

22  Ode Records or Hollenback Music?

23          A     I don't know those entities.

24          Q     At any time, as you sit here today,

**EXHIBIT 1**

CONFIDENTIAL

Page 103

1   did you ever become aware that Universal Music

2   Publishing Group were changing the copyrights or

3   attempting to change the copyrights in February of

4   this year to reflect a different owner of the

5   copyright in "Taurus"?

6          Did you ever know that, sir?

7      A   No.

8      Q   Did you ever see the documents from

9   Universal Music Publishing Group in February where

10   they attempted to change the copyright registration

11   for "Taurus"?

12          MR. ANDERSON:  Objection; asked

13        and answered.

14      A   No.

15      Q   Did counsel, Mr. Anderson ever tell

16   you that the copyright registrations for "Taurus"

17   were attempted to be changed by claiming that they

18   were improperly filed?

19          MR. ANDERSON:  Conversations

20        between me and the retained expert are

21        confidential.  You know that.  You

22        wouldn't allow any --

23        MR. MALOFIY:  I want to know

24        what facts he has.

**EXHIBIT 1**

CONFIDENTIAL

Page 104

1          MR. ANDERSON:  You wouldn't

2          allow any examination of your experts at

3          all.

4          MR. MALOFIY:  Well, this is a

5          whole deeper level.  I want to know what

6          facts he was made aware of and if

7          there's a serious conflict and,

8          actually, something that he was never

9          aware of.

10     Q    You were never aware that Universal

11 Music Group is attempting to assert and interest in

12 this litigation, are you?

13     A    No.

14          MR. ANDERSON:  Objection; lacks

15          foundation --

16          MR. MALOFIY:  First --

17          MR. ANDERSON:  Wait, wait, wait,

18          wait.

19          MS. FREEMAN:  I'm not sure

20          that's true.

21          MR. ANDERSON:  Yeah, it

22          mischaracterizes the facts, lacks

23          foundation, and you got to slow down so

24          that -- both of you, so that I can

**EXHIBIT 1**

CONFIDENTIAL

Page 105

1          object when he starts on these rants.

2          Q      As you sit here today, you were never

3     made aware that Universal Music Group was trying to

4     assert an interest, a financial interest, in

5     "Taurus;" is that correct?

6                   MS. FREEMAN:  I'll object to the

7                   form of the question.  I believe it

8                   assumes facts that are not in evidence.

9          Q      It's correct sir?

10         A      It is correct, I am not aware of any

11    actions on the part of Universal Music Group.

12                  MR. MALOFIY:  Please mark this

13                  with exception.

14                  MS. FREEMAN:  And put a red star

15                  on it.

16                  MR. MALOFIY:  I want to mark

17                  this as well, and it's a request for

18                  documentation; specifically, all your

19                  communications with Rondor Music,

20                  Universal Music Publishing Group and/or

21                  Randall Routledge or anyone associated

22                  in any way with your opinion that you

23                  produced in regards to that matter,

24                  inclusive of invoices, letters, e-mails,

**EXHIBIT 1**

CONFIDENTIAL

Page 108

1              MR. ANDERSON:  Yeah, well, we

2         don't --

3              MR. MALOFIY:  And if we don't

4         address them, I'm not gonna go over it

5         anymore.

6              Please mark this.

7              We're requesting it.  We're

8         entitled to have it.

9         Q    Did the Universal Music Group ever

10   tell you they were trying to assert any kind of

11   interest, either directly or indirectly, in "Taurus"

12   after your -- you were retained in litigation in

13   this case?

14        A    No.

15        Q    Did they ever tell you after January

16   of this year that they were working to file

17   documents with the copyright office to assert their

18   interest in "Taurus"?

19        A    No.

20        Q    Or assert an interest of an associate

21   or an affiliate?

22              MR. ANDERSON:  Objection; vague.

23        A    No.

24              MR. MALOFIY:  Please mark that

**EXHIBIT 1**