Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040

Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, <br><br> Plaintiff, <br><br> vs. <br><br> LED ZEPPELIN, *et al.*, <br><br> Defendants. | Case No. 2:15-cv-03462 RGK (AGRx) <br><br> DEFENDANT WARNER/ CHAPPELL MUSIC, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES <br><br> Date: August 8, 2016 <br> Time: 9:00 a.m. <br><br> Courtroom of the Honorable <br> R. Gary Klausner <br> United States District Judge |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

1.    SUMMARY OF ARGUMENT ....................................................................1

2.    WARNER/CHAPPELL SHOULD BE AWARDED ATTORNEYS' FEES ...................................................................................................2

    (a)    The Court's Broad Discretion to Award Attorneys' Fees in Order to Further the Copyright Act's Goal of Encouraging a Defendant's Litigation of a Meritorious Defense.........................................................2

    (b)    Warner/Chappell Is Properly Awarded Attorneys' Fees Incurred in Successfully Defending Plaintiff's  Copyright Infringement Claims ..............................................................................................3

        (1)    Defendants' Successful Defense of Plaintiff's Infringement Claims Furthered the Policies of the Copyright Act .....................3

        (2)    Plaintiff's Extensive and Ongoing Litigation Misconduct Also Justifies the Award of Defendants' Attorneys' Fees ...........5

            i.    *Plaintiff's Filing of Complaints with Improper Allegations and in the Wrong Court, Followed by Plaintiff's Repeated Filing of Meritless Motions* ...............5

            ii.    *Plaintiff – Ignoring Clear Law that there Is No Copyright in the* Taurus *Sound Recording – Served Inadmissible Expert Reports, Forcing Warner/Chappell to Incur Additional Attorneys' Fees and Expert Fees*.........7

            iii.    *Plaintiff's Complete Failure to Comply with LR 16 and the Court's Order* Re *Pretrial Obligations* .................8

            iv.    *Plaintiff's Misconduct up to and throughout Trial* ...........9

        (3)    The Factors Mentioned in Fogerty Also Confirm that Attorneys' Fees Are Properly Awarded ......................................12

            i.    *The Degree of Success Obtained on the Claim* .................13

i

|  |  | ii. | *Frivolousness of Plaintiff's Position* ................................13 |
|  |  | iii. | *The Parties' Respective Motivations* ...............................14 |
|  |  | iv. | *Objective Reasonableness of Factual and Legal Positions* ........................................................................15 |
|  |  | v. | *The Need  in Particular Circumstances to Advance Considerations of Compensation and Deterrence* ...........15 |
|  | (c) | | Apportionment of Attorneys' Fees between Plaintiff's Copyright Claims and "Right of Attribution" Claim Would Be Improper: the Claims are "Related Claims" Arising from the Same Core Facts .........16 |
|  | (d) | | The Amount of Attorneys' Fees Claimed Is Reasonable ....................17 |
|  |  | (1) | Calculating the Lodestar Figure ..................................17 |
|  |  | (2) | *Kerr* Factors Confirm the Fee Is Reasonable ...........................19 |
| 3. | | | CONCLUSION .......................................................................20 |

# TABLE OF AUTHORITIES

**CASES**

*Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434
   (7th Cir. 2004) ...........................................................................................15

*BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242
   (W.D. Wash. 2015) ....................................................................................13

*Discovery Communications, Inc., v. Animal Planet, Inc.*, 172 F.Supp.2d 1282
   (C.D. Cal. 2001) ........................................................................................17

*Dowling v. United States*, 473 U.S. 207 (1985) ..........................................7

*Eagle Serv. Corp. v. H2O Industr. Serv. Inc.*, 532 F.3d 620 (7th Cir. 2008)...........15

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
   122 F.3d 121 (9th Cir. 1997), *cert. denied* 523 U.S. 1021 (1998)..........................17

*Fantasy, Inc. v. Fogerty*, 94 F.3d 55 (9th Cir. 1996)....................................13

*Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994) ...................... 2, 3, 4, 12, 13, 14, 15, 16

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072
   (9th Cir. 2006)...........................................................................................14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)................................................17

*Historical Research v. Cabral*, 80 F.3d 377 (9th Cir. 1996).......................3

*In re Francis Malofiy*, No. 15-2472, 2016 WL 3553258
   (3d Cir. June 30, 2016)...............................................................................5

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011)....................................13

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 61 (9th Cir. 1993) ............................. 17, 19

*Kerr v. Screen Actors Guild, Inc.* 526 F. 2d 67 (9th Cir. 1975), *cert. denied*
   425 U.S. 951 (1976) ..................................................................................19

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ........................ 2, 5, 12

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996)....................3

*Marino v. Usher*, No. CIV. 11-6811, 2014 WL 2116114
   (E.D. Pa. May 21, 2014) ............................................................................5

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), *cert. denied*
  545 U.S. 1114 (2005) ...............................................................................8

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ......................................14

*Stewart v. Abend*, 495 U.S. 207 (1990) ...................................................19

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ......................................14

*The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829  (9th Cir. 2003) ............17

**STATUTES**

17 U.S.C. § 102 ...........................................................................................3

17 U.S.C. § 103 ...........................................................................................4

17 U.S.C. § 505 ...........................................................................................2

Cal. Civ. Code § 35 .....................................................................................6

Cal. Prob. Code § 6710 ...............................................................................6

**OTHER AUTHORITIES**

Copyright Office Compendium § 313.4 .....................................................14

Copyright Office Compendium § 802.5 .....................................................14

**RULES**

Cal. R. Prof. Responsibility 5-120.............................................................10

Cal. R. Prof. Responsibility 5-200....................................................... 11, 12

L. R. 83-3.1.2 .............................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    SUMMARY OF ARGUMENT

Defendant Warner/Chappell Music, Inc. ("Warner/Chappell") respectfully submits this Memorandum in support of its Motion for the $613,471 in attorneys' fees it incurred in the successful defense of plaintiff's copyright infringement claims and "right of attribution" claim, on behalf of all defendants.

