1
2
3
4
5

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 1
Media, PA 19063
T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com
*Attorney for Plaintiff*

6
7
8
9
10
11

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T:  (310) 557-9200; F: (310) 557-0224
E:  gkulik@kgslaw.com
*Attorney for Plaintiff*

12
13

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY,<br><br>Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR COST AND MOTIONS FOR FEES**<br><br>Filed concurrently with Declarations; and [Proposed] Order<br><br>Trial Date:   August 8, 2016<br>Time:           1:00 p.m.<br>Courtroom:  850 |

# I.     INTRODUCTION

Plaintiff opposes the attorney's fees motion filed by Defendants as baseless; no award of fees is warranted as this lawsuit was both factually and legally reasonable. The British rule—where the loser pays—is not the law. Instead, under the Copyright Act the Court must consider five nonexclusive *Fogerty* factors when deciding whether, within its discretion, the imposition of costs and fees is appropriate. Defendants, it should be noted, are massive figures in the music industry with almost unlimited funds. In contrast, Plaintiff is a small charity with nominal funds who cannot possibly pay the requested number. Heavily factoring into whether fees should be imposed is whether the lawsuit was "objectively reasonable" and not frivolous. Defendants' motion attempts to label the lawsuit as objectively unreasonable and frivolous despite a wealth of evidence to the contrary. But an analysis of Defendants' motion reveals that it is largely conclusory and barely even applies the appropriate *Fogerty* factors to the facts of the case. Defendants, apparently realizing that the *Fogerty* factors do not support an award of fees, instead attempt to support their motion by making misguided, baseless, and irrelevant personal attacks on opposing counsel. These attacks are unbecoming, and in all instances attempt to conclusorily characterize good faith advocacy as "misconduct." An award of fees on such a basis would chill good faith advocacy and leave attorneys in fear that they could later be punished for good faith argumentation.

Defendants' motion ignores that this lawsuit was objectively reasonable and in fact was close at all stages. At the summary judgment stage, the Court determined that there were triable issues of fact on the ownership of Taurus, whether Defendants had access to Taurus, and whether Taurus's deposit copy and Stairway to Heaven were substantially similar. These issues were addressed by the jury which deliberated for over six hours, finding that Plaintiff owned the Taurus copyright and that Defendants had access to the work in question. Defendants, it should be noted, spent much time and money contesting these elements, but at time of trial had little, if any, factual support for their defenses. On the third issue, substantial similarity, the jury found for the Defendants. However, had

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

certain evidentiary rulings and jury instructions on novel issues—such as the scope of the deposit copy—gone Plaintiff's way, it is entirely possible the jury's verdict would have been different on substantial similarity. Plaintiff notes that his view of the scope of the expression protected by the deposit transcription of Taurus was one recently endorsed by a prior court in this district, *Williams v. Bridgeport Music* (Blurred Lines case). That this Court reached a different legal conclusion on this novel legal issue supports the notion that reasonable minds can differ.

Taken as a whole, and especially considering that the jury agreed with Plaintiff that Defendants had access to Taurus—a key consideration in any copyright case—it is quite clear that this lawsuit was not "objectively unreasonable" or frivolous. It was a hard fought case, concerning novel legal issues. Awarding fees in this case would not serve the interests of the Copyright Act. Plaintiff notes that in a highly similar case that went to verdict, *Williams v. Bridgeport Music*, a Court in the Central District concluded that an award of fees was not appropriate. In addition, Defendants' unreasonable contest of ownership/access needlessly increased the case's cost and does not support an award.

## II.   LEGAL STANDARD

"The Supreme Court has adopted the 'evenhanded' approach to the award of attorney's fees in copyright cases." *Berkla v. Corel Corp.*, 302 F.3d 909, 922 (9th Cir. 2002) (quoting *Fogerty v. Fantasy, Inc.*, 510 US 517, 534 (1994)). "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty*, 510 U.S. at 534; *see also Seltzer v. Green Day*, 725 F.3d 1170, 1180 (9th Cir. 1980) (citing *Fogerty*, 510 U.S. at 533) (noting that "the Supreme Court rejected the so-called British Rule where the loser pays; rather, attorney's fees are left up to the discretion of the district court"). In exercising their discretion, "courts deciding whether to award attorney's fees can look to five non-exclusive factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of

compensation and deterrence." *Seltzer*, 725 F.3d at 1180- 81. These five "*Lieb* factors" are nonexclusive.[1] *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). "[C]ourts may not rely on the *Lieb* factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Id.* at 558. "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. Free use of ideas is a central purpose of the Act:

> The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' … To this end, copyright assures authors the right to their original expression, but *encourages others to build freely upon the ideas and information conveyed by a work.*

*Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 349–350 (1991) (emphasis added) (citation omitted).

"While it is true that *one* of the goals of the Copyright Act is to discourage infringement, it is by no means the *only* goal of that Act." *Fogerty*, 510 U.S. at 525 (emphasis in original). "[T]he policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Id.* at 526. The Supreme Court stated:

> Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. … [T]he ultimate aim is … to stimulate artistic creativity for the general public good.

*Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975). Similarly, because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is particularly important that the boundaries of copyright law be demarcated as clearly as possible.

"Granting attorneys' fees is disfavored when a plaintiff pursues an action in good faith in an unsettled area of law and the parties have alike financial resources." *Perfect*

---

[1] The *Lieb* (or *Fogerty*) factors are found in *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d. Cir. 1986).

*10, Inc. v. Visa Int'l Ass'n, Inc.*, 2005 WL 2007932 at *4 (N.D. Cal. Aug. 12, 2005)(citing *Lotus Development Corp. v. Borland International*, 140 F.3d 70, 75 (1st Cir. 1998)). Given the "evenhanded approach" to fees, *Berkla*, 302 F.3d at 922, attorney's fees likewise must be disfavored where a defendant defends a claim in good faith in an unsettled area of law against a party with like resources. *See id*; *Perfect 10, Inc.*, *v. CCBill, LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) ("the standards for evaluating whether an award is proper are the same regardless of which party prevails"). When the parties do not have even resources the Ninth Circuit considers "whether an award of attorney's fees would have a chilling effect that is too great or would impose an inequitable burden on an impecunious plaintiff." *See Williams v. Bridgeport Music Inc.*, 13-cv-6004 (April 12, 2016) (ECF No. 554) (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)). In *Seltzer*, the Ninth Circuit vacated the district court's award of fees to the prevailing defendant where the plaintiff was not objectively unreasonable, and it was a "close and difficult case." 725 F.3d at 1181. Frivolousness, bad faith motivation, and objective unreasonableness are important factors. Courts consistently award fees where the losing party's contentions were frivolous or objectively unreasonable[2] and deny fees where the losing party's contentions were not frivolous or objectively unreasonable.[3]

## III.   APPLICATION

The lawsuit was objectively reasonable. "Faithfulness to the purposes of the Copyright Act is … the pivotal criterion." *Fantasy*, 94 F.3d at 558. Plaintiff's lawsuit was

---

[2] *See, e.g., Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 75 F.3d 1038, 1042-43 (9th Cir. 2014) (awarding fees where the plaintiff's claims were frivolous); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 615 (9th Cir. 2010)(affirming fee award—claims "bordered on frivolous and were not objectively reasonable"); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484 at **9-12 (C.D. Cal. March 24, 2015) (awarding fees—plaintiff had improper motive and claims were objectively unreasonable).

[3] *See, e.g., Perfect 10, Inc.*, 488 F.3d at 1120 (affirming denial of fees where the plaintiff's claims were not objectively unreasonable or frivolous); *Berkla*, 302 F.3d at 924 (same); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (affirming fee denial where claims were not frivolous or in bad faith); *Perfect 10, Inc.*, 2005 WL 2007932 at **3-5 (claims were not objectively unreasonable and there were novel legal issues).

faithful to the goals of the copyright act. Every inch of this case was closely fought, including ownership, access, and especially substantial similarity. Plaintiff proved two out of the three elements necessary to establish copyright infringement, ownership and access, despite heavy opposition from Defendants. Even on the element where Plaintiff fell short, substantial similarity, there was competing expert testimony, which largely revolved around the novel legal question of the scope of the composition of Taurus protected by the deposit copy transcription. The case largely came down to the Court's evidentiary rulings, of which Plaintiff had no way to predict beforehand, and on which courts in this district differ. Indeed, the Court's ruling on Defendants' pertinent motion in limine was only a tentative ruling.

Troublingly, Defendants' motion barely even applies the *Fogerty* factors in requesting fees, choosing instead to attack Plaintiff's counsel. *See* Def. Memo. at p.5-10. These misguided attacks are addressed and refuted *infra*. Plaintiff notes that in a highly similar case that went to verdict, *Williams v. Bridgeport Music*, a Court in the Central District recently concluded that an award of fees was not appropriate given the novelty of the issues in dispute. *See Williams v. Bridgeport Music*, 13-cv-6004 (April 12, 2016) (ECF No. 554), at p.5.

A.   LAWSUIT WAS OBJECTIVELY REASONABLE AND ALTHOUGH A DEFENSE VERDICT WAS RETURNED PLAINTIFF PROVED TWO OUT OF THREE OF THE NECESSARY ELEMENTS DESPITE DEFENDANTS' HEAVY OPPOSITION

That a party lost does not, in itself, show that its claim was objectively unreasonable. *Seltzer*, 725 F.3d at 1181. Rather, "a claim is objectively unreasonable when the party advancing it 'should have known from the outset that its chances of success in the case were **slim to none**.'" *Giganews, Inc.*, 2015 WL 1746484 at *11 (emphasis added) (quoting *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013)). In *Seltzer*, the Ninth Circuit held that the plaintiff was not objectively unreasonable where it was a close and difficult case, and the defendant's transformative fair use "was far from obvious." *Id.* ("There is simply no reason to believe

that *Seltzer* 'should have known from the outset that [his] chance of success in this case was slim to none[.]'") (citing *SOFA Entm't*, 709 F.3d at 1280).Plaintiff's claims were objectively reasonable. A plaintiff must show ownership of the source copyright, that defendants had a reasonable possibility of access, and that the two works are substantially similar. Defendants vigorously contested all three elements. Despite that opposition, Plaintiff prevailed on the first two elements. Exhibit 4 to Malofiy Decl. –Verdict Form.