Plaintiff filed this action on May 31, 2014 in the District Court for the Eastern District of Pennsylvania, asserting nearly half-century-old claims that neither Randy Wolfe nor the owner of the allegedly-infringed copyright ever bothered to assert because any similarity between *Taurus* and *Stairway to Heaven* results from the use of a centuries-old, public domain descending chromatic line.  Defendants prevailed at trial, and the award of the attorneys' fees Warner/Chappell incurred is appropriate.

Attorneys' fees are properly awarded in order to encourage and reward the litigation of a meritorious defense, in this case ensuring the continued availability of *Stairway to Heaven* – which plaintiff asked the Court to order enjoined and to have all recordings and sheet music destroyed – and defendants thereby furthered the Copyright Act's ultimate purpose.  *See, below* at 2-5.  In addition, attorneys' fees are properly awarded because of plaintiff's litigation misconduct at every step of this case, from its inception through and including jury deliberations.  *See, below* at 5-12.  Also, attorneys' fees are properly awarded because, *e.g.*, defendants achieved complete success in defending plaintiff's objectively unreasonable positions.  *See, below* at 12-16.  And, no apportionment of attorneys' fees between plaintiff's copyright and "right of attribution" claims is required because the claims arise from a common core of facts and legal theory.  *See, below* at 16-17.  Finally, the amount of fees sought is reasonable.  Indeed, although the individual defendants also incurred substantial attorneys' fees for representation by their New York counsel, the individuals do not seek the award of those fees.  *See, below* at 17-20.

Warner/Chappell respectfully submits that its Motion should be granted.

1

## 2. WARNER/CHAPPELL SHOULD BE AWARDED ATTORNEYS' FEES

### (a) The Court's Broad Discretion to Award Attorneys' Fees in Order to Further the Copyright Act's Goal of Encouraging a Defendant's Litigation of a Meritorious Defense

The Supreme Court recently confirmed and clarified the standards applicable to a request for attorneys' fees under the Copyright Act. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016).

The Copyright Act provides that "the court may . . . award a reasonable attorney's fee to the prevailing party . . . ." 17 U.S.C. § 505. The Court has "broad leeway . . ." in awarding attorneys' fees (*Kirstaeng*, 136 S. Ct. at 1985) and "fee awards under § 505 should encourage the types of lawsuits that promote" the Copyright Act's "well settled" objective of "ultimately serv[ing] the purpose of enriching the general public through access to creative works." *Kirtsaeng*, 136 S. Ct. at 1986, *quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

In exercising its discretion, "a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Id.*, *quoting Fogerty*, 510 U.S. at 533; *Kirtsaeng*, 136 S. Ct. at 1985 ("§ 505 grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case"). Also, "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'" *Id.*, *quoting Fogerty*, 510 U.S. at 527.

Further, whether the losing party had an objectively reasonable position may be a factor, but it is "not the controlling one." *Kirtsaeng*, 136 S. Ct. at 1988, & at 1989 (Second Circuit "Court of Appeals' language at times suggests that a finding of reasonableness raises a presumption against granting fees, . . . and that goes too far in cabining how a district court must structure its analysis . . ."). Instead, "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they

2

must take into account a range of considerations beyond the reasonableness of litigating positions . . . .  For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses." *Id.* at 1988-89.  The Court may also consider "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1985, *quoting Fogerty,* 510 U.S. at 534, n. 19.  Ultimately, however, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng*, 136 S. Ct. at 1989.

Applying these principles, Warner/Chappell should be awarded fees.

**(b)** **<u>Warner/Chappell Is Properly Awarded Attorneys' Fees Incurred in Successfully Defending Plaintiff's  Copyright Infringement Claims</u>**

**(1)** **Defendants' Successful Defense of Plaintiff's Infringement Claims Furthered the Policies of the Copyright Act**

By successfully defending against plaintiff's claims for direct, contributory and vicarious copyright infringement, defendants fulfilled the "pivotal criterion" of furthering the Copyright Act's purpose.  *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) ("This court has emphasized that in considering motions for attorney's fees under § 505 of the Copyright Act, the district court should 'seek to promote the Copyright Act's objectives'"), *quoting Historical Research v. Cabral*, 80 F.3d 377, 378-79 (9th Cir. 1996).  "[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works, . . . ."  *Fogerty*, 510 U.S. at 527.  Oftentimes, the defendant has his own copyrighted work and he furthers the policy of encouraging the public's access to creative works by protecting his work from the plaintiff's challenge of infringement.  *Id.* at 526.  That was the case here.

The musical composition *Stairway to Heaven* is a work protected by copyright.  17 U.S.C. § 102(a)(2) ("Works of authorship include . . . musical

1   works").  Plaintiff stated that *Stairway to Heaven* "is universally acknowledged as
2   one of the greatest songs ever written."  Pltf's First Am. Complaint ("FAC") (Doc.
3   31) at 11, ¶ 56.  Yet, plaintiff not only tried to tar *Stairway to Heaven* and its
4   authors, Jimmy Page and Robert Plant, but by claiming infringement he also
5   challenged *Stairway to Heaven*'s copyright.  17 U.S.C. § 103(a) (copyright "does not
6   extend to any part of the work in which [preexisting] material has been used
7   unlawfully").   Further, plaintiff expressly sought to deprive the public of the
8   *Stairway to Heaven* musical composition and recordings and sheet music of that
9   composition, praying in both his complaints for "[i]Injunctive and other equitable
10  relief inclusive of but not limited to <u>impoundment, destruction, and halting of sales</u>
11  <u>of</u>" *Stairway to Heaven* <u>recordings and sheet music</u>.  Complaint (Doc. 1) at 28, ¶ (f);
12  FAC at 31, ¶ (f).  <u>Defendants successfully defended plaintiff's attempt to wipe</u>
13  *Stairway to Heaven* <u>off the map and, in doing so, defendants furthered the important</u>
14  <u>copyright "purpose of enriching the general public through access to creative works,</u>
15  <u>. . . ."</u> *Fogerty*, 510 U.S. at 527.