### i.     PLAINTIFF PROVED OWNERSHIP

Plaintiff proved ownership and standing to sue despite Defendants' opposition. After the close of evidence, Plaintiff asked the court to grant judgment in its favor on ownership. **The Court noted that Defendants had not introduced a single piece of evidence to dispute the Trust's ownership, and appropriately instructed the jury that the Trust was the owner of Taurus.** *See* Trial Transcript, at p.1171. It is, however, necessary to point out the unreasonable and frivolous nature of Defendants' contest of ownership, when this element should have been stipulated to. Just as an award of fees based on frivolousness can be appropriate, it follows that fees can be denied when the prevailing party acted frivolously despite ultimately succeeding on other issues. *See Fogerty*, 510 US at 531-32 (stating that frivolousness is determination in deciding to award fees).

By advancing frivolous arguments, *for which they never produced any evidence or even a witness*, Defendants needlessly increased the cost of this litigation in discovery and at trial—yet they now ask for these fees. Consider, the Trust had Court orders proving that it owned Randy Craig Wolfe's intellectual property, which includes Taurus. *See* ECF No. 149-1, at p.6-9. Defendants nevertheless advanced numerous theories contesting ownership during the case, all of which were completely meritless. These theories included claiming that:

- the Trust had stolen Quinn Wolfe's inheritance and had unclean hands,
- that Taurus was a work for hire, and
- that Randy Wolfe had abandoned his rights in Taurus.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

*See, e.g.*, Def. Memo in Support of Summary Judgment, ECF NO. 97-1, at p.5-10.

At summary judgment Defendant primary arguments were that Taurus was a work for hire and that Wolfe had abandoned Taurus. They spent a great amount of time in discovery attempting to develop these arguments. However, after summary judgment was denied, Defendants completely dropped these arguments as there was no actual evidence to support them. *See* ECF No. 200-1, at p.17. Defendant always knew that there was no way that Taurus, written before the pertinent work for hire contract, could be a work for hire, and that legally speaking Wolfe had never abandoned or waived his rights in Taurus. Defendants should not be rewarded with costs and fees when they pushed frivolous arguments at summary judgment that they knew were factually and legally indefensible.

Even after dropping the work for hire and abandonment arguments, Defendants continued to contest ownership by inappropriately and outrageously attempting to prejudice the jury by claiming that the Trust stole Quinn Wolfe's inheritance and had unclean hands. Defendants repeatedly made this argument but never introduced any evidence to support it. Defendants' accusations are contradicted by the aforementioned California probate proceedings, which definitively establish that the Trust was given ownership of Randy Wolfe's intellectual property. It was particularly underhanded for defendants to continuously argue that the Trust stole Quinn Wolfe's inheritance and had unclean hands (implying that it was for personal gain) without any evidence whatsoever, but to simultaneously object to the evidence that the Trust is a charity which gives its funds to buy disadvantaged children musical instruments.

Simply put, the ownership of Taurus was never in doubt. Yet Defendants unreasonably contested this element. Plaintiff's arguments on this point were objectively reasonable and in fact successful as indicated by the Court and jury.

    ii.   PLAINTIFF PROVED ACCESS IN SPITE OF PAGE AND PLANT'S LACK OF CANDOR

Likewise, there was never any real doubt that Defendants had a reasonable possibility of access to Taurus. Yet, despite a wealth of evidence to the contrary,

defendants Page and Plant claimed they did not remember Spirit and had little recollection of them as a band. At trial it came out that defendant Page owned or possessed five Spirit albums, including the one that contain Taurus. *See* Trial Transcript, at p.359-61. Not only did Page own the critical album, but Led Zeppelin covered a Spirit song named Fresh Garbage, which was off the same side of that Spirit album that also had Taurus on it. *Id.* at p.401. Spirit was the only rock band that Led Zeppelin ever covered. *Id.* at p.1124-25. Furthermore, Led Zeppelin opened for Spirit during their first US show on December 26, 1968, in Denver. *Id.* at p. 173. Mark Andes testified that Spirit played Taurus at that show. *Id.* at p.268-69. Yet, defendant Page incredibly claimed he was never aware that Spirit played that show—despite the fact that Led Zeppelin was covering Spirit's song at the time. *Id.* at p.418-19 ("I didn't know they were on the bill."). Mr. Page, however, told the Richmond News Leader in 1969, just a few months after the Denver show, that Led Zeppelin had played with Spirit on Led Zeppelin's first US tour:

> Page reflected on Zeppelin's success. "It's kind of funny. On our first tour around, we played second fiddle to other groups. Last time we were the second group and Spirit was the Third. Now we've each gone up one notch."

*See* Exhibit 1 to Malofiy Decl. (Trial Exhibit 100158). Defendant Page's testimony that he did not know Spirit was at the Denver show does not appear to have been candid.