16      Also, to ensure a proper balance of competing interests, copyright rights are
17  carefully "limited" by the Copyright Act.  *Id.* at 526-27.  As a result, "it is peculiarly
18  important that the boundaries of copyright law be demarcated as clearly as possible"
19  and the "successful defense of a copyright infringement action may further the
20  policies of the Copyright Act every bit as much as a successful prosecution of an
21  infringement claim . . . ."  *Id.* at 527.  Here, defendants successfully established that
22  the claimed similarities are limited to public domain elements such as a descending
23  chromatic line and the random pitches plaintiff's experts plucked from the *Taurus*
24  and *Stairway to Heaven* compositions.  Defendants' successful defense served the
25  "peculiarly important" copyright policy of demarcating "the boundaries of copyright
26  law," by establishing that use of these commonplace musical elements does not
27  support an infringement claim.  Awarding defendants their attorneys' fees is
28  important because "defendants who seek to advance a variety of meritorious

4

1  copyright defenses should be encouraged to litigate them . . . ."  *Id.*; *see, also*

2  *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir.

3  1996) (affirming award of attorneys' fees to prevailing defendant).

4  　　This is a text-book example of the "successful defense of a copyright

5  infringement action . . . furthering the policies of the Copyright Act every bit as

6  much as a successful prosecution of an infringement claim by the holder of a

7  copyright." *Id.*  For that reason alone, attorneys' fees are properly awarded.

8  　　　　　**(2)**　　**Plaintiff's Extensive and Ongoing Litigation Misconduct Also**

9  　　　　　　　**Justifies the Award of Defendants' Attorneys' Fees**

10  　　The Supreme Court also confirmed that the "court may order fee-shifting

11  because of a party's litigation misconduct, whatever the reasonableness of his claims

12  or defenses." *Kirtsaeng*, 136 S. Ct. at 1988-89.  Here, plaintiff's misconduct in

13  litigation started with the filing of his complaint in the wrong court with scurrilous

14  and improper allegations, and continued unabated into the Jury's deliberations when

15  he falsely represented to the Court that the video exhibit the Jury requested had

16  never been played during the trial.[1]

17  　　　　　　*i.　Plaintiff's Filing of Complaints with Improper*

18  　　　　　　　*Allegations and in the Wrong Court, Followed by*

19  　　　　　　　*Plaintiff's Repeated Filing of Meritless Motions*

20  　　Despite the fact that <u>no defendant</u> has offices or any jurisdictional presence in

21  Pennsylvania, plaintiff filed this action in the Eastern District of Pennsylvania.

22

23  [1]　　Plaintiff's Philadelphia counsel's misconduct in this case is a continuation of

24  the misconduct that earned him a substantial monetary sanction as well as a three-months-and-a-day suspension in the Eastern District of Pennsylvania.  *In re Francis*

25  *Malofiy*, No. 15-2472, 2016 WL 3553258 (3d Cir. June 30, 2016); *Marino v. Usher*,

26  No. CIV. 11-6811, 2014 WL 2116114, at *1 (E.D. Pa. May 21, 2014) ("Throughout

27  this copyright litigation, Plaintiff's Counsel, Francis Malofiy, has behaved in a
flagrantly unprofessional and offensive manner").　Plaintiff, having chosen his

28  Philadelphia counsel despite the charges and pending suspension, ratified his
counsel's ongoing misconduct in this action.

5

Further, he fought to keep it there, putting forth objectively unreasonable arguments that, although rejected by the District Court (*Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 587-88 (E.D. Pa. 2015)), nevertheless forced defendants to retain local counsel and incur unnecessary fees in establishing that the case did not belong there.

Plaintiff also included in his complaints improper and false factual allegations.

For example, to sully the reputations of the individual defendants plaintiff listed purported instances of prior settlements or potential-but-never-asserted copyright infringement claims.  Complaint at 4, ¶10; FAC at 4, ¶ 10).  Plaintiff never even attempted <u>to prove</u> the validity of those claims <u>and</u> any reasonable lawyer would have known that prior claims and settlements are irrelevant.  *United States v. Bailey*, 696 F.3d 794, 800-01 (9th Cir. 2012) ("There is no logical relevancy to admitting this type of evidence."); Fed. R. Evid. 404(a)(1) & 408.

As another example, plaintiff repeatedly alleged that the 1967 Exclusive Songwriter's and Composer's Agreement between Hollenbeck Music and Randy Wolfe, which expressly provides it is governed by California law, is "void" because Wolfe was a minor at the time and the 1967 Agreement was not approved by a California court.  Complaint at 6-7, ¶¶ 22-30.  No reasonable plaintiff would make, let alone persist in making those allegations given that (1) a minor's contract is valid unless promptly disaffirmed upon the minor attaining majority (Cal. Civ. Code § 35, now Cal. Prob. Code § 6710); (2) plaintiff continues to this day to receive and accept Hollenbeck's royalty payments under the 1967 Agreement; and (3) a simple search of the Court records confirms that the 1967 Agreement was approved by the Superior Court in 1967.  Order approving Agreement, Trial Exh. 2060.  Yet, with no legal basis, plaintiff repeatedly suggested at trial that the 1967 Agreement is invalid.