There were several other moments that called into question defendant Page's candor, such as where he categorically told the jury that he had never seen the band Spirit play a live show. Trial Transcript, at p.395 (Q: "You don't remember seeing Spirit live?" A: "I didn't see Spirit live."). Defendant Page was clear that this was not a question of memory. But, again, Page's past words from an April 1970 interview—before Stairway to Heaven was written—showed that Page had in fact attended many Spirit shows:

> Spirit do some really nice things on albums. They give a really nice atmosphere when they play and I always enjoy seeing them.

ECF No. 124-1, at p.20 (Trial Exhibit 159). Page again reaffirmed this in a 1972 interview when he said, "I saw Spirit a couple of times and thought they were very good" and that they struck him on an emotional level *See Id.* at p.30 (Trial Exhibit 157). This is

not to mention that an eyewitness, former Spirit bass player Larry Knight, testified at trial that Page attended a Spirit show in 1973, had spoken to him at an after party, and that Page had also met Randy Wolfe at that party. Trial Transcript, at p.575-76.

Defendant Plant's testimony was also less than candid regarding his familiarity with Spirit. He claimed he did not remember attending a Spirit show in 1970 in Birmingham, England, but also claimed that he would have been in the back of the club not paying attention to the music with friends. *Id.* at p.1106-1110. Yet, an eyewitness came forward, Michael Ware, who testified that he saw Robert Plant in the front row of the Spirit show enjoying himself immensely. Mr. Ware's unrebutted testimony, coupled with the knowledge that Led Zeppelin covered Spirit's music live, makes defendant Plant's claim that he did not see or remember the show highly unlikely. This is not to mention that Mark Andes has a vivid and distinct memory of playing snooker and hanging out with Plant and many of the members of Spirit that night after the show. Trial Transcript, at p.279.

Bluntly put, Defendants do not deserve attorney's fees when they were less than candid on the stand about their familiarity with Spirit and Taurus. There was a reason for this lack of candor, because an admission that they knew about Taurus would be devastating to their defense of the case. Access and substantial similarity are inextricably linked. *See Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 485 (9th Cir. 2000). Yet, Defendants are now filing for costs and fees, arguing that this lawsuit was frivolous. It would be highly inequitable to award feeds in such a situation where Defendants clearly had access to the work in question, are not being candid about that access (false exculpatory statements are evidence of intent and guilt), but are claiming that Plaintiff's lawsuit was so frivolous that Plaintiff should pay their legal bills. This does not add up.

### iii.   PLAINTIFF'S SUBSTANTIAL SIMILARITY CASE IS OBJECTIVELY REASONABLE

Plaintiff's claim of substantial similarity was objectively reasonable. Defendants spend less than a page of their brief conclusorily asserting frivolousness and objective

1   unreasonableness. Def. Memo of Law, at p.13-14, 15. *See Williams v. Bridgeport Music*
2   (stating that conclusory and unsupported assertions do not support a cost and fee motion).

3        There is no indication whatsoever that Plaintiff should have known from the outset
4   that he would not prevail on substantial similarity, much less that his chances were slim
5   to none. Indeed, the Court concluded in denying summary judgment that reasonable
6   minds could differ on the subject—even when restricting the substantial similarity
7   comparison to strictly the notes on the deposit transcription of Taurus. *See* ECF No. 159,
8   at p.18. Plaintiff also notes that the Court's rulings on the sound recordings and scope of
9   the deposit copy are relatively uncharted in the case law as this is a new issue that has not
10  been significantly litigated.[4] Plaintiff relied heavily on the *Williams v. Bridgeport Music*
11  case decided in the Central District of California in 2014, *see* ECF No. 169, at p.2-3,
12  which held that it was permissible to look at the composition in the sound recording of a
13  song as long as it was represented in some way in the deposit copy. *See Williams v.*
14  *Bridgeport Music*, 13-cv-6004 (April 12, 2016) (ECF No. 554), at p.5. The Blurred Lines
15  court allowed the experts to interpret the deposit copy and create re-recordings of the
16  sound recording which focused on only the protectable compositional elements in the
17  sound recordings which were represented in the deposit copy (excluding performance
18  elements). *Id.* These re-recordings were admissible in the Blurred Lines case and resulted
19  in a verdict for the claimant. It should be noted that Plaintiff tried to introduce such re-
20  recordings in this case but they were ruled inadmissible.