Plaintiff also filed a series of applications and motions, each of which lacked merit and was denied or stricken by the Court, including:

- Plaintiff's February 2, 2016 Application to Amend Scheduling Order, denied (Doc. 95);

6

- Plaintiff's February 25, 2016 Motion to file Amended Complaint to belatedly add defendants, denied (Doc. 133);

- Plaintiff's March 26, 2016 Motion to withdraw deemed admissions, stricken (Doc. 153)

- Plaintiff's May 17, 2016 Motion to compel the individual defendants to appear for trial, denied (Doc. 224);

- Plaintiff's June 11, 2016 Motions for sanctions and the exclusion of defendants' musicologist, stricken (Doc. 233); and

- Plaintiff's June 12, 2016 Motion for reconsideration of the Court's April 4, 2016 Order granting defendants partial summary judgment, stricken (Doc. 233).

Plaintiff's meritless filings not only imposed substantial additional burdens on the Court, but caused Warner/Chappell to incur additional attorneys' fees, including in filing opposition papers.

### ii. *Plaintiff – Ignoring Clear Law that there Is No Copyright in the* **Taurus** *Sound Recording – Served Inadmissible Expert Reports, Forcing Warner/Chappell to Incur Additional Attorneys' Fees and Expert Fees*

Plaintiff specifically sued for infringement of the copyright in the *Taurus* musical composition registered with the Copyright Office in 1968. Complaint at 7, ¶ 34. And the law is unequivocally clear that the pre-February 15, 1972 *Taurus* sound recordings are not protected by that copyright. *Dowling v. United States*, 473 U.S. 207, 211 n. 4 (1985) ("Congress did not extend federal copyright protection to sound recordings until the Sound Recording Act of 1971 . . . and then only to sound recordings fixed after February 15, 1972"). As a result, "Plaintiff's only copyright claim lies in the musical composition of *Taurus*, not the sound recording." Order (Doc. 159) on Defs' MSJ at 17. No reasonable person could conclude otherwise.

1    Yet, plaintiff's initial expert disclosures included four reports based solely on

2    claimed similarities between *Stairway to Heaven* and the irrelevant *Taurus*

3    recordings, and never even mentioned the relevant copyrighted work, namely the

4    *Taurus* deposit copy.  *See, e.g.,* Defs' MIL No. 4 (Doc. 137).  Plaintiff's submission

5    of expert reports as to *Taurus* recordings instead of the *Taurus* deposit copy was

6    directly contrary to established law.  *See, e.g., Newton v. Diamond*, 388 F.3d 1189,

7    1194 (9th Cir. 2004) ("A crucial problem with the testimony of [plaintiff's] experts

8    is that they continually refer to the 'sound' produced by [plaintiff's] technique,"

9    while his "copyright extends only to the elements . . . that he wrote on the score"),

10   *cert. denied* 545 U.S. 1114 (2005).

11   Further, plaintiff's improper expert reports not only required that defendants

12   respond and object to them, but led to the Court's ruling that plaintiff's reports were

13   inadmissible and providing plaintiff leave to submit a second round of reports.

14   Order (Doc. 203).  Because of plaintiff's initial submission of inadmissible reports,

15   followed by plaintiff's submission of new reports that inexplicably continued to rely

16   on the *Taurus* recordings, Warner/Chappell incurred yet additional attorneys' fees.

17   Plaintiff also refused to produce his experts for deposition until the Court rejected

18   his absurd argument that expert discovery had been cut-off with fact discovery.

19   Order (Doc. 216).  Plaintiff's misconduct also required that defendants submit new

20   rebuttal reports and objections to plaintiff's new reports and his experts' continued

21   reliance on the *Taurus* recordings.  *See, e.g.,* Defs' Trial Brief (Doc. 223) at 17-24.

22   Given that plaintiff sues on a copyright in the *Taurus* deposit copy and that the

23   *Taurus* sound recordings are inadmissible, it was improper and misconduct for

24   plaintiff to persist in trying to inject the *Taurus* sound recordings into this case.

### iii. Plaintiff's Complete Failure to Comply with LR 16 and the Court's Order Re Pretrial Obligations

27   Plaintiff also completely failed to comply with this Court's Local Rule 16 and

28   his pretrial obligations, including under the Court's Order for Jury Trial (Doc. 79).

1   For example, plaintiff failed to cooperate in the timely filing of the required

2   Joint Witness List, the required Joint Exhibit List and the required proposed Pretrial

3   Conference Order.   *See,* Decl. (Doc. 201) *re* late filing of pretrial documents, at 1.

4   As another example, plaintiff insisted on including in the late-filed Joint

5   Exhibit List thousands of documents that no reasonable person could believe would

6   be admissible at trial, including plaintiff's listing of <u>every document</u> on the Court's

7   docket, entire deposition transcripts and hundreds of documents identified only

8   generically (such as 275 separate exhibits each designated only as unidentified

9   "Sheet Music Sold for Exploitation").  *Id.* at 2.  Plaintiff also filed on the first day of

10  trial a 383-page Supplemental Exhibit List (Doc. 242) that added new exhibits and

11  re-numbered exhibits, causing confusion throughout the trial.