21       This Court did not agree with the *Williams* court, and instead restricted the
22  comparison to solely the exact notes in the deposit copy of Taurus. Trial Transcript, at
23  p.598-99. Setting aside Plaintiff disagreement with that ruling, there was no way for
24  Plaintiff to know that this would be the ruling of the Court on that critical issue when this
25  suit was filed. *SOFA Entm't.*, 709 F.3d at 1280 (stating objective unreasonableness is
26  determined if a party knew that at the "outset that its chances of success in the case were
27  slim to none"). For Defendants to conclusorily argue that Plaintiff acted frivolously or
28

---

[4] Indeed, prior courts have permitted the sound recordings to be played in cases applying the 1909 Act.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

objectively unreasonably is absurd given the novelty of the issue and that different courts have reached different conclusions on the issue. Plaintiff also had no way of knowing that the Court would select the jury instructions that it did, which undoubtedly had a large effect on the outcome of the case. The Court, for instance, completely excluded any instruction on the inverse ratio rule which provides that as the degree of access shown increases, the burden to prove substantial similarity proportionally decreases. Trial Transcript, at p.1202-03. The Ninth Circuit has explicitly held that the access and substantial similarity are inextricably linked. *See Three Boys Music Corp.*, 212 F. 3d at 485. Plaintiff built a large part of his case around Defendants' obvious access to Taurus, and was unaware that the Court would omit what Plaintiff viewed as a critical instruction. Likewise, Plaintiff's expert Dr. Alexander Stewart focused on the combination of elements in Taurus that were allegedly copied in Stairway to Heaven. *See, e.g.*, Trial Testimony, at p.645. The Court however failed to instruct the jury that even the combination of unprotected elements warrants copyright protection.

Defendants' claims of frivolousness and objective unreasonableness are baseless and use hindsight to make it seem like their prevailing in this case on substantial similarity was preordained. The fact of the matter is that there is nothing in the record that shows that Plaintiff "should have known from the outset that its chances of success in the case were slim to none." *SOFA Entm't.*, 709 F.3d at 1280.

B.    PLAINTIFF'S MOTIVATION WAS, AND IS, PURE

Plaintiff's motivation is pure and is to get Randy Wolfe credit and recognition. *See* Declaration of Michael Skidmore. Defendants' motion have fails to show any improper motivation. Indeed, their memorandum's section on motivation is limited to claiming that Plaintiff's motive was "to try to coerce a massive settlement." *See* ECF No. 293-1, at p.14. As Defendants well know, Plaintiff's demand was $1 dollar and credit, which they categorically rejected. *See* Declaration of Francis Malofiy. Moreover, subsequent demands were based in good faith on the valuation of Dr. Michael Einhorn, a respected economist. Defendants never introduced an expert to support their ludicrously low

valuation of this claim (of one of the most popular songs in history) at six figures. Moreover, Defendants repeatedly claimed that the age of this lawsuit means that it is unreasonable. *See* ECF No. 293-1. They ignore that Plaintiff submitted declarations showing that Randy Wolfe sought to sue over this claim, but was told it was not possible due to the statute of limitations. *See* ECF No. 118-5 (Declaration of Linda Mensch). It was not until 2014, and the <u>Petrella v. MGM</u> decision by the Supreme Court of the United States, that Plaintiff could sue for this claim. *See* Decl. of Michael Skidmore.

This lawsuit was brought by the Trust in good faith to preserve and promote the memory of Randy Wolfe, aka Randy California. It has long been suspected by the musical community that Led Zeppelin copied Taurus to create Stairway to Heav**e**n—the same way Jimmy Page and Robert Plant admitted copying many other artists they appreciated. Plaintiff's only goal in filing this lawsuit was to make sure that Randy California got the credit he deserved, and if the lawsuit had been successful Mr. Skidmore would have received nothing as the Trust is a charity. Mr. Skidmore has submitted a declaration in this matter, explaining his motivations and his dedication to preserving Randy Wolfe's memory. *See generally* Declaration of Michael Skidmore.

## C.   CONSIDERATIONS OF COMPETENCE AND DETERRENCE

Where neither party has an improper motive, both parties have important economic interests, and the litigation has some importance for copyright law, "there is no need for deterrence." *Perfect 10, Inc.*, 2005 WL 2007932 at *5 (citing *Lotus Dev. Corp.*, 140 F.3d at 74). Here, novel legal issues dominated the substantial similarity comparison. Plaintiff's position was objectively reasonable and not frivolous, as he relied on a Court in this district that reach a differing conclusion concerning the scope of the deposit copy. There is therefore nothing that needs to be "deterred" through an award of fees. *Id.*; *see also, Inhale, Inc.*, 75 F.3d at 1042-43 (affirming fee award in order to deter "'similarly frivolous claims against innocent Defendants'"); *Bernal*, 2010 WL 6397561 at *2 (awarding fees where lawsuit was objectively unreasonable in order to "promote deterrence of meritless claims that tend to chill creative expression"). What was litigated

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

in this case was a dispute concerning the boundaries of copyright law between the 1909 Act and the 1976 Act and the scope of what deposit transcriptions under the 1909 Act protect. Courts in this district have differed on the correct legal interpretation of these issues, and imposing attorney's costs and fees in light of the uncertainty of this area of law could not serve the purposes of deterrence or competence.