12  ### *iv. Plaintiff's Misconduct up to and throughout Trial*

13  Plaintiff's misconduct continued up to and throughout the trial.

14  Plaintiff successfully resisted discovery as to his allegations that the Trust is a

15  charitable organization and uses its funds to buy instruments for needy children in

16  Ventura County, California.   Given his refusal to allow discovery on those

17  allegations, and their lack of relevance and potential prejudicial effect, at the April

18  25, 2016 Pretrial Conference the Court tentatively granted defendants' Motion in

19  Limine No. 8 to exclude all evidence and argument as to plaintiff's and the Trust's

20  use of funds and any recovery in this action for charitable purposes.  Order (202) at

21  2 ("Defendants' Motion in Limine 8 to exclude evidence about the charitable goals

22  of the Trust (DE 141), is GRANTED").  But plaintiff's counsel, knowing the Court's

23  ruling and the potential prejudicial effect on the jury pool, literally minutes later

24  stood before media cameras in front of the Courthouse and stated:

25  "If money is won in this case, it's to be used to buy musical

26  instruments for children who are in need in Ventura County."

27  Defs' Objections to Pltf's Trial Conduct (Doc. 252) at 1-2, 7.  Plaintiff's public

28  statement was a willful violation of California Rule of Professional Responsibility

1   Rule 5-120(A), which prohibits public statements that could impact the trial.  L. R.

2   83-3.1.2 (adopting Cal. Rules of Professional Responsibility).

3   Plaintiff also directly violated the Court's rulings on defendants' Motions in

4   Limine.  For example, the Court granted defendants Motion in Limine No. 9 to

5   exclude pre-May 31, 2011 payments, including advances received after that date but

6   under the 2008 contract between two non-parties, WB Music Corp. and Flames of

7   Albion.  Following that ruling, the Court sustained defendants' objection to

8   admission of the 2008 contract.  Anderson Decl. Exh 4 (Trial Transcript) at 544:6 to

9   545:10.  But, plaintiff then elicited testimony from his damages expert as to the

10  advances, which plaintiff and the expert mischaracterized as payments for post-2011

11  exploitation.  *Id.* at 771:20 to 773:18.  On cross-examination and only after the Court

12  intervened, did plaintiff's expert admit that the payments "were made under the

13  terms of [the] 2008 contract." *Id.* at 783:4-22. Plaintiff's expert's testimony as to

14  millions of dollars of payments was barred by the Court's ruling granting

15  defendants' Motion in Limine and was elicited by plaintiff in direct contempt of the

16  Court's ruling.

17  Plaintiff also violated another of the Court's in Limine rulings when, after the

18  Court confirmed on the first day of trial its ruling "exclud[ing] evidence about the

19  charitable goals of the Trust" (Order (Doc. 202) at 2), plaintiff's counsel elicited

20  from his first witness, Janet Wolfe, that the Trust is a charity:

21  "Q.    What is the Randy Craig Wolfe Trust?

22  "A.    It was my mother's mission to create a legacy for my brother, <u>and</u>

23         <u>it benefits charity.</u>"

24  Anderson Decl. Exh. 4 (Trial Transcript) at 157:14-16.  Plaintiff's counsel also

25  directly violated that ruling by stating in leading questions to plaintiff that the Trust

26  used its funds to buy instruments for children. *Id.* at 752:9-11 ("Is it accurate that the

27  assets of the Trust, estate, and its income shall be used for the purpose of providing

28  musical  instruments  and  associated  materials  .  .  .").   Plaintiff  persisted,  over

10

1  sustained objections, in violating the Court's ruling.  *Id.* at 752:24 to 754:24.

2      In addition, on the eve of trial plaintiff purported to issue to defendants and to

3  non-parties "notices" to appear and trial subpoenas directed to unidentified "persons

4  most knowledgeable," all without any basis in the Federal Rules of Civil Procedure

5  or otherwise.  Anderson Decl. at 1, ¶ 4, & Exh. 2.

6      Throughout the trial plaintiff also falsely stated to the Jury, repeated in loaded

7  questions and stated to the press that plaintiff had engaged defendants' musicologist,

8  who "flipped" to represent defendants.[2]  Plaintiff also improperly and falsely stated

9  in opening argument that he would call defense counsel to the stand to testify as to

10  their supposed "duplicitous" conduct.  Anderson Decl. Exh. 4 (Trial Transcript) at

11  125:20 to 126:3.

12      Also, in questioning John Paul Jones plaintiff misrepresented plaintiff's

13  newly-re-numbered exhibit 100164 as being a recording of an interview in 1972

14  shortly after *Stairway to Heaven* was written, when, in truth, the exhibit is an

15  interview in 1990, or almost twenty years later.  *Id.* at 943:4 to 944:22; Anderson

16  Decl. at 1-2, ¶ 5.

17      As another example of plaintiff's gross misconduct, his counsel presented to

18  the Jury a photograph altered to omit two people and create the false impression that

19  Robert Plant was speaking with Mark Andes.   Anderson Decl. Exh. 4 (Trial

20  Transcript) at 298:15 to 299:17; Defs' Decl. *re* Pltf's Altered Exh. 535 (Doc. 291),

21  Anderson Decl. at 2, ¶ 6, & Exh. 3; Cal. R. Prof. Responsibility 5-200(B)

22  (prohibiting counsel from "seek[ing] to mislead the judge, judicial officer, or jury by

23  an artifice").

24      Plaintiff also misrepresented to the Court that the 1996 renewal of copyright

25  in the *Taurus* musical composition "terminated" Wolfe's 1967 Agreement with

26

---

27  [2]     http://mms.tveyes.com/Transcript.asp?StationID=780&DateTime=6%2F18%2F2016+1%3A11%3A21+AM&Term=Led+Zeppelin&PlayClip=TRUE.   *See, also*

28  Trial Transcript at 905:12-907:5.

1  Hollenbeck.  Anderson Decl. Exh. 4 (Trial Transcript) at 720:8-10.  Aside from the

2  fact that plaintiff testified he still receives payments from Hollenbeck under that

3  agreement, plaintiff's representation that Wolfe's renewal terminated the 1967

4  Agreement is plainly untrue.  3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §

5  9.06[B] ("When the copyright owner transfers rights in the renewal term . . . and

6  survives until renewal vesting, then rights in the renewal term belong to the

7  assignee"); Defs' Mtn. for JMOL (Doc. 250) at 2-4; *see, also* Cal. R. Prof.