When the parties do not have even resources the Ninth Circuit considers "whether an award of attorney's fees would have a chilling effect that is too great or would impose an inequitable burden on an impecunious plaintiff." *See Williams v. Bridgeport Music*, 13-cv-6004 (April 12, 2016) (ECF No. 554) (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)). Plaintiff notes that in comparison to Defendants, giants in the music industry, the Trust is miniscule. The Trust is a charity. The Trust does not have significant financial resources at its disposal, and what resources it does have are devoted to purchasing instruments for school kids. Imposing costs and fees would have both a chilling effect that is far too great, and would also be inequitable in light of the Trust's purpose and the Trust's limited funds. There is no possible way the Trust could pay a judgment of $700,000 in attorney's costs and fees. *See* Declaration of Michael Skidmore.

## D.   DEFENDANTS' CONDUCT DOES NOT WARRANT GRANTING FEES

Although Defendants erroneously focus their motion, not on the *Fogerty* factors prescribed by the Ninth Circuit, but instead on erroneously attacking Plaintiff's counsel (rebutted *infra*), the truth is that it is Defendant and defense counsel's conduct do not warrant granting fees—even setting aside that Defendants drove up the cost of this litigation by making many frivolous legal arguments on ownership and access.

For instance, defense counsel engaged in extraordinarily underhanded behavior during pre-trial activities. Specifically, after discovery closed, but before summary judgment, Defendants apparently worked with Hollenbeck Music, Plaintiff's publisher, to file a copyright correction form with the copyright office to list Taurus as a work for hire. *See* ECF NO. 129-3, at p.7-10. As the Taurus copyright was under litigation, this secretive and fraudulent attempt to change the Taurus copyright's ownership was a

breathtaking attempt to improperly undermine Plaintiff's lawsuit. To be clear, the registration was completely false as there is no evidence that Taurus, written in 1966, could have possibly been covered by the work for hire agreement signed in August 1967 with Hollenbeck Music. Defendants' knew this, but presented the false registration document to the Court anyway in their summary judgment package. *Id.* Filing a false registration is illegal under the Copyright Act. *See* 17 U.S.C. § 506(e).

Moreover, it was also revealed on May 27, 2016, that defense counsel knew of a serious conflict of interest that their musicological expert, Dr. Lawrence Ferrara, had as a result of previously analyzing Taurus for Plaintiff's publisher. *See generally* ECF No, 230 (Motion for Sanctions). Defense counsel actively hid this conflict from Plaintiff and, when it was finally discovered at the 11th hour in Dr. Ferrara's deposition, defense counsel nonsensically claimed that Peter Anderson himself had waived the conflict. *Id.* at p.8. But any waiver of a conflict could only come from Plaintiff! During the deposition of Dr. Ferrara, defense counsel Peter Anderson also took Dr. Ferrara out in the hallway and deliberately coached the witness, something that Dr. Ferrara admitted. *Id.* at p.11-12. Plaintiff refers the Court to the motion for sanctions filed against defense counsel for this conduct, all of which was unethical and severely and unduly prejudiced Plaintiff's prosecution of this lawsuit. See ECF No. 230.[5]

### E. DEFENDANTS' BASELESS ACCUSATIONS OF MISCONDUCT ARE DESIGNED TO HIDE THAT DEFENDANTS DO NOT HAVE A STRONG CASE FOR FEES UNDER THE *FOGERTY* FACTORS

Defendants' allegations of misconduct are meritless and insidiously attempt to misconstrue good faith advocacy as "misconduct." It appears that Defendants have kept track of every dispute they had with Plaintiff in this litigation and laundry listed them here. Defendants' list of petty, subjective complaints has nothing to do with the *Fogerty* factors and cannot support the imposition of costs and fees. Awarding fees based on these completely baseless allegations (most of which Defendants do not even explain how they

---

[5] The Court struck the motion stating that it was filed after the motion deadline. However, Plaintiff notes that the issue arose on May 27, 2016 and could not have been filed by the February 25, 2016 motion deadline.

could possibly constitute misconduct), would chill advocacy to a standstill, and leave counsel for either plaintiffs or defendants second-guessing every step in the litigation. Defendants never filed a motion for sanctions during this case and are only raising these issues now as an improper and underhanded attempt to support a weak motion for costs and fees. At the onset of this case the Court made it clear that it would not entertain misconduct from either side at trial. There was no misconduct at trial.

**Plaintiff Did Not Attempt to Wipe Stairway to Heaven "Off the Map"—Plaintiff Only Wanted a One Third Credit for the Introduction**

For instance, Defendants hyperbolically claim that Plaintiff "attempted to wipe Stairway to Heaven off the map" by including standard Copyright Act language regarding injunctive relief in the Complaint. Def. Memorandum of Law at p.4. But at no point did Plaintiff move for a preliminary injunction or indicate that such a right would be invoked. As Defendants well know asserting the right to relief in a complaint does not mean that a party would exercise those rights. Nothing about including a request for relief in a complaint explicitly authorized by the Copyright Act is improper or warrants fees.