8  Responsibility 5-200(B) (prohibiting counsel from seeking to mislead the court by

9  "false statement of fact or law").

10  Plaintiff's misconduct continued even into the Jury's deliberations. When the

11  Jury asked to hear plaintiff's expert's recorded guitar performance of the *Taurus*

12  musical composition, plaintiff misrepresented to the Court that the Jury heard only

13  his expert's performance of the bass clef of the composition, which misrepresents

14  the actual *Taurus* composition by leaving out the treble clef.  Anderson Decl. Exh. 4

15  (Trial Transcript) at 1301:3-13, 1303:21 to 1304:5.  In truth, the Jury had heard

16  plaintiff's Exhibit 525a with the entire deposit copy performed (*id.* at 296:9-18), and

17  that is what they asked to hear.

18  Plaintiff is guilty of continued and gross misconduct throughout the case and,

19  for that additional reason, attorneys' fees should be awarded.

20  **(3)  The Factors Mentioned in Fogerty Also Confirm that**

21  **Attorneys' Fees Are Properly Awarded**

22  *Kirtsaeng* highlighted objective unreasonableness and litigation misconduct as

23  alternative grounds to award attorneys' fees to the prevailing party on a copyright

24  claim, but also recounted that *Fogerty* "noted" "'several non-exclusive factors' to

25  inform a court's fee-shifting decisions: 'frivolousness, motivation, objective

26  unreasonableness[,] and the need in particular circumstances to advance

27  considerations of compensation and deterrence.'"  *Kirtsaeng*, 136 S. Ct. at 1985,

28  *quoting Fogerty*, 510 U.S. at 534, n. 19.  "[C]ourts may not rely on [these] factors if

12

they are not 'faithful to the purposes of the Copyright Act'" when applied in a particular case. *Fantasy*, 94 F.3d at 558, *quoting Fogerty*, 510 U.S. at 34, n. 19. However, those factors also cut in favor of a fee award here.

### i.   The Degree of Success Obtained on the Claim

"In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; . . . ." *Maljack*, 81 F.3d at 889.  Defendants' success is complete: Judgment has been entered in their favor, dismissing plaintiff's action in its entirety.  The Copyright Act is furthered by successfully defending a copyright claim. *Fogerty*, 510 U.S. at 527.

Also, in determining the degree of success the Court may compare the plaintiff's settlement position with the ultimate result. *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1246-47 (W.D. Wash. 2015).  Here, even though plaintiff's potential recovery was limited to low six figures, he demanded $12,000,000 or co-ownership of the *Stairway to Heaven* copyright, neither of which he could have recovered in this action even if he had prevailed.  Defendants' successful defense of claims for which plaintiff made such demands further confirms the high degree of success defendants obtained.

The degree-of-success factor unequivocally cuts in favor of the award of fees.

### ii.   Frivolousness of Plaintiff's Position

If the prevailing defendant's defense furthered the policies of the Copyright Act, attorneys' fees are properly awarded even if the plaintiff's position was reasonable. *Fantasy*, 94 F.3d at 558.  But, frivolousness cuts in favor of a fee award, *Maljack*, 81 F.3d at 889, and is further support for an award of attorneys' fees here.

 Plaintiff's copyright infringement claims ran headlong into well-established law confirming that the copyrighted work is limited to the *Taurus* deposit copy and that there is no copyright protection for the elements on which plaintiff based his claim: a commonplace descending chromatic line, the random selection of two or

13

three notes and the bare pitches that were not even in the same sequence.  *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical elements not protected); *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) ("non-protectable elements" must be "filter[ed] out and disregard[ed]"), *quoting Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002); *Swirsky v. Carey*, 376 F.3d 841, 848 n. 13 (9th Cir. 2004) ("concentration solely on pitch sequence may break music down beyond recognition"); Copyright Office Compendium §§ 313.4(B), 313.4(C) & 802.5(A) (unprotected material includes chromatic scales, arpeggios and a "music phrase consisting of three notes").

While attorneys' fees are properly awarded to a prevailing defendant even if the plaintiff's position was reasonable (*Fantasy*, 94 F.3d at 558), plaintiff's claims were not reasonable and this factor further confirms fees should be awarded.

### iii. The Parties' Respective Motivations

Defendants' motivation was and is to defend themselves and *Stairway to Heaven* against claims of infringement and the impounding and enjoining of that composition and recordings and sheet music of that composition.  Defendants' motivation furthered the Copyright Act's purposes.  *Fogerty*, 510 U.S. at 527 ("copyright law ultimately serves the purpose of enriching the general public through access to creative works").  "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them . . . ." *Id.*  For that reason, alone, this factor cuts in favor of the award of attorney's fees.

In addition, plaintiff's motivation was base: after nearly a half-century of inaction, plaintiff relied on public domain elements shared by the works to try to coerce a massive settlement that he could not have achieved in this action even if he had prevailed.  Plaintiff's motivation impedes the creation of new works and ignores the boundaries of copyright protection, thereby frustrating the Copyright Act and its important policies.  *Fogerty*, 510 U.S. at 527.