**Plaintiff Never Tried to Introduce Evidence of Prior Settlements**

Defendants also claim that it was misconduct for Plaintiff to attempt to introduce "instances of prior settlements or potential-but-never asserted copyright infringement claims." Def Memo. at p.6. Defendants claim "any reasonable lawyer would have known that prior claims and settlements are irrelevant." *Id.* **Defendants' accusation is false and mispresents Plaintiff's position.** Plaintiff *never* attempted to introduce evidence of prior lawsuits and settlements. Plaintiff instead wanted to show the jury that Led Zeppelin had repeatedly changed the credits on its songs to credit new artists previously omitted. *See* ECF No. 165 ("Defendants desperately attempt to frame this motion as a request to exclude settlement agreements . . . This could not be further from the truth. FN1 [The fact that the credits on the songs changed does not require any evidence of a settlement agreement]. What Plaintiff seeks to disclose is the songwriting method used by Led Zeppelin [] that resulted in numerous occasions of Led Zeppelin having to change the

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

credit for its songs."). Defendants Page and Plant admitted using other artists' work without credit to create Led Zeppelin's music. Page, for instance, stated in an interview:

> "[A]s far as my end of it goes, I always tried to bring something fresh to anything that I used. I always made sure to come up with some variation. In fact, I think in most cases, you would never know what the original source could be."

*See* Exhibit 2 – December 1993 Guitar World, at p.50. If defense counsel is going to lob an allegation of misconduct, it should not completely botch Plaintiff's actual position. This evidence was also admissible under Fed. RE 404(b), as Plaintiff argued in his motion in limine response. *See* ECF No. 165 at p.4. Plaintiff observes that making arguments Defendants disagree with is not misconduct and does not warrant fees.

**Plaintiff Did Not File Frivolous Motions**

Defendants also laundry list several motions they contend constitute misconduct because they were allegedly frivolous. Def. Memo. at p.6-7. These vague assertions are never developed, only listed. Plaintiff examines each of them in turn:

- Plaintiff's February 2, 2016 Application to Amend Scheduling Order, denied (Doc. No. 95)
  - This was a routine application to extend the discovery deadline, denied at the discretion of the Court. Defendants never explain how the filing of this application could possibly constitute misconduct.

- Plaintiff's February 25, 2106 Motion to File Amended Complaint to add defendants, denied (Doc. No. 133)
  - Plaintiff only learned of the new potential defendants in 2016 after Defendants produced voluminous damages discovery, totaling over 45,000 pages. This motion was necessitated because Defendants used shell companies to hide their assets. This motion was timely, well supported, and objectively reasonable. Defendants do not explain how filing this motion was unreasonable, much less could possibly constitute misconduct.

- Plaintiff's March 26, 2016 Motion to withdraw deemed admissions, stricken (Doc. No. 153)

  o Defendants fail to note that although the Court struck this motion as untimely, Plaintiff prevailed on this issue and Defendants' assertion that Plaintiff had admitted Taurus was a work for hire was rejected.

- Plaintiff's May 17, 2016 Motion to Compel the Individual Defendants to Appear for Trial, denied.

  o Defendants refused to represent whether they would appear for trial. This was a basic lack of common courtesy on the part of defense counsel, as Mr. Malofiy had to spend an enormous amount of time editing video to put together designations for Mr. Page, Plant, and Jones in the event they did not appear. As Plaintiff was restricted to 10 hours to present the entire case, this also made scheduling witnesses infinitely harder, many of whom lived hours away. This motion was premised upon the well-recognized ability of the court to control the witnesses in front of it, that Defendants had consented to jurisdiction in California, and also the fact that defendant Plant and Jones had extensive contact with Los Angeles that allowed them to be compelled under FRCP 45. Defendants do not explain how filing this motion constitutes "misconduct" or was unreasonable in light of their basic lack of courtesy to opposing counsel.

- Plaintiff's June 11, 2016 Motion for Sanctions and Exclusion of Defendants' Musicologist, stricken.

  o This motion was stricken as untimely. Respectfully, it should not have been. The misconduct alleged therein, that Defendants hid a conflict of interest for over two years from Plaintiff, was only discovered on May 27, 2016 and could not have been discovered earlier. Plaintiff filed this motion within two weeks of discovery of the misconduct. This motion was extensively detailed and revealed blatantly unethical conduct by defense counsel. Again, Defendants do not explain how it is

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

Plaintiff's counsel who could possibly be accused of misconduct for filing a well-supported sanctions motion.

- Plaintiff's June 12, 2016 Motion for Reconsideration of Court's April 4, 2016 order granting partial summary judgment.
  - o The filing of a motion for reconsideration, without some extraordinary showing, cannot be characterized as misconduct. Defendants make no such showing, just the accusation. In fact, that motion was well-supported.

Defendants also ignore that they too had filings stricken. *See* ECF No. 212. As can be seen, Defendants undeveloped and unsupported accusations attempt to misconstrue good faith advocacy as misconduct. This is insidious and should be rejected.

**Plaintiff's Arguments In Favor of Admitting Taurus Sound Recording Were Objectively Reasonable**

Defendants claim that Plaintiff's arguments that the sound recording of Taurus should be admissible were "misconduct." Def. Memo. at p.7-8. Plaintiff strenuously objects, again, to Defendants misconstruing good faith advocacy as something nefarious. Defendants' motion incorrectly asserts that Plaintiff sued over the infringement of the sound recording copyright of Taurus. *See* Def. Memo. at p.7 ("Congress did not extend federal copyright protection to sound recordings . . . until 1971."). But Plaintiff never asserted a sound recording claim, nor did he claim that Defendants sampled Taurus. Again, Defendants' motion alleges that Plaintiff made a frivolous argument, but misconstrues Plaintiff's actual position.