1    The factor of motivation also cuts decidedly in favor of awarding fees.

2    ### iv. *Objective Reasonableness of Factual and Legal Positions*

3    While, again, attorneys' fees are properly awarded to a prevailing defendant

4    even if the plaintiff's position was perfectly reasonable (*Fantasy*, 94 F.3d at 558),

5    plaintiff repeatedly took positions that were outright misconduct and, at a bare

6    minimum, were objectively unreasonable. *See, above* at 5-12.  Even if viewed as

7    only objectively unreasonable, plaintiff's conduct supports the award of attorneys'

8    fees to defendants. *Maljack*, 81 F.3d 890 (attorneys' fees properly awarded to

9    prevailing defendant where plaintiff's "copyright claims . . . are, if not frivolous, at

10   least factually unreasonable," and "an award of fees may deter baseless suits").

11   While attorneys' fees are properly awarded because defendants' defense of the

12   case furthered the policies of the Copyright Act, plaintiff's objectively unreasonable

13   conduct also confirms attorneys' fees should be awarded.

14   ### v. *The Need in Particular Circumstances to Advance*

15   ### *Considerations of Compensation and Deterrence*

16   In terms of compensation and in order to achieve the equal treatment of

17   prevailing plaintiffs and defendants required by *Fogerty*, 510 U.S. at 534, "when the

18   prevailing party is the defendant, who by definition receives not a small award but

19   no award, the presumption in favor of awarding fees is very strong." *Eagle Serv.*

20   *Corp. v. H2O Industr. Serv. Inc.*, 532 F.3d 620, 625 (7th Cir. 2008), *quoting*

21   *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).

22   Compensation is especially important here because the attorneys' fees were

23   not borne by an insurer.  Because the claim plaintiff asserts is so old,

24   Warner/Chappell's insurer denied coverage and Warner/Chappell itself has borne the

25   attorneys' fees it incurred in successfully defending against plaintiff's claim.

26   Anderson Decl. at 5, ¶ 16.  That cuts strongly in favor of awarding Warner/Chappell

27   attorneys' fees.

28   ///

In addition, plaintiff sued nearly a half-century late even though the copyright owner and Randy Wolfe had never sued and plaintiff's own experts admitted the claimed similarity is based on a public domain descending chromatic line. Accordingly, the interest in deterring potential claimants from asserting stale and meritless copyright claims also cuts in favor of awarding attorneys' fees.

The successful defense of plaintiff's copyright claims satisfied the "the pivotal criterion" of "[f]aithfulness to the purposes of the Copyright Act" (*Fantasy*, 94 F.3d at 558), by furthering the copyright "purpose of enriching the general public through access to creative works . . . ," and the "peculiarly important" copyright policy of enforcing the "boundaries of copyright law." *Fogerty*, 510 U.S. at 527. For these reasons alone, and because "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them . . . ," attorneys' fees are properly awarded. Further, plaintiff's litigation misconduct, as well as defendants' complete success, their motivation, plaintiff's motivation and plaintiff's unreasonable and even frivolous positions all confirm this is a proper case for the award of attorneys' fees.

Accordingly, Warner/Chappell respectfully submits that its Motion for attorneys' fees should be granted.

**(c)**     **Apportionment of Attorneys' Fees between Plaintiff's Copyright Claims and "Right of Attribution" Claim Would Be Improper: the Claims are "Related Claims" Arising from the Same Core Facts**

The Court need not attempt to apportion fees between plaintiff's copyright claims and "right of attribution" claim and, instead, for at least two reasons an award under the Copyright Act properly includes the fees in defending the entire suit.

First, plaintiff's "right of attribution" claim was so patently unsupported by law that no material time was spent on it. Anderson Decl. at 8, ¶ 18.

Second, it is well-established that a party who prevails on a claim for which attorneys' fees are recoverable, can recover attorneys' fees on that claim <u>and</u> any

16

1   "related claims" on which the party also prevails.  *The Traditional Cat Ass'n, Inc. v.*

2   *Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003), *quoting Entm't Research Group, Inc.*

3   *v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997), *cert. denied*

4   523 U.S. 1021 (1998), *in turn quoting Hensley v. Eckerhart*, 461 U.S. 424, 434-35

5   (1983).  Claims are "related" if they "involve a common core of facts <u>or</u> will be

6   based on related legal theories."  *Hensley*, 461 U.S. at 435 (emphasis added).  Here,

7   plaintiff based his "right of attribution" claim solely on the allegation that Wolfe

8   "wrote . . . significant portions of 'Stairway to Heaven.'"  Complaint at 26, ¶ 186;

9   FAC at 29, ¶ 197.  That allegation, of course, is the factual and legal basis for his

10  copyright infringement claims.  As a result, plaintiff's "right of attribution" and

11  copyright infringement claims "involve a common core of facts" <u>and</u> "related legal

12  theories" (*Hensley*, 461 U.S. at 435), namely that copyright infringement occurred.

13  The claims are "related claims" and attorneys' fees are recoverable for both.

**(d)**   **<u>The Amount of Attorneys' Fees Claimed Is Reasonable</u>**

15      The amount of an attorneys' fees award is determined by (1) calculating the

16  lodestar figure and (2) determining whether that lodestar figure should be adjusted.

**(1)**   **Calculating the Lodestar Figure**

18      In setting a fee, the Court "must first determine the presumptive lodestar

19  figure by multiplying the number of hours reasonably expended on the litigation by

20  the reasonable hourly rate."  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th

21  Cir. 1993).  "The lodestar amount presumably reflects the novelty and complexity of

22  the issues, the special skill and experience of counsel, the quality of representation,

23  and the results obtained from the litigation."  *Id.*  To establish this "'presumptively

24  reasonable' lodestar figure," the party seeking fees must "provide (1)

25  contemporaneous billing records, (2) counsel's hourly rate, and (3) evidence that this

26  rate is reasonable for an attorney of like skill and experience."  *Discovery*

27  *Communic'ns, Inc., v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1292 (C.D. Cal.

28  2001).

As to "the number of hours reasonably expended on the litigation," *Intel Corp.*, 6 F.3d at 622, and excluding the time spent by the individuals' New York counsel, since August 2014 defendants' counsel expended a total of 1,809.40 hours in the defense of plaintiff's claims through the entry of Judgment and June 30, 2016. Anderson Decl. at 6, ¶ 17 (1,750.40 hours); Eidel Decl. at 5, ¶ 16 (16.40 hours); Olesh Decl. at 4, ¶ 15 (42.6 hours).  That time, which is detailed in the excerpts of contemporaneous billing records attached to counsel's Declarations, includes, for example, the initial litigation of jurisdiction and venue in the Eastern District of Pennsylvania; propounding and responding to extensive written discovery and producing over 40,000 pages of documents; depositions of parties and non-parties, including here and in London, England, Boston, Massachusetts and Memphis, Tennessee; litigating defendants' motion for summary judgment or partial summary judgment, which, *inter alia*, resulted in the dismissal of three defendants, the reduction of plaintiff's potential recovery by 50% and confirmation that the *Taurus* deposit copy is the relevant copyrighted work; litigation of multiple applications and motions filed by plaintiff and successfully opposed by defendants; litigation of extensive Motions in Limine, with defendants prevailing on all but two of the seventeen motions filed; pretrial proceedings; and trial.  Anderson Decl. at 6-8, ¶ 17, & Exh. 1; Eidel Decl. at 5-6, ¶ 16, & Exh. 1.  Warner/Chappell respectfully submits that the total of 1,809.40 hours spent from inception of this action in 2014 through June 30, 2016 reflects the efficient defense of this action and are reasonable.

In addition, since June 23, 2016 defendants' counsel expended additional time in preparing and completing the Notice of Motion for Attorneys' Fees, this Memorandum of Points and Authorities and the Declarations, defendants' Motion for additional costs and supporting papers, and defendants' Application to Tax Costs and proposed Bill of Costs.  Anderson Decl. at 8, ¶ 19 ($9,768); Eidel Decl. at 6, ¶ 17 ($1,550); Olesh Decl. at 5, ¶ 16 ($1,400).

///

As to the reasonableness of counsel's hourly rate, defendants' lead counsel charged $330 per hour, which is actually <u>below</u> "those prevailing in the community for similar services." *Intel*, 6 F.3d at 622. Defendants' lead counsel has over 36 years' experience in copyright and entertainment litigation and, for example, was primarily in charge of the prevailing party's case in *Stewart v. Abend*, 495 U.S. 207 (1990). Anderson Decl. at 2-4, ¶¶ 8-11. In this District, practitioners – like the defendants' counsel – with over 35 years of experience in copyright litigation routinely charge upwards of $750 an hour. Likewise, the hourly rates charged by defendants' local counsel in Philadelphia before the transfer of this action are well within "those prevailing in [that] community for similar services." Eidel Decl. at 1-4, ¶¶ 3-11; Olesh Decl. at 1-3, ¶¶ 3-10.

Multiplying the hours reasonably spent in defending against plaintiff's claim through the filing of this Motion, by the applicable hourly rates for Messrs. Anderson ($587,411), Eidel ($9,750) and Olesh ($16,310) results in a total of $613,471 as the "'presumptively reasonable' lodestar figure." *Intel*, 6 F.3d at 622.

### (2)   *Kerr* Factors Confirm the Fee Is Reasonable

"[T]he district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Actors Guild, Inc.* 526 F. 2d 67, 69-70 (9th Cir. 1975), *cert. denied* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) that have not been subsumed in the lodestar calculation." *Intel*, 6 F.3d at 622. The *Kerr* factors include "[t]he amount involved and the results obtained" and "the customary fee." *Intel*, 6 F.3d at 622.

As to <u>the amount involved</u>, plaintiff demanded $12,000,000 or co-ownership of the *Stairway to Heaven* copyright for the duration of copyright. Under either proposal, plaintiff sought millions of dollars and defendants were perfectly justified in spending $613,471 to defend against his claims. As to <u>the results obtained</u>, the defendants successfully defended all of plaintiff's claims and obtained Judgment in defendants' favor. And, as to <u>the customary fee</u>, defendants' counsel charged hourly

1  rates commensurate with or substantially below the customary rate in the community

2  for attorneys with comparable experience in the field.

3         Accordingly, the *Kerr* factors confirm that the requested fee award is

4  reasonable.

5  **3.     CONCLUSION**

6         Defendants – faced with plaintiff's ongoing misconduct and objectively

7  unreasonable positions – triumphed against plaintiff's claims for permanent

8  injunctive relief that would have deprived the public of the *Stairway to Heaven*

9  musical composition, recordings and sheet music.   The successful defense of

10  plaintiff's claims furthered the purposes of the Copyright Act and the sum of

11  $613,471 in attorneys' fees is reasonable.   Accordingly, those fees and the fees

12  hereafter incurred by Warner/Chappell in connection with this Motion and the

13  accompanying Motion and Application, are properly awarded to Warner/Chappell.

14

15  Dated: July 7, 2016

16                                    _____/s/ Peter J. Anderson_____
                                      Peter J. Anderson, Esq.
17                                    LAW OFFICES OF PETER J. ANDERSON
                                      A Professional Corporation
18                                    Attorney for Defendants
                                      JAMES PATRICK PAGE, ROBERT
19                                    ANTHONY PLANT, JOHN PAUL JONES,
                                      WARNER/CHAPPELL MUSIC, INC.,
20                                    SUPER HYPE PUBLISHING, INC.,
                                      ATLANTIC RECORDING CORP., RHINO
21                                    ENTERTAINMENT COMPANY and
                                      WARNER MUSIC GROUP CORP.

22

23

24

25

26

27

28