The motion goes on to note that Plaintiff served expert reports comparing the composition of the sound recording of Taurus to the sound recording of Stairway to Heaven. Def. Memo. at p.8. Defendants absurdly claim this was misconduct. Defendants fail to note that other courts in this district, *see Williams v. Bridgeport Music, supra*, have held that the compositional elements in the sound recording of a source song are admissible for the substantial similarity comparison. Different Courts have come to different opinions on this novel issue. This is good faith advocacy and cannot remotely be

construed as "misconduct." That the Court sometimes disagreed with some of Plaintiff's positions (as it did Defendants) does not support Defendants' hyperbolic accusations.

**Defendants' Miscellaneous Complaints**

Having thoroughly mispresented Plaintiff's legal and factual positions, and falsely portrayed good faith advocacy as misconduct, Defendants go on to complain that Plaintiff's counsel spoke to the media about a case for which there was a huge amount of press coverage. Defendants raised this argument before and during trial. The Court never acted on Defendants' objections, despite being well aware of them. When talking to the media, Plaintiff's counsel reiterated positions that had already been in the public record or were argued before the Court. Plaintiff notes that there is no prohibition on speaking to the media, the Courts are public, misinformation needed to be corrected (the Wolfe family had no stake in the suit), and the jury was instructed to not look at any media.

Defendants also claim that Plaintiff elicited testimony on the Trust's purpose and goal as a charity from Janet Wolfe. Def. Memo. at p.10. But Janet Wolfe answered the pertinent question the way she did of her own volition; it was not a leading question.

Defendants claim that Plaintiff's counsel misrepresented Exhibit 100164, an interview of Page, Plant, and Jones speaking about the creation of Stairway to Heaven, as being recorded in 1972, instead of 1990, as they assert. Defendants never explain how this dispute over the date mattered in the case or how it could have possibly been motivated by bad faith. To the extent that this issue actually mattered, Defendants could have put on evidence by their very own witnesses. They chose not to because it is a nonissue. Plaintiffs' counsel noted in closing that whether the date is 1972 or 1990, it does not change the veracity of Defendants' statements. Trial Transcript, at p.1229.

Defendants further claim that Plaintiff's counsel "altered" a photograph of Mark Andes and Robert Plant speaking in a group in the early 1980s. Plant denies knowing Andes, which Plaintiff argues was a falsehood. As with nearly every one of Defendants' laundry list of unsupported allegations of misconduct, this was already raised before the Court repeatedly and ruled upon. Plaintiff objects to the use of the word "alter," as it is

highly deceptive and loaded. Despite Defendants' over-the-top accusation, the truth is much more mundane. While the photo was being pulled as a screenshot off the Getty Images website by Plaintiff's counsel, the website's software partially cropped the photo. The photo was not "altered" in any way. *See* Declaration of AJ Fluehr. Defendants' accusation of misconduct is refuted by the fact that Plaintiff's counsel had previously sent the full picture to Defendants, demonstrating that there was no attempt to put one over on Defendants. Indeed, they saw the discrepancy and objected. Furthermore, the correct remedy would have been to show the full, uncropped picture to the jury—which merely supported Andes testimony that he and Plant had a conversation at that time. Defendants, however, never wanted this damaging piece of evidence shown the jury and seized on this inadvertent cropping as a convenient way to argue it should be excluded.

## IV.    APPORTIONMENT AND CUTTING REQUESTED COSTS AND FEES

The fact is that the Trust is very small when compared to Defendants, financially speaking, and that Defendants focused a large part of their advocacy in this case on disputing ownership and access issues, when they knew their arguments were unsupportable, warrants the Court cutting the costs and fees—provided the Court decides costs and fees should be imposed. *Ryan v. Editions Ltd. West, Inc.*, 786 F. 3d 754, 763 (9th Cir. 2015) (stating that Court may reduce fees for excessive and unreasonable hours); *Schwarz v. Secretary of Health & Human*, 73 F. 3d 895 (9th Cir. 1995) (stating court authorized to make "across-the-board percentage cuts" of final lodestar figure).

## V.    CONCLUSION

Plaintiff asks that this motion be denied as the lawsuit was objectively reasonable, hard fought, and was filed with the best of motivations. The purpose of the Copyright Act would not be served in imposing costs and fees, especially given the enormous discrepancy between Defendants, who are titans in the music industry, and the Trust which is a small charity.

Dated:  July 18, 2016                                FRANCIS ALEXANDER, LLC

20

_/s/ Francis Alexander Malofiy_
Francis Alexander Malofiy, Esq.
Attorney for Plaintiff

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that PLAINTIFF'S RESPONSE TO MOTION FOR ATTORNEY's COSTS AND FEES has been served upon counsel by electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ July 18, 2016*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